**ATTACHMENT**

*2001 U.S. Dist. LEXIS 21405, **

CARVER DAN PEAVY, ET AL., Plaintiffs, VS. WFAA-TV, INC., ET AL., Defendants.

NO. 3-96-CV-2945-R

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

2001 U.S. Dist. LEXIS 21405

December 21, 2001, Decided
December 21, 2001, Filed; December 26, 2001, Entered

**DISPOSITION:** **[*1]** Recommended that this FNNA's motion to intervene should be denied as untimely.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff individuals sued defendant company alleging violations of federal wiretap statutes and related state law claims. After five years of litigation the parties negotiated a settlement. Pursuant to Fed. R. Civ. P. 24, intervenor creditor moved to intervene in the underlying civil action.

**OVERVIEW:** Previous to the settlement in the underlying action, the individuals entered into a separate agreement by which a percentage of the settlement proceeds would be paid to a third party and the individuals would also pay off, on behalf of a third party, a line of credit held by the creditor. The creditor subsequently filed suit in state court to foreclose on the loan. While the state court litigation was still pending, the third party executed a collateral assignment for the benefit of the creditor by which he assigned a security interest in the agreement between the third party and the individuals. The magistrate judge found that the creditor as an assignee was in no better position than the third party and the creditor's intervention at this late date would embroil the parties and the court in collateral matters that were irrelevant to the substantive issues in the present case and unduly protract the imminent resolution of the present litigation. The creditor had presented no argument or evidence that the various remedies available under state law to secure payment of a judgment debt were either not available or inadequate.

**OUTCOME:** The magistrate judge recommended that the motion to intervene should be denied as untimely.

**CORE TERMS:** settlement, lawsuit, intervene, motion to intervene, recommendation, leave to intervene, intervenor, assignee, untimely, unusual circumstances, failure to file, length of time, timeliness, assignor, state law

2

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Joinder of Claims & Parties > Intervention

*HN1* A party may intervene in an ongoing lawsuit if four conditions are met: (1) the intervention must be timely; (2) the party must have an interest in the subject matter of the action; (3) the disposition of the case may impair or impede the party's ability to protect that interest; and (4) the party is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). A party who fails to meet any one of these requirements is not entitled to intervene as a matter of

1

right. More Like This Headnote

Civil Procedure > Joinder of Claims & Parties > Intervention

*HN2* The timeliness of a motion to intervene must be determined from all the facts and circumstances of the particular case. Four factors are relevant to this inquiry: (1) the length of time during which the intervenor knew or should have known of its interest before it sought leave to intervene; (2) the extent of prejudice that existing parties to the litigation may suffer as a result of the delay; (3) the extent of prejudice to the intervenor if leave to intervene is denied; and (4) any unusual circumstances militating for or against a determination that the application is timely. More Like This Headnote

Contracts Law > Third Parties > Assignment of Rights

*HN3* An assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed. More Like This Headnote

Civil Procedure > Joinder of Claims & Parties > Intervention

*HN4* With regard to a motion to intervene, being required to enforce a right through ordinary legal channels does not constitute prejudice. More Like This Headnote

Civil Procedure > Joinder of Claims & Parties > Intervention

*HN5* Fed. R. Civ. P. 24 is not intended to allow the creation of whole new lawsuits by the intervenors. More Like This Headnote

**COUNSEL:** For CARVER DAN PEAVY, plaintiff: S Stewart Frazer, Attorney at Law, Law Office of S Stewart Frazer, Arthur F Selander, Michael J Quilling, Keith B Cummiskey, Kenneth A Hill, Attorneys at Law, Quilling Selander Cummiskey & Lownds, Dallas, TX USA.

For SALLY PEAVY, consolidated plaintiff: Arthur F Selander, Keith B Cummiskey, Kenneth A Hill, Attorneys at Law, Quilling Selander Cummiskey & Lownds, Dallas, TX USA.

For SALLY PEAVY, EUGENE M OLIVER, ANNA OLIVER, consolidated plaintiffs: Michael J Quilling, Quilling Selander Cummiskey & Lownds, Dallas, TX USA.

