ORIGINAL

FILED
JAN 11 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 89-218L |
| | * | Chief Judge Edward H. Damich |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |
| * * * * * * | * | * * * * * |
| PATTON BOGGS LLP, | * | |
| Intervenor-Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |
| * * * * * * | * | * * * * * |

## COMPLAINT IN INTERVENTION

Patton Boggs LLP ("PB"), through counsel, hereby brings suit against the United States of America, stating as follows:

### NATURE OF THE ACTION

This action-in-intervention seeks damages from the United States for its failure to comply with the money-mandating attorney fee provision of the Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act, Pub. Law 107-331, (the "Settlement Act"), codified at 25 U.S.C. § 1779. The Settlement Act required the Secretary of the Department of the Interior (the "Secretary") to pay to PB "those fees provided for in [PB's] tribal attorney fee contract[] as approved by the [Cherokee] Nation[]." 25 U.S.C. § 1779c(a). PB entered into its contingency fee contract (the "Contract") with Cherokee Nation in April, 1989 (when it filed this action in this court), with the then requisite

"approvals" by Tribal Council Resolutions and Interior Department approval letter dated November 13, 1989. The Contract provided that Cherokee Nation shall pay PB "additional compensation of ten percent (10%) of the amount recovered" "through the litigation or legislative process" "less the amounts previously paid." Exhibit 1 at 3, attached hereto. Under the Settlement Act, Cherokee Nation recovered $20 million, up to ten percent of which was to be set aside to pay Cherokee Nation's attorneys with "approved" contracts. 25 U.S.C. §§ 1779c(c) and (d) and 1779c(b). Thus, PB's Contract entitled it to a total fee of $2,000,000. Since Cherokee Nation had already paid PB $403,959, under 25 U.S.C. § 1779e(a) the Secretary was required to pay PB $1,596,041 in additional fees. Instead, the Secretary paid PB only $151,000, liquidating PB's claim against the United States to **$1,445,041**.

PARTIES

1. Intervenor-Plaintiff, PB is a Washington, D.C., based limited liability partnership, whose principal place of business is 2550 M Street, NW, Washington, D.C. 20037.

2. Plaintiff, Cherokee Nation of Oklahoma ("Cherokee Nation") is a federally recognized Indian Tribe. *See* Docket No. 1, Complaint ¶ 2.

3. Defendant, the United States, is a sovereign nation.

JURISDICTION

4. This Court has jurisdiction over PB's claim for money damages against the United States pursuant to the Tucker Act, 28 U.S.C. § 1491(a), because PB's claim arises from the Settlement Act – a money-mandating Act of Congress. *See* 12/19/05 Opinion And Order ("Op.") at 13-15.

## FACTS

5. The Settlement Act required the Secretary to pay attorneys fees as follows:

> ATTORNEYS FEES
>
> (a) PAYMENT – At the time the funds are paid to the Indian Nations, from funds authorized to be appropriated pursuant to 1779c(c), the Secretary shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations.
>
> (b) LIMITATIONS – Notwithstanding subsection (a), the total fees payable to attorneys under such contracts with an Indian Nation shall not exceed 10 percent of Indian Nation's allocation of funds appropriated under 1779c(c).

25 U.S.C. § 1779e.

6. "A plain reading of [25 U.S.C. § 1779e] unequivocally demonstrates that the statute mandates that the Secretary pay the attorneys their fees." Op. at 15.

7. "[25 U.S.C. § 1779e] authorizes the Secretary to pay the Nations' attorneys those sums owed them in their respective contracts, but imposes a cap of ten percent of the Nation's allocation of funds appropriated under [§ 1779c(c)]." H.R. REP. No. 107-632, Report of the House of Representatives' Committee on Resources.

