IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, Plaintiff, | * | Case No. 89-218L |
| v. | * | Chief Judge Edward J. Damich |
| THE UNITED STATES OF AMERICA, Defendant. | * | |
| PATTON BOGGS LLP, Intervenor-Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, Defendant. | * | |

**PATTON BOGGS' OBJECTION TO JOINT STATUS REPORT AND RESPONSE TO "JOINT MOTION TO STRIKE JOINT STATUS REPORT AND FOR LEAVE TO SUBSTITUTE CORRECTED REPORT"**

Patton Boggs LLP ("PB"), through counsel, hereby objects to the "Joint Status Report" filed on January 31, 2006, and responds to "Joint Motion To Strike Joint Status Report And For Leave To Substitute Corrected Report," filed on February 1, 2006, stating as follows:

PB's Requests For Information Have Been Ignored

1. On October 26, 2005, the Court ordered "the parties" to file a joint status report on or before January 31, 2006, "to inform the Court of the progress made in carrying out the requirements of the Consent Decree." Docket No. 114.

2. On the same day that the Court issued its Order, counsel for PB sent counsel for the government a letter requesting the following information:

(a) How much money has been appropriated to date to the Cherokee Nation, including sums for its attorneys' fees, under 25 U.S.C. § 1779?;

(b) How much of that total appropriation to date has been placed in the "special holding account" for attorneys' fees?;

(c) How much money from the "special holding account" has been paid to each of the attorneys for the Cherokee Nation, and when was each payment made?;

(d) How much money remains in the "special holding account" today?; and

(e) How much more money is expected to be added to the "special holding account" from future appropriations?

Exhibit 13 attached to Docket No. 117 (PB's Supplemental Memorandum in Support of its Motion to Intervene).

3. The government's counsel failed to respond to PB's October 26, 2005 letter. Nor did the government ever provide PB the information requested.

4. On December 19, 2005, the Court granted PB's Motion to Intervene, confirming its status as a party. *See* Docket No. 125.

5. Having received no response to its October 26, 2005 letter, on January 12, 2006, counsel for PB telephoned government counsel and, again, asked whether any additional funds had been paid out of the attorney fee escrow fund.

6. Receiving no response, on January 23, 2006, counsel for PB reiterated this request to the government's counsel. *See* Exhibit 1 attached hereto (1/23/06 email from David Panzer to DOJ's James Upton).

7. On January 31, 2006, counsel for the government left PB's counsel a voicemail message, stating that no such additional funds had been paid out of the attorney escrow account.

8. That same day, after ignoring PB's requests for information for months, and having made no effort to include PB, the government filed what it styled a "Joint Status Report"

purportedly on behalf of "the parties." Docket 130. Of course, this Status Report was not filed on behalf of *all* parties, as PB had no role in its preparation.

Substantive Omissions In The Joint Status Report

9. According to Assistant Secretary Cason's October 13, 2005 letter, the Cherokee Nation attorneys have been paid a total of $1,081,524.57. Exhibit 12 attached to Docket No. 117 (PB's Supplemental Memorandum in Support of its Motion to Intervene).

10. Nonetheless, yesterday's Joint Status Report states that only $389,389.28 remains in the attorney escrow account. Assuming that $15 million had been appropriated for the Cherokee Nation and its attorneys over the last three years and that ten percent (10%) of these appropriations were allocated to the attorney escrow account, and given the attorney fee payments reflected in Mr. Cason's letter, there appears to be a shortfall of **$29,086.29**. While the Joint Status Report might be read as stating that only $14,934,831.70 has been appropriated for the Cherokee Nation and its attorneys, even if that were the case, there still appears to be a shortfall of **$22,569.32**.

11. From the information available to PB, it is not clear whether (a) Congress has not appropriated all of the funds called for in the Settlement Act, (b) the government has not allocated a full ten percent (10%) of those funds appropriated to the attorney escrow account, (c) the government has disbursed additional funds beyond those set forth in Mr. Cason's letter (which it has stated orally is not the case), or (d) some combination of the above. Had the government provided PB with the information requested in its October 26, 2005 letter, or included PB in the preparation of yesterday's Joint Status Report, the Court would be fully informed on these issues consistent with its October 26, 2005 Order. Moreover, this filing would have been unnecessary.

12. In fact, some of this very information – the amount of money appropriated annually for each of the relevant fiscal years – is provided in the Joint Status Report for the Choctaw Nation and the Chickasaw Nation, but *not* for the Cherokee Nation.

13. Based on the allocation of funds between the respective Indian Nations set forth in the Settlement Act, the sum of the funds received by the Choctaw Nation and the Chicasaw Nation should equal the total sum received by the Cherokee Nation – but that is not the case. For example, the Joint Status Report states that in fiscal year 2004, the Choctaw Nation received \$3.75 million, and the Chickasaw Nation received \$1.25 million, for a total of \$5.0 million. Based on that, one would expect that the Cherokee Nation had received \$5.0 million in fiscal year 2004 as well. Nonetheless, the March 2005 Cherokee Nation Resolution stated that the Cherokee Nation had received only \$4.5 million out of \$9.935 million appropriated for fiscal year 2004. *See* Exhibit 2 attached hereto (3/15/05 Cherokee Nation Resolution). The government and the Cherokee Nation's failure to provide this information makes it impossible for the Court to know the source of the shortfall in the attorney escrow account.

