**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Consolidated Case No. 89-218 L**

| | | |
|---|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA,**<br><br>**Plaintiff,**<br><br>**PATTON BOGGS,**<br><br>**Plaintiff-Intervenor,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | ) | **No. 89-218 L**<br><br>**Chief Edward Damich** |
| **THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASAW NATION,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **No. 89-630 L** |

**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

Attorneys for Defendant

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment . . . . . . . . . . . . . 1

Brief in Support of Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. The Complaint Should Be Dismissed Because it Fails to State a Claim Upon Which Relief May be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. Section 1779e of the Settlement Act Imposed a Duty Upon the Secretary Only to Pay Those Attorney's Fees Which the Cherokee Nation Instructed Her to Pay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Considerable Deference is Owed to the Department of the Interior's Interpretation of Section 1779e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. Each Side's Interpretation of Section 1779e Renders Certain Words in Subsection (a) of 1779e Superfluous, but the Government's Construction Resolves Whatever Ambiguity May Exist in Favor of the Cherokee Nation of Oklahoma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. The Secretary Performed the Duty Which Section 1779e(a) Imposed Upon the Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Attachment

# Table of Authorities

**FEDERAL CASES:**

Chevron, U.S.A. v. Natural Resources Defense Council,
467 U.S. 837 (1984) . . . . . . . . . . 9

Choctaw Nation v. Oklahoma,
397 U.S. 620 (1970) . . . . . . . . . . 3

District of Columbia v. United States,
67 Fed. Cl. 292 (2005) . . . . . . . . . . 8

Duncan v. Walker,
533 U.S. 167 (2001) . . . . . . . . . . 10

Gaming Corp. of America v. Dorsey & Whitney,
88 F.3d 536 (8th Cir. 1996) . . . . . . . . . . 11

Montana v. Blackfeet Tribe of Indians,
471 U.S. 759 (1985) . . . . . . . . . . 11

Northern Pipeline Constr. Co. v. United States,
458 U.S. 50 (1982) . . . . . . . . . . 6

Ontario Power Generation, Inc. v. United States,
369 F. 3d 1298 (Fed. Cir. 2004) . . . . . . . . . . 7

Orion Scientific Systems v. United States,
28 Fed. Cl. 669 (1993) . . . . . . . . . . 6

Pueblo of Santa Ana v. United States,
214 F.3d 1338 (Fed. Cir. 2000) . . . . . . . . . . 11

Ramaj Navajo Chapter v. Lujan,
112 F.3d 1455 (10th Cir. 1997) . . . . . . . . . . 11

TRW, Inc. v. Andrews,
534 U.S. 19 (2001) . . . . . . . . . . 10

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . 7

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL STATUTES:**

"Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act", Pub. L. No. 107-331,
Act of December 13, 2002, Title VI, 116 Stat. 2845
(codified at 25 U.S.C. 1779-1779g (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7, 13

**FEDERAL RULES:**

RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Consolidated Case No. 89-218 L**

| | | |
|---|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA,** | ) | |
| **Plaintiff,** | ) | |
| **PATTON BOGGS,** | ) | |
| **Plaintiff-Intervenor,** | ) | |
| **v.** | ) | **No. 89-218 L** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | **Chief Judge Edward Damich** |

| | | |
|---|---|---|
| **THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASAW NATION,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 89-630 L** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to RCFC12(b)(6), the Defendant hereby moves to dismiss the Complaint in Intervention filed on January 11, 2006, by Patton Boggs for failure to state a claim upon which relief may be granted. In the alternative, Defendant moves for summary judgment, pursuant to RCFC 56, on the grounds that Section 1779e of the Cherokee, Choctaw and Chickasaw Nations

Claims Settlement Act, 25 U.S.C. 1779-1779g - - the attorney fees provision of the Act - - imposes only a ministerial duty upon the Secretary of the Interior (hereinafter "Secretary") to pay the Indian Nations' attorneys' fees as directed by the Cherokee Nation of Oklahoma (hereinafter "CNO"). In accordance with the CNO's tribal resolutions and the written request of the Principal Chief of the CNO, the Secretary carried out that duty and fulfilled her obligation pursuant to the Settlement Act.

