C

**Effective: December 13, 2002**

UNITED STATES CODE ANNOTATED
TITLE 25. INDIANS
**CHAPTER 19--INDIAN LAND CLAIMS SETTLEMENTS**
SUBCHAPTER XIII--CHEROKEE, CHOCTAW, AND CHICKASAW NATIONS CLAIMS SETTLEMENT

**§ 1779c. Settlement and claims; appropriations; allocation of funds**

(a) Extinguishment of claims

Pursuant to their respective tribal resolutions, and in exchange for the benefits conferred under this subchapter, the Indian Nations shall, on the date of enactment of this subchapter, enter into a consent decree with the United States that waives, releases, and dismisses all the claims they have asserted or could have asserted in their cases numbered 218-89L and 630-89L pending in the United States Court of Federal Claims against the United States, including but not limited to claims arising out of any and all of the Indian Nations' interests in the Disclaimed Drybed Lands and arising out of construction, maintenance and operation of the McClellan-Kerr Navigation Way. The Indian Nations and the United States shall lodge the consent decree with the Court of Federal Claims within 30 days of the enactment of this subchapter, and shall move for entry of the consent decree at such time as all appropriations by Congress pursuant to the authority of this subchapter have been made and deposited into the appropriate tribal trust fund account of the Indian Nations as described in section 1779d of this title. Upon entry of the consent decree, all the Indian Nations' claims and all their past, present, and future right, title, and interest to the Disclaimed Drybed Lands, shall be deemed extinguished. No claims may be asserted in the future against the United States pursuant to sections 1491, 1346(a)(2), or 1505 of Title 28 for actions taken or failed to have been taken by the United States for events occurring prior to the date of the extinguishment of claims with respect to the Riverbed.

(b) Release of tribal claims to certain Drybed Lands

(1) In general

Upon the deposit of all funds authorized for appropriation under subsection (c) of this section for an Indian Nation into the appropriate trust fund account described in section 1779d of this title--

**(A)** all claims now existing or which may arise in the future with respect to the Disclaimed Drybed Lands and all right, title, and interest that the Indian Nations and the United States as trustee on behalf of the Indian Nation may have to the Disclaimed Drybed Lands, shall be deemed extinguished;

**(B)** any interest of the Indian Nations or the United States as trustee on their behalf in the Disclaimed Drybed Lands shall further be extinguished pursuant to the Trade and Intercourse Act of 1790, Act of July 22, 1790 (ch. 33, 1 Stat. 137), and all subsequent amendments thereto (as codified at 25 U.S.C. 177);

**(C)** to the extent parties other than the Indian Nations have transferred interests in the Disclaimed Drybed Lands in violation of the Trade and Intercourse Act, Congress does hereby approve and ratify such transfers of interests in the Disclaimed Drybed Lands to the extent that such transfers otherwise are valid under law; and

**(D)** the Secretary is authorized to execute an appropriate document citing this subchapter, suitable for filing with the county clerks, or such other county official as appropriate, of those counties wherein the foregoing described lands are located, disclaiming any tribal or Federal interest on behalf of the Indian Nations in such Disclaimed Drybed Lands. The Secretary is authorized to file with the counties a plat or map of the disclaimed lands should the Secretary determine that such filing will clarify the extent of lands disclaimed. Such a plat or map may be filed regardless of whether the map or plat has been previously approved for filing, whether or not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the map or plat has been filed, and regardless of whether the map or plat constitutes a final determination by the Secretary of the extent of the Indian Nations' original claim to the Disclaimed Drybed Lands. The disclaimer filed by the United States shall constitute a disclaimer of the Disclaimed Drybed Lands for purposes of the Trade and Intercourse Act (25 U.S.C. 177).

