**Patton Boggs' Memorandum Opposing The Cherokee Nation's Motion To Dismiss, Exhibit 1:**

**A Red-Line Comparison Between**
**(1) Arguments II A & B from the Cherokee Nation's Opposition To Motion To Intervene By Patton Boggs LLP (Original Document)**
**And**
**(2) Arguments II B & C from the Cherokee Nation's Memorandum In Support Of Its Motion To Dismiss Complaint-In-Intervention Of Patton Boggs LLP (New Document)**

The proposition that the Settlement Act - and in particular the language of section 1779e - does not provide this Court with jurisdiction to review and fix attorney fee payments is best illustrated by contrast with a statute that does do so. This Court frequently has been in the position of making an award of attorney fees in contingent fee cases brought by Indian tribes under jurisdiction which this Court inherited from the Indian Claims Commission. *See, e.g., Cherokee Nation v. United States,* 355 F.2d 945 (Ct. Cl. 1966); *Godfroy v. United States,* 467 F.2d 909 (Ct. Cl. 1972); *W. Shoshone ~~Idenable~~ Identifiable Group v. United States,* 652 F.2d 41 (Ct. Cl. 1981). The Court's authority to set attorney fees in these cases was conferred by a specific provision of the Indian Claims Commission Act ("ICCA"), 25 U.S.C. § 70n, which provided (for cases brought before the Indian Claims Commission):

> The fees of such attorney or attorneys for all services rendered in prosecuting the claim in question, whether before the Commission or otherwise, shall, unless the amount of such fees is stipulated in the approved contract between the attorney or attorneys and the claimant, be fixed by the Commission at such amount as the Commission, in accordance with standards obtaining for prosecuting similar contingent claims in courts of law, finds to be adequate compensation for services rendered and results obtained, considering the contingent nature of the case, plus all reasonable expenses incurred in the prosecution of the claim; but the amount so fixed by the Commission, exclusive of reimbursements for actual expenses, shall not exceed 10 per centum of the amount recovered in any case.

Act of Aug. 13, 1946, ch. 959, § 15, 60 Stat. 1053. Although the Indian Claims Commission was disbanded in 1978, all powers of the Commission, including the right to award attorneys fees under section 70n, were transferred to the Court of Claims, and then to the Court of Federal Claims. *See Pueblo of Santo Domingo v. United States,* 54 Fed. Cl. 240,

244-45 (Cl. Ct. 2002). Thus, this Court's jurisdiction to make awards of attorney fees in ICCA cases rests on the *specific statutory authority* in section 70n that the "fees of such attorney or attorneys . . . shall . . . be fixed by the Commission," an explicit authority that has subsequently been conferred on this Court to exercise in appropriate cases.

But this is not one such case and the Court derives no authority from section 70n here. By contrast to the power expressly conferred by the ICCA, no comparable authority to determine or award fees can be found in the Settlement Act, which - contrary to Patton Boggs' contention (PB Supp. Mem. at 15) - is simply silent as to the *Court's* role in the payment of attorney fees under section 1779e. That provision does not direct the court to "fix" the fee, nor to review a contract fixing such fees, nor to enforce a contract fixing such fees, nor to second-guess a tribe's determination as to the amount of fees to pay under such a private contract, nor to make an "equitable" determination of the payment of such fees, nor to review the Secretary's administrative decisions in carrying out a tribe's instructions on the disbursement of tribal funds to pay such fees. The contrast between section 70n - which explicitly provides the Court with the authority that Patton Boggs wishes it had here - and section 1779e, which governs this case, could not be more stark. [12] [7]

