IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, | * | |
| Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | Case No. 218-89 |
| Defendant. | * | |
| * * * * * * | * | |
| PATTON BOGGS LLP | * | Chief Judge Edward J. Damich |
| Intervenor Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |
| * * * * * * | * | * * * * * |

**PATTON BOGGS' PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80**

Intervenor Plaintiff Patton Boggs LLP ("Patton Boggs") submits these Proposed Findings of Uncontroverted Fact in support of its Cross-Motion for Summary Judgment, in accordance with RCFC 56(h)(1).

## I. PROPOSED FINDINGS OF UNCONTROVERTED FACT SUPPORTING PATTON BOGGS' FIRST CLAIM FOR SUMMARY JUDGMENT FOR $866,977.23 – AN AMOUNT EQUAL TO THE BALANCE OF THE ATTORNEY ESCROW ACCOUNT, INCLUDING SUMS TO BE APPROPRIATED IN FY 2007.

1. Patton Boggs entered into an attorney fee contract with the Cherokee Nation with

respect to this litigation. Ex. 2 at A-39 (the "Contract").[1]

2. The Contract provided for, *inter alia*, monthly compensation and "compensation of ten percent (10%) of the amount recovered less the amounts previously paid by said Cherokee Nation for attorney fees pursuant to this Contract for litigation; provided, that approvals required by law, if any, are obtained." *Id.* at A-41

3. Patton Boggs was paid a total of $403,959 in monthly payments under the Contract. Ex. 4 at A-47 (October 6, 2003 letter from the Cherokee Nation's General Counsel, Julian Fite).

4. The Settlement Act provided for $20 million in appropriations for the Cherokee Nation and its attorneys, making $2 million available to pay the Cherokee Nation's attorneys. Docket No. 125, December 19, 2005 Opinion & Order at 3 ("Since the Cherokee Nation will receive a total of $20 million in appropriations under the Settlement Act, $2 million is available for payment of attorney's fees.").

5. To date, Congress has appropriated three of the four annual installments authorized by the Settlement Act, rendering a total of $14,485,018.00 to be allocated to the Cherokee Nation and its attorneys, through FY 2006. Docket No. 137, Joint Status Report; Attachment to Docket No. 138, Declaration of Douglas A. Lords ("Lords Decl.").

6. Of the sums already appropriated, $1,448,501.80 has been allocated to the attorney escrow fund. Docket No. 137, Joint Status Report; Lords Decl. ¶ 7.

7. The Settlement Act provides for an additional $5,000,000.00 to be appropriated in FY2007 for the Cherokee Nation and its attorneys. 25 U.S.C. §§ 1779c(c)(4), (d)(1). Of

[1] All six exhibits cited herein (Nos. 1-6) are included in the Appendix to Patton Boggs' Cross Motion for Summary Judgment. With the exception of Exhibit 5, all exhibits were already included in the record. Nonetheless, all six exhibits are true and accurate copies and are what they purport to be. *See* Exhibit 7, Declaration of David S. Panzer, Esq., ¶ 8.

that amount, the Settlement Act makes up to $500,000.00 available to pay to the Cherokee Nation's attorneys their statutory attorneys' fees. *Id.* § 1779e(b).

8. On February 18, 2005, the Cherokee Nation provided to the Secretary its own Resolutions that purportedly "authorized and approved" certain payments to its lawyers other than Patton Boggs, as follows:

| | |
|---|---|
| Wilcoxen & Wilcoxen | $550,000.00 |
| Estate of Mr. Niebell | $100,000.00 |
| Hall Estill | $280,524.57 |

Ex. 6 at A-53 to A-54.

9. None of those attorneys listed above in paragraph 8 dispute the amounts they were paid. Ex. 5 at A-51 (March 31, 2005 letter from Mr. Wilcoxen, and the Hall Estill firm, to the Cherokee Nation, stating "having accepted the Nation's fee determination, we have no dispute with the Nation…."). Nor do they seek additional payment under the Settlement Act. *Id.*

10. On March 30, 2005, the Cherokee Nation provided the Secretary with a Resolution "approving" payment of $151,000 to Patton Boggs, Ex. 6 at A-53-A-54 (October 13, 2005 letter from Assistant Secretary James Cason).

