C

**Effective: December 13, 2002**

UNITED STATES CODE ANNOTATED
TITLE 25. INDIANS
**CHAPTER 19--INDIAN LAND CLAIMS SETTLEMENTS**
SUBCHAPTER XIII--CHEROKEE, CHOCTAW, AND CHICKASAW NATIONS CLAIMS SETTLEMENT

**§ 1779. Findings**

The Congress finds the following:

**(1)** It is the policy of the United States to promote tribal self-determination and economic self-sufficiency and to encourage the resolution of disputes over historical claims through mutually agreed-to settlements between Indian Nations and the United States.

**(2)** There are pending before the United States Court of Federal Claims certain lawsuits against the United States brought by the Cherokee, Choctaw, and Chickasaw Nations seeking monetary damages for the alleged use and mismanagement of tribal resources along the Arkansas River in eastern Oklahoma.

**(3)** The Cherokee Nation, a federally recognized Indian tribe with its present tribal headquarters south of Tahlequah, Oklahoma, having adopted its most recent constitution on June 26, 1976, and having entered into various treaties with the United States, including but not limited to the Treaty at Hopewell, executed on November 28, 1785 (7 Stat. 18), and the Treaty at Washington, D.C., executed on July 19, 1866 (14 Stat. 799), has maintained a continuous government-to-government relationship with the United States since the earliest years of the Union.

**(4)** The Choctaw Nation, a federally recognized Indian tribe with its present tribal headquarters in Durant, Oklahoma, having adopted its most recent constitution on July 9, 1983, and having entered into various treaties with the United States of America, including but not limited to the Treaty at Hopewell, executed on January 3, 1786 (7 Stat. 21), and the Treaty at Washington, D.C., executed on April 28, 1866 (7 Stat. 21), [FN1] has maintained a continuous government-to-government relationship with the United States since the earliest years of the Union.

**(5)** The Chickasaw Nation, a federally recognized Indian tribe with its present tribal headquarters in Ada, Oklahoma, having adopted its most recent constitution on August 27, 1983, and having entered into various treaties with the United States of America, including but not limited to the Treaty at Hopewell, executed on January 10, 1786 (7 Stat. 24), and the Treaty at Washington, D.C., executed on April 28, 1866 (7 Stat. 21), has maintained a continuous government-to-government relationship with the United States since the earliest years of the Union.

**(6)** In the first half of the 19th century, the Cherokee, Choctaw, and Chickasaw Nations were forcibly removed from their homelands in the southeastern United States to lands west of the Mississippi in the Indian Territory that were ceded to them by the United States. From the "Three Forks" area near present day Muskogee, Oklahoma, downstream to the point of confluence with the Canadian River, the Arkansas River flowed entirely within the territory of the Cherokee Nation. From that point of confluence downstream to the Arkansas territorial line, the Arkansas River formed the boundary between the Cherokee Nation on the left side of the thread of the river and the Choctaw and Chickasaw Nations on the right.

**(7)** Pursuant to the Act of April 30, 1906 (34 Stat. 137), tribal property not allotted to individuals or otherwise disposed of, including the bed and banks of the Arkansas River, passed to the United States in trust for the use and benefit of the respective Indian Nations in accordance with their respective interests therein.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(8)** For more than 60 years after Oklahoma statehood, the Bureau of Indian Affairs believed that Oklahoma owned the Riverbed from the Arkansas State line to Three Forks, and therefore took no action to protect the Indian Nations' Riverbed resources such as oil, gas, and Drybed Lands suitable for grazing and agriculture.

(9) Third parties with property near the Arkansas River began to occupy the Indian Nations' Drybed Lands--lands that were under water at the time of statehood but that are now dry due to changes in the course of the river.

**(10)** In 1966, the Indian Nations sued the State of Oklahoma to recover their lands. In 1970, the Supreme Court of the United States decided in the case of Choctaw Nation vs. Oklahoma (396 U.S. 620), [FN2] that the Indian Nations retained title to their respective portions of the Riverbed along the navigable reach of the river.

