SEAL OF THE CHEROKEE NATION CHEROKEE NATION SEPT. 6, 1839

# CHEROKEE NATION

P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Corntassel" Smith
ᏧᎵᏣᎢ
Principal Chief

Joe Grayson, Jr.
ᏦᏌᏲᏍ ᏦᏅᏂᏍ
Deputy Principal Chief

**To:** Principal Chief Chad Smith
Jim Wilcoxen, Wilcoxen and Wilcoxen
Joe Reeder, Patton Boggs
**From:** Julian K. Fite, General Counsel JKF
**Date:** October 6, 2003
**Subject:** Attorney Fees for Work on Arkansas Riverbed Issues

I. Overview: There are several claims or potential claims for attorney fees in regard to legislation passed in the latter part of 2002, settling the claims of the Cherokee Nation pertaining to the Arkansas River:

A. ORIGINAL FEE SETTLEMENT:

1. The Cherokee Nation and the attorneys who had represented the Nation in the original suit quieting title to the riverbed in the Cherokee, Choctaw and Chickasaw Nations, Choctaw Nation v. Oklahoma (U.S. Supreme Court 1970) made a fee settlement in 1980 providing for up to $3.5 million to be paid at the rate of ½ the annual revenue for 25 years. $ 1,527,701.00 remains payable. The contract expires by its terms in 2005. Due to potential ambiguities, a claim might be made that this balance would be payable from Arkansas Riverbed settlement funds.

B. WILCOXEN/NIEBELL CONTRACT:

In 1988, Cherokee Nation entered a contract with Jim Wilcoxen and Paul Niebell to pursue litigation (essentially a takings or condemnation claim) and, or, settlement of the various claims of the Cherokee Nation. Fees were to be determined by the Commissioner of Indian Affairs on an equitable basis as determined by a court with a limitation of 10%.

Under this contract, possibly a prior contract, and extensions of the 1988 contract, Jim Wilcoxen has rendered services from 1985 to the present. Mr. Niebell is deceased but his widow has submitted a claim for the period he worked on these matters. Also under this contract, Wilcoxen associated the Hall, Estill law firm and they have presented billings.

**C. PATTON BOGGS CONTRACT:**

**In 1989, Cherokee Nation entered a contract with the Patton Boggs law firm for pursuit of a separate lawsuit against the U.S. for mismanagement of the resources of Cherokee Nation regarding the Arkansas Riverbed. This contract provided for monthly fees of up to $5,000 and 10% of any recovery (less monthly fees already paid). This contract was terminated in April 1997, during the Byrd administration.**

**D. SWIDLER BERLIN LAW FIRM:**

**During the Byrd administration of Cherokee Nation, the contract of Patton Boggs was terminated and the firm of Swidler Berlin was retained to pursue the claims. Swidler Berlin services were terminated in 1999.**

**E. CHEROKEE NATION STAFF ATTORNEYS AND PERSONNEL**

**During the long years of trying to resolve Cherokee Nation claims, staff attorneys and other personnel have contributed to this effort. David A. Mullon Jr. was directly involved during the Mankiller administration and again during the final three years under Principal Chief Smith. Arkansas Riverbed Commission Director Troy Wayne Poteete played a major role in the negotiations. Key administrative personnel of Cherokee Nation and the Cherokee Nation's Washington, D.C. staff were key players in Congressional efforts that resulted in the settlement legislation.**

**F. FEE LIMITATIONS AND OTHER ISSUES**

**The legislation makes specific provisions for attorney fees as follow:**

***SEC. 607.ATTORNEY FEES***

***(B) PAYMENT - At the time the funds are paid to the Indian Nations, from funds authorized to be appropriated pursuant to section 605(c), the Secretary shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations.***

***(b) LIMITATIONS - Notwithstanding subsection (a), the total fees payable to attorneys under such contracts with an Indian Nation shall not exceed 10 percent of that Indian Nation's allocation of funds appropriated under section 605(c).***

**The Cherokee Nation portion of settlement payments will total $20 million payable at $5 million per year for 4 years. These payments are conditioned on yearly appropriations from Congress. Thus there would be**

**up to $2 million available for attorney fees payable at $500,000 per year for 4 years (if funded).**

**In addition, the United Keetoowah Band has filed an action claiming an interest in the Arkansas Riverbed and demanding these funds. The legislation reserves up to 10% of the funds payable to satisfy any such claims. Should UKB be successful, $2 million could be taken from the Cherokee payments which would reduce available funds for attorney fees to $1.8 million.**

## II. ANALYSIS OF CLAIMS:

**Each of the claims, or potential claims, should be examined in its individual context:**

### A. ORIGINAL FEE SETTLEMENT:

**This fee agreement has been administered by BIA and has paid out around $2 million to date, leaving a balance due of approximately $1.5 million. The contract states that it is payable "solely from monies realized by the Nation from the sale of resources, or from earnings or income arising from the ownership of assets in the River; actual balance is $1,577,701.00**

**This settlement would probably not be construed as sale or as earnings or income from the resource. Since the legislation is restrictive in regard to what these funds can be used for, and sets a 10% limit on attorney fees overall, I would consider this potential claim likely to be denied if asserted.**

### B. WILCOXEN/NIEBELL CONTRACT:

**This contract bridges the entire litigation/settlement saga of over 30 years. Mr. Niebell was one of the original six attorneys who entered into the 1980 fee settlement above. The father of Jim Wilcoxen was also one of those six. Mr. Niebell died and his involvement ended in 1994 (his claim is asserted by his widow). Jim Wilcoxen apparently started working on these issues in 1985, although we have no record of a written contract until 1988.**

**Wilcoxen has submitted billings for 1985 to present. I have divided these into 1985-87 (1750 hours at $150 per hour = $262,500), and 1988 to present (2219 hours at $150 per hour - $332,850 plus expenses of $2638.83 for a total of $335,488.83). It should be noted that Wilcoxen has estimated time from 1985 up to a portion of 1992. Since then, the claim is based on contemporaneous records.**

Mr. Niebell's widow has assembled records and submitted claims for 1980-1984 (482 hours); 1985-1988 (1101 hours); and 1988-1994 (1127 hours). There is no hourly rate requested in the documents submitted.

The Hall, Estill firm, operating under Wilcoxen's contract has submitted billings for 1989-94 ($264,938.22), and for additional work in 2002-2003 ($15,586.35). These records appear to be detailed and contemporaneous.

In regard to these claims, I have requested Cherokee Nation records regarding payments to these attorneys and the matters and cases involved for 1980 to present (to the extent such records are available).

**C. PATTON, BOGGS CONTRACT:**

Under this contract, Patton Boggs was paid $403,959 from 1989 through the termination of the contract in 1997. In addition, the firm was paid additional sums under a companion lobbying contract, much of which had to do with Arkansas Riverbed matters. In a letter dated August 11, 1995, Kate Boyce, Patton Boggs partner, indicated that Patton Boggs had accumulated $126,000 in unbilled fees for Riverbed legal work. The total amount paid this firm during the contracts was $1,053,908.48.

Patton Boggs has raised an issue that their contract was improperly terminated in 1997 during the Byrd administration; however, no apparent complaint was made at the time.

The Patton Boggs contract states that, in the event of the contract being terminated, "said attorneys shall receive an equitable portion of such recovery, prorated consistent with the terms hereof regarding additional compensation."

It should also be noted that Joe Reeder, formerly with Patton Boggs, and Kate Boyce provided valuable assistance in the passage of the 2002 legislation, at the request of Wilma Mankiller and with the consent of Principal Chief Smith.

**D. SWIDLER BERLIN LAW FIRM:**

This after the fact contract was entered into in 1997 and terminated in 1999. It included legal work on Arkansas River matters. Under this contract, the firm was paid $632,699.39, $202,120 of which was billing for Riverbed projects. When the contract was terminated, the Tribal Council voted specifically not to pay an outstanding balance, part of which was billing for Riverbed projects. This was due to the debt being incurred without budget authority.

## III. GENERAL COMMENT:

The many and long efforts to claim the Arkansas Riverbed and the eventual legislative resolution of remaining issues has involved a long succession of Principal Chiefs, Tribal Councils, administrators, law firms and BIA and Interior Department personnel.

Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached.

Likewise, the long and many efforts to reach a legislative settlement of these matters went down many dead end roads until they reached fruition last year.

On these many efforts, the Cherokee Nation has expended well over $3 million to outside attorneys. In addition, the time of staff attorneys and administrative personnel on these matters would run into hundreds of thousands, or possibly over $1 million.

Of the various lawyers and law firms who have been employed by the Cherokee Nation, most have received substantial payments. The necessity now is that Cherokee Nation must determine amounts to be approved for payment under various contracts, bearing in mind the legislative limitation on total amount.

## IV. TENTATIVE RECOMMENDATION FOR APPROVAL OF ATTORNEY FEES:

### A. ORIGINAL ATTORNEY FEE SETTLEMENT:

The amount still owed is actually for different work than the matters resolved by this legislation, and I would recommend that any lump sum payment come from funds other than the Riverbed Settlement Funds.

### B. WILCOXEN/NIEBELL CONTRACT:

Without any available contract or fee agreement, and without records to determine the status of payment for work done prior to the 1988 contract, I would not recommend full payment based on this work.

As to Wilcoxen's stated hours up until contemporaneous records begin in 1992, the claim appears a bit ambitious, though I would not doubt the honest effort to reconstruct matters from over ten years ago. I also take into account the fact that Wilcoxen and the attorneys working with him are the only ones with payments deferred to this final resolution. My recommendations also reflect the fact that Wilcoxen was involved from the beginning until final resolution.

**With the foregoing, I would recommend payment to Jim Wilcoxen in the amount of $400,000, plus a performance premium for long term unpaid service and results of $150,000, for a total of $550,000.**

**I would further recommend a payment to the estate of Paul Niebell in the amount of $100,000.**

**I would further recommend payment to the Hall, Estill law firm on their two invoices of $264,938.22, and $15,586.35, for a total of $280,524.57.**

## C. PATTON, BOGGS CONTRACT:

**The Patton, Boggs firm was paid for the bulk of their work from 1989-1997. After that time, they were no longer involved in litigation or legislative efforts until late in 2002, discussed above.**

**As such I would recommend payment for the uncompensated time accrued on the Arkansas Riverbed contract in the amount of $126,000, plus a performance premium for the final assistance in the legislation in the amount of $25,000 for a total of $151,000.**

## D. SWIDLER, BERLIN LAW FIRM:

**This firm has made no claim, and, under the facts of their involvement I would not recommend any payment.**

## E. CONCLUSION:

**My recommendation would be, as set forth above, that the Cherokee Nation approve those amounts for payment from the Arkansas Riverbed settlement. The total payments would be $1,106,524.57.**