*Wilcoxen & Wilcoxen*
*Attorneys at Law*
*112 North Fifth Street*
*P.O. Box 357*
*Muskogee, Oklahoma 74402-0357*

*Area Code 918*
*Telephone 683-6696*
*Fax 682-8605*

HALL ESTILL
ATTORNEYS AT LAW

320 South Boston Avenue
Suite 400
Tulsa, Oklahoma 74103-3708

Phone 918 594-0426
Fax 918 594-0505

March 31, 2005

The Honorable Chad Smith
Principal Chief of the Cherokee Nation
P.O. Box 948
Tahlequah, OK 74465-0948

Council of the Cherokee Nation
Attn: Gina Blackfox, Legislative Aide
P.O. Box 948
Tahlequah, OK 74465-0948

**Re: Arkansas Riverbed Settlement Attorney Fees**

Dear Chief Smith and Members of the Council:

We have received a March 29, 2005, letter (copy enclosed) (hereinafter, the "Letter") from Katherine R. Boyce of Patton Boggs, LLP. The Letter contains representations that purport to characterize the history of the settlement of the Cherokee Nation's claims to the Arkansas Riverbed and our role in it. It also states that we have a disagreement with Patton Boggs, and by implication attorneys at the law firm of Greenberg Traurig who formerly were with Patton Boggs and have represented Patton Boggs from time to time with regard to attorney fees claimed by Patton Boggs. The purpose of this letter is to state clearly and directly to the Nation our position on this matter.

First, contrary to the representation in the first paragraph of the Letter, we have "no difference of opinion" with Patton Boggs or Greenberg Traurig as to "the proper allocation of attorney fees" from the riverbed settlement. We have not discussed our fees with Patton Boggs or Greenberg Traurig. In fact, we have no relationship of any kind with those firms regarding attorney fees. Our work, under contract on the Nation's behalf in the riverbed settlement, is long-standing and well-documented. In response to requests by both the executive and legislative branches of the Cherokee Nation, we have made a number of detailed written submissions to explain the decades-long effort to obtain justice for the Nation. We will not undertake to restate that record here.

Second, we disagree with the statement in the second paragraph of the Letter that the settlement came about "only . . . as a result of litigation." The act of Congress that created the settlement resulted from the Bush Administration's and Congress' recognition that, as a matter of policy and fairness, the evidence compiled by the Nation and those who represented it under our contract required that justice be done on the riverbed claims

*in spite of* court rulings against the Nation. Decades of litigation in which we had participated thus gave way to years of negotiations in which we represented the Nation in conjunction with tribal staff and officials to persuade the federal government to honor its historic debt to the Nation.

The third paragraph of the Letter invites us to compromise and settle our attorney fee claim with Patton Boggs. Again, we have no dispute to settle with that firm, and, as discussed below, having accepted the Nation's fee determination, we have no dispute with the Nation either. Further, our contract is with the Cherokee Nation, not Patton Boggs or Greenberg Traurig. The Cherokee Nation is protected in its contractual relationship with us by the attorney-client privilege, which can only be waived by the Nation. We have no intention of discussing our contract with other law firms.

The Letter's characterization of our attorney fee claim is incorrect and should not be relied on by the Nation. Our submission for attorney fees was based on our contract that provided for up to ten percent of the amount recovered in the settlement to be paid as a contingent fee, approximately $2 million in this case. Our submission to the Nation included the value, without interest, of recorded time during approximately 15 years, during which we received no payment for our services. Because we were working under a contingent fee arrangement and not being currently paid on an hourly basis, there was substantial, additional unrecorded time that was expended in securing the settlement.

The Cherokee Nation's General Counsel reviewed our attorney fees submission, and prepared a proposed schedule of payments (amounting approximately to one half the authorized contingent fee) and an analysis to support it. The General Counsel's work in turn was reviewed by an independent law firm retained by the Nation for that purpose. Following that review, the executive office of the Cherokee Nation formally recommended payment of the fees to the Cherokee Nation Council. The recommendations were reviewed by the Rules Committee and were the subject of a hearing at which tribal executive officials and attorneys made presentations on the fee requests. Subsequently, all fee requests were evaluated and voted on by the Cherokee Nation Council and memorialized in tribal resolutions. The fee requests for Patton Boggs underwent the same review process. While Ms. Boyce states in the second to last paragraph of the Letter that the Cherokee Nation's actions on the attorney fees for the Patton Boggs and Greenberg Traurig attorneys "are not acceptable," that is <u>not</u> our view of the Nation's decision with regard to our fee award. We both accept and respect the Nation's decision.

Accordingly, other than by furnishing Ms. Boyce a copy of this letter, we will have no discussion with the attorneys at Patton Boggs or Greenberg Traurig about this matter. We expressly disassociate ourselves from the Letter's contention that attorneys at those firms have a right under the settlement act to prevent the settlement fund from being disbursed to the Nation until their claims for attorneys fees have been paid.

Finally, we understand that by letter of March 14, 2005, to Chief Smith, the BIA Regional Fiduciary Trust Administrator stated her impression that there is "an apparent dispute regarding payment of the fees." We would appreciate your advising the BIA that

that is not the case with respect to our attorney fees and requesting disbursement of the payment to us as determined by the Nation without further delay by the Department of the Interior.

If you wish to discuss this matter further we will be pleased to do so at your convenience.

Sincerely,

James G. Wilcoxen by MAS

James G. Wilcoxen
Wilcoxen & Wilcoxen

Margaret A. Swimmer

Margaret A. Swimmer
Hall Estill

Enclosure

cc: Katherine R. Boyce
Mrs. Eleanor Niebell