# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

In reply, please address to:
Main Interior, MS 6456

Honorable Chad Smith
Principal Chief
Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465-0948

OCT 13 2005

Dear Chief Smith:

This letter is in response to your letters of February 18, 2005 and March 30, 2005 to Jeanette Hanna, Regional Director, Eastern Oklahoma Region of the Bureau of Indian Affairs, and an August 26, 2005 letter to me. In the referenced letters you requested that the Secretary of the Interior pay the attorney fees for your tribe in accordance with the fee schedule set forth in the tribal council resolutions and section 607(a) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act (the Settlement Act), which is codified at 25 U.S.C. § 1779e.

The Department has received two letters, which were dated May 20, 2004 and March 8, 2005, from Patton Boggs along with a legal memorandum dated April 22, 2005, which was prepared by the late Donald Pearlman, a senior partner of Patton Boggs. The memorandum put forth the argument that the Court of Federal Claims has jurisdiction over his firm's attorney fee dispute with the Cherokee Nation based upon the consent decree. It also asserted that the Court of Federal Claims is the proper forum for the Cherokee Nation's former and present attorneys to litigate their fee claims. Patton Boggs urged the Department to file two motions before the Court of Federal Claims; one to seek an interpretation of the Settlement Act which would permit the Court of Federal Claims to determine attorney fees claims as part of its authority to enter a consent decree, and the other to provide notice to the all of the law firms that represented the Cherokee Nation so that they would be afforded an opportunity to litigate the attorney fees claims by intervening in the Arkansas Riverbed mismanagement case, which is still pending.

Patton Boggs requested that the Department of the Interior not make any disbursements from any of the Settlement Act accounts of the Cherokee Nation until its claim for $1,596,041 had been paid. According to the correspondence submitted by Patton Boggs, its claim is based on a 1989 attorney client contract that contained a provision for the firm to receive ten percent of any legislative settlement of the Cherokee Nation's mismanagement claims against the United States minus any fees which were paid prior to settlement. Based upon the Cherokee Nation's $20 million share of the Settlement Act monies, Patton Boggs asserts that it is entitled to the entire ten percent of the Cherokee Nations attorney fees ($2 million) minus the $403,959 the firm received from 1989 to 1997, when it received monthly fee payments pursuant to its contract.

The Department has also received correspondence from two other law firms, Wilcoxen and

Wilcoxen and Hall Estill. Among the documents the Department has received is a copy of the 1988 contract between James G. Wilcoxen and Paul M. Niebell and the Cherokee Nation, which also contained a provision for a payment of ten percent of any settlement of the Nation's claims against the United States. The Department has also received copies of a October 6, 2003 memorandum prepared by the late Julian Fite, General Counsel for the Cherokee Nation, a July 9, 2004 memorandum prepared by an independent law firm, Riggs, Abney, Neal, Turpen, Orbison & Lewis for the General Counsel, and a December 14, 2004 memorandum prepared by Todd Hembry, the General Counsel for the Council of the Cherokee Nation, all of which analyzed the various attorney fee claims. In addition, Hall Estill, provided a fax dated April 4, 2005 with an attached copy of a March 31, 2005 letter from Wilcoxen and Wilcoxen and Hall Estill to your office and the Council of the Cherokee Nation. In that March 31, 2005 letter, representatives of both firms asserted that they accepted the payments authorized by the Council's resolutions and denied having any dispute with the Nation's payment decisions or any intention of attempting to assert a contractual claim for ten percent of the attorney fees authorized by the Settlement Act.

Section 607(b) of the Settlement Act, codified at 25 U.S.C. § 1779e(b), specifies that the total compensation paid for attorney fees on behalf of an Indian nation cannot exceed ten percent of that nation's share of the settlement funds. It is clear that the sum of potential claims for attorneys fees exceeds the ten percent cap imposed by the Settlement Act. It is also clear that the Cherokee Nation has considered this issue carefully and has decided upon a payment schedule that does not violate the statutory limitation, but has not been accepted by Patton Boggs.

I have determined that the Secretary is required to pay only those fees approved by tribal resolutions after the Settlement Act became effective, and that the Settlement Act requires the Secretary to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in the post settlement resolutions of the Council. As you are aware, the Cherokee Nation's Council authorized the payment of attorney fees as follows:

| | | |
|---|---|---|
| Resolution No. 29-05 | Patton Boggs | $ 151,000 |
| Resolution No. 20-05 | Wilcoxen & Wilcoxen | $ 550,000 |
| Resolution No. 18-05 | Hall Estill | $ 280,524.57 |
| Resolution No. 19-05 | Estate of Paul Niebell | $ 100,000 |

By this letter, I am informing you that I intend to make disbursements from the Cherokee Nation's attorney fee escrow account, which was created pursuant to the Settlement Act, within two weeks in accordance with your request. Upon payments of these attorney fees, the balance remaining in the Cherokee attorney escrow account will be disbursed to the Nation and the account will be closed. The Department respects the sovereignty of the Cherokee Nation and its right to manage its relationship with third party counsel.

In deciding to make these payments, I have not made any judgments as to the validity of any of the attorney contracts nor the amounts of the attorneys fees or any potential claims that the attorneys may have for fees. The validity and amount of the attorney fees is strictly a contractual matter between the Cherokee Nation and its current and former attorneys.

I hope that these arrangements meet with your approval. Please contact me at your earliest convenience if I may be of further assistance.

Sincerely,

James E. Cason

James E. Cason
Associate Deputy Secretary

cc:
Senator James M. Inhofe
James G. Wilcoxen
Margaret A. Swimmer
Joseph R. Membrino
Katharine R. Boyce
Estate of Paul Niebell