IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, Plaintiff, | * | |
| and | * | |
| PATTON BOGGS LLP, Intervenor-Plaintiff | * | Case No. 89-218L |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

| | | |
|---|---|---|
| THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASAW NATION, Plaintiffs, | * | |
| v. | * | Case No. 89-630L |
| THE UNITED STATES, Defendant. | * | |

**CHEROKEE NATION'S REPLY TO PATTON BOGGS' MEMORANDUM OPPOSING THE NATION'S MOTION TO DISMISS THE COMPLAINT-IN-INTERVENTION**

Arthur Lazarus, Jr.
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
(202) 682-0240

Special Counsel for Plaintiff Cherokee Nation

Of Counsel:

Lloyd Benton Miller
Donald J. Simon
Sonosky, Chambers, Sachse, Endreson
& Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005

April 3, 2006

## TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . iii

Introduction . . . . . . . . . . 1

I. The Complaint-in-Intervention Should Be Dismissed for Lack of Jurisdiction . . . . . . . . 2

A. The Settlement Act is Not a Money-Mandating Statute . . . . . . . . . . 2

B. Apart from the Tucker Act, This Court Lacks Jurisdiction over the Complaint-in-Intervention . . . . . . . . . . 5

II. The Court Should Dismiss the Complaint-in-Intervention for Failure to State a Claim upon Which Relief Can Be Granted . . . . . . . . . . 7

A. Termination of the Patton Boggs Contract . . . . . . . . . . 7

B. Tribal Fee Approval Under the Contract and Applicable Law . . . . . . . . . . 8

C. Exclusion of Land Sales from Fee Calculation . . . . . . . . . . 9

D. Exclusion of Reserved Funds from Fee Calculation . . . . . . . . . . 10

E. The Secretary's Decision Is Correct . . . . . . . . . . 11

Conclusion . . . . . . . . . . 11

## TABLE OF AUTHORITIES

***Case(s):***

*Choctaw Nation v. Oklahoma*,
397 U.S. 620 (1970) . . . . . . . . . . 10

*Doyon, Ltd. v. United States*,
214 F.3d 1309 (Fed. Cir. 2000) . . . . . . . . . . 8

*Eastport S.S. Corp. v. United States*,
178 Ct. Cl. 599 (1967) . . . . . . . . . . 3

*Katz v. Cisneros*,
16 F.3d 1204 (Fed. Cir. 1994) . . . . . . . . . . 6

*Montana v. Blackfeet Tribe of Indians*,
471 U.S. 759 (1985) . . . . . . . . . . 8

*Montana v. United States*,
450 U.S. 544 (1981) . . . . . . . . . . 8-9

*Moore v. United States*,
63 Fed. Cl. 781 (2005) . . . . . . . . . . 10

*Sisseton and Wahpeton Bands or Tribes v. United States*,
191 Ct. Cl. 459 (1970) . . . . . . . . . . 6

*United Keetoowah Band of Cherokee Indians v. United States*,
67 Fed. Cl. 695 (2005),
appeal pending No. 06-5003 (Fed. Cir.) . . . . . . . . . . 10

*United States v. Mitchell*,
463 U.S. 206 (1983) . . . . . . . . . . 3, 5

*United States v. Navajo Nation*,
537 U.S. 488 (2003) . . . . . . . . . . 3

*United States v. Sherwood*,
312 U.S. 584 (1941) . . . . . . . . . . 6

*United States v. Testan*,
424 U.S. 392 (1976) . . . . . . . . . . 3

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
34 F.3d 901 (9th Cir. 1994) . . . . . . . . . . 8

***Miscellaneous:***

Cherokee Nation's Arkansas Riverbed Trust Fund Management Act of 2004 . . . . . . . . . . 9

Cherokee Nation Claims Settlement Act, Pub. L. No. 107-331,
116 Stat. 2845 (2002), 25 U.S.C. §§ 1779-1779g . . . . . . . . . . *passim*
§ 1779(15) . . . . . . . . . . 4
§ 1779e . . . . . . . . . . 3, 5, 8
§ 1779d . . . . . . . . . . 3
§ 1779c . . . . . . . . . . 5

Indian Claims Commission Act,
25 U.S.C. §§ 70n, 70s . . . . . . . . . . 6

The Tucker Act,
28 U.S.C. § 1491(a)(1) . . . . . . . . . . 2

Act of June 30, 1834, 4 Stat. 729,
(codified as amended at 25 U.S.C. § 229) . . . . . . . . . . 4

Act of Feb. 28, 1859, ch. 66, § 8, 11 Stat. 401 . . . . . . . . . . 4

Act of May 26, 1920, 41 Stat. 625 . . . . . . . . . . 4

Act of April 13, 1926, 44 Stat. 242
(codified at 25 U.S.C. § 123a) . . . . . . . . . . 4

Pub. L. No. 96-318 (Aug. 1, 1980)
(codified at 25 U.S.C. § 1291) . . . . . . . . . . 4-5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, Plaintiff, | * | |
| and | * | |
| PATTON BOGGS LLP, Intervenor-Plaintiff | * | Case No. 89-218L |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

| | | |
|---|---|---|
| THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASAW NATION, Plaintiffs, | * | |
| v. | * | Case No. 89-630L |
| THE UNITED STATES, Defendant. | * | |

**CHEROKEE NATION'S REPLY TO PATTON BOGGS' MEMORANDUM OPPOSING THE NATION'S MOTION TO DISMISS THE COMPLAINT-IN-INTERVENTION**

## Introduction

Patton Boggs concedes that "[t]he Cherokee Nation correctly argues that the law of the case doctrine does not preclude this Court from reconsidering its Opinion" that the Cherokee Nation Claims Settlement Act, Pub. L. No. 107-331, 116 Stat. 2845 (2002) (codified at 25 U.S.C.

§§ 1779-1779g) ("Settlement Act") is a money-mandating statute. PB Op. Memo at 2. As its principal ground for arguing that the Court should not do so, Patton Boggs alleges that the Nation "disingenuously asserts" that it was deprived of an opportunity to brief that issue, *id.* at 3, citing two random sentences from the Nation's Opposition to Intervention as purported evidence that "the Cherokee Nation briefed this central point."[1] *Id.* at 3 n.2. As a reading of the Nation's Opposition makes clear, Patton Boggs could not be more wrong. That memorandum was written when Patton Boggs was seeking only equitable relief and had not yet set forth any claim for any money damages. Except during the course of oral argument, the Cherokee Nation never had an opportunity to address the critical money-mandating statute issue – a perfect reason why this Court should now revisit that question.

## I. The Complaint-in-Intervention Should Be Dismissed for Lack of Jurisdiction.

### A. The Settlement Act is Not a Money-Mandating Statute.

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides in material part that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any Act of Congress . . . or upon any express or implied contract with the United States. . . ." The attorneys' contract between Patton Boggs and the Cherokee Nation clearly is not an "express or implied contract with the United States." In its Complaint, as described in its Opposition, Patton Boggs "asserts [only] a claim against the

[1] The first section of the Nation's Opposition, CN Memo at 23-26, to which Patton Boggs refers, PB Op. Memo at 3 n.2, was addressed to Intervenor's request for equitable relief "which is not a suit for money damages against the United States." *Id.* This makes precisely the point why the Nation did not brief the money-mandating issue. The second sentence to which Patton Boggs refers *(id.)* deals with the Court's lack of jurisdiction to fix attorney fees.

United States for money damages" based exclusively upon the theory that the Settlement Act is a money-mandating statute within the meaning of the Tucker Act. PB Op. Memo at 10.

Patton Boggs' basic premise, however, is erroneous. The Supreme Court declared in *United States v. Mitchell,* 463 U.S. 206 (1983), that to invoke Tucker Act jurisdiction, a claimant must demonstrate that the source of substantive law relied upon (in this case, the Settlement Act) "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Id.* at 216-17 (quoting *United States v. Testan,* 424 U.S. 392, 400 (1976); *Eastport S.S. Corp. v. United States,* 178 Ct. Cl. 599, 607 (1967)) (emphasis added).[2] Indeed, even Patton Boggs agrees that "[a] mandate that the government must pay *is* a mandate that the government must pay with government funds." PB Op. Memo at 7 (emphasis in original). The fundamental flaw in Patton Boggs' position is that the Settlement Act directs the Secretary to pay the attorneys not with "compensation by the Federal Government," as described in *Mitchell,* but solely with Cherokee Nation trust funds. 25 U.S.C. § 1779e.

In order to escape this conclusion, Patton Boggs misconstrues and distorts the Cherokee Nation's legal position. The Nation has never said, as Intervenor alleges, that Patton Boggs seeks "money payable from the Cherokee Nation's tribal trust fund" established pursuant to 25 U.S.C. § 1779d, PB Op. Memo at 7, or that this Court ruled that the funds in that trust fund were "*U.S. Government money.*" *Id.* (emphasis in original). What the Cherokee Nation consistently has asserted is that the Settlement Act funds became tribal trust funds at the moment they were appropriated. That is what Congress intended when it provided in 25 U.S.C. § 1779e(a) that the

---

[2] *See also United States v. Navajo Nation*, 537 U.S. 488, 503, 506 (2003) (twice quoting *Mitchell*, 463 U.S. at 216-17, to the same effect).

Secretary should pay the attorneys "[a]t the time the funds are paid to the Indian Nations." *See* CN Memo at 7-8. That it what Congress intended when it found that the signatory Indian Nations entered into the settlement "in exchange for the moneys appropriated hereunder." 25 U.S.C. § 1779 (15); *see* CN Memo at 8. That is what general Indian trust law provides. *Id.* at 8-9. Patton Boggs may call these statutory provisions and controlling legal principles "irrelevant," PB Op. Memo at 7, but that is just invective, not a reasoned legal argument.[3]

As a ground for contending that the Secretary must be paying the attorneys with "government money," *id.* at 9, Patton Boggs also alleges that "Congress obviously cannot require the government to pay with someone else's money." *Id.* at 8. Intervenor is wrong again. Throughout our Nation's history, Congress repeatedly has exercised its Constitutional authority over Indian affairs to direct the disbursement of tribal trust funds to third parties. *See, e.g.,* Act of June 30, 1834, 4 Stat. 729, 731-32 (repealed by Act of Feb. 28, 1859, ch. 66, § 8, 11 Stat. 401) (subsequently codified as amended at 25 U.S.C. § 229) (authorizing deduction in a tribe's annuity to reimburse any U.S. citizen who was the victim of depredation by a member of the tribe); Act of May 26, 1920, 41 Stat. 625 (authorizing the Secretary of the Interior to pay out of the tribal funds of the Creek, Cherokee, Choctaw, Chickasaw, and Seminole Nations the costs of street, sidewalk, and sewer construction); Act of April 13, 1926, 44 Stat. 242 (codified at 25

---

[3] Patton Boggs' contention that, "by participating in, and acquiescing in, the creation of a separate fund for the payment of Congressionally-mandated attorneys' fees, the Cherokee Nation has admitted that the funds with which the attorneys were to be paid are **not** Cherokee Nation funds" (PB Op. Memo at 9) (emphasis in original), is, of course, a pure *non sequitor.* Action to set aside an attorney fee escrow account is wholly consistent with the funds being tribal, especially since the escrowed funds are to be used to pay a tribal, not a federal, obligation incurred in a contract between Patton Boggs and <u>the Tribe</u>, not between Patton Boggs and the Federal government.

U.S.C. § 123a) (authorizing tribal funds to be used to pay insurance premiums); Pub. L. No. 96-318 (Aug. 1, 1980) (codified at 25 U.S.C. § 1291) (directing a certain percentage of a judgment fund due the Delaware Tribe of Indians and the Absentee Delaware Tribe be paid to the Kansas Delaware Tribe of Indians and the Delawares of Idaho, Incorporated); *see also* representative sampling of numerous like federal statutes set forth in Exhibit 1 attached hereto. In short, the Settlement Act is merely one in a long line of federal statutes where Congress has used its plenary power in Indian affairs to order the payment of tribal trust funds to other entities.

Patton Boggs did not, and cannot, point to a single word in the Settlement Act which implies, much less shows, that Congress contemplated that the United States would pay the Cherokee Nation's attorneys with federal funds, *i.e.,* out of the Judgment Fund. Indeed, the relevant section of the Settlement Act, 25 U.S.C. § 1779e(b), specifically directs that the attorneys shall be paid out "of funds appropriated under section 1779c(c)," and, as noted above, those are tribal trust funds.[4] Accordingly, the Settlement Act cannot be considered a money-mandating statute as defined by the Supreme Court in *Mitchell.*

B. Apart from the Tucker Act, This Court Lacks Jurisdiction over the Complaint-in-Intervention.

In its Motion to Dismiss, the Cherokee Nation argued that, apart from the Tucker Act: (1) this Court has no jurisdiction under the Settlement Act to adjudicate an award of attorneys fees to Patton Boggs (CN Memo at 10-14); and (2) Patton Boggs' cause of action is really a private dispute with the Cherokee Nation over which this Court has no jurisdiction (*id.* at 14-18).

---

[4] Patton Boggs elsewhere describes the Cherokee Nation's "recovery" as $20 million. *See* PB Op. Memo at 14-15. What else could the Nation's "recovery" be, if not tribal funds?

Intervenor apparently is under the misimpression that the Court considered and rejected these prior jurisdictional arguments in its Opinion of December 19, 2005, and tries to belittle the Cherokee Nation for having **"copied verbatim"** from its earlier Opposition to Intervention. PB Op. Memo at 5 (bold face in original).

The facts are that, in response to a Government argument, the Court stated that "the power or authority to adjudicate the dispute arises from the money-mandating nature of the statute," Opinion at 14, but did not expressly discuss or pass upon the application of this general principle either in the unique context, as here, of a statutory directive for the Secretary to pay attorneys' fees with non-federal monies, or in the context, as here, of a dispute between private, non-federal parties. *See United States v. Sherwood,* 312 U.S. 584, 588 (1941); *Katz v. Cisneros,* 16 F.3d 1204, 1210 (Fed. Cir. 1994); and other cases cited in CN Memo at 14-18. The issues raised by the Cherokee Nation with respect to this Court's lack of jurisdiction thus are very much alive.

Since Patton Boggs has not seen fit to rebut the Cherokee Nation's alternative jurisdictional arguments, *see* PB Op. Memo at 5-6, a detailed Reply does not appear necessary. Suffice it to say that *Sisseton and Wahpeton Bands or Tribes v. United States,* 191 Ct. Cl. 459 (1970), cited by Patton Boggs for the proposition that "competing attorney fee claims among counsel of record in this Court are not a private dispute," PB Op. Memo at 6 n.5, is plainly inapposite. First, this Court in *Sisseton* had express jurisdiction to determine attorney fees under explicit provisions of the Indian Claims Commission Act, 25 U.S.C. §§ 70n, 70s, an authority nowhere found here in any comparable provision of the Settlement Act. 191 Ct. Cl. at 464. More significantly, as framed by Patton Boggs, this case is a suit against the United States based

entirely upon a contract dispute between Patton Boggs and its former client, the Cherokee Nation, and is not a dispute among competing attorneys who have mutually inconsistent contracts.

## II. The Court Should Dismiss the Complaint-in-Intervention for Failure to State a Claim upon Which Relief Can Be Granted.

In its complaint, Patton Boggs has asserted one cause of action in this case: a claim, based upon its attorneys' contract, for a 10% contingent fee applied to a "recovery" by the Cherokee Nation of $20 million or, in other words, an attorneys fee in the contract amount of exactly $2 million. *See, e.g.,* Compl. at 6, ¶ 20. Patton Boggs has not pleaded in the alternative any legal theory other than this breach of contract claim, such as a theory that would provide for an attorney fee in any amount other than $2 million. For the reasons stated in the Nation's Memorandum in Support of Motion to Dismiss at 18-29, and briefly restated below, Patton Boggs is not entitled as a matter of law to recover on its contract claim, the only claim it has pled. *See* CN Memo at 18-29. The conclusion necessarily follows, therefore, that the Complaint-in-Intervention, as filed by Patton Boggs, fails to state a claim upon which this Court can grant relief.

A. Termination of the Patton Boggs Contract. Patton Boggs alleges that its attorneys' contract "was terminated without cause. . . ." Compl. at 5, ¶ 15. The universal rule in the United States, however, is that a client at any time may discharge its legal counsel with or without cause. CN Memo at 25 n.18. Where, as here, as the Court's records clearly show, Patton Boggs did not bring this case to its successful conclusion, the law firm is not entitled to its

contract contingent fee, but only to compensation based upon *quantum meruit*. *Id.* at 26-27. Such a cause of action, however, has not been pleaded.[5]

B. Tribal Fee Approval under the Contract and Applicable Law. Patton Boggs' attorneys' contract provides, in language Intervenor never mentions, that its contingent fee is subject to the condition "that approvals required by law, if any, are obtained." Compl., Ex. 1 at 3. The term "required approvals" is elsewhere defined in the contract to include approvals by "the Cherokee Nation Tribal Council and the Bureau of Indian Affairs, if required by regulation or statute." *Id.* at 1. The provision of the Settlement Act, section 1779e(a), that "the Secretary shall pay to the Indian Nation's attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations" (emphasis added) is precisely the type of tribal fee approval statute that Patton Boggs' attorneys' contract anticipated. Even if this statutory language were ambiguous, which it is not, the controlling rule of statutory construction is that laws affecting Indians "are to be construed liberally for the benefit of the Indians, with ambiguous provisions interpreted to their benefit." *Doyon, Ltd. v. United States,* 214 F.3d 1309, 1314 (Fed. Cir. 2000) (quoting *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, (1985)); *see also* cases cited in CN Opp'n. to Mot. to Intervene at 7.

Furthermore, the Court is not limited to the Settlement Act in construing the terms of Patton Boggs' attorneys' contract. Cherokee Nation contracts also are subject to Cherokee Nation law. *See, e.g., U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 906-7 (9th Cir. 1994) (finding that band had authority to enforce tribal ordinances against non-Indian who entered into a consensual contract with the band or a band member) (citing *Montana v.*

[5] Actually there is no express provision in its contract that entitles Patton Boggs to a fee under the circumstances at issue here. *See* CN Memo at 24-25.

*United States*, 450 U.S. 544, 565-66 (1981) ("A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.")). Specifically, the Arkansas Riverbed Trust Fund Management Act of 2004 (attached hereto as Exhibit 2), adopted by the Cherokee Nation Tribal Council on February 23, 2004, expressly provides that "the payment of attorney fees" out of the Settlement Act proceeds "shall be approved by the Principal Chief and the Council of the Cherokee Nation." Ex. 2 at 1. That is the governing tribal statute which the Secretary here respected and under which, by the terms of its own contract, Patton Boggs is bound. The contract explicitly provides that the law firm's contingent compensation is subject to "approvals required by law," and the governing tribal law requires that such approvals of its fees be given by both the Nation's Chief and the Nation's Council. Absent such approvals, Patton Boggs has no entitlement as a matter of law to the recovery it seeks.

C. Exclusion of Land Sales from Fee Calculation. Patton Boggs repeatedly and consistently alleges that its contract and the litigation it initiated thereunder cover "claims against the United States for *mismanagement* of tribal resources along the Arkansas River." Compl. at 3, ¶ 8; *id.* at 4, ¶ 9, *id.* at 6, ¶ 19 (emphasis added). A significant portion of the "recovery" for the Cherokee Nation under the Settlement Act, however, is attributable to the extinguishment of its title to the so-called Disclaimed Drybed Lands. *See* CN Memo at 27-29. The extinguishment of tribal title is a sale of land, not the resolution of a mismanagement claim, and, accordingly, the substantial portion of the settlement consideration which is due to the land sale must be excluded

from calculation of any Patton Boggs fee.[6] Moreover, since Intervernor has not pleaded any fee claim less than $2 million, it has not stated a claim upon which this Court can grant relief.

D. Exclusion of Reserved Funds from Fee Calculation. As previously noted, *supra* at 3-5, Patton Boggs consistently argues that the $2 million set aside for attorneys fees out of the moneys appropriated under the Settlement Act are "government funds." If so, then the Cherokee Nation really "recovered" only $18 million since, in order for its theory of jurisdiction to work, Congress allegedly reserved that $2 million for federal programs, and not for payment to the Nation.[7] Moreover, under Intervenor's construction of the statute, the Nation's net recovery could be as low as $16 million, since a third-party "claimant tribe" is asserting a right to an additional 10% of the $20 million pursuant to Section 608 of the Settlement Act, 25 U.S.C. § 1779f, and $2 million of the funds appropriated have been set aside for that separate purpose. *See United Keetoowah Band of Cherokee Indians v. United States*, 67 Fed. Cl. 695 (2005), appeal pending, No. 06-5003 (Fed. Cir.). Thus, under its own theory, Patton Boggs has no right to claim 10% of a $20 million recovery since – according to Patton Boggs – at least $2 million, and arguably $4 million, of those funds do not in fact belong to the Cherokee Nation, but are simply federal funds never paid to the Nation. Again, since Patton Boggs has not requested in

---

[6] Patton Boggs argues that "not one cent of the Cherokee Nation's 'recovery' is unrelated to Patton Boggs' efforts." PB Op. Memo at 15. This is nonsense. The Cherokee Nation's ownership of the Disclaimed Drybed Lands was confirmed by the Supreme Court in *Choctaw Nation v. Oklahoma,* 397 U.S. 620 (1970), decided 19 years before Patton Boggs was retained by the Nation, and by follow-on cases upon which Patton Boggs did not expend one minute of work. The Court also is well aware that other counsel produced the settlement of this suit.

[7] *Moore v. United States,* 63 Fed. Cl. 781 (2005), cited by Patton Boggs as contrary authority, PB Op. Memo at 15, is obviously not on point. In *Moore*, none of the judgment was classified as retained "government funds."

the alternative a fee less than 10% of $20 million, it has failed to state a claim upon which, as a matter of law, relief can be granted.

E. The Secretary's Decision Is Correct. Patton Boggs labors under a misimpression that "[t]his Court implicitly has rejected the Cherokee Nation's argument that the Secretary, as a matter of law, correctly construed the Settlement Act." PB Op. Memo at 13. To the contrary, the Court implicitly reserved a decision on that issue by denying Patton Boggs' Motion for Attorneys' Fees. Opinion at 2, 15; *see also id.* at 12 ("the payment of attorney's fees is required under the Settlement Act, and . . . this court may ultimately have to determine whether the requirements have been met. . . .") When the Court does review the Secretary's decision on the merits, it will find that she was correct as a matter of law. *See* CN Memo at 19-22; *supra* at 8-9.

**Conclusion**

For the foregoing reasons and as set forth in the Cherokee Nation's Memorandum in Support of its Motion to Dismiss the Complaint-in-Intervention, Patton Boggs' Complaint should be dismissed for lack of jurisdiction or failure to state a cause of action upon which relief can be granted, or on both grounds.

Respectfully submitted,

April 3, 2006

Arthur Lazarus, Jr.
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
(202) 682-0240
(202) 682-0249 (fax)
alazarus@sonosky.com

Special Counsel for Plaintiff Cherokee Nation

Of Counsel:

Lloyd Benton Miller
Donald J. Simon
Anne D. Noto
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
(202) 682-0240
(202) 682-0249 (fax)
lloyd@sonosky.net
dsimon@sonosky.com
anoto@sonosky.com