**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Consolidated Case No. 89-218 L**

| | | |
|---|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **PATTON BOGGS,** | ) | |
| | ) | |
| **Plaintiff-Intervenor,** | ) | **No. 89-218 L** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**Chief Judge Edward Damich**

| | | |
|---|---|---|
| **THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASW NATION,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 89-630 L** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

JAMES M. UPTON
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section

ATTORNEYS FOR DEFENDANT

## INTRODUCTION

On February 28, 2006, the government filed a motion to dismiss Patton Boggs' Complaint in Intervention (filed on January 11, 2006), or, in the alternative, for summary judgment. On March 20, 2006, Patton Boggs filed its opposition to the government's motion and a cross-motion for summary judgment accompanied by proposed findings of uncontroverted fact. On April 24, 2006, Defendant filed its reply to Patton Boggs' opposition to Defendant's motion to dismiss, or, in the alternative, for summary judgment.

## BACKGROUND

The Court's opinion of December 19, 2006 (and accompanying order) granted Patton Boggs' motion to intervene and allowed Patton Boggs to file a complaint in intervention. On January 11, 2006, Patton Boggs (hereinafter "PB") filed its Complaint in Intervention, asserting its entitlement to an award of attorneys' fees in the amount of $1,445,041, pursuant to Section 1779e(a) of the 2002 Settlement Act. The Complaint states that the fees "provided for" in its approved contract with the Cherokee Nation " . . . are equal to ten percent (10%) of all sums recovered by the Cherokee Nation, whether by judgment, settlement or otherwise less any sums paid to PB pursuant to a small monthly retainer." Complaint, para. 10.

The memorandum in support of PB's cross-motion for summary judgment contains a new calculation of PB's claim amount which is based upon 10% of what PB estimates the Cherokee Nation's [hereinafter "CNO"] total recovery will be - - namely, $19,485,018.00. PB Memo at 4. Ten percent of $19,485,018.00 is $1,948,501.80; deducting the $554,959.00 already paid to PB leaves an amount of $1,393,542.80 which PB alleges should be awarded to it. Id. However, the PB memorandum adds yet another twist by asserting that PB "seeks a 'naked money judgment' only

as to those additional *amounts* within the Settlement Act's statutory Fee Cap, amounts that do not involve competing claims among the Cherokee Nation's attorneys . . ." [Emphasis supplied] Id. at 7. PB totals the following amounts: (1) $366,977.23 (the balance in the attorney fees' escrow account); (2) $500,000.00 (the anticipated FY 2007 appropriation for attorneys' fees); (3) $280,524.57 (the amount "Improperly Paid Out Of The Attorney Fee Escrow Fund to The Hall Estill Law Firm . . . ) ; and (4) $100,000.00 (Improperly Paid Out Of The Attorney Fee Escrow Fund to the Estate of Paul Niebell . . . .") to arrive at a total of $1,247,501.80 or the "balance of the fees permitted under the Settlement Act." Id.

With respect to the $1,247, 501.80, PB alleges that none of this amount "entails the need for any potential 'approval' by the Cherokee Nation, even if the Settlement Act allowed or required such 'approval.'" Id. PB then adds: " Absent application of the Fee Cap, there was nothing for the Cherokee Nation to approve or disapprove as to Patton Boggs' unambiguous ten percent contingency fee contract." Id.

**SUMMARY OF ARGUMENT**

Patton Boggs is not entitled to summary judgment because there are genuine issues of material facts in dispute. PB is not entitled to recover the claimed fees based upon its 1989 tribal attorney fees contract because the CNO terminated the contract in 1995. Because PB's interpretation of Section 1779e is erroneous, it is not entitled to summary judgment as a matter of law. Finally, since the Court must enforce Section 1779e(b) as written, it must reject PB's asserted entitlement to an award of $1,247,501.80.

## ARGUMENT

### I. PATTON BOGGS IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE.

PB's cross-motion for summary judgment must be denied because there are genuine issues of material facts in dispute. See Argent v. United States, 124 F. 3d 1277, 1286-87 (Fed. Cir. 1997). See Defendant's Statement of Genuine Issues of Material Facts in Dispute. For example, PB contends that the $280,501.80 distribution to the Hall Estill law firm was improper because Hall Estill had no separate tribal attorney fees contract with the CNO. However, in 2003, Julian Fite, the General Counsel of the CNO, concluded that Hall Estill had "operated under" the Wilcoxen-Niebel tribal attorney fees contract. Therefore, we submit that Hall Estill did have a contractual relationship, albeit indirect, with the CNO.[1/]

### II. PATTON BOGGS IN NOT ENTITLED TO RECOVER THE FEES BASED UPON ITS 1989 TRIBAL ATTORNEY FEES CONTRACT BECAUSE THE CNO TERMINATED THE CONTRACT IN 1995.

PB's attorneys' fees claim in the amount of $1,247,501.80 is premised solely upon its 1989 tribal attorney fees contract with the CNO. PB's Complaint in intervention states that this contract was "terminated without cause" in 1995. Complaint at para. 15. However, it is well established that an attorney with a contingent fee contract who has been **terminated** by the client cannot recover that contingent fee, irrespective of whether the termination was for cause or not for cause. See the discussion in the CNO's Opposition to Patton Boggs' Cross-Motion for Summary Judgment for the numerous state court decisions cited in support. In Scates v. Principi,

---

[1/] See Defendant's Statement of Genuine Issues of Material Facts in Dispute, which is being filed simultaneously with Defendant's Opposition to PB's Cross - Motion.

282 F. 3d 1362, 1365-1366 (Fed. Cir. 2002), the Court of Appeals for the Federal Circuit applied this principle when it ruled that the first attorney retained (and later fired by the plaintiff veteran) in a veterans' benefits case could not recover the full 20% contingency fee provided for in his contract (a fees cap specifically authorized by statute), but could only recover based upon his/her "contribution to the case." In effect, therefore, the Federal Circuit was holding that the first attorney could only recover fees based upon quantum meruit. The CFC has applied this same principle to attorneys' fees sought in Indian claims cases, even before the Principi decision. See White Mountain Apache Tribe of Arizona v. United States, 30 Fed. Cl. 8, 15-16, 20 (1993).

Thus, PB cannot recover the $1,247,501.80 sought, as a matter of law, because its contributions to settlement constitute a matter of fact which the Court would have to adjudicate. The CNO has already determined the full amount of fees to which PB is entitled, based upon its contributions, and that amount has been paid to PB.

## III. PATTON BOGGS IS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE ITS INTERPRETATION OF SECTION 1779e IS WRONG.

In its cross-motion for summary judgment, PB argues that it is entitled, as a matter of law, to the award of $1,247,501.80 - - "the balance of the fees permitted under the Settlement Act." PB's Memorandum in Support of Cross-Motion at 7. PB's claim of entitlement rests upon the provision for a 10% contingency fee in its tribal attorney fees contract executed with the Cherokee Nation. PB vehemently denies that the Settlement Act's "attorney fees" provision (Section 1779e) requires the CNO's approval of the specific amount of fees it claims before the Secretary of the Interior would be authorized to pay that specific amount of fees. PB's construction of Section 1779e fails to consider the Indian canon of construction.

The Secretary's construction of Section 1779e(a), statutory language which the PB has effectively conceded is ambiguous language, is that the Secretary may distribute funds from the attorneys' fees escrow account only if the CNO **first approves** the specific amount of fees demanded by each claimant law firm. The Secretary's construction implicitly assumes that the fees in question are for legal services performed for the Cherokee Nation which are encompassed (directly or indirectly) by a tribal attorney fees contract (or contracts) executed by the Nation. We reiterate that only the Secretary's interpretation acknowledges the applicability of a fundamental Indian canon of construction - - that is, ambiguous language in a piece of federal Indian legislation must be construed in favor of the affected Indian tribe or Indians.

The Secretary's reading of Section 1779e(a) must be accorded great deference; indeed, Interior's interpretation of a statute it administers is entitled to Chevron deference. Amoco Production Co. v. Watson, 410 F. 3d 722, 726 (D.C. Cir. 2005).[2/] This court need not conclude that the Secretary's construction is the only reasonable one. Udall v. Tallman, 380 U.S. 1, 16 (1964). The courts "...will sustain the Secretary's construction of [a statute] if it is reasonable, even if another construction appears equally plausible." [Citations omitted] See Blackfeet Indian Tribe v. Montana Power, 838 F. 2d 1055, 1057-1058 (9th Cir.), cert. denied , 488 U.S. 828 (1988). The reasonableness of the Secretary's interpretation of Section 1779e is evidenced by the fact that it fully respects the CNO's sovereign prerogatives in resolving contractual disputes in tribal forums.

Finally, the Secretary's construction has the benefit of not imposing an adjudicatory role

---

[2/] PB argues that the "unambiguous" legislative history of Section 1779e supports its construction of this Section and "trumps" the Indian canon of construction upon which the Defendant relies. But, PB has effectively conceded that the language of Section 1779e(a) is ambiguous. Also, as we point out in our Reply brief (filed on April 24th), the legislative history can be read as offering support to the Secretary's reading of subsection (a) of 1779e. Def. Reply Br. at 4-5.

upon on the Secretary - - an Executive Branch official. In the past, such roles have been judicial roles placed upon the Indian Claims Commission (under Section 15 of the ICCA) and upon the U.S. Court of Claims to which remaining ICCA cases (which could not be finally disposed of or had not gone to final judgment before the Commission was terminated on September 30, 1978) were transferred. Yet, without citing any support in the legislative history of Section 1779e, PB would effectively ascribe to Congress an intent that the Secretary resolve attorneys' fees disputes, which are private contractual disputes.

## IV. SINCE THE COURT MUST ENFORCE SECTION 1779e(b) AS WRITTEN, IT MUST REJECT PB'S ASSERTED ENTITLEMENT TO AN AWARD OF $1,247,501.80.

PB asserts that the grant of its cross-motion for summary judgment entitles it to an award in the amount of $1, 247,501.80. PB Memo at 7. PB contends that even if the Settlement Act required the CNO's approval of the specific amount of fees demanded by a claimant law firm, no such approval of the above amount would be required because this amount is "under the Fee Cap." Id. The gist of the argument, in effect, is that since this is a situation where the amount of $1,247,501.80 is under the fees cap in section 1779e(a), and the subsequent distribution of said amount from the attorney fees escrow account pursuant to the Secretary's direction would not exceed the fees cap in Section 1779e(b), there is nothing for the CNO to approve. In other words, under PB's theory, the CNO's "approval" authority is strictly limited to the power to disapprove the payment of fees whose total exceeds the statutory cap. Yet, PB cites no statutory language or legislative history of Section 1779e to support this argument. Furthermore, this argument runs directly counter to the Secretary's construction of Section 1779e(a).

PB's calculation which purports to show that the $1,247,501.80 does not exceed the

Section 1779e(b) fees cap is a virtual sleight of hand. The components of the $1,247,501.80 are, as follows: (1)$366,977.23 (the current balance in the attorney fees escrow account); (2) an anticipated $500,000.00 appropriation in Fiscal Year 2007 to be deposited to the escrow account; (3) $280,524.57 "improperly paid out" to the law firm of Hall Estill because it had no tribal attorney fees contract with the CNO - - PB Memo at 7; and (4) $100,000 "improperly paid out" to the Estate of Paul Niebell because the Wilcoxen-Niebell contract stated that compensation was made "wholly contingent upon a recovery for said Cherokee Nation" Id. This calculation is directly at odds with the **fact of record** that the Secretary has directed the distribution of **$1,081,524.57**.[3/] If the Secretary were to direct the distribution of the **additional $1,247,501.80** to which PB now asserts entitlement, then the **total of all disbursements** from the attorney fees escrow account would be **$2,329,026.37 - - or $329,026.37 in excess of the $2 million cap.** [4/] This court's entry of a final judgment in the amount of **$1,247,501.80** would have the **same result** - - that is, the effective nullification of the fees cap - - and would breach the court's duty to enforce Section 1779e(b) as written.

PB's calculation must necessarily assume, as a matter of law, that this court can make an award which would result in **total attorneys' fees recovered** under the Settlement Act of **$2,329,026.37 - - $329,026.37 in excess of the $2 million statutory cap - -** and thereby

---

[3/]PB specifically acknowledges this in Paragraph 11 of its Proposed Findings of Uncontroverted Fact.

[4/] In its cross-motion memorandum, PB assumes the CNO will obtain a total recovery under the Settlement Act of $19,485,018, thereby resulting in an attorney fees cap of $1,948,501.80. If this figure is the cap, then the distribution of an additional $1,247,501.80 would **exceed the cap by $380,524.57.**

effectively nullify Section 1779e(b) and subvert the will of Congress. To the contrary, the court must enforce Section 1779e(b) as written. See Taylor v. Freeland and Kronz, 503 U.S. 638, 643-45 (1992) (held that the 30-day deadline in the federal Bankruptcy Code for creditors and the bankruptcy trustee to file objections to a list of property which the debtor claims is statutorily exempt from distribution to creditors must be enforced by the federal courts). It follows that this court cannot ignore the statutory fees cap, but instead **must enforce** the statutory fees cap.

We note that the Federal Circuit ruled ( in the context of attorneys' fees claimed by the first attorney retained by the plaintiff veteran in Scates v. Principi, 282 F.2d 1262, 1265-66 (Fed. Cir. 2002) - - a veterans' benefits case[5/]) that the first attorney was not entitled to be paid the full/maximum 20 percent contingency fee specified in his contract with the veteran - - the 20 percent fee representing the controlling statutory attorney fees cap, as well. Similarly, PB is not entitled to recover the 10 percent fee specified in its contract (which is also the statutory cap on attorneys' fees under Section 1779e(b) of the Settlement Act), because it was terminated by the CNO in 1995.

In effect, PB is asserting that the Court can exceed the fees cap, because it argues that the Secretary's "improper" disbursements to Hall Estill and the Estate of Paul Niebell "cannot properly count" against the attorney fees cap - - an inventive way to circumvent the statutory cap, albeit devoid of merit. For the court to accept this argument would, in Defendant's opinion,

---

[5/] The statute at issue limited the amount of contingent fees which could paid to a lawyer whose services had been terminated by a veteran (who then hired a new attorney to replace the first attorney) to a maximum of "20 percent of the total amount of any past due benefits awarded on the basis of the [veteran's] claim" a fees cap imposed by 38 U.S.C. § 5904(d)(1).

violate the court's obligation to enforce Section 1779e(b) as written. Moreover, PB's argument, if accepted, would render the attorney fees cap in Section 1779e(b) a nullity.

The acceptance of PB's contention would also signify that the enactment of Section 1779e(b) amounted to an exercise in futility. Yet, it is well established that "Congress cannot be presumed to do a futile thing." Halverson v. Slater, 129 F. 3d 180, 185 (D.C. Cir. 1997) (held that the interpretation by Secretary of the Department of Transportation of a statutory provision as not adding any new delegation authority to the authority he possessed violated the doctrine that Congress cannot be presumed to do a "futile" thing). This principle is equally applicable to the construction of federal Indian statutes. Ramah Navajo School Board v. Babbitt, 87 F. 3d 1338, 1344-45 n. 6. (D.C. Cir. 1996) (court rejected the argument that the federal district court lacked jurisdiction over a suit filed under the Indian Self-Determination Act, 25 U.S.C. § 450, et. seq. , on the grounds that this argument ran afoul of the doctrine that Congress cannot be presumed to do a "futile" thing).

**CONCLUSION**

For the reasons discussed herein, the court should deny PB's Cross-Motion for Summary Judgment.

Dated this 11th day of May, 2006.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

/s/James M. Upton
JAMES M. UPTON
U. S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel. (202) 305-0482
Fax: (202) 305-0506

Attorneys for Defendant

OF COUNSEL:

Angela M. Kelsey, Esq.
Trust Responsibilities Branch
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
Washington, D. C. 20240