**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Consolidated Case No. 89-218 L**

| | | |
|---|---|---|
| **THE CHEROKEE NATION OF OKLAHOMA,**<br><br>**Plaintiff,**<br><br>**PATTON BOGGS,**<br><br>**Plaintiff-Intervenor,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **No. 89-218 L** |
| | | **Chief Judge Edward Damich** |
| **THE CHOCTAW NATION OF OKLAHOMA AND THE CHICKASAW NATION,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **No. 89-630 L** |

**DEFENDANT'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE**

Defendant hereby submits its statement of genuine issues of material facts in dispute. These are as follows:

1. Did the law firm of Hall Estill have a contractual relationship with the CNO when it performed the legal services for which it was paid $280, 524.57 out of the attorneys' fees escrow account? <u>See</u> PB's Proposed Findings of Uncontroverted Fact Nos. 14 through 17 alleging the

absence of a tribal attorney fees contract between Hall Estill and the CNO. The 2003 memorandum written by the General Counsel for the CNO, Julian Fite, states that Hall Estill was "operating under Wilcoxen's contract." See Attachment to Defendant's Reply to Patton Boggs' Opposition to Defendant's Motion to Dismiss at 4.

2. Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the 2002 Settlement Act when it directed that the estate of Paul Niebell be paid $100,000? See PB's Proposed Findings of Uncontroverted Fact Nos. 18 through 21 contending that Paul Niebell's right to fees was 'wholly contingent' upon a recovery and that he never worked upon the 1989 lawsuit filed in the U.S. Claims Court. We note that the 2003 Fite Memorandum states, in pertinent part, as follows:

> Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached.

Attachment to Defendant's Reply at 5.

3. Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the Settlement Act when it directed that Wilcoxen & Wilcoxen be paid $550,000? Again, the Fite memorandum suggests the answer is "yes." Also, if PB's argument that the $100,000 paid to the Niebell estate out of the attorney fees escrow account was improperly paid out because of the "contingency" clause, then why isn't PB contending the $550,000 paid to Wilcoxen from the attorney fees escrow account was improperly paid out, since the "contingency" clause applies to Wilcoxen & Wilcoxen, as well, instead of "reserving" the argument? This disparate treatment of Wilcoxen & Wilcoxen and the estate of Paul Niebell underscores the existence of genuine issues of material facts in dispute.

4. What were the respective contributions that various counsel for the Cherokee Nation, including PB, made to the settlement embodied in the 2002 Settlement Act? In other words, based on quantum meruit, what amount of fees was each set of attorneys entitled to receive, based upon their respective contributions to settlement.

PB is not entitled to recover 10 percent of the total compensation to be paid to the CNO by under its 1989 contract or under Section 1779e(b) of the Settlement Act because PB's 1989 contract was terminated. The general common law principle applied by the Court of Appeals for the Federal Circuit in Scates v. Principi, 282 F. 3d 1362, 1365-66 (Fed. Cir. 2002) is that termination (whether for cause or not) bars recovery of attorneys' fees based upon the contingency fee stated in the attorney fees contract. Rather, recovery must be based upon quantum meruit and facts which establish the respective contributions of CNO's various counsel to the eventual settlement. See PB's Proposed Findings of Fact Nos. 14, 19, 20 and 21 asserting, in effect, that neither Hall Estill nor Paul Niebell made any contribution to the ultimate settlement. But, the Court must keep in mind that in 2005 the CNO weighed PB's respective contribution to settlement and decided PB was entitled to $151,000 out of the attorney fees escrow account established by the Office of Special Trustee pursuant to Section 1779e, in addition to the $403,959 previously paid to PB under its 1989 contract before the contract was terminated. See PB's Proposed Findings of Uncontroverted Fact Nos. 3 and 10. In short, the CNO has already determined that PB has been fully compensated - - that is, PB has received the total amount of fees to which it is entitled, as compared to the respective contributions of the other sets of attorneys.

5. Does the 1989 PB contract with the CNO take priority over the 1988 Wilcoxen-

Niebell contract? The Wilcoxen-Niebell contract took effect before the Patton Boggs contract (indeed, it took retroactive effect as of August, 1988) and there is nothing in the PB contract stating that it has priority over the Wilcoxen-Niebell contract. In addition, it would appear that the termination of the PB contract would necessarily moot any priority argument.

6. Prior to the enactment of the Settlement Act, was Patton Boggs paid more than the $403,959 it states it was paid under its 1989 contract? The 2003 Fite Memorandum suggests that PB was paid more than $403,959 which means that its present claim amount is inflated because it does not take into account any payment in excess of $403,959. See PB's Proposed Findings of Uncontroverted Fact No. 3 stating that PB was paid $403,959 under its contract.

Dated this 11th day of May, 2006.

Respectfully submitted,

s/James M. Upton
JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, D. C. 20044-0663
Tel. (202) 305-0482
Fax: (202) 305-0506

OF COUNSEL:

Angela Kelsey, Esq.
Trust Responsibilities Branch
Division of Indian Affairs
Office of the Solicitor
Washington, D.C. 20240