For EUGENE M OLIVER, consolidated plaintiff: S Stewart Frazer, Attorney at Law, Law Office of S Stewart Frazer, Dallas, TX USA.

For WFAA-TV INC, ROBERT RIGGS, defendants: Thomas S Leatherbury, William 'Bill' D Sims, Jr, Stacy Deanne Siegel Simon, Michael L Raiff, Attorneys at Law, Vinson & Elkins, Dallas, TX USA.

For USA, movant: Lynn Hastings, Myrna B Silen, Attorneys at Law, US Attorney's Office, Department of Justice, Dallas, TX USA.

For BUCK CONSULTANTS INC, movant: D Ronald Reneker, Attorney at Law, Bush Craddock & Reneker, **[*2]** Dallas, TX USA.

For MATTHEW HARDEN, JR, movant: Scott S Hershman, Attorney at Law, Lackey Hershman, Dallas, TX USA.

For FIRST NATIONAL OF NORTH AMERICA LLC, movant: George F Nicholas, James S Robertson, III, Attorneys at Law, Nicholas & Robertson, Dallas, TX USA.

**JUDGES:** JEFF KAPLAN, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JEFF KAPLAN

**OPINION: FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

First National of North America, LLP ("FNNA") has filed a motion to intervene in this lawsuit pursuant to Rule 24 of the Federal Rules of Civil Procedure. For the reasons stated herein, the motion should be denied as untimely.

I.

This is a consolidated civil action brought by Carver Dan Peavy, Eugene M. Oliver, and their respective spouses against WFAA-TV, Inc. for violations of the federal wiretap statutes and related state law claims. After five years of litigation, the parties finally negotiated a settlement on October 15, 2001.

On September 22, 1999, Peavy and Oliver entered into an agreement with John H. Meyer and Ron Wilson whereby they agreed to pay Meyer and Wilson 5% of all settlement proceeds recovered in the *WFAA* litigation and four other cases. The **[*3]** agreement provides, in relevant part:

> The undersigned Carver D. Peavy & Gene Oliver ("the Promisor(s)") promises to pay to pay [sic] to the order of John H. Meyer & Ron Wilson ("the Payee(s)") a 5% (five percent) of the total Gross (before Tax and attorney fee deduction) settlement moneys and AOVC of each of the 5 current cases they have filed upon full and final settlement. The moneys and AOVC shall be paid by the Promisor(s) in funds as directed by the Payee(s). The total of payment paid to the Payees shall not exceed a dollar value of 5 million dollars for the 5 total cases.

(FNNA Mot., Exh. 2). In addition, the agreement obligates Peavy and Oliver to pay off a FNNA line of credit loan to Money Power, LLC, which Meyer had guaranteed. (*See id.*, Exhs. 2 & 1 (A)).

FNNA subsequently filed suit in Texas state court against Money Power, Meyer, Wilson, Peavy, Oliver, and others to foreclose on the loan. (*Id.*, Exh. 1). On November 1, 2001, while the state court litigation was still pending, Meyer executed a "Collateral Assignment" for the benefit of FNNA. That document provides, in relevant part:

> Meyer hereby collaterally assigns to FNNA, and grants to **[*4]** FNNA a security interest in, all of Meyer's rights in and to, but not any of his obligations under, the Agreement [of September 22, 1999]. This Assignment is made to secure Meyer's obligations under the Loan including, without limitation, his liability for payment of amounts due under the Loan Agreement, the Note and the Guaranty.

(*Id.*, Meyer Aff., Exh. C).

By this motion, FNNA "wishes to intervene in the WFAA lawsuit to protect its interest, as assignee, in the settlement proceeds [and] . . . seeks an order from the Court directing disbursement of the settlement proceeds to FNNA in accordance with its rights under the agreement described above." (*Id.* P 7). The motion has been fully briefed by the parties and

is ripe for determination. n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 FNNA objects to the affidavits submitted by Peavy and Oliver in support of their response to the motion to intervene. As none of the statements contained in these affidavits are necessary to the disposition of the pending motion, the objections are overruled as moot.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*5]**

II.

*HN1*A party may intervene in an ongoing lawsuit if four conditions are met: (1) the intervention must be timely; (2) the party must have an interest in the subject matter of the action; (3) the disposition of the case may impair or impede the party's ability to protect that interest; and (4) the party is not adequately represented by the existing parties. FED. R. CIV. P. 24(a)(2); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994). A party who fails to meet any one of these requirements is not entitled to intervene as a matter of right. *See Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984).

*HN2*The timeliness of a motion to intervene must be determined from all the facts and circumstances of the particular case. *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996); *Corley v. Jackson Police Department*, 755 F.2d 1207, 1209 (5th Cir. 1985). Four factors are relevant to this inquiry: (1) the length of time during which the intervenor knew or should have known of its interest before it sought leave to intervene; (2) the extent of prejudice that existing parties to the litigation may suffer as a result of **[*6]** the delay; (3) the extent of prejudice to the intervenor if leave to intervene is denied; and (4) any unusual circumstances militating for or against a determination that the application is timely. *Edwards*, 78 F.3d at 1000, *quoting Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-65 (5th Cir. 1977).

A.

The first factor focuses on the length of time during which the intervenor knew or should have known of its interest before it sought leave to intervene. FNNA maintains that it did not know of Meyer's entitlement to a portion of the settlement proceeds until October 25, 2001, when it learned that a settlement had been reached in the *WFAA* case. (FNNA Mot. P 6; FNNA Reply P 9). Shortly thereafter, Meyer assigned his interest in the agreement with Peavy and Oliver to FNNA. The instant motion was filed on November 13, 2001.

This argument all but ignores the fact that FNNA claims its right to a portion of the settlement proceeds as an assignee of Meyer. *HN3*"An assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed." *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993), **[*7]** *quoting Fox-Greenwald Sheet Metal Co. v. Markowitz Bros. Inc.*, 147 U.S. App. D.C. 14, 452 F.2d 1346, 1357 n. 69 (5th Cir. 1971). Meyer clearly knew of his interest in the outcome of this litigation when he entered into the agreement with Peavy and Oliver in September 1999. Had Meyer sought to intervene at this late date, the Court would have no difficulty in denying the motion as untimely. As an assignee, FNNA is in no better position than Meyer in this regard.

B.

The second consideration is whether the existing parties will suffer prejudice as a result of

the delay. This factor focuses only on prejudice caused by the delay itself--not prejudice that may result if the intervention is granted. *Edwards*, 78 F.3d at 1002.

Since September 1999, the parties have vigorously litigated their positions in the district court, Fifth Circuit, and United States Supreme Court. n2 Clearly, a considerable amount of time and resources have been invested in this lawsuit during the past two years. After the case was remanded, the parties spent three days in mediation and countless hours negotiating with one another before a settlement was reached in October 2001. The **[*8]** tenor and course of these settlement discussions might well have been altered had Meyer or FNNA been at the table. While FNNA ultimately may be entitled to a portion of the settlement proceeds, it should not hold the parties to this litigation hostage while its rights are being adjudicated.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The *WFAA* case was on appeal to the Fifth Circuit when Peavy and Oliver entered into their agreement with Meyer in September 1999. On July 31, 2000, the court of appeals vacated a summary judgment order in favor of WFAA and remanded the case for a trial on the merits. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000). The United States Supreme Court denied a petition for writ of certiorari on May 29, 2001. *Peavy v. WFAA-TV, Inc.*, 532 U.S. 1051, 121 S. Ct. 2191, 149 L. Ed. 2d 1023 (2001). Thereafter, this Court held a scheduling conference with the parties and set the case for trial in March 2002.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

C.

The Court also must consider any prejudice to FNNA if the motion to intervene is not granted. FNNA argues that it "will **[*9]** have to resort to independent collection efforts against Peavy, Oliver, and perhaps others" if it is not allowed to intervene in this suit. (FNNA Mot. P 11). However, *HN4*being required to enforce a right through ordinary legal channels does not constitute prejudice. FNNA has presented no argument or evidence that the various remedies available under state law to secure payment of a judgment debt are either not available or inadequate in this case. *See, e.g.* TEX. CIV. PRAC. & REM. CODE ANN. § 61.001 (Vernon 1986) (pre-judgment writ of attachment); *id.* § 63.001 (writ of garnishment); *id.* § 31.002 (post-judgment turnover order). n3 The Court finds no prejudice to FNNA if leave to intervene is denied.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 At best, the evidence shows only that Peavy and Oliver have stated an intention not to honor the agreement. (FNNA Mot., Meyer Aff. P 9). This in itself does not demonstrate that FNNA cannot collect any amounts due from Peavy and Oliver once its claim is reduced to judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

D.

Finally, the Court must **[*10]** consider any unusual circumstances that bear on the issue of timeliness. One such factor is an on-going dispute as to whether the original agreement between Peavy, Oliver, and Meyer was superseded by a later agreement. On January 1,

5

2000, these parties entered into a second contract whereby Peavy and Oliver promised "to richly reward Ron Wilson and John H. Meyer for all of the considerations and courtesies that Ron Wilson and John H. Meyer have bestowed on Dan Peavy and Gene Oliver." (Peavy Aff., Exh. E). The document goes on:

> This agreement supersedes all prior documents or understandings whether verbal or written between all parties, namely, Carver D. (Dan) Peavy, Eugene M. (Gene) Oliver, Ron Wilson, and John H. Meyer . . . All other agreements between and among the parties including but not limited to the joint venture agreement between Homemasters, Inc. and Money Power, L.L.C. are not considered a part of this document.

(*Id.*). The Court will not even attempt to decipher this cryptic paragraph. Suffice it to say that allowing FNNA to intervene would require the Court to determine both the validity and effect of this contract. Those matters have been joined in **[*11]** the state court lawsuit and can be fully resolved in that forum. *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 525 (5th Cir.), *cert. denied*, 513 U.S. 1014, 115 S. Ct. 573, 130 L. Ed. 2d 490 (1994) (*HN5*Rule 24 "is not intended to allow the creation of whole new lawsuits by the intervenors"). FNNA's intervention at this late date would embroil the parties and the Court in collateral matters that are irrelevant to the substantive issues in this case and unduly protract the imminent resolution of the *WFAA* litigation. Under these circumstances, intervention is not proper. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 FNNA cites two "analogous" cases in support of its motion where attorneys were allowed to intervene in pending lawsuits involving former clients to protect their interests under a contingent fee contract. *Keith v. St. George Packing Co., Inc.*, 806 F.2d 525 (5th Cir. 1986); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970). Significantly, the intervenors in both *Keith* and *Gaines* sought leave to intervene within months after the underlying lawsuits were filed. *See* *Keith*, 806 F.2d at 525-26 (intervention sought six months after suit was filed); *Gaines*, 434 F.2d at 53 (intervention sought less than 10 months after suit was filed).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*12]**

**RECOMMENDATION**

FNNA's motion to intervene should be denied as untimely.

DATED: December 21, 2001.

JEFF KAPLAN

UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT**

On this date the United States magistrate judge made written findings and a recommended disposition of First National of North America, LLP's motion to intervene in the above styled and numbered cause. The United States district clerk shall serve a copy of these findings and recommendations on all parties by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations

must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings and recommendations to which objections are being made. The district court need not consider frivolous, conclusory or general objections. The failure to file such written objections to these proposed findings and recommendations shall bar that party from obtaining a *de novo* determination by the district court. *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982). **[*13]** *See also* *Thomas v. Arn*, 474 U.S. 140, 150, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985). Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 21, 2001.

JEFF KAPLAN

UNITED STATES MAGISTRATE JUDGE

Service: **Get by LEXSEE®**
Citation: **2001 us dist lexis 21405**
View: Full
Date/Time: Thursday, November 17, 2005 - 3:55 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.