8. The attorneys fee contracts covered by the Settlement Act are those entered into for the purpose of pursuing the Cherokee Nation's claims against the United States for mismanagement of tribal resources along the Arkansas River. *See* 25 U.S.C. § 1779, Finding (2) ("There are pending in the United States Court of Federal Claims certain lawsuits against the United States brought by the Cherokee, Choctaw, and Chicasaw Nations seeking monetary damages for the alleged use and mismanagement of tribal resources along the Arkansas River"), (12) ("In 1989, the Indian Nations filed lawsuits against the United States in the United States Court of Federal Claims (Case

Nos. 218-89 and 630-89L), seeking damages for the United States' use and mismanagement of tribal trust resources along the Arkansas River").

9. On April 17, 1989, PB entered into the Contract with Cherokee Nation through its Principal Chief, Wilma Mankiller, to pursue claims against the United States for its mismanagement of the Cherokee Nation's tribal resources in the riverbed and banks along the Arkansas River. Exhibit 1 at 1. PB's Contract was approved by Cherokee Nation's Tribal Council and the Secretary's designee. *Id.* at 3.

10. The fees "provided for" in PB's approved contract are equal to ten percent (10%) of all sums recovered for Cherokee Nation, whether by judgment, settlement or otherwise, less any sums paid to PB pursuant to a small monthly retainer. *Id.*

11. As approved, the Contract was "effective" from January 1, 1989 to July 1, 1990, and gave PB the "option" to extend the Contract in two-year increments on "written request ... with all approvals required by law." *Id.* No such further approvals were required by law because the Contract and options had already been approved.

12. PB's unilateral right to extend complied with the express time limit required by 25 U.S.C. § 81. *See* Public Resolution 136 dated June 26, 1936, "to define the term of certain contracts with Indian Tribes" ("[S]uch contracts or agreements shall run for a period of years therein specified, and as long thereafter as may be required to complete the business therein provided, or words of like import ... shall be deemed a sufficient compliance with [25 U.S.C. § 81].").

13. On March 13, 1991, the term of PB's Contract was extended from July 2, 1990 through July 2, 1992 by written contract extension. However, that extension also modified the Contract to allow PB to obtain future Contract extensions in five-year

increments. As a result, the Tribal Council and Area Director of the Bureau of Indian Affairs were asked to approve, and did approve, this Contract modification.

14. On May 12, 1992, PB exercised its option to extend the Contract another five years, to July 2, 1997. No terms of this Contract were modified and, therefore, no approval was required.

15. On April 30, 1995, PB was terminated without cause, even though the Contract only permitted termination "for cause" with the consent of the Tribal Council and upon sixty days notice – none of which ever occurred. Exhibit 1 at 4. Thus, the Contract still "provided for" payment to PB. *See W. Shoshone Identifiable Group v. U.S.*, 652 F.2d 41 (Ct. Cl. 1981); *Sisseton & Wahpeton Bands or Tribes v. U.S.*, 423 F.2d 1386 (Ct. Cl. 1970).

16. At the time of this termination, and at various times subsequent thereto, PB has been praised by Cherokee Nation leadership for the professional services it provided under the Contract here at issue.

17. From 1989 to 1995, Cherokee Nation paid PB $403,959 pursuant to the monthly retainer in the Contract and extensions thereof.

18. The Settlement Act provided Cherokee Nation a recovery for its claims in this case. The Settlement Act provides for a total of $40 million to be appropriated for the Indian Nations and their attorneys, allocating $20 million to Cherokee Nation and its attorneys. *After* payment of the Indian Nations' attorneys fees not to exceed 10%, the Cherokee Nation is allocated 50% of the remainder. As a result, "$2 million is available for payment of [the Cherokee Nation's] attorney's fees." Op. at 3.

19. PB's Contract was the only attorney fee contract executed by Cherokee Nation, with all required approvals, for the express purpose of pursuing, by litigation or legislative settlement, *claims for mismanagement* of its Arkansas Riverbed trust resources. Further, the Congressional findings cited in paragraph 8 hereof both refer to, and only to, this lawsuit brought by PB. Indeed, the case number of this lawsuit is expressly referenced.

20. Thus, the amount of the fees "provided for" in PB's approved Contract was $1,596,041, based on 10% of the Cherokee Nation's recovery ($2 million), less the amounts PB was paid pursuant to its retainer ($403,959).

21. The only other Cherokee Nation approved attorney fee contract is with James Wilcoxen and Paul Niebell (the "Wilcoxen-Niebell Contract"), but it is expressly made "subject to" PB's Contract. Exhibit 2 at 1, attached hereto. "Under the Wilcoxen-Niebell Contact," Mr. Niebell and Mr. Wilcoxen filed suits on behalf of Cherokee Nation based on theories of recovery that ultimately were unsuccessful, and, accordingly, were dismissed, thereby resulting in *no* recovery for Cherokee Nation. *See U.S. v. Cherokee Nation*, 480 U.S. 700, 107 S. Ct. 1487, 94 L. Ed. 2d 704 (1987) (disposing of "takings" claim); *Cherokee Nation v. U.S.*, 937 F.2d 1539 (10th Cir.) (disposing of "fair and honorable dealings" claims), *reh'g denied*, 948 F.2d 635 (10th Cir. 1991).

22. The Wilcoxen-Niebell work did not warrant *any* compensation for these dismissed lawsuits because their contract with Cherokee Nation was expressly "wholly continent upon a recovery for said Cherokee Nation" and these lawsuits did not achieve *any* recovery for Cherokee Nation. Exhibit 2 at 1. Furthermore, any monies they were paid for any activity that actually led to Cherokee Nation recovery could only be made

from funds remaining after PB's fees were satisfied, as the Wilcoxen-Niebell Contract was made "subject to" PB's Contract. *Id.* at 1.

23. On October 13, 2005, the Secretary notified Cherokee Nation and PB of intent to pay those attorneys fees mandated by 25 U.S.C. § 1779e(a) by following the directions of Cherokee Nation, claiming that "the Settlement Act requires the Secretary to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in the post settlement resolutions of the [Cherokee Nation's] Council." Exhibit 3 (October 13, 2005 letter from James E. Cason, Associate Deputy Secretary of Interior), attached hereto.

22. Cherokee Nation instructed the Secretary to pay PB only $151,000.

23. Thus, instead of paying PB $1,596,941 as mandated by the Settlement Act, 25 U.S.C. § 1779e(a), the Secretary paid PB only $151,000 based on the contrary instructions of Cherokee Nation.

Wherefore, PB respectfully prays that the Court award PB judgment against the United States in the amount of $1,445,041.

Respectfully submitted this 11th day of January, 2006,

PATTON BOGGS, LLP

David P. Callet (DC Bar No. 181990)
David S. Panzer (DC Bar No. 470677)
GREENBERG TRAURIG LLP
800 Connecticut Ave, NW,
Suite 500
Washington, DC 20006
202-331-3100
202-331-3101 (fax)
calletd@gtlaw.com
panzerd@gtlaw.com

ATTORNEYS' CONTRACT

THIS AGREEMENT (the "Contract") is made and entered into this 17th day of April, 1989, by and between The Cherokee Nation of Indians of the State of Oklahoma ("Cherokee Nation") and Patton, Boggs & Blow, Washington, D.C. (the "Attorneys").

WITNESSETH: That the Cherokee Nation or Tribe of Indians in Oklahoma, under authority of a Resolution of the Council of said Cherokee Nation, adopted at Tahlequah, Oklahoma on the 20th day of May, 1989, copies of which are hereto attached and made a part hereof, hereby contracts with, retains and employs Patton, Boggs & Blow as attorneys in matters hereinafter mentioned, subject to all required approvals. (All references hereinafter to "required approvals" shall be construed to include the Cherokee Nation Tribal Council and the Bureau of Indian Affairs, if required by regulation or statute.)

It shall be the duty of said Attorneys to advise and to represent the Cherokee Nation in connection with claims which said Cherokee Nation may have under any treaty, Act of Congress, other laws, or regulations for damages or equitable relief arising from the violation of the duties of the United States to protect the tribal lands and to manage the tribal resources of said Cherokee Nation. The terms and conditions of this Contract do not authorize said Attorneys to provide any representation in Cherokee Nation v. United States, Case No. 88-112, now pending before the United States Court of Appeals for the Tenth Circuit, nor does the representation authorized by this Contract in any way interfere with said pending litigation.

Said Attorneys shall advise and represent the Cherokee Nation in the aforementioned matters before the United States Claims Court, federal district courts, Courts of Appeal, and the Supreme Court, and before any other courts or tribunals, or any officers having any duty to perform in connection with the investigation, consideration or final settlement of such matters.

The said Attorneys will pursue as their top priority, either through the litigation processes or complementary legislative efforts, a resolution by way of settlement to recompense the Cherokee Nation for its long-outstanding entitlement since 1970 to the full benefits of its rights in its tribal lands held in trust by the United States, which rights to this date have not been honored in any respect.

Said Attorneys, in performing their duties under this Contract, are subject to the supervision and direction of the Cherokee Nation, and shall not make any compromise, settlement or other adjustment of the matters in controversy without advance approval of the Principal Chief of the Cherokee Nation.

It is agreed that said Attorneys shall prosecute actions for an injunction and/or damages, which are directly interrelated with pending legislative efforts, and shall be compensated an amount not to exceed $5,000 per month for fees for the period January 1989 through June 1990, and for actual out-of-pocket costs expended in direct prosecution of said litigation, including, but not limited to, deposition transcripts, travel and subsistence expenses.

It is agreed that said Attorneys may associate with them in the aforementioned matters other attorneys of their own choice and selection; provided, that said Cherokee Nation agrees in advance to pay the expense that said Attorneys incur by reason of the employment of any such associate attorneys.

The Cherokee Nation and the Attorneys acknowledge that said Attorneys will provide considerably more legal services and incur more in fees than the amount herein provided for monthly compensation. Accordingly, it is agreed that, upon agreed monetary or other quantifiable recovery for the Cherokee Nation, through the litigation or legislative process, said Attorneys shall receive from the Cherokee Nation additional compensation of ten percent (10%) of the amount recovered less the amounts previously paid by said Cherokee Nation for attorney fees pursuant to this Contract for litigation; provided, that approvals required by law, if any, are obtained.

This Contract shall be effective for eighteen (18) months (January 1, 1989 to July 1, 1990), and may be extended for periods of two (2) years, each from the date of its expiration, at the option and written request of the Attorneys, with all approvals required by law. It is expressly understood that said Attorneys shall have no contractual obligation to continue representation of the Cherokee Nation after expiration or termination of this Contract, and the Cherokee Nation shall cooperate in said Attorneys' actions to terminate such representation, including consent to withdrawal from pending court actions.

This Contract may be terminated by the Cherokee Nation with the consent of the Tribal Council of the Cherokee Nation for cause deemed by the Bureau of Indian Affairs to be reasonable and satisfactory upon sixty (60) days notice to the parties in interest. If the Contract is so terminated, and any monetary or other quantifiable sum is recovered by judgment or settlement of a suit or related controverted matters for which Patton, Boggs & Blow has represented the Cherokee Nation, said Attorneys shall receive an equitable portion of such recovery, pro rated consistent with the terms hereof regarding additional compensation.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 13th day of November, 1989.

Wilma P. Mankiller
Principal Chief on behalf of
Cherokee Nation of Indians
of the State of Oklahoma

Joe R. Reeder, on behalf of
PATTON, BOGGS & BLOW
Washington, D.C.

Approved pursuant to authority delegated by the Commissioner of Indian Affairs in 10 BIAM 3.

NOV 13 1989
Date

Merritt Youngdeer
Area Director
Muskogee Area Office

TAHLEQUAH AGENCY

ATTORNEY'S CONTRACT

THIS AGREEMENT, made and entered into this 22nd day of September, 1988 by and between Wilma P. Mankiller, Principal Chief of the Cherokee Nation of Oklahoma, acting for and on behalf of said Cherokee Nation ("Party of the First Part"), and James G. Wilcoxen of Muskogee, Oklahoma, and Paul M. Niebell, Washington, D.C. ("Parties of the Second Part").

WITNESSETH: That the Party of the First Part, on behalf of the said Cherokee Nation of Oklahoma, under authority of a Resolution of the Council of said Cherokee Nation, adopted at Tahlequah, Oklahoma on the 13th day of August, 1988, a copy of which is hereto attached and made a part hereof, hereby contracts with, retains and employs the Parties of the Second Part as attorneys in matters hereinafter mentioned, subject to the approval of the Commissioner of Indian Affairs and to the future retention of Patton, Boggs and Blow, Washington, D.C. as co-counsel in matters hereinafter mentioned.

It shall be the duty of said attorneys to advise and to represent the said Cherokee Nation in connection with properly prosecuting to final conclusion any and all claims which said Cherokee Nation may have against the United States, which it may be authorized to present by Act of Congress in the United States courts, or any other court or tribunal.

Said attorneys shall advise the said Cherokee Nation in any matters relating to said claims, and to represent it or them before the United States Court of Appeals for the Tenth Circuit and the Supreme Court of the United States, and before any other courts or tribunals, or any officers having any duty to perform in connection with the investigation, consideration or final settlement relative to any or all suits so authorized to be filed and prosecuted for and on behalf of said Cherokee Nation,

Said attorneys, in the performance of the duties required of them under this Contract, shall be subject to the supervision and direction of the Commissioner of Indian Affairs, and the said Cherokee Nation, and shall not make any compromise, settlement or other adjustment of the matters in controversy unless with the approval of the Commissioner of Indian Affairs and the Principal Chief of the said Cherokee Nation.

It is agreed that the said attorneys, subject to the approval of the Commissioner of Indian Affairs, may associate with them in said work hereunder other attorneys of their own choice and selection; provided, that neither the United States nor the Cherokee Nation of Oklahoma, Party of the First Part, is to be at any expense by reason of the employment of any such associate attorneys, all expenses thereof to be paid by the Parties of the Second Part, out of any compensation which they may receive for services to be rendered hereunder.

It is agreed that the compensation of the Parties of the Second Part, for the services rendered under the terms of this Contract, is to be wholly contingent upon a recovery for said Cherokee Nation. The Parties of the Second Part shall receive such compensation as the Commissioner of Indian Affairs may find equitably to be due as may be determined by a court or tribunal, for services theretofore rendered under this Contract, but in no event shall the aggregate fee exceed ten percent (10%) of any and all sums recovered or procured through the efforts of the said attorneys, in whole or in part for the said Cherokee Nation.

The attorneys, Parties of the Second Part, shall also be allowed and disbursed from the amount of any judgment received such actual expenses incurred by them, except such amounts as may be authorized by resolution of the Council

of said Cherokee Nation, approved by the Commissioner [illegible] be expended out of tribal funds to reimburse said [illegible] expenses during the progress of the litigation.

It is agreed that the effective date of this Contract shall be from August 11, 1988, the date of expiration of the prior Attorneys' Contract in order to cover the services of the Parties of the Second Part in prosecuting any and all claims herein mentioned, and that the terms of this Contract shall continue for a period of two (2) years from said effective date or to August 11, 1990, and that this Contract may be extended for periods of five (5) years, each from the date of its expiration, at the option and written request of said Parties of the Second Part, with the approval of the Principal Chief of the Cherokee Nation of Oklahoma and the Commissioner of Indian Affairs.

It is agreed also that no assignment of the obligations of this Contract, in whole or in part, shall be made without the consent of the Commissioner of Indian Affairs.

It is further agreed that no assignment or encumbrance of any interest of said attorneys in the compensation agreed to be paid by this Contract shall be made without the approval of the Commissioner of Indian Affairs. Any assignment of the obligations of this Contract, and/or any assignmnet or encumbrance of any interest in the compensation agreed to be paid, made in violation of the provisions of this paragraph, shall operate to terminate this Contract, and in such event no attorney having any interest in the Contract or in the fee provided for therein shall be entitled to any compensation whatever for any service rendered to the date of the termination of the Contract.

It is agreed that in the event of the death of either one or more of the

Parties of the Second Part the estate of the deceased attorney, or the estates of the deceased attorneys as the case may be, shall be allowed compensation in such sum as the Commissioner of Indian Affairs may find equitable to be due for the services theretofore rendered under the Contract, or as may be determined by a court or tribunal equitably to be due for the services theretofore rendered under this Contract.

It is agreed that the death of one of the Parties of the Second Part, leaving the others surviving, shall not terminate the Contract, but the death of all of the Parties of the Second Part shall terminate this Contract, unless they leave surviving associate counsel holding an interest in the Contract under an assignment duly approved by the Commissioner of Indian Affairs, in which event such associate counsel shall be entitled to proceed in all claims pending before the United States Court of Appeals for the Tenth Circuit, United States Supreme Court, or in any other court or tribunal, until their final determination under the terms and conditions of the Contract, and to prosecute such proceedings in compliance with the terms and provisions of this Contract.

This Contract may be terminated by the Commissioner of Indian Affairs with the consent of the Council of the Cherokee Nation of Oklahoma for cause deemed by the Commissioner of Indian Affairs to be reasonable and satisfactory upon sixty (60) days notice to the parties in interest, and if the Contract shall be so terminated, the Parties of the Second Part shall be credited with such interest should any sum or sums be recovered by a judgment of a court or tribunal as the court or tribunal may determine to be equitable in the fee found due upon the final determination of the said suit and the controverted matters therein included.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 8th day of September, 1988.

Principal Chief of the Cherokee Nation of Oklahoma

Party of the First Part

James G. Wilcoxen

Paul M. Niebell

Parties of the Second Part

Approved pursuant to authority delegated by the Commissioner of Indian Affairs in 10 BIAM 3.

1-23-89
Date

Area Director
Muskogee Area Office

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

In reply, please address to:
Main Interior, MS 6456

Honorable Chad Smith
Principal Chief
Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465-0948

OCT 13 2005

Dear Chief Smith:

This letter is in response to your letters of February 18, 2005 and March 30, 2005 to Jeanette Hanna, Regional Director, Eastern Oklahoma Region of the Bureau of Indian Affairs, and an August 26, 2005 letter to me. In the referenced letters you requested that the Secretary of the Interior pay the attorney fees for your tribe in accordance with the fee schedule set forth in the tribal council resolutions and section 607(a) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act (the Settlement Act), which is codified at 25 U.S.C. § 1779e.

The Department has received two letters, which were dated May 20, 2004 and March 8, 2005, from Patton Boggs along with a legal memorandum dated April 22, 2005, which was prepared by the late Donald Pearlman, a senior partner of Patton Boggs. The memorandum put forth the argument that the Court of Federal Claims has jurisdiction over his firm's attorney fee dispute with the Cherokee Nation based upon the consent decree. It also asserted that the Court of Federal Claims is the proper forum for the Cherokee Nation's former and present attorneys to litigate their fee claims. Patton Boggs urged the Department to file two motions before the Court of Federal Claims; one to seek an interpretation of the Settlement Act which would permit the Court of Federal Claims to determine attorney fees claims as part of its authority to enter a consent decree, and the other to provide notice to the all of the law firms that represented the Cherokee Nation so that they would be afforded an opportunity to litigate the attorney fees claims by intervening in the Arkansas Riverbed mismanagement case, which is still pending.

Patton Boggs requested that the Department of the Interior not make any disbursements from any of the Settlement Act accounts of the Cherokee Nation until its claim for $1,596,041 had been paid. According to the correspondence submitted by Patton Boggs, its claim is based on a 1989 attorney client contract that contained a provision for the firm to receive ten percent of any legislative settlement of the Cherokee Nation's mismanagement claims against the United States minus any fees which were paid prior to settlement. Based upon the Cherokee Nation's $20 million share of the Settlement Act monies, Patton Boggs asserts that it is entitled to the entire ten percent of the Cherokee Nations attorney fees ($2 million) minus the $403,959 the firm received from 1989 to 1997, when it received monthly fee payments pursuant to its contract.

The Department has also received correspondence from two other law firms, Wilcoxen and

Wilcoxen and Hall Estill. Among the documents the Department has received is a copy of the 1988 contract between James G. Wilcoxen and Paul M. Niebell and the Cherokee Nation, which also contained a provision for a payment of ten percent of any settlement of the Nation's claims against the United States. The Department has also received copies of a October 6, 2003 memorandum prepared by the late Julian Fite, General Counsel for the Cherokee Nation, a July 9, 2004 memorandum prepared by an independent law firm, Riggs, Abney, Neal, Turpen, Orbison & Lewis for the General Counsel, and a December 14, 2004 memorandum prepared by Todd Hembry, the General Counsel for the Council of the Cherokee Nation, all of which analyzed the various attorney fee claims. In addition, Hall Estill, provided a fax dated April 4, 2005 with an attached copy of a March 31, 2005 letter from Wilcoxen and Wilcoxen and Hall Estill to your office and the Council of the Cherokee Nation. In that March 31, 2005 letter, representatives of both firms asserted that they accepted the payments authorized by the Council's resolutions and denied having any dispute with the Nation's payment decisions or any intention of attempting to assert a contractual claim for ten percent of the attorney fees authorized by the Settlement Act.

Section 607(b) of the Settlement Act, codified at 25 U.S.C. § 1779e(b), specifies that the total compensation paid for attorney fees on behalf of an Indian nation cannot exceed ten percent of that nation's share of the settlement funds. It is clear that the sum of potential claims for attorneys fees exceeds the ten percent cap imposed by the Settlement Act. It is also clear that the Cherokee Nation has considered this issue carefully and has decided upon a payment schedule that does not violate the statutory limitation, but has not been accepted by Patton Boggs.

I have determined that the Secretary is required to pay only those fees approved by tribal resolutions after the Settlement Act became effective, and that the Settlement Act requires the Secretary to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in the post settlement resolutions of the Council. As you are aware, the Cherokee Nation's Council authorized the payment of attorney fees as follows:

| | | |
|---|---|---|
| Resolution No. 29-05 | Patton Boggs | $ 151,000 |
| Resolution No. 20-05 | Wilcoxen & Wilcoxen | $ 550,000 |
| Resolution No. 18-05 | Hall Estill | $ 280,524.57 |
| Resolution No. 19-05 | Estate of Paul Niebell | $ 100,000 |

By this letter, I am informing you that I intend to make disbursements from the Cherokee Nation's attorney fee escrow account, which was created pursuant to the Settlement Act, within two weeks in accordance with your request. Upon payments of these attorney fees, the balance remaining in the Cherokee attorney escrow account will be disbursed to the Nation and the account will be closed. The Department respects the sovereignty of the Cherokee Nation and its right to manage its relationship with third party counsel.

In deciding to make these payments, I have not made any judgments as to the validity of any of the attorney contracts nor the amounts of the attorneys fees or any potential claims that the attorneys may have for fees. The validity and amount of the attorney fees is strictly a contractual matter between the Cherokee Nation and its current and former attorneys.

I hope that these arrangements meet with your approval. Please contact me at your earliest convenience if I may be of further assistance.

Sincerely,

James E. Cason

James E. Cason
Associate Deputy Secretary

cc:
Senator James M. Inhofe
James G. Wilcoxen
Margaret A. Swimmer
Joseph R. Membrino
Katharine R. Boyce
Estate of Paul Niebell