14. On February 1, 2006, the government and the Indian Nations filed a Joint Motion To Strike Joint Status Report, seeking leave to file a corrected report based upon undisclosed errors resulting from miscommunications among counsel for those parties. No communications have been made with counsel for PB, nor have there been any efforts to include PB in this additional "joint" filing.

WHEREFORE, PB respectfully requests that this Court order the United States to include PB in the preparation of any further Joint Status Reports, and to provide a supplemental Joint Status Report to the Court that includes the information outlined in paragraph 2 above.

Respectfully submitted this 1st day of February, 2006,

PATTON BOGGS, LLP

David P. Callet (DC Bar No. 181990)
David S. Panzer (DC Bar No. 470677)
GREENBERG TRAURIG LLP
800 Connecticut Ave, NW,
Suite 500
Washington, DC 20006
202-331-3100
202-331-3101 (fax)
calletd@gtlaw.com
panzerd@gtlaw.com

## Panzer, David S. (Assoc-DC-LT)

**From:** Panzer, David S. (Assoc-DC-LT)
**Sent:** Monday, January 23, 2006 12:23 PM
**To:** 'James.Upton@usdoj.gov'
**Cc:** Callet, David P. (Shld-DC-LT)
**Subject:** Cherokee v. US: CoFC Order

CoFC_Ord.pdf (936 KB)

Jim,

Per your request, here is a copy of Judge Damich's order granting intervention. Per our discussion, please let me know what Mr. Simpson says about whether any money has been transferred out of the attorney escrow account following the lifting of the consent injunction.

Best regards,
David

**FACISMILIE**
Cover sheet

Charles "Chuck" Hoskin
Cherokee Nation District 9 Representative
339 N. Adair
Vinita, OK 74301
Phone/FAX (918) 256-3229

To: Ralph Keen Jr.

FAX # 918-696-3576

Re: Attorney payment resolution

Date: 3-15-05

Pages: 2, including this cover sheet

**COMMENTS:** If I can be of further assistance please do not hesitate to call.

C. Hoskin

RESOLUTION NO.________

## COUNCIL OF THE CHEROKEE NATION

### A RESOLUTION APPROVING THE RECOMMENDATIONS OF THE OFFICE OF GENERAL COUNSEL FOR PAYMENT OF ATTORNEY FEES FROM THE ARKANSAS RIVERBED SETTLEMENT FUND AND AUTHORIZING THE PRINCIPAL CHIEF TO SUBMIT THE PAYMENT PLAN TO THE BUREAU OF INDIAN AFFAIRS – PATTON & BOGGS

**WHEREAS,** the Cherokee Nation since time immemorial has exercised the sovereign rights of self-government in behalf of the Cherokee people;

**WHEREAS,** the Cherokee Nation is a federally recognized Indian Nation with a historic and continual government to government relationship with the United States of America;

**WHEREAS,** the Cherokee Nation owns portions of the Arkansas Riverbed as recognized by the Supreme Court of the United States in *Choctaw v. United States*;

**WHEREAS,** the United States of America and the Cherokee Nation have agreed on a plan for compensation regarding the mismanagement of the Nation's property by the United States, including payment of attorney's fees associated with the Arkansas Riverbed litigation, pursuant to 25 U.S.C.A. § 1779(d) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act;

**WHEREAS,** under this Act the Secretary shall pay to the attorneys those fees provided for in the individual attorney fee contracts as approved by the respective Indian Nations;

**WHEREAS,** the Act also provides that the total fees payable to attorneys under such contracts shall not exceed 10 percent of that Indian Nation's allocation of appropriated funds.

**WHEREAS,** the General Counsel of the Cherokee Nation has reviewed the various attorney contracts, billings and previous payments associated with the Arkansas Riverbed litigation and has made the following specific finding that the Patton, Boggs firm is entitled to $151,000;

**WHEREAS,** the General Counsel consulted with an independent law firm, who concurred with these findings;

**WHEREAS,** in fiscal year 2004, a total of $9,935,000 of the $40,000,000 settlement has been appropriated, of which $4,500,000 has been paid to the Cherokee Nation, thus limiting attorney fees from the Cherokee share of the appropriations to $450,000,

**WHEREAS,** Principal Chief Chad Smith has approved these payments, and recommends them for approval by this Council to be paid from the settlement funds proportionately to the attorneys as funds are appropriated in the federal budget, with any unpaid balances proportionately paid from the funds in succeeding years as they are appropriated, not to exceed 10% of the Cherokee allocation of the settlement;

**BE IT RESOLVED BY THE CHEROKEE NATION,** that the Council endorses and approves the above recommendations of the Office of General Counsel for disbursement of attorney's fees to the appropriate firms and individuals who have earned payment by their legal work for the Nation, and that the Principal Chief is hereby authorized to submit this plan to the Bureau of Indian Affairs for approval for payment from Cherokee Nation trust funds as funds are appropriated by the Congress, and in accordance with the aforementioned legislation.