Section 1779e of the Act requires the Secretary to distribute funds from the 20 million dollars allocated to the Cherokee Nation of Oklahoma under the Settlement Act for the payment of attorneys' fees (not to exceed 10% of the $20 million) in accordance with the Cherokee Nation's directives. In early 2005, the Office of the Special Trustee created a "special holding account escrow account to be used solely to hold the 2 million dollars that were to be used for the payment of attorneys' fees, even though the Act did not require the creation of a "special holding" account to be used solely to pay the CNO's attorneys' fees. By means of four tribal resolutions, the Cherokee Nation directed the Secretary to pay specified amounts to three law firms, including Patton Boggs, and the estate of a deceased attorney. The Associate Deputy Secretary followed the Nation's instructions on the payment of fees, precisely as set forth in the CNO's resolutions. He directed the Office of the Special Trustee to pay these fees from the attorneys' fees special holding account. On October 17-18, 2005, the Office of the Special Trustee made the distributions as directed by the Associate Deputy Secretary. Thus, the Secretary carried out the duty imposed on her by Section 1779e and fulfilled her obligation to the CNO.

A brief in support of Defendant's motion is attached.

Dated this 28th day of February, 2006.

Respectfully submitted,

s/James M. Upton
JAMES M. UPTON
U. S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D. C. 20044-0663

Tel. (202) 305-0484
Fax: (202) 305-0506

Attachment

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Consolidated Case No. 89-218 L**

| | |
|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA,** <br><br> **Plaintiff,** <br><br> **PATTON BOGGS,** <br><br> **Plaintiff-Intervenor,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | **No. 89-218 L** <br><br> **Chief Judge Edward Damich** |
| **THE CHOCTAW NATION OF OKLAHOMA AND CHICKASAW NATION,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | **No. 89-630 L** |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**Introduction**

In its Opinion and Order of December 19, 2005, the Court granted Patton Boggs' motion to intervene in this case and directed that the firm file a Complaint-in-Intervention by January 19, 2006. Patton Boggs filed its Complaint-in- Intervention on January 11, 2006. The Complaint seeks the award of attorney fees in the amount of $1,445,041 pursuant to Section

1779e of the Settlement Act. Complaint at 7. The Court directed the United States and the CNO to file separate dispositive motions or Answers by February 20, 2006. On February 17, 2006, the CNO filed a Motion to Dismiss the Complaint- in-Intervention of Patton Boggs. On February 21, 2006, the Defendant filed an unopposed motion for an enlargement of time to file its Motion to Dismiss, or, in the Alternative, for Summary Judgment to February 28, 2006. By Order of February 21, 2006, the court granted the motion for enlargement.

## FACTUAL BACKGROUND

In 1989, the CNO filed suit in the United States Claims Court (now the United States Court of Federal Claims, hereinafter "CFC") seeking damages for the United States' alleged mismanagement of the CNO's Arkansas Riverbed lands. Shortly after the CNO filed suit, the Choctaw Nation of Oklahoma and the Chickasaw Nation filed an identical suit alleging the United States' mismanagement of their respective Arkansas Riverbed lands. Complaint-in-Intervention, para. 8.

The Patton Boggs law firm represented the CNO when the suit was filed. Chief Judge Damich's Opinion and Order of December 19, 2005 at 2, n. 2; Complaint-in-Intervention at paras. 9 and 19. Several other law firms also worked for the CNO ( December 19, 2005 Opinion and Order at 3; Associate Deputy Secretary Cason's October 13, 2005 letter at 1-2 ; Complaint-in-Intervention at para. 21) on Arkansas Riverbed related litigation.

Beginning in early 1999, the parties moved for a stay of the pending litigation to enable them to begin settlement negotiations. Dec. 19, 2005 Opinion and Order at 2. In October, 2002, the court denied the motion to intervene filed by the United Keetoowah Band of Cherokee Indians of Oklahoma on the grounds it failed to file suit in a timely manner. The court noted that

the suit in Docket No. 89-218 L had been pending for 13 years, and added:

> "In essence, however, this [Arkansas Riverbed lands] matter has been ongoing since the 1970 Supreme Court decision confirming title to the bed and banks of the Arkansas river in the Cherokee, Choctaw and Chickasaw Nations. *Choctaw Nation v. Oklahoma*, 397 U.S. 620 (1970). Plaintiffs have been involved in multiple ongoing negotiations and lawsuits with the United States in the past 32 years seeking compensation to resolve the dispute.

[Emphasis added.] October 9, 2002 Opinion at 4. See discussion in Memorandum in Support of Cherokee Nation's Motion to Dismiss to the same effect at 24 (including n. 17) and 28. It was against this backdrop that the three Indian Nations, the plaintiffs, and the United States, the Defendant, negotiated the terms of mutually acceptable settlement, which included the drafting of legislation, which became law. The legislation, when it was enacted, became the Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act, Pub. L. No. 107-331, Act of December 13, 2002, Title VI, 116 Stat. 2845 (codified at 25 U.S.C. 1779-1779g (2005)) (hereinafter "Settlement Act") resolved more than just the claims which had been filed in the two cases (Nos. 89-218 L and 89-630 L) later consolidated by Chief Judge Damich.

Section 1779e of the Settlement Act is captioned "Attorney Fees." It provides, as follows:

> (a) Payment
>
> At the time the funds are paid to the Indian Nations, from funds authorized to be appropriated pursuant to section 1779c(c) of this title, the Secretary shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations.
>
> (b) Limitations
>
> Notwithstanding subsection (a) of this section, the total fees payable to attorneys under such contracts with an Indian Nation shall not exceed 10 percent of that Indian Nation's allocation of funds appropriated under section 1779c(c) of this title.

25 U.S.C. 1779e. (Emphasis supplied).

Under the terms of Section 1779c(c), the CNO's allocation of funds appropriated funds is $20,000,000. Ten percent of that amount is $2,000,000.

The CNO, by means of the enactment of four tribal resolutions, directed the Secretary to make the following payments of attorneys' fees:

| Tribal Resolution: | Payee: | Amount of Fees: |
|---|---|---|
| No. 29-05 | Patton Boggs | $151,000.00 |
| No. 20-05 | Wilcoxen & Wilcoxen | $550,000.00 |
| No. 18-05 | Hall Estill | $280,524.57 |
| No. 19-05 | Estate of Paul Niebell | $100,000.00 |

Letter dated October 13, 2005, from Associate Deputy Secretary James Cason to Principal Chief Chad Smith at 2.

In his October 13, 2005 letter, the Associate Deputy Secretary authorized the above distributions, as directed by the CNO, from the special holding account established to hold funds to be used to pay various attorneys who had performed legal services for the CNO. Complaint-in-Intervention at para. 23. These distributions totaled $1,081,524.57; and were made on October 17 and 18, 2005. Declaration of Douglas Lords, dated February 27, 2006, paras. 8 and 9, attached hereto. In the October 13th letter, the Associate Deputy Secretary states that the attorney fees provision of the Settlement Act requires the Secretary to:

> pay only those fees approved by tribal resolutions after the Settlement Act became effective, and that the Settlement Act requires the Secretary to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in thepost settlement resolutions of the [Nation's] Council.

[Emphasis added] October 13th letter at 2. He added: "In making those payments, I [James

Cason] have not made any judgments as to the validity of any of the attorney contracts nor the amounts of the attorneys fees or any potential claims those attorneys may have for fees." Id. at 3.

On October 19, 2005, Patton Boggs filed a motion to intervene, a motion for a temporary restraining order directing the Secretary to halt the distribution of authorized payments to the other law firms/attorneys and a motion for the award of attorney fees in the amount of $1,445,041.00. However, the law firm did not make a specific demand for money damages against the United States. Both the United States and the CNO opposed the motions. Argument on the Patton Boggs' motions was heard on December 13, 2005. Patton Boggs, in response to the Court's direct inquiry during the argument, stated that it was dropping all of its original claims for equitable relief. Instead, the firm asserted it was seeking only to recovery of money damages.

In its Opinion and Order of December 19, 2005, the Court granted Patton Boggs' motion to intervene and ordered Patton Boggs to file a Complaint-in-Intervention by January 19, 2006. Patton Boggs filed the Complaint-in-Intervention on January 11, 2006. The Court directed the United States and the CNO to respond separately by filing either a dispositive motion or an Answer by February 20, 2006. On February 17, 2006, the CNO filed a Motion to Dismiss Patton Boggs' Complaint-in-Intervention. On February 21, 2006, the Defendant filed a motion for enlargement of time until February 28, 2006 to file its Motion to Dismiss, or, in the Alternative, a Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

The Complaint-in-Intervention should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted. In the alternative, pursuant to RCFC

56, the Court should grant the United States' motion for summary judgment on the grounds that: (1) Section 1779e of the Settlement Act requires the Secretary of the Interior to pay attorneys' fees as directed by the Cherokee Nation of Oklahoma; and (2) the Secretary actually performed this duty.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. [1/]

In its December 19th Opinion, the Court found it had jurisdiction to determine whether 25 U.S.C. 1779e is "money mandating." Opin. at 13-15. The Court did not decide the ultimate merits, noting: "Even if the sole duty of the Secretary is to pay attorney fees as directed by the Cherokee Nation, the court may still be called upon to decide if the Secretary actually performed this duty." Opin. at 14. Defendant stressed that Patton Boggs first made the argument that the attorneys' fees provision of the Settlement Act was "money mandating" for the first time, in its reply brief. Although Defendant had an opportunity to address this issue at the December 13th oral argument, Defendant did not have the opportunity to submit a written response to Patton Boggs' "money mandating" argument. Accordingly, the Defendant requests that it now be given that opportunity.

In its December 19, 2005, Opinion and Order, the Court concluded that the attorney fees provision of the 2002 Settlement Act (Section 1779e) is money mandating. Op. at 13-14. The

[1/] We reserve our argument that Patton Boggs seeks to have this court adjudicate the rights of Patton Boggs, a private entity, in a dispute between private parties - - that is, between Patton Boggs and the Cherokee Nation - - over attorneys' fees. This Court does not have jurisdiction over disputes between private parties. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 67 n.18, 69 (1982); Orion Scientific Systems v. United States, 28 Fed. Cl. 669, 670-671 (1993).

Court also stated that " . . . it is evident that the Secretary's obligation to pay the attorneys is mandatory." Id. at 14-15. Conceding, arguendo, that the United States is obligated to pay attorney fees under Section 1779e, that obligation which is owed to the CNO is a part of the Settlement Agreement between the three Indian Nations and the United States. The attorneys are not parties to the 2002 settlement agreement; and the agreement gives the attorneys only those fees " . . . approved by the respective Indian Nations." 25 U.S.C. 1779e.

At best, the attorneys could maintain that if the fees were approved by the Tribe and the Secretary failed to pay, the statute, when fairly interpreted is consistent with rules of statutory construction applicable to Indian legislation, mandates compensation be paid to them. It is the United States' position that the attorneys, who were not parties to the 2002 settlement agreement, have no legal basis for arguing that they are due any fees, absent tribal approval. Indeed, a fair interpretation of the Settlement Agreement demonstrates that the statutory obligation to pay attorneys' fees is one of a trustee to act on behalf of the trust beneficiaries is a commitment owed to the Nations, not the non-party attorneys.

As a general rule, when the CFC or the Court of Appeals for the Federal Circuit has found that a statute is "money mandating," the nature of the obligation is clear and the plaintiff is often the entity to whom the obligation at issue runs. See e. g., United States v. White Mountain Apache Tribe, 537 U.S. 465, 475 (2003); United States v. Mitchell, 463 U.S. 206, 224-226 (1983). A statute is money mandating if it "grants the claimant, expressly, or by implication, a right to be paid a certain sum." See Ontario Power Generation, Inc. v. United States, 369 F. 3d 1298, 1301 (Fed. Cir. 2004). As in Ontario Power Generation, the attorneys have no contractual relationship with the United States, but only with the three Indian Nations.

Even if the overall statutory duty to pay attorneys' fees is a sufficient premise for jurisdiction, the attorneys are not the obligees, but instead the three Indian Nations. Moreover, even where the Court has determined that a statute is "money mandating," the plaintiff must still establish on the merits that the United States has not complied with the statutorily defined mandate. See District of Columbia v. United States, 67 Fed. Cl. 292, 304, 340-347 (2005) (held claim within the CFC's jurisdiction, but no entitlement on the merits to payment for escalation of repair and renovation costs). Here, the Plaintiff-Intervenor, Patton Boggs, assumes that Section 1779e imposed an obligation upon the Secretary of the Interior to pay Patton Boggs whatever amount the firm claimed it was due - - that is, the $1,445,041 it seeks. The Court has found that Section 1779e imposed a mandatory obligation upon the Secretary to pay attorneys' fees to the attorneys for the CNO, but did not hold that the Patton Boggs' attorneys were entitled to these monies, under the circumstances of this case.

The Court has effectively left open the issue of the nature of the obligation created by Section 1779e. The Court did not address whether a statute designed to benefit tribes compels the United States to pay attorneys' fees not approved by the tribes under the terms of Section 1779e. Argument II, below, articulates the United States' construction of the attorneys' fees provision of the Settlement Act, the gist of which is that the Secretary's obligation is to pay only those attorney fees the CNO directs her to pay. In these circumstances, the obligation is to the CNO and not the attorneys. On the merits, the Plaintiff-Intervenor, Patton Boggs, fails to state a claim. The United States submits that if the Secretary had paid Patton Boggs the $1,445,041 it demands, in direct contravention of the CNO's instructions, then the Secretary would have acted in a manner that is contrary to the statutory directive of Section 1779e. In that event, the

attorneys' fees provision would be money mandating because the duty created by Section 1779e is to the CNO - - not to Patton Boggs or the other law firm or attorneys.

## II. SECTION 1779e OF THE SETTLEMENT ACT IMPOSED A DUTY UPON THE SECRETARY ONLY TO PAY THOSE ATTORNEY'S FEES WHICH THE CHEROKEE NATION INSTRUCTED HER TO PAY.

Section 1779e(a) states, as follows:

> At the time the funds are paid to the Indian Nations, from funds authorized to be appropriated pursuant to section 1779c(c) of this title, the Secretary shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations.

The Associate Deputy Secretary of the Interior, James Cason, interpreted this statutory language, as follows:

> . . . the Secretary is **required to pay only those fees approved by tribal resolutions after the Settlement Act became effective** and . . . the Settlement Act requires the Secretary to **perform a purely ministerial act in carrying out the instructions of the Cherokee Nation** . . . .

[Emphasis added] Letter dated October 13, 2005, from James Cason to Chad Smith, Principal Chief of the Cherokee Nation of Oklahoma, at 2.

### A. Considerable Deference is Owed to the Department of the Interior's Interpretation of Section 1779e.

The Associate Deputy's Secretary's construction of the attorneys' fees provision of the 2002 Settlement Act - - that is, Section 1779e - - is entitled to considerable deference under Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984). Indeed, the Department of the Interior, established in 1849, has enormous, and unequaled, expertise in construing Indian legislation.

**B. <u>Each Side's Interpretation of Section 1779e Renders Certain Words in Subsection (a) of 1779e Superfluous, but the Government's Construction Resolves Whatever Ambiguity May Exist in Favor of the Chrokee Nation of Oklahoma</u>.**

The United States Supreme Court has held: "[A] cardinal principle of statutory construction" is "that 'a statute ought, upon the whole, be so construed that, **if it can be prevented**, no clause, sentence, or word, shall be superfluous, void, or insignificant." [Emphasis added] <u>TRW, Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001), quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001). Here, the competing interpretations of Section 1779e(a) each render certain words "superfluous,"and such a result <u>cannot</u> **"be prevented."** Patton Boggs construes the phrase " . . . the Secretary shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations" as though the words "as approved by the respective Indian Nations" modify the word "contracts." This results in making the words "as approved by the respective Indian Nations" superfluous, inasmuch as no "individual tribal attorney fee contracts" can be valid or binding without having been first approved by the tribe and the Secretary of the Interior. In other words, if the phrase "as approved by the respective Indian Nations" modifies the word "contracts," then this phrase is redundant.

The United States' construction of 1779e(a) is that the phrase "as approved by the respective Indian Nations" modifies the word 'fees." This has the effect of rendering the phrase "as provided for in the individual tribal attorney fee contracts" superfluous. That is, if the phrase "as approved by the respective Indian Nations" modifies the word "fees," then the phrase "as provided for in the individual tribal attorney fee contracts" is superfluous.

Patton Boggs has effectively conceded that subsection (a) of Section 1779e is ambiguous.

See Patton Boggs' Supplemental Memorandum filed November 3, 2005, at 22-23. The Defendant also submits that subsection (a) is ambiguous. Where a genuine ambiguity exists in an Indian statute, the basic canon of statutory construction requires that the ambiguity must be resolved in favor of the Indians. Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985). The only way to adhere to this Indian canon of construction (for Indian legislation) requires the United States to adopt the construction of Section 1779e(a) which resolves the ambiguity therein in favor of the CNO. The United States' construction acknowledges that the decision as to which tribal attorneys or law firms are to be paid (and how much each attorney or law firm is to be paid) is that of the client, the Cherokee Nation of Oklahoma. This construction applies the Indian canon of construction correctly in a manner which enhances the CNO's sovereignty.

The United States and, in particular the Department of the Interior, has followed the Indian canon of construction that any "ambiguous expressions" in statutes passed for the benefit of Indians, or Indian tribes **must** be resolved in their favor. E. g., Pueblo of Santa Ana v. United States, 214 F.3d 1338, 1342 (Fed. Cir. 2000) (1978 statute providing that certain mineral bearing land be held in trust for the benefit of the Santa Ana Pueblo); Ramaj Navajo Chapter v. Lujan, 112 F.3d 1455, 1461 (10th Cir. 1997) (Indian Self-Determination and Education Assistance Act); and Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 547-548 (8th Cir. 1996) (Indian Gaming Regulatory Act).

## III. THE SECRETARY PERFORMED THE DUTY WHICH SECTION 1779e(a) IMPOSED UPON THE UNITED STATES.

The Court's December 19th Opinion notes that even if the Secretary's only duty was to was to pay attorneys' fees according to the CNO's directives " . . . the Court may still have to decide if the Secretary **actually performed this duty.**" **[**Emphasis added] Opin. at 14. This was the only duty the Settlement Act imposed upon the Secretary (other than ensuring that the attorneys' fees paid for each of the three Indian Nations did not exceed the statutory cap of 10% of each Nation's respective allocation of the funds appropriated to implement the Act. There can be no doubt that the Secretary, in fact, performed that duty as Congress directed. The Associate Deputy Secretary's letter of October 13, 2005, explicitly states that he intended to pay attorneys' ees in strict accordance with the four CNO tribal resolutions he references at p. 2. Pursuant to this letter, the Office of the Special Trustee made the payment of attorneys' fees as set forth on page 2 of the October 13th letter. See Declaration of Douglas Lords, Deputy Special Trustee-Field Operations, Office of the Special Trustee, dated February 27, 2006. This Declaration establishes that on October 17, and 18, 2005, the following attorneys' fees were paid out of the attorneys' fees special holding account:

| Payee | Amount Paid | Date |
|---|---|---|
| 1. Patton Boggs | $151,000.00 | October 17, 2005 |
| 2. Jim Wilcoxen [Wilcoxen & Wilcoxen] | $550,000.00 | October 17, 2005 |
| 3. Hall, Estill, Hardwick, Gable [Hall Estill] | $280,524.57 | October 17, 2005 |
| 4. Mrs. Eleanor Niebell for her | $100,000.00 | October 18, 2005 |

deceased husband, attorney
Paul Niebell [Estate of Paul
Niebell]

Declaration of Douglas Lords at paras. 8 and 9.

## CONCLUSION

For the reasons set forth in **Argument I**, above, the Court should dismiss this suit with prejudice pursuant to RCFC 12(b)(6), because it fails to state a claim upon which relief may be granted. In the alternative (see **Arguments II and III**, above), the Court should grant the United States' motion for summary judgment on the grounds that (1) Section 1779e(a) requires the Secretary to pay attorneys' fees as directed by the Cherokee Nation of Oklahoma; and (2) the Secretary actually performed this duty.

Dated this 28th day of February, 2006.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

s/James M. Upton
JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D. C. 20044-0663

Tel. (202) 305-0482
Fax: (202) 305-0506

Attorneys for Defendant

OF COUNSEL:

Steven Simpson
Assistant Solicitor, Trust, Energy and
Minerals Branch
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
Main Bldg. - - 1849 C Street, N.W.
Washington, D.C. 20420

Angela Kelsey, Esq.
Karen Lindquist, Esq.
Trust, Energy and Minerals Branch
Division of Indian Affairs
Office of the Solicitor

Attachment

# Attachment

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA,** <br> **Plaintiff,** <br> **PATTON BOGGS,** <br> **Plaintiff-Intervenor,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | **No. 89-218L** <br> **Chief Judge Edward Damich** |
| **THE CHOCTAW NATION OF OKLAHOMA, AND THE CHICKASAW NATION,** <br> **Plaintiffs,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | **No. 89-630L** |

**DECLARATION OF DOUGLAS A. LORDS**

I, Douglas A. Lords, declare:

1. I am the Deputy Special Trustee-Field Operations, Office of the Special Trustee for American Indians (OST), U. S. Department of the Interior, Albuquerque, New Mexico.

2. I have held my current position since June 29, 2003.

3. In my capacity as Deputy Special Trustee-Field Operations, I am responsible for staff leadership, executive management, direction and supervision necessary to administer the Office's programs related to field operations functions to include Trust Beneficiary Call Center, and Fiduciary Trust Administrators and Fiduciary Trust Officers.

4. In my capacity as Deputy Special Trustee-Field Operations, I have been involved with matters related to the payment of attorney fees for the Cherokee Nation of Oklahoma pursuant to the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act (hereinafter "Settlement Act"), 25 U.S.C. § 1779e.

5. I have reviewed the Trust Funds Accounting System (TFAS) and information provided by the staff of the OST, U. S. Department of the Interior, Albuquerque, New Mexico, related to the Cherokee Nation's Settlement Act Attorney Fees Account, JA 1071011. The TFAS is the current system of record utilized by the OST to account for Individual, Tribal and Other Trust Funds.

6. Based on my review of the TFAS related to that account, I affirm that the TFAS reflects that a deposit of $991,673.20 was made on March 14, 2005 to Account JA 1071011 . I also affirm that the TFAS reflects that on March 14, 2005, the sum of $991,673.20 was transferred from a general Cherokee Nation Settlement Act Account, JA 1060691, the account created for the deposit of the Cherokee Nation's portion of the Congressional appropriations for the Settlement Act in FY 2004.

7. Based on my review of the TFAS related to that account, I also affirm that the TFAS

reflects that on October 18, 2005, $456,828.60 was deposited in Account JA 1071011 from the FY 2006 appropriation. When the FY 2004 and FY 2005 appropriations were combined with the FY 2006 appropriation, the total amount of the appropriations for the Cherokee Nation's Settlement Act attorney fees was $1,448, 501.80.

8. Pursuant to decision issued in a letter dated October 13, 2005 to the Honorable Chad Smith, Principal Chief of the Cherokee Nation of Oklahoma, by the Associate Deputy Secretary, James E. Cason, OST staff members made three cash disbursements by electronic transfer from JA 1071011 on October 17, 2005 as follows:

$151,000.00 to Citibank, Washington, D. C. for Patton Boggs, LLP;

$550,000.00 to Bank of Oklahoma, Tulsa, OK for Jim Wilcoxen

$280,524.57 to Bank of Oklahoma, Tulsa, OK for Hall, Estill, Hardwick, Gable.

9. Pursuant to decision issued in a letter dated October 13, 2005 to the Honorable Chad Smith, Principal Chief of the Cherokee Nation of Oklahoma, by the Associate Deputy Secretary, James E. Cason, OST staff members made one additional cash disbursement in the amount of $100,000.00 on October 18, 2005 to Mrs. Eleanor B. Niebell for her deceased husband, Paul Niebell. Since Mrs. Niebell requested a check rather than an electronic transfer, the cash disbursement was requested electronically to the Financial Management Service Center, U.S. Department of the Treasury, in San Francisco, California with instructions to issue a paper check to Mrs. Niebell.

10. Based on my review of TFAS, I affirm that the TFAS reflects that no other disbursements have been made to attorneys from Account JA 1071011 since October 18, 2005.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27 day of February, 2006. Douglas A. Lords

Douglas A. Lords