(2) Special provisions

Notwithstanding any provision of this subchapter--

**(A)** the Indian Nations do not relinquish any right, title, or interest in any lands which constitute the Wetbed Lands subject to the navigational servitude exercised by the United States on the Wetbed Lands. By virtue of the exercise of the navigational servitude, the United States shall not be liable to the Indian Nations for any loss they may have related to the minerals in the Wetbed Lands;

**(B)** no provision of this subchapter shall be construed to extinguish or convey any water rights of the Indian Nations in the Arkansas River or any other stream or the beneficial interests or title of any of the Indian Nations in and to lands held in trust by the United States on the date of enactment of this subchapter which lie above or below the mean high water mark of the Arkansas River, except for the Disclaimed Drybed Lands; and

**(C)** the Indian Nations do not relinquish any right, title, or interest in any lands or minerals of certain unallotted tracts which are identified in the official records of the Eastern Oklahoma Regional Office, Bureau of Indian Affairs. The disclaimer to be filed by the Secretary of the Interior under subsection (b)(1) of this section shall reflect the legal description of the unallotted tracts retained by the Nations.

(3) Setoff

In the event the Court of Federal Claims does not enter the consent decree as set forth in subsection (a) of this section, the United States shall be entitled to setoff against any claims of the Indian Nations as set forth in subsection (a) of this section, any funds transferred to the Indian Nations pursuant to section 1779d of this title, and any interest accrued thereon up to the date of setoff.

(4) Quiet title actions

Notwithstanding any other provision of law, neither the United States nor any department of the United States nor the Indian Nations shall be made parties to any quiet title lawsuit or other lawsuit to determine ownership of or an interest in the Disclaimed Drybed Lands initiated by any private person or private entity after execution of the disclaimer set out in subsection (b)(1) of this section. The United States will have no obligation to undertake any future quiet title actions or actions for the recovery of lands or funds relating to any Drybed Lands retained by the Indian Nation or Indian Nations under this subchapter, including any lands which are Wetbed Lands on the date of enactment of this subchapter, but which subsequently lie above the mean high water mark of the Arkansas River and the failure or declination to initiate any quiet title action or to manage any such Drybed Lands shall not constitute a breach of trust by the United States or be compensable to the Indian Nation or Indian Nations in any manner.

(5) Land to be conveyed in fee

To the extent that the United States determines that it is able to effectively maintain the McClellan-Kerr Navigation Way without retaining title to lands above the high water mark of the Arkansas River as of the date of enactment of this subchapter, said lands, after being declared surplus, shall be conveyed in fee to the Indian Nation within whose boundary the land is located. The United States shall not be obligated to accept such property in trust.

(c) Authorization for settlement appropriations

There is authorized to be appropriated an aggregate sum of $40,000,000 as follows:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(1)** $10,000,000 for fiscal year 2004.

**(2)** $10,000,000 for fiscal year 2005.

**(3)** $10,000,000 for fiscal year 2006.

**(4)** $10,000,000 for fiscal year 2007.

(d) Allocation and deposit of funds

After payment pursuant to section 1779e of this title, the remaining funds authorized for appropriation under subsection (c) of this section shall be allocated among the Indian Nations as follows:

**(1)** 50 percent to be deposited into the trust fund account established under section 1779d of this title for the Cherokee Nation.

**(2)** 37.5 percent to be deposited into the trust fund account established under section 1779d of this title for the Choctaw Nation.

**(3)** 12.5 percent to be deposited into the trust fund account established under section 1779d of this title for the Chickasaw Nation.

CREDIT(S)

(Pub.L. 107-331, Title VI, § 605, Dec. 13, 2002, 116 Stat. 2848.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

2002 Acts. Senate Report No. 107-249, see 2002 U.S. Code Cong. and Adm. News, p. 1817.

References in Text

This subchapter, referred to in text, originally read "this title", meaning Title VI of the Indian Financing Amendments Act of 2002, Pub.L. 107-331, Title VI, § 601 et seq., Dec. 12, 2002, 116 Stat. 2845, known as the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, which enacted this subchapter.

The date of enactment of this subchapter, referred to in text, originally read "the date of enactment of this title", which probably means Dec. 13, 2002, the approval date of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, Pub.L. 107-331, Title VI, § 601 et seq., Dec. 13, 2002, 116 Stat. 2845, which enacted this subchapter.

25 U.S.C.A. § 1779c, 25 USCA § 1779c

Current through P.L. 109-90 approved 10-18-05

Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.