[13][7] To the same effect as the ICCA - and in stark contrast to the Settlement Act at issue in this case - multiple tribal jurisdictional acts have *expressly* conferred jurisdiction on this Court to "fix" and award attorneys fees. *See*, *e.g.*, Act of February Feb. 23, 1929, ch. 300, § 6, 45 Stat. 1257-58 (Coos Bay, Lower Umpqua, and Suislaw Tribes) ("Upon final determination of such suit or suits the Court of Claims shall have jurisdiction to fix and determine a reasonable fee, not to exceed 10 per centum of the recovery, together with all necessary and proper expenses incurred in the preparation and prosecution of such suit or suits, to be paid to the attorney or attorneys employed ...."); Act of April Apr. 25, 1932, ch. 136, § 4, 47 Stat. 138 137 (Eastern and Western Cherokees) (same); Act of February Feb. 23, 1929, ch. 302, § 5, 45 Stat. 1258 (Kansas and Kaw Tribes) ("That upon the final determination of any suit instituted under this Act, the Court of Claims shall decree such amount or amounts as it may find reasonable to be paid to the said attorneys of the Kansas or Kaw Tribe of Indians for their services and expenses as said attorneys . . . ."); Act of February Feb. 11, 1920, ch. 68, § 3, 41 Stat. 404 (Fort Berthold Indians) ("[U]pon the final determination of such suit, cause, or action the Court of Claims shall decree such fees as it shall find reasonable to be paid the attorney or attorneys employed therein by said tribe or bands of Indians, under contracts negotiated and approved as provided by existing law ...."); Act of August 26, 1935, ch. 686, §§ 3 & 4, 49 Stat. 802 (Siletz) (same).

Finally, the same point is illustrated by *Heller, Ehrman, White & MacAuliffe v. Babbitt,* 992 F.2d 360 (D.C. Cir. 1993), where a law firm brought a suit in district court under the APA against the Secretary for failing to pay attorney fees from a settlement fund created by Congress pursuant to the Hoopa-Yurok Settlement Act ("HYSA"), 25 U.S.C. § 1300i *et seq* Pub. L. No. 100-580, 102 Stat. 2924 (1988), 25 U.S.C. §§ 1300i-1300i-11. The court rejected the effort, and said that exclusive jurisdiction over the claim lay in the Claims Court, but only because the HYSA expressly gave exclusive jurisdiction to this Court. 992 F.2d at 361, 363. The statute in *Heller, Ehrman* specified that "any claim" challenging the distribution of money and property under HYSA "shall be brought" in the Claims Court. *Id.* at 363. The D.C. Circuit concluded that "HYSA specifies that the law firm's only remedy is to sue the United States in the Claims Court for damages." *Id.* The plaintiffs cannot "circumvent" a "clear and explicit" statutory grant of exclusive jurisdiction "by creatively framing their complaint." *Id.* at 363-4 64 [8].

As with the ICCA, the "clear and explicit" grant of jurisdiction to this Court in the HYSA to resolve disputes about distribution of the settlement funds, including attorney fees, stands in sharp contrast to the silence of the Settlement Act as to the same matters. This Court's role under the Settlement Act is simply to receive and lodge a consent decree, ensuring that all appropriations have been made to the settling tribes. 25 U.S.C. § 1779c(a). Nowhere is there a provision comparable to that in the HYSA that gives the Court an omnibus and exclusive jurisdiction to resolve "any claim" arising out of the distribution of money under the Act.

[8] In this case, significantly, the exact reverse of the *Heller, Ehrman* situation is presented. As the Cherokee Nation previously has suggested (without conceding), Patton Boggs may have a cause of action in a United States District Court under the Administ. Procedure Act, Pub. L. No. 89-554, 80 Stat. 393 (1966), 5 U.S.C. §§ 701-706. *See* Cherokee Nation's Opp'n to PB's Mot. to Intervene at 10-11; *see also Littell v. Morton*, 445 F.2d 1207 (4th Cir. 1971). Here Intervenor has attempted to "circumvent" potential APA jurisdiction in the district court "by creatively framing [its] complaint" to assert purported jurisdiction under the Tucker Act in this Court.

Where Congress intended to confer such jurisdiction on this Court, it knew how to do so, and has done so expressly. It did not do so here.

~~Absent an express grant of jurisdiction to this Court to resolve the issue, Patton Boggs must look elsewhere for the remedy it seeks - review of agency action by the Secretary and potential injunctive relief. No amount of "creatively framing their complaint," 992 F.2d at 363, (if only it had filed one) should permit Patton Boggs to "circumvent" the jurisdictional rules set by Congress.~~

**~~B~~C. Patton Boggs ~~seeks relief against~~ ' Cause of Action Is Really a Private Dispute with the Cherokee Nation ~~that is outside the jurisdiction of this Court~~ over which This Court Has No Jurisdiction.**

In substance and at core, the ~~Supplemental Memorandum before the Court presents~~ complaint in intervention really presents not a claim for damages owed by the United States, but instead a garden variety contract dispute between two private parties: Patton Boggs claims that it has a contract with the Cherokee Nation that commits the Nation to pay a certain fee to it, and it further claims that the Nation is now in breach of that contract. The Nation asserts it has established a fair and appropriate fee. Under the Settlement Act, the Secretary's duty is merely to pay what is owed.

In the normal course, ~~such~~ a claim for breach of an attorney contract would be resolved by the law firm suing its client over the fees it asserts are due. But as Patton Boggs recognizes, PB Supp. Mem. at 19 n.27, that option is not available here because the Nation is protected from suit by its sovereign immunity. [~~14~~ 9] As sophisticated counsel, Patton Boggs could have

[~~14~~ 9] *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Okla. Tax Comm 'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); *Puyallup Tribe v. Dep't of Game*, 433 U.S. 165, 172-73 (1977); *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940); *Turner v. United States*, 248 U.S. 354, 357-58 (1919).

negotiated in its contract for a waiver of the Nation's immunity in the event of a fee dispute, but it did not do so. That failure is a problem of its own making.

Nor is the Nation's immunity waived by the fact of its presence before the Court as plaintiff in the underlying riverbed case against the United States. When a tribal sovereign sues, it remains immune from counterclaims or cross-claims except for recoupment arising out of the same transaction or occurrence as the tribal claim. *See, e.g., Okla. Tax Comm 'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) ("[A] tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe."). ~~Even if~~ Patton ~~Boggs were granted intervention, and even if it were to file a counterclaim (or cross-claim) against the Cherokee Nation, its claim for attorney fees arises from its alleged services under a separate agreement, not~~ Boggs' cause of action does not stem from the transaction or occurrence that gave rise to this case - the historic claims by the Cherokee Nation against the United States regarding the Nation's riverbed lands - but from a separate agreement. Thus, the purported claim that Patton Boggs seeks to assert against the Cherokee Nation is barred by the Nation's immunity.

Even apart from the immunity issue, this Court cannot resolve the fee dispute between Patton Boggs and the Nation because the Court plainly lacks jurisdiction to adjudicate claims such as this between private parties:

> [I]t has been uniformly held, upon a review of the statutes creating the court [of claims] and defining its authority, that its jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court[,] or if its maintenance against private parties is prerequisite to prosecution of the suit against the United States the suit must be dismissed.

*United States v. Sherwood*, 312 U.S. 584, 588 (1941) (citations omitted) (emphasis added). [15] [10]

Applying this settled rule, the Supreme Court in *Sherwood* held that where the plaintiff asserted a right to bring an action based on its status as a judgment creditor of another party pursuant to certain provisions of New York state law, the Court of Claims was without jurisdiction to adjudicate the claim because it would require the Court to adjudicate the validity of the state court order vesting the judgment creditor with the capacity to make the claim:

> We think it plain that the present suit could not have been maintained in the Court of Claims because that court is without jurisdiction of any suit brought against private parties and because adjudication of the right or capacity of respondent [the plaintiff in the Court of Claims] to proceed with the suit upon the contract of the judgment debtor with the United States is prerequisite to any recovery upon the Government contract. . . . Adjudication of that issue is not within the jurisdiction of the Court of Claims whose authority, as we have seen, is narrowly restricted to the adjudication of suits brought against the Government alone.

*Sherwood*, 312 U.S. at 588-589. [16] 89 (citation omitted). [11]

The rule set out in *Sherwood* controls here. The claim made by Patton Boggs is in the nature of a contract dispute with the Cherokee Nation - asserting the terms of its contract, it contests the right of the Nation to pay it anything less than 10 percent of the Nation's recovery in the underlying riverbed case. But the Cherokee Nation's reading of the contract

---

[15] [10] *See also Berkeley v. United States*, 276 F.2d 9, 12-13 (Ct. Cl. 1960) (to extent plaintiff's claim challenges actions of private party, the claim lies outside the jurisdiction of the Court of Claims); *Kennedy v. United States*, 19 Cl. Ct. 69, 76 (1989) ("[I]f the maintenance of a suit against private parties is a prerequisite to the prosecution of the suit against the United States, the suit must be dismissed.").

[16] [11] *See also McPherson v. United States*, 2 Cl. Ct. 670, 673 (1983) (court lacked jurisdiction over plaintiff's damages claim against the United States, where the claim against the Government was dependent upon showing a breach of duty by a third party); *Nat'l City Bank of Evansville v. United States*, 163 F. Supp. 846, 852 (Ct. Cl. 1958) (to the extent plaintiff's losses resulted from improper action of the surety on a contract with the United States, plaintiff's claim was against the surety and not the United States, and accordingly lay outside the jurisdiction of the court Court of claims).

differs. Even though Patton Boggs labors to frame its claim as one against the United States (or, more specifically, against the Secretary), the predicate for the claim of what the Secretary must do, or must pay, still depends on resolution of the dispute between two private parties as to what their private contract provides. As such, the claim lies outside the jurisdiction of this Court, just as in *Sherwood*. [17] [12]

Patton Boggs attempts to finesse this problem by claiming, in essence, that the Settlement Act somehow federalizes the attorney contract, making it a direct obligation of the United States, and seeking to hold the United States liable for performance of the contract. But the Act does no such thing. All it does do is provide a mechanism for the Cherokee Nation to pay fees it owes under its contracts out of the settlement sums it is receiving under the statute - by directing the Secretary to perform the ministerial function of making disbursements to the attorneys from funds appropriated for the benefit of the Nation. In so doing, the statute does not make any such contract an obligation of the United States, or make the proper meaning of contract terms a dispute between Patton Boggs and the United States. The dispute over its contract is, and remains, between Patton Boggs and the Nation. And that is a dispute that lies

---

[17] [12] This Court's decision in *American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254 (2005) is not to the contrary. In *American Renovation*, an assignee of a government contract sought to intervene in an action against the United States for breach of that contract brought by the original contractor. The Court granted intervention because the question presented was which company - the plaintiff or the intervenor - "was entitled to recover a contract balance allegedly due from the government," *id.* at 261, *i.e.*, which company was the proper plaintiff. In agreeing to decide which of the two possible plaintiffs was entitled to the recovery against the United States under the contract, the Court emphasized that "it cannot enforce the legal rights of Intervenor-Applicant specifically against Plaintiff, as such a determination falls outside of the jurisdiction conferred under the Tucker Act." *Id.* at *262.*

That precisely states the difference here: Patton Boggs is not attempting to claim it is the proper plaintiff to recover from the United States for federal mismanagement of the Arkansas riverbed; rather, Patton Boggs is asserting a legal right, based on its contract, against the Cherokee Nation, and is treating the United States basically as the guarantor. As the Court said in *American Renovation*, that determination "falls outside of the jurisdiction conferred by the Tucker Act." *Id.*

outside the jurisdiction of this Court to resolve. [18] *See Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Any express contract that might be invocable is between Hollywood Associates and Housing Allowance, not between Hollywood Associates and the United States, which is, of course, the sine qua non of jurisdiction in the Court of Federal Claims. Absent privity... there is no case." (citing *Erikson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984), and *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983)).

[18] The cases cited by Patton Boggs to the effect that "a former counsel with a terminated contingency fee contract is 'so situated' as to permit intervention as to the fees owed pursuant to their contracts," PB Supp. Mem. at 20-21, are not on point. None of those cases was brought in this Court. The federal courts there involved had jurisdiction to resolve fee disputes between private parties. This Court does not.