11. On October 13, 2005, the Secretary decided to disburse a total of $1,081,524.57 from the attorney escrow account, exactly as directed to do by the Cherokee Nation. Exhibit 6 at A-54 (Mr. Cason's October 13, 2005 letter).

12. On October 17 and 18, 2005, the Secretary made those disbursements from the attorney escrow account. Docket No. 137, Joint Status Report; Lords Decl. at ¶¶ 8-9.

13. No further disbursements have been made from the attorney escrow account, and its current balance was $366,977.23 immediately after disbursement of attorneys' fees. *Id.*

## II. ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT SUPPORTING PATTON BOGGS' SECOND CLAIM FOR SUMMARY JUDGMENT FOR $280,524.57 – AN AMOUNT EQUAL TO THE MONIES IMPROPERLY DISBURSED TO THE HALL ESTILL LAW FIRM.

14. The Cherokee Nation did not enter into an attorney fee contract with the Hall Estill law firm relating to any aspect of the Settlement Act. Ex 4 at A-44 (Mr. Fite's letter explains that "Wilcoxen associated the Hall, Estill law firm and they have presented billings.").

15. Instead, Hall Estill was "associated" by Mr. Wilcoxen, under the Wilcoxen-Niebell Contract. *Id.*

16. The Wilcoxen-Niebell Contract, required "all expenses [of associated counsel, like Hall Estill] to be paid by [Mr. Wilcoxen and Mr. Niebell], out of any compensation which they may receive for services to be rendered hereunder." Ex. 1 at A-35.

17. Despite the lack of any contract with the Cherokee Nation, and despite Mr. Wilcoxen's obligation to pay the expenses of the Hall Estill firm he associated, the Cherokee Nation directed the Secretary to make payment of $280,524.57 to the Hall Estill firm. Ex. 6 at A-54.

## III. ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT SUPPORTING PATTON BOGGS' THIRD CLAIM FOR SUMMARY JUDGMENT FOR $100,000.00 – AN AMOUNT EQUAL TO THE MONIES IMPROPERLY DISBURSED TO THE ESTATE OF PAUL NIEBELL.

18. Under the Wilcoxen-Niebell Contract, Mr. Niebell's fee was "wholly contingent" on a recovery by the Cherokee Nation. Exhibit 1 at A-35.

19. Mr. Niebell and Mr. Wilcoxen brought only two actions on behalf of the Cherokee Nation under the Wilcoxen-Niebell Contract, both of which were finally dismissed with prejudice many years before the Settlement Act was enacted, resulting in no recovery. *See United States v. Cherokee Nation*, 480 U.S. 700 (1987) (disposing of "takings"

claim); *Cherokee Nation v. United States*, 937 F.2d 1539 (10th Cir.) (disposing of "fair and honorable dealings" claims), *reh'g denied*, 948 F.2d 635 (10th Cir. 1991).

20. Mr. Niebell died in 1994. Ex. 4 at A-46.

21. Mr. Niebell never worked on this litigation brought and prosecuted by Patton Boggs. *Id.* (Cherokee Nation's description of Mr. Niebell's work on this matter); *see also* Ex. 3 at A-43 (October 30, 1995 termination letter from the Cherokee Nation to Patton Boggs – thus, as of 1994 (when Mr. Niebell died), Patton Boggs was still lead counsel in this case).

Respectfully submitted,

David P. Callet (DC Bar No. 181990)
David S. Panzer (DC Bar No. 470677)
GREENBERG TRAURIG LLP
800 Connecticut Ave, NW, Suite 500
Washington, DC 20006
202-331-3100
202-331-3101 (fax)
calletd@gtlaw.com
panzerd@gtlaw.com

March 20, 2006