**(11)** In 1987, the Supreme Court of the United States in the case of United States vs. Cherokee Nation (480 U.S. 700) decided that the riverbed lands did not gain an exemption from the Federal Government's navigational servitude and that the Cherokee Nation had no right to compensation for damage to its interest by exercise of the Government's servitude.

**(12)** In 1989, the Indian Nations filed lawsuits against the United States in the United States Court of Federal Claims (Case Nos. 218-89L and 630- 89L), seeking damages for the United States' use and mismanagement of tribal trust resources along the Arkansas River. Those actions are still pending.

**(13)** In 1997, the United States filed quiet title litigation against individuals occupying some of the Indian Nations' Drybed Lands. That action, filed in the United States District Court for the Eastern District of Oklahoma, was dismissed without prejudice on technical grounds.

**(14)** Much of the Indian Nations' Drybed Lands have been occupied by a large number of adjacent landowners in Oklahoma. Without Federal legislation, further litigation against thousands of such landowners would be likely and any final resolution of disputes would take many years and entail great expense to the United States, the Indian Nations, and the individuals and entities occupying the Drybed Lands and would seriously impair long-term economic planning and development for all parties.

**(15)** The Councils of the Cherokee and Choctaw Nations and the Legislature of the Chickasaw Nation have each enacted tribal resolutions which would, contingent upon the passage of this subchapter and the satisfaction of its terms and in exchange for the moneys appropriated hereunder--

**(A)** settle and forever release their respective claims against the United States asserted by them in United States Court of Federal Claims Case Nos. 218-89L and 630-89L; and

**(B)** forever disclaim any and all right, title, and interest in and to the Disclaimed Drybed Lands, as set forth in those enactments of the respective councils of the Indian Nations.

**(16)** The resolutions adopted by the respective Councils of the Cherokee, Choctaw, and Chickasaw Nations each provide that, contingent upon the passage of the settlement legislation and satisfaction of its terms, each Indian Nation agrees to dismiss, release, and forever discharge its claims asserted against the United States in the United States Court of Federal Claims, Case Nos. 218-89L and 630-89L, and to forever disclaim any right, title, or interest of the Indian Nation in the Disclaimed Drybed Lands, in exchange for the funds appropriated and allocated to the Indian Nation under the provisions of the settlement legislation, which funds the Indian Nation agrees to accept in full satisfaction and settlement of all claims against the United States for the damages sought in the aforementioned claims asserted in the United States Court of Federal Claims, and as full and fair compensation for disclaiming its right, title, and interest in the Disclaimed Drybed Lands.

**(17)** In those resolutions, each Indian Nation expressly reserved all of its beneficial interest and title to all other Riverbed lands, including minerals, as determined by the Supreme Court in Choctaw Nation v. Oklahoma, 397 U.S. 620 (1970), and further reserved any and all right, title, or interest that each Nation may have in and to the water flowing in the Arkansas River and its tributaries.

CREDIT(S)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Pub.L. 107-331, Title VI, § 602, Dec. 13, 2002, 116 Stat. 2845.)

[FN1] So in original. Probably should be "(14 Stat. 769),".

[FN2] So in original. Probably should be "(397 U.S. 620),".

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

2002 Acts. Senate Report No. 107-249, see 2002 U.S. Code Cong. and Adm. News, p. 1817.

References in Text

The Act of April 30, 1906 (34 Stat. 137), referred to in par. (7), probably means the Act of April 26, 1906, c. 1876, 34 Stat. 137, which was classified in part as a note under 25 U.S.C.A. § 355.

This subchapter, referred to in par (15), originally read "this title", meaning Title VI of the Indian Financing Amendments Act of 2002, Pub.L. 107-331, Title VI, § 601 et seq., Dec. 12, 2002, 116 Stat. 2845, known as the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, which enacted this subchapter.

Short Title

2002 Acts. Pub.L. 107-331, Title VI, § 601, Dec. 13, 2002, 116 Stat. 2845, provided that: "This title [enacting this subchapter] may be cited as the 'Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act'."

25 U.S.C.A. § 1779, 25 USCA § 1779

Current through P.L. 109-90 approved 10-18-05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT