IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, | * | |
| Plaintiff, | * | Case No. 89-218(L) |
| and | * | Chief Judge Edward H. Damich |
| PATTON BOGGS LLP, | * | |
| Intervenor-Plaintiff | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, Defendant. | * | |

* * * * * * * * * * * * *

**CHEROKEE NATION'S APPENDIX OF EXHIBITS IN RESPONSE TO PATTON BOGGS CROSS MOTION FOR SUMMARY JUDGMENT**

**EXHIBITS 23 - 38 OF 38**

Arthur Lazarus, Jr.
Sonosky, Chambers, Sachse, Endreson & PerryLLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
(202) 682-0240, (202) 682-0249 (fax)
alazarus@sonosky.com

Special Counsel for Plaintiff Cherokee Nation

Of Counsel:
Lloyd Benton Miller
Donald J. Simon
Anne D. Noto
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
(202) 682-0240, (202) 682-0249 (fax)
lloyd@sonosky.net; dsimon@sonosky.com; anoto@sonosky.com

80136

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**September 16, 2004**
**3:05 P.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey | Don Garvin | Chuck Hoskin |
| Audra Smoke-Conner | Cara Cowan | William "Bill" Johnson |
| Bill John Baker | S. Joe Crittenden | Jackie Bob Martin |
| John F. Keener | Linda O'Leary | |

**COMMITTEE MEMBERS ABSENT:**

| | | |
|---|---|---|
| David Thornton, Sr. | Buel Anglen | Melvina Shotpouch |
| Phyllis Yargee | | |

**STAFF PRESENT:**

| | | |
|---|---|---|
| Fonda Gritts | Julian Fite | Vickie Hanvey |
| Doug Evans | Doug Bane | Sharon Swepston |
| Diane Hammons | | |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Ed Crittenden | Raymond Vann |
| Ralph Keen | | |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** Yes

**MINUTES:** See Attached

**Ex. 23**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**September 16, 2004**
**3:05 P.M.**

**CALL TO ORDER / INVOCATION / ROLL CALL:**

Chairman Frailey called the meeting to order at 3:05 P.M. Councilman Johnson gave invocation. Roll was called and a quorum was established.

**APPROVAL OF MINUTES:**

Councilman Baker made a motion to approve the minutes of the August 19th regular session. Councilman Garvin seconded the motion. Motion carried.

Councilman Baker made a motion to approve the minutes of the August 16th Rules Sub-Committee session. Council member Cowan seconded the motion. Motion carried.

Councilman Martin made a motion to amend the agenda to consider an item under new business as item #5, Authorizing a Limited Waiver of Sovereign Immunity for a lease-purchase agreement on a dozer. Council member Cowan seconded the motion. Motion carried.

**REPORTS:**

Marshal Service: Sharon Wright was not present to give report.

Justice Department: Diane Hammons stated she had sent over a request for proposal for the statute codification for the council review and that the regulator semi docket will begin tomorrow.

Election Commission: No one present to give report and no written report was provided.

Tax Commission: Fonda Gritts announced the physically handicapped tags will go on sale Monday. She reported motor vehicle registration revenue at 17,370, boat and motor at 699, and the citizen tag revenue at 1,126. Total revenue is $14,097,015. They have received three retail sales applications, one from CNE in Tahlequah, CNE for the Cherokee Trails Golf Course, and one in Webbers Falls. The total revenue for tobacco tax for FY '04 is 2,000,208.00 and the total Cherokee Nation revenue is $7,602,881.00.

Self-Governance: Vickie Hanvey reported the self-governance workshop will be rescheduled. The office of special trustees has requested a self-governance workshop to be put on for their staff. November 8-12 will be the self-governance conference in Seattle, Washington.

Gaming Commission: Jamie Hummingbird was not present to give report.

**OLD BUSINESS:**

A Legislative Act Creating Grand Procedures; Duties and Responsibilities of the Grand Jury. Todd Hembree stated this Act has been in front of this committee for the past thirty days and the purpose of this Act is to establish procedures for empanelling Grand Jury with the Cherokee Nation. Councilman Baker moved for the approval of this Act. Council member O'Leary seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Absent | Bill John Baker | Yea |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Nay | Chuck Hoskin | Yea |
| William G. Bill Johnson | Nay | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Nay |
| Melvina Shotpouch | Absent | David Thornton, Sr. | Absent |
| Phyllis Yargee | Absent | | |

Motion for approval failed with a vote of five (5) yeas; and six (6) nays.

A Legislative Act Amending Duties and Responsibilities of the Office of Attorney General. This purpose of this Act is to amend the duties and responsibilities of the Office of Attorney General. Councilman Baker moved for the approval of this Act. Council member O'Leary seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Absent | Bill John Baker | Yea |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Nay | Chuck Hoskin | Yea |
| William G. Bill Johnson | Nay | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Nay |
| Melvina Shotpouch | Absent | David Thornton, Sr. | Absent |
| Phyllis Yargee | Absent | | |

Motion for approval failed with a vote of five (5) yeas; and six (6) nays.

**NEW BUSINESS:**

Uniform Certificate of Title Act. Diane Hammons stated Paula Holder and John Parris have worked on this Act and due to their absence today she would ask that it be tabled to next months meeting. Councilman Martin moved to table this Act to the October Rules meeting. Council member Cowan seconded the motion. Motion carried.

Approval of Attorney Fees from Arkansas Riverbed Settlement Funds. Julian Fite stated there was a Resolution forwarded to the Council for approval of a recommendation by Chief Smith of a certain list of attorney fees so that he could forward them to the Bureau of Indian Affairs for payment process pursuant to the federal legislation in the settlement of the Arkansas Riverbed Legislation that occurred in November of 2002. It is his understanding that one of the law firms has hired Mr. Keen and another local attorney to represent them and that they want to come to try and convince this Council that they

should get $1.5 ml instead of the amount recommended. He would suggest a couple of things to the Council. 1) It has taken him literally hundreds of hours to go through all the information, contracts, billings, arguments, and history of this matter. It stretches from 1980's up through 2002 with numerous law firms involved. If the Patton-Boggs Firm is allowed to come and make their argument, then the Council would need to invite all the firms. The issues, history, and facts are not simple and he would suggest that this Council would be hard pressed to ever be able to spend the time to begin to understand these matters. 2) If this firm wants to challenge the executive decision that the Chief has asked the Council to approve, then they can challenge at the Bureau of Indian Affairs level and bring action in Federal Court or use the Tribal Court. But this Council is not a court and all the Council will be hearing would be arguments on who should get what amount of money. He feels that it would be frustrating and purely a waste of time because there are other forums to approach if they have a bone to pick.

Ralph Keen stated he and Jeff Jones have been contacted by Patton-Boggs and retained by this law firm to assist them in presenting this claim before the Tribal Council. This is a result of two years of the Cherokee Nation Administration attempting to determine how these fees should be paid out. They admit there are a number of firms involved in this and there is not enough money to satisfy all of the claims. There has been $2 ml dollars allocated through the federal settlement to be paid to attorneys as approved by the Cherokee Nation. He respectfully disagrees with Mr. Fite when he says that the issues are too complex for this body to hear. This body has a responsibility to hear these issues because the BIA is going to be cutting checks based upon what this body determines. There are other forums available, but are those the types of forums we want this to wind up in is the question. Would Cherokee Nation prefer the Tribal Council try to resolve these issues or would they rather fight this out in federal court? Patton-Boggs would much rather present its claim to this Council as they have a solid legal claim based upon a binding contract signed by Chief Wilma Mankiller in 1989 and it was approved by the BIA and as far as the firm is concerned this is just a simple matter of contract law. The Cherokee Nation is either going to honor the contract or not. With respect to Mr. Fites recommendation they would have no objections to the other firms being invited to present their claims. They certainly do have a problem and do take objection to the amount of money the firm would be receiving under the Administrations proposed resolution and they would like to have the opportunity and a forum to discuss this issue with the Council.

Todd Hembree stated he agrees with Mr. Keen that he has faith in this body to obtain information to make a wise decision. He would recommend to adjourn this meeting, call a special meeting for this purpose only, invite all firms, Mr. Wilcoxen, Patton-Boggs, and Mr. Fite to give a short timed presentation and answer questions for this body to process its do diligence and make the most informed decision on these attorney fees.

Councilman Hoskin made a motion to table this item to set aside a special meeting to hear these issues. Councilman Crittenden seconded the motion.

Councilman Hoskin asked Mr. Fite if he was aware of anyone else that has reviewed these proposed fees outside of the Cherokee Nation. Mr. Fite stated yes. Councilman Hoskin asked if that person(s) should be here. Mr. Fite stated he would have to discuss that with Chief Smith. Pursuant to the complaints of Mr. Reeder, the Chief agreed to

have all materials reviewed by an independent law firm that has never done work for the Cherokee Nation. He would have to discuss with the Chief whether or not he would want those individuals present or not. The identity of the firm has not been revealed for the reason that Cherokee Nation did not want them approached by the other firms. Councilman Hoskin stated the Council should have an opportunity to ask questions of those individuals. Chair Frailey asked Mr. Hembree to coordinate a date that all firms to could be present. Chair Frailey stated it has been moved and seconded that this item be tabled until a date is set by Mr. Hembree for the special meeting. Motion carried.

Election Commission. Chair Frailey asked if there were any other community forums scheduled to be held or that want to be held before this is all finalized. Councilman Hoskin stated he would like to schedule another community forum. He has not set a date but he will let her know. Todd Hembree reminded the Council that they have a vacant election commission and he would encourage the Council to consider nominees for their two slots are chosen in the near future because of the election forum becoming due. Councilman Martin stated he would like to set a date for the Council to submit names. Chair Frailey stated she would like to set an election sub-committee meeting first before everything is presented. Todd Hembree recommended soliciting resumes that would be brought forward at the next Rules meeting then interview individuals in person and selects the Council's two seats at the next month meeting. Councilman Baker would like to be able to submit nominations from the floor before the final day. Council member Cowan would like to set up criteria for nominations. Councilman Garvin made a motion to bring nominees to the October Rules meeting, interview them at the November Rules meeting and if someone is found interim they can be put in the process and elect the two nominees at the December Rules meeting. Councilman Baker seconded the motion. Motion carried.

Codification. Diane Hammons stated that she has had some discussions with Mr. Hembree on hiring an outside person to put together the different cd's and different accumulations of statutes to get one clean batch. The statute books have not been updated since 1994. The sub-committee had discussed sending an RFP out and she has provided the committee with a draft request for proposal. She does not feel like the person would have to be a lawyer, a paralegal could probably do it. She feels the expected hours for the project would from 25-80 hours. Councilman Baker asked if the Council would be hiring the person and the Executive Branch would furnish the money. Diane stated what was talked about was that the Government Resources and Law & Justice would split the cost for hiring that outside person. She feels $10 - $15,000 would be plenty for the project. Councilman Martin asked what procedure a person would go through in applying for this position. Diane stated if a request for proposal was submitted and sent out asking people to send in their proposals then the Council would determine which one is the best. Maybe Becky Mitchell's department could assist the Council in getting a RFP published and distributed, if needed. They had suggested Faye Teague, just because she does not work full time and has the experience. Council member Cowan made the motion to have the Executive Branch do the RFP and go through Cherokee Nation procurement processes and guidelines. Councilman Baker asked if the motion is to let Administration do it, or do you want them to do the leg work and Meredith be named the contact person. Council member Cowan stated she would like to keep the executing part to the executive branch and the Council allocate the money and make the requirements around it as a Legislative Branch. Councilman Baker stated he would

rather the Executive Branch allocate the money and let the Council execute the process. Diane Hammons stated they had initially proposed to do all of it. Councilman Garvin seconded the motion. Council member Conner asked Councilman Baker what the Council's part would be to process this the way he suggested. Councilman Baker stated the Council would advertise for this position and Meredith is more than able as the Chairman and Attorney to handle it. This is a legislative function by law of the Cherokee Nation and why would the Council give a legislative function out to Administration when it is the Council's function. Council member Cowan stated if that was a consistent thought process then we would not have removed the line item from the budget a year ago that allows the legislative tracking and codification through that software. She is struggling with that as a reason why the Legislative Branch should be doing day to day business for the Cherokee Nation. Chair called for the question. The question could not be called due to a lack of quorum.

**ADJOURNMENT:**

Meeting recessed due to a lack of quorum.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________

Minutes attested and concurred by: Meredith A. Frailey

Date: ______________

**RULES COMMITTEE - SPECIAL**
**LEGISLATIVE CONFERENCE ROOM**
**October 20, 2004**
**1:05 P.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey | Chuck Hoskin | Cara Cowan |
| Melvina Shotpouch | David Thornton, Sr. | Phylllis Yargee* |
| Bill John Baker | S. Joe Crittenden | Jackie Bob Martin |
| Melvina Shotpouch | Linda O'Leary | |

*Entered meeting after roll call.

**COMMITTEE MEMBERS ABSENT:**

| | | |
|---|---|---|
| Buel Anglen | Audra Smoke-Conner | John F. Keener |
| William "Bill" Johnson | | |

**STAFF PRESENT:**

| | | |
|---|---|---|
| Melanie Knight | Doug Evans | Vickie Hanvey |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Jim Wilcoxen | Charles Dry |
| Ralph Keen | Kate Boyce | Joe Reeder |
| Alan Foster | Nathan Young | Joe Membreno |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** No

**MINUTES:** See Attached

**Ex. 24**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE - SPECIAL**
**LEGISLATIVE CONFERENCE ROOM**
**October 20, 2004**
**1:05 P.M.**

**CALL TO ORDER / INVOCATION / ROLL CALL:**

Chairman Frailey called the meeting to order at 1:05 P.M. Council member Shotpouch gave invocation. Roll was called and a quorum was established.

**Arkansas Riverbed Settlement Attorney Fees**

Chair Frailey stated the purpose of this meeting is to discuss the attorney fee arrangement on the Arkansas Riverbed Settlement and the discussion will begin with Todd Hembree giving a brief overview. Each law firm will have 15 minutes to present the merits of their claim.

1. Overview: Todd Hembree stated in 1966 the Indian Nations filed a claim to assert their ownership of the Arkansas Riverbed and this cultimated into the 1970 supreme court case, "Choctaw Nation versus Oklahoma", which the Supreme Court gave the Indian Nations title. In 1987 the case of the United States versus Cherokee Nation stated the riverbed ownership did not exempt the Federal Government from their navigational servitude. On September 8, 1988 Chief Wilma Mankiller through the Council of the Cherokee Nation entered into a contract with Jim Wilcoxen and Mr. Niebell to pursue claims that were authorized by an act of Congress. This contract authorized Mr. Wilcoxen to hire other attorneys to assist him and he engaged the Hall, Estill Law Firm. This was for a contingency contract of 10% upon the riverbed settlement. The case number filed under this contract was #88-1112, that went through the appellate court and was ultimately denied by the United States Supreme Court. On April 17, 1989, under Chief Mankiller, Cherokee Nation by confirmation of the Tribal Council entered into a contract with Patton, Bogg Law Firm to prosecute the mismanagement claims that of the resources of Cherokee Nation regarding the Arkansas Riverbed. This contract provided a monthly retainer fee of $5000.00 to basically pay against a 10% contingency fee. There was some $400,000 paid under this contract. Councilman Hoskin asked if the payment made was a portion of the 10% contingency fee or was it outside the contingency fee. Todd Hembree stated what the contract called for was that they receive a contingency fee of up to 10% less any attorney fees paid. Patton,Boggs at this time is claiming $1.5 ml. which is the remainder of $2 ml. less what has been already been paid. The ultimate case number filed is #218-89L. Litigation continued and attempts were been made for legislative settlement. Eventually now with the help of all attorneys here today, that settlement has been reached. This will result in an amount of $20 ml. dollars for the Cherokee Nation. In the legislative settlement, which took place in December 13, 2004 the outstanding claim that was cited was case #218-89L which is the mismanagement claim. Also, under the legislative settlement 10% is reserved for attorney fees. Under section 607, the BIA asks for a Resolution to confirm the expenditure of how those attorney fees would be paid out. On October 24, 2003 Julian Fite issued a memorandum outlining Administrations suggestions on how the fees should be apportioned. The apportion for Wilcoxen is $400,000 under their contract plus $150,000 bonus, the Niebell estate apportion is $100,000, Hall & Estill apportion amount is $280,524.57, and the recommended apportion to Patton Boggs is $126,000 plus a $25,000 performance bonus in their assistance to get the legislative settlement passed through Congress for a total amount of payments at

$1,106,524.57. Patton Boggs claims $1,596,041, which is 10% of the $20 million less the fees that have already been paid by Cherokee Nation.

2. Overview of Research Findings: Julian Fite stated the Wilcoxen and Niebell contract was signed in 1988. Mr. Niebell died in 1994 and the portion of the fees that Administration recommends will be paid to his widow. Since 1988 Wilcoxen, Niebell, and the Hall Estill Firm have not been paid any money on this matter. They were instrumental in the final resolution with Congress and that is the basis of Administrations recommendation on their portion. Patton Boggs had a separate contract executed by Chief Mankiller and it was his understanding that in 1994 there was a major motion put on to resolve this matter by settlement by legislation. In 1995 under Chief Byrd's Administration for a period of time Patton Boggs stayed involved in the case and at some point in the spring of 1997 Chief Byrd terminated the contract with Patton Boggs and hired the Swidler Berlin Law Firm. Their contract was terminated in 1999 and at that point the litigation was picked up by Jim Wilcoxen and the Hall Estill Firm. They proceeded along with negotiations with the BIA, the Justice Department, and Congress resulting in the final resolution in the latter part of 2002. Todd Hembree has outlined the provisions in that Act concerning attorney fees, from that $20 ml. dollars a maximum of $2 ml. can be paid out. The legislation states provided an individual tribal attorney fee contracts as approved by the respective Indian Nations. Pursuant to the legislation another10% was set aside for claims by any other Indian Tribes, which was specifically designed to allow the United Keetoowah Band to assert their claims to Cherokee land. Should they prevail in their lawsuit they would take another $2 ml. away and then the maximum attorney fees would be $1.8 ml. dollars. There was a monthly payment in the Patton Boggs contract that provided for $5000.00 a month to be paid for work done under that contract and they also had another contract for companion lobbying services. They were paid roughly $400,000 dollars from 1989 to 1997 on the attorney fee contract and roughly another $600,000 on the lobbying contract. That was $8000 a month and upon his examination of all the records and included in a letter from Kate Boyce stating that there was an unbilled amount of attorney fees in the amount of $126,000, that is where he got the figure that is now being challenged. His thinking on this issue which has been endorsed by Chief Smith and now by David Riggs of the Riggs Firm in Tulsa is that when Chief Byrd terminated the services of Patton Boggs in 1997 it severed the relationship. Patton Boggs Firm did not come to this Council and did not file a protest with BIA. Furthermore, no further work was performed on the case after April of 1997. In the fall of 2002 Wilma Mankiller spoke with Kate Boyce and Joe Reeder and asked if they could assist in getting Senator Inhoffe not to block the bill. It was done with the knowledge of Chief Smith although Cherokee Nation did not hire them to do it or offer to pay them to do it. He also states in his memo that none of the lawsuits were ever won. Neither of the firms won the law suit, it was a congressional resolution.

Councilman Hoskin stated it was requested through Todd Hembree for the work product of Mr. Riggs. What was examined and what his official findings were? Mr. Fite stated Mr. Riggs was hired on an attorney/client relationship with the Nation and his product was considered confidential from the beginning and attorney/client communications are protected under Cherokee law also. Councilman Hoskin asked Mr. Fite if he thought it to be just as important for the Council to see the work product as it would be for a court to see it in order to make a decision. Mr. Fite stated he is not given the job or duty to represent or protect the Cherokee Nation. He is not challenging this, the Patton Boggs Firm is. Mr. Riggs has specifically asked that this not be revealed and it was understood from the beginning that this

would not be revealed and he doesn't know why it is so essential for the Council to look at it. Councilman Hoskin stated for the reason that the Council needs all the facts to make the most intelligent decision that they can. He would just like to see what he was given and what he produced because after all he assumes Cherokee Nation paid for his services and he feels the purpose of this meeting today is to try to come to a resolution where Cherokee Nation won't have to go to court. Mr. Fite stated that he very respectfully disagrees and thinks that actions of this Council in going into this matter are more likely to prompt litigation. Councilman Hoskin asked Mr. Fite if he felt that it is the responsibility of the Council to be involved in a matter that is going to cost the Cherokee Nation in excess of $1 ml. dollars. Mr. Fite stated the Nation is in the midst of plenty of litigation and he doesn't know that this Council is in a position to resolve any of it. He wants the Council to be concerned and he will tell the Council anything they want to know. Councilman Hoskin stated it would seem the Cherokee Nation Council would be an instrumental part in determining a decision on behalf of the Cherokee people.

Councilman Baker asked Mr. Hembree where in the Constitution it states that the Chief and his lead counsel are the Cherokee Nation. Mr. Hembree stated the constitution does not state that. He stated the Administration has brought this resolution to the Council for consideration and the BIA has asked for a Council resolution to endorse this settlement before it was voted for in Congress. The Council is the governing body of the Cherokee Nation and it is very important and appropriate for this Council to consider this action. The specific information that he requested from Mr. Fite's office was: 1) the identity of the outside law firm used to review the Riverbed fee division; 2) a copy of all information given to the outside law firm for their review; 3) A copy of their written recommendations or explanation; 4) a copy of any documents used in the Administration's determination of the fees. If this Council does not know who the third party was and what they reviewed and what was their findings then it would be hard to put a lot of state in that independent third party review. If this is to be the selling point in this matter then the Council is entitled to know what that information is and it is a matter of great importance to the Nation that is well over $1 ml. dollars. He also stated under the FOIA Act the Council can request those items and under the subpoena power of the Council that was passed during the last legislative session the Council can take those actions. Under the Governmental Open Records Act the Council itself cannot be shielded from any document. Mr. Fite stated he begged to differ with Mr. Hembree because he has reviewed those pieces of legislation and both of them provide for non-revealing of attorney/client privilege materials. Councilman Baker made a motion to subpoena the report and work product from Mr. Riggs and all the documents that were furnished by Cherokee Nation for his study and review and to authorize Todd Hembree to ascertain those documents through any act of the Cherokee Nation in the most expedient fashion. Councilman Hoskin seconded the motion. Motion carried with Council member Cowan abstaining.

3. Introduction of Patton Boggs Representatives: Ralph Keen introduced Alan Foster, who is a current partner of the Patton Boggs firm and Kate Boyce and Joe Reeder who are past partners but were the actual attorneys that worked and labored on the Riverbed litigation. He stated over fifteen years ago in 1989 Principal Chief Wilma Mankiller approved with the Tribal Council and the BIA a contract to hire the nationally renowned law firm of Patton Boggs to bring legal action in the U.S. Claims Court for the first time ever a claim of mismanagement of tribal assets against the BIA. Patton Boggs is one of the two top lobbying law firms in Washington, DC. In the fall of 2002 with the help of Patton Boggs the

litigation was settled with federally legislated relief for the Tribe in the matter of $20 ml. dollars. Oklahoma law allows a contingency fee up to 50% and that usually involves cases that don't extend more than two to three years. In this case the Patton Boggs firm contracted for a rate of 10% and that case now has extended for fifteen years. Patton Boggs entered into a contract in good faith with Cherokee Nation to litigate the Riverbed claim and the question today is whether or not Cherokee Nation is going to honor the contract that they signed in 1989. The contract states Patton Boggs can only be terminated for cause and it also required the approval of the BIA before the termination would be effective. This clause was put in there to protect the law firm from being arbitrarily dismissed or fired. The termination was not performed as required by the contract and even though they were taken off the case is still fully enforceable for their fees.

4. Patton Boggs Claim: Kate Boyce stated Chief Mankiller retained Patton Boggs to look at a legislative agenda for Cherokee Nation in Washington, DC and the main concern was the Arkansas Riverbed. They lobbied for and secured a total of $3 ml. dollars for cadastral surveying of the Arkansas Riverbed boundaries. They developed and litigated the only viable legal theory that secured federal compensation for losses stemming from the mismanagement of the Cherokees' Arkansas riverbed trust assets and they entered into a separate contract to pursue this litigation to keep it set apart from the legislative work they were doing.

Joe Reeder stated that the statement made by Julian Fite that Jim Wilcoxen was there from the beginning is incorrect as it relates to the contract. He has been there from the beginning in cases that were filed such as the "takings" and "fair dealings' case. These cases were litigated to their end and he was specifically called in by Chief Mankiller to review these cases and recommended the theory of mismanagement. Mr. Wilcoxen did make an appearance in the mismanagement case on September 14, 1999 more than ten years after the case was filed. Mr. Fite states there was overlap and there is absolutely no overlap whatsoever. There is a written contract for fees and the total fees paid were $649,000 over a period of eight years and the appropriations for the Cherokee Nation during that time were over $17 ml. that identified the project not counting the $1 ml. dollars a year that the Nation gets every year and have since they got the tax to read that the benefits go the Cherokee Nation. They are not looking to litigate anything; they are here for a fair resolution.

Alan Foster stated the ten percent clause in the contract states the Cherokee Nation and the Attorneys recognize the Attorneys would provide many more legal services than the amount of $5000 a month and therefore that was an amount to be paid against a 10% contingency should they recover anything. It also states any amount is recoverable through litigation or legislative process. It was always contemplated that the legislative process might be the way that this matter would ultimately be resolved. On page 2 of the contract it states that said Attorneys will pursue as their top priority either through the litigation processes or complementary legislative efforts, a resolution by way of settlement. The termination clause states this contract may be terminated by the Cherokee Nation with the consent of the Tribal Council of the Cherokee Nation for cause deemed by the Bureau of Indian Affairs to be reasonable and satisfactory. There was never such determination by the Tribal Council or the Bureau of Indian Affairs. On April 18, 1996 he wrote a letter to Chief Byrd and stated that Patton Boggs contract with the Nation in connection with the litigation extends to July 2, 1997 and their contingent interest in the proceeds continues through to the conclusion of the dispute and is cancelable only "for cause". As there has never been any indication that any

"cause" for cancellation exists, they will begin preparation of their brief immediately. He was then written by Mr. Wilcoxen who said not to do anything and do not file any briefs and this is the only reason they stopped working on the case. They are here to be treated fairly and they need to get what they have invested in this case.

Councilman Hoskin moved for a five minute break. Councilman Crittenden seconded the motion. Motion carried. A five minute break was taken at 2:30 p.m.

5. Wilcoxen Contract: Jim Wilcoxen stated when the Supreme Court ruled in 1970 when the Tribes owned the banks of the Arkansas River whether well documented or not from that day forward there has been a considerable and continuing effort to gain some just compensation for these tribes in Washington. He came on board in 1985 and action was pending in the Federal District Court in Muskogee. As a young lawyer having the specter and opportunity to go to the U.S. Supreme Court was quite an opportunity. The court ruled that navigational servitude barred their claim for recovery of damages. Patton Boggs was alleviated of their duties wisely or unwisely by the Byrd administration and they left the litigation and their contract by its own terms expired in July of 1997. He stated everyone present today had a hand in resolving this matter and he wants to see everyone get a fair shake and they do not dispute Administrations assessment of their fees but their fees are recommended well below their 10% contract. His total billed amount was $600,000 but it has been cut to $550,000.

6. BIA Status of Settlement Funds: Melanie Knight reported in terms of the appropriations authorized under the Act it was to be $10 ml. dollars for all three tribes for each of four years starting with fiscal year 2004. The Cherokee Nations allocation of that was 50%, so it would be $5 ml. each year for four years starting with fiscal year 2004. What occurred in 2004 was that the President in his budget requested $10 ml. dollars, however; in the congressional process through appropriations there was an across the board cut of certain percent. The cut that came out of the FY '04 appropriations amounted to $65,000. The amount that actually came out of appropriations in 2004 was $9.935 ml. dollars and it was put into a single account and they requested that this amount be broken out to the three tribes according to the Act and the set aside for the UKB claim. 50% of the $9.935 ml. dollars has been separated into an account for Cherokee Nation and also at the same time set up the special reserve account for the UKB claim of 10% ($496,000) of the Nations allocation. The balance of the Nation's allocation is $4,470,750. They have gone over what the Act provides in regards to attorney fees. It is limited to a total of 10% which would be $447,075. At this time fiscal year '04 has not been appropriated and fiscal year '05 appropriations are not finalized. This is what they have as a limitation on what can be spent on attorney fees. They have claims that are well above and beyond and the way they have structured the Resolution is that those will be paid on a prorate basis until the total funds are appropriated and allocated to the Nation.

7. Resolution for Payment of Attorney Fees: Julian Fite stated the resolution began as a standard recommendation from the Chief for approval by Council to get the ball rolling on resolving this matter in Washington. Issues have come up and he will attempt to work with Todd Hembree with appropriate confidentiality provisions for the Council to review the information from Mr. Reeder. He did not feel it was necessary or appropriate but obviously the Council feels that it is a big deal. He suggests that maybe the Council would want to defer action until this is resolved and the Council gets a chance to look at the documents.

Councilman Baker made a motion to table any action on this item until such time the Council receives the requested information for review. Councilman Martin seconded the motion. Motion carried.

**ADJOURNMENT:**

Councilman Baker moved for adjournment. Councilman Crittenden seconded the motion. Motion carried. Meeting adjourned at 3:15 p.m.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________

Minutes attested and concurred by: Meredith A. Frailey

Date: ______________________

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**November 18, 2004**
**3:20 P.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey* | Don Garvin | William "Bill" Johnson |
| Audra Smoke-Conner | Cara Cowan | Jackie Bob Martin |
| ~~Bill John Baker~~ | ~~S. Joe Crittenden~~ | ~~David Thornton, Sr.~~ |
| Chuck Hoskin | Linda O'Leary | Buel Anglen |
| Melvina Shotpouch | | |

* Entered meeting after roll call.

**COMMITTEE MEMBERS ABSENT:**

| | |
|---|---|
| John F. Keener | Phyllis Yargee |

**STAFF PRESENT:**

| | | |
|---|---|---|
| Melanie Knight | Paula Holder | Sharon Wright |
| Brian Pollard | Diane Hammons | Doug Evans |
| Shay Smith | | |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Raymond Vann | David Cornsilk |
| Lisa Melchoir | Nason Morton | |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** Yes

**MINUTES:** See Attached

**Ex. 25**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**November 18, 2004**
**3:20 P.M.**

**CALL TO ORDER / INVOCATION / ROLL CALL:**

Chair Crittenden called the meeting to order at 3:20 P.M. Council member Shotpouch gave invocation. Roll was called and a quorum was established.

**APPROVAL OF MINUTES:**

Councilman Baker made a motion to approve the minutes of the October 14th regular session, the October 11th Rules Sub-Committee session, and the October 20th special session. Councilman Thornton seconded the motion. Motion carried.

Councilman Thornton made a motion to amend the agenda to bring resumes forward for the election commission. Councilman Garvin seconded the motion. Motion carried. Council member Cowan offered a friendly amendment to add the nominations for the advisory board member roles per legislation to CNE, CNI, and CNB. Councilman Martin offered a friendly amendment to move the nomination of Richard Stark as a board member of the Economic Development Trust Authority Board of Directors to the first item on the agenda. Councilman Thornton accepted friendly amendments. Councilman Garvin seconded the amendments. Motion carried.

A Resolution Confirming the Nomination of Richard R. Stark as a Board Member of the Economic Development Trust Authority Board of Directors. Melanie Knight stated Mr. Stark has extensive experience in banking and he would be an asset to the Economic Trust Authority. Mr. Stark stated he is a graduate from Oklahoma State University and started his banking career in Muskogee with the Commercial Bank Trust. He is currently with First Priority Bank and he operates a branch in Tulsa. He has extensive backgrounds in commercial and state loans. Councilman Garvin moved for the approval of the resolution confirming the nomination of Richard R. Stark as a board member of the Economic Development Trust Authority Board of Directors and forward to full council on December 13th. Councilman Johnson seconded the motion. Motion carried with Council member Shotpouch opposing.

**ELECTION COMMISSION RESUMES:**

Raymond Vann – Council member Conner spoke on behalf of Mr. Vann and commented that Mr. Vann has been involved in Cherokee Nation activities for many years. She feels he has a passion for the Cherokee people and is very knowledgeable in Cherokee issues. He served on the last election commission and she asked for the Council's support to place Mr. Vann back on the election commission. She believes experience is a valuable thing and he is a bonafied Cherokee who is ready to step up and do the work.

Edwin L. Martin – Councilman Thornton spoke on behalf of Mr. Martin and commented that Mr. Martin is very active in the community. He has served as the election board secretary for Sequoyah County in 1987. Mr. Martin stated he is from Sallisaw and is in

the nursing home industry. He also operates several juvenile facilities in the state of Oklahoma. He has been involved in all types of politics on one level or another. He was nominated by the Senator from LeFlore County, Larry Dickerson to be the election board secretary of Sequoyah County and served three years until he chose to retire. He implemented the computerized election system. He has read the election rules and the constitution of Cherokee Nation and he is very supportive of the Cherokee Nation.

Maxine P. Harris – Councilman Thornton spoke on behalf of Ms. Harris and commented that Ms. Harris is a retired school teacher and is a tribal member. She has always been active in tribal elections and issues.

Rick Doherty – Councilman Martin spoke on behalf of Mr. Doherty and commented that Mr. Doherty has been a lifelong resident of Stilwell and is very active in the community. Mr. Doherty stated he graduated from Stilwell High School in 1979, married, has two children and two step-children. He is active in the Baptist Church and has served in various positions on the Finance Committee, Chairman of the Administrative Council Board of Trustees, a substitute mail carrier for six years, and full time mail carrier for sixteen years. He has presently operated a bail bond business in Stilwell for the past thirteen years. He has been active in all phases of politics from the City Council elections to other civic organizations. He is a member of the Cherokee Nation. He feels this is a position that he would be interested in and he would have the time to give it a good effort and be able to put the time into it that was needed. He works with the Sallisaw Bondsman and has other associates that would be able to cover his area.

Lisa Melchoir – Ms. Melchoir stated she is a mother of two teenage boys and resides in Pryor, Oklahoma. She is employed with the Mayes County Assessor's Office and has eight years of banking experience with the City of Owasso. She is a member of the Cherokee Nation. She has started an organization called the Saline Preservation Association to preserve the Saline Courthouse. She does have a concern of time if it requires eight hours during the day because of her full time job requiring her to be there from 9:00 to 5:00. She is a busy person but she will work hard and is very dedicated. Council member Cowan commented that Ms. Melchoir is a person busy by choice and she feels that Ms. Melchoir would take the position very seriously.

Chair Crittenden stated the selection for the Election Commission will be made next month at the December regular meeting.

Council member Cowan made a motion to hear the Justice Department's report first due to Sharon Wright stepping out of the meeting to take care of marshal business. Council member Conner seconded the motion. Motion carried.

**REPORTS:**

Justice Department: Diane Hammons reported they are moving to a new office space which is located where and previously occupied by the Payroll Department. They have hired two new attorneys, Nason Morton, from Stilwell, a tribal member and whose mother previously served on the Tribal Council. He has a lot of experience and will be an asset to the department. The other attorney is in court and will be present at the next meeting. The Delaware decision was handed down yesterday and it is a very good

decision for the Cherokee Nation and it reiterates that Administrative Agencies as Departments of the United States have to follow their own rules and can't make the rules up as they go along, nor can they ignore the President of the United States Supreme Court. She went to Rogers County yesterday to meet with officials of Indian Child Welfare to discuss the concern of the tribal custody children for the angel tree. There are approximately seventy children in custody and there are about twenty-nine people who have offered to sponsor an angel. Councilman Baker stated the Council approved $75.00 per child to go to the Executive & Finance Committee. She thanked the Council for their generous donation.

Marshal Service: Sharon Wright stated they had a couple of people from their office enter the Halloween contest and they won third place. They participated in the trunk for treat in Stilwell. They participated during Red Ribbon Week at Kenwood School, Greenwood School, and did a presentation at the complex. They also held meth presentations at five other communities including Sequoyah High School. They had two marshals attend gang seminar training and another marshal attend drug court system training. They had three lab busts last month, two in Cherokee county, one in Adair County, and they seized 175 marijuana plants in Delaware County. They had a report of robbery at a Tulsa Smoke Shop involving three black males and they are in the process of identifying them through the gang task force in Tulsa so they may get them on the crime stoppers. They have had three sexual assaults within the past week. One of the sexual assaults has a tribal and federal warrant for the arrest of that individual. They had a robbery at the Outpost this past week. They have narrowed that robbery down to three suspects and they will be requesting a warrant for the robbery. They made an arrest of a federal warrant on the sexual assault that occurred in White Oak three months ago. They have a meeting today at 2:00 p.m. on the cross deputization in Rogers county. They have started their program of trying to do their concentrated efforts in the four areas which are Bell, Cherry Tree, Kenwood, and Cherokee Heights. They have begun patrols this month.

Election Commission: No one present to give report. A written report was not provided.

Tax Commission: Paula Holder reported the tax commission has collected $1 ml. this fiscal year. They have sold 2380 tags this fiscal year for a total of 61,248 tags. The Tribal Motor Vehicle program has collected over $15 million dollars. The Tax Commission quarterly meeting is scheduled for December 8th at 5:30 p.m. Meeting issues on the agenda include the discussion on the passage of State Question 713 and the status of the compact. Councilman Hoskin stated when the Council passed the 100% disabled tags the Council debated on who should qualify. He feels in a situation where there is a 100% disabled citizen they should be entitled to a tag. The requirements to have their car altered still does not change the fact that these folks are 100% disabled and he feels that the Council should revisit that decision and they could change that to meet whatever requirement it is to be 100% disabled. He would like the Council to consider doing that and he is not asking for a vote as this time but he would like to see it on the agenda. Paula Holder stated if the Chairman would like to place it on the next agenda she could prepare the numbers and impact to the revenue and the details of the physically disabled tags to help the Council with their decision. Chair Crittenden stated the 100% disability tag requirements will be placed on the agenda for the December 16th Rules

meeting. Council member Cowan requested Ms. Holder to provide a clear definition of what 100% disabled is. Paula stated she will bring the legislation and provide the Council with a packet.

Self-Governance: Melanie Knight commented on the Delaware case and stated there are two deadlines now that will happen. Within ten days of the decision the Delaware's can appeal to have the 10th Circuit Court to hear the case. If they do not make that appeal they can appeal to the Supreme Court within ninety days. The Administration feels very positive about the Supreme Court Case hearing they attended last week. The timeline on the decision will be about February or March. The commitment from the Interior on the Constitution approval was that after the election of November 2nd they would give the Tribe the favorable decision on the constitution. They will be following up with a letter from the Chief as well as phone calls and or meetings to the Chief to make sure to get a yes or no decision from them. The Government responded to the United Keetoowah Band Gaming Case. They made their response brief and have filed it so that is available. They have written a recent letter of the Roads Compact being in arrears by $4.6 ml in terms of paying timely. It has been due for a long period of time and with the letter going forward that money has since been paid. Another issue in the letter was that the payment process is really inadequate and they are reporting incorrect information of federal highways and all sorts of things. They are now looking at their payment process and addressing that issue. They also owe the Tribe interest on the $4.6 million and the Tribe will be pursing that as they move forward.

Gaming Commission: Jamie Hummingbird was not present to give report.

**NEW BUSINESS:**

A Resolution Approving the Recommendations of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund, and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs. Todd Hembree stated the confidential attorney billing records have been in the Council House office and under the terms of the confidentiality agreement they are to remain in the Council House for 21 days to give the Councilors ample time to come in on their own to review them. He will also be preparing a memo for the Councilors review. It would be premature to act on this issue until such time as the confidentiality agreement is met. Councilman Martin made a motion to table this item to next months meeting. Councilman Anglen seconded the motion. Motion carried.

An Act Amending Legislative Act #19-00, "Establishing a Free and Independent Press for the Cherokee Nation", Deleting Items and Making Technical Corrections. Melanie Knight stated this is in response to a request by the Editorial Board to change the qualifications for the Editor for the Press and note in the Legislation on page 2, section 8, item "A", to strike the requirements for a bachelors degree in journalism or a related field. Council member Cowan made a motion to accept the amended legislation. Councilman Johnson seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Meredith Frailey | Yea | S. Joe Crittenden | Nay |
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Smoke-Conner | Nay | Cara Cowan | Yea |

| | | | |
|---|---|---|---|
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William G. Bill Johnson | Yea | John F. Keener | Absent |
| Jackie Bob Martin | Yea | Linda O'Leary | Nay |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Nay |
| Phyllis Yargee | Absent | | |

Motion to accept the amended legislation failed with a vote of six (6) yeas; and seven (7) nays.

A Resolution Ratifying Intervention in Litigation in the United States Court of Federal Claims. Melanie Knight stated this legislation is in regards to the UKB claim on a portion of the settlement funds for the Arkansas Riverbed but also that they are a successor in interest to the Cherokee Nation which implies that they are at least in part entitled to other land of the Cherokee Nation and so because of the Government's lack of adequate defenses they have presented in the case as well as the far region impact of this case not only the possible $2 million actual funding but then the precedent that it would set if the case was lost for all the other assets of the Cherokee Nation. The Principal Chief has made a decision to intervene in the case and because he has moved to intervene they have a legislative act on the book that requires that they bring any such litigation to the Council for approval. She stated the resolution also includes any rights, titles, and interests in Cherokee Nation has and all of its assets. Todd Hembree stated that it would behoove the Cherokee Nation to intervene in this process. Council member Cowan moved for the approval of this resolution. Council member Frailey seconded the motion. Motion carried.

Legal Services for Tribal Council. Todd Hembree stated this item was placed on the agenda by Chair Frailey after she received a letter of inquiry from General Counsel Fite. He has spoken with Mr. Fite and the synopsis of the letter was that the resolution that allows each council $5000 in legal expense was passed sometime in the Byrd Administration and since then there have been many changes in the Council one of which they have hired a full time Counsel. The letter basically is an invitation to discuss the topic if the Council still wants the requirement. It is in the Council's FY'05 budget. Secondly, what if any policies or restrictions would be placed on the $5000 dollar requirement. He told Mr. Fite that he felt it would behoove the Council at this time to put this on the agenda for discussion only. The Council may discuss now or contact him later in formulating policies if any that they feel that are necessary for placing requirements on the $5000 attorney fees. Councilman Baker stated he was on the Council when this was passed and it was taken very seriously when it was passed. It is $5000 per Council person, it has no restrictions on it, and it gives each and every Council person the opportunity if they didn't agree with the rest of the Council to be able to get legal advice or sue the Council if that is what they deemed necessary. He voted to pass it on principal and not because he wanted to sue anyone. Council member Cowan recommends the Council set a legal fee and a standard per hour the same as what the Council pays for their Council Attorney, Todd Hembree. A maximum fee per hour and a requirement that they would have to have a memo from Todd Hembree that it could not be a case addressed by you as the Council's legal advisor. A work product needs to be delivered and the Council can no longer afford to pay retainers for two attorneys that do not deliver work products. The work product will need to be reviewed by Todd Hembree in order to retain attorney client privilege so that Todd Hembree know and understand the work

product delivered for the money. The money cannot be spent except for that particular Councilor and not spent on another person or another person's case and any other manner except for that Councilor that is involved and they have to be listed as a party to that suit. Council member O'Leary stated if these things are enacted she will be the first to file a lawsuit and she will be naming the Chief, Councilor Cowan, and Julian Fite. This Council is the legislative body and they have a right to legal advice and opinions. The Administrative office has eight (8) attorneys and here we are the Legislative Branch trying to put restrictions on the people's elected officials who represent Cherokee Nation. The Councilors do not need Todd Hembree's approval, nor do they need the approval of the Council. When each Councilor determines as a representative of the people that they need to ask a pertinent regarding legal situations then each Councilor should have the right to do so. What would be your reason Council member Cowan for taking that authority away from the Council or even suggesting that? Is it to tie the Council's hands or what? This is really serious and if this goes down, she guarantees as she sits today as a Council Representative for the Cherokee people, she will bring forth a suit against Administration, Julian Fite, and some of the Councilors. Council member Cowan commented first that Roberts Rules of Order asks that you don't address people in particularly and under that knowledge she has tried to address her own behavior that she don't particularly address any individual as an individual except for the Chair and anyone that is speaking. That is courtesy for Robert's Rules of Order. But since she has been addressed and the question has been pointed at her and asked publicly, she will answer it. If you as Cherokee tribal citizens who want to know where $5000 each of the $75,000 dollars a year go, she would question some of the expenditures of legal fees by some people even on this Tribal Council. It is extremely important that they as Council people remember their fiduciary responsibilities. There has to be some kind of rules and guidelines in order to expend money in a proper way with some kind of procedure and not just a blank check. They are elected officials and she appreciates the people who elected her and put her in this position. But it is not a position of power to be used for whatever she wants; it is a position that is to be scrutinized. With that said and taking into account earlier comments about legal is the need for privacy on certain issues in respect to the legal relationship that lawyers have and that is why she has put a lot of thought into this to put the Council's legal advisor, who is paid full time almost by the Cherokee Nation. The Council expends Cherokee people's money to have Mr. Hembree here as their full time advisor. There is not always a need and when this legislation was enacted there was not a full time advisor for the Council. The Council needs to put it upon themselves to reevaluate this and she has thought through those rules and has had them on her mind for awhile and she doesn't want to hamper the Council. There may be times that she brings suit upon the Council but she would like the thought that someone such as Todd Hembree or someone else in the Cherokee Nation procurement process makes sure that she was expending the people's money appropriately in some form or fashion. That is all she is asking, now if a person is doing something questionable they might not want to have anyone involved and that is her thought as a Council person and in this process. This is her personal opinion and that is probably how she will vote. Councilman Thornton stated he can primarily see having Todd Hembree as our lawyer but Todd has an opinion, Chief Smith has an opinion, therefore if he is involved in civil rights and Cherokee rights he may want to get an outside opinion and that is primarily the reason he wants to keep the attorney fees and he feels the Council members should have the right to go outside the Chiefs lawyers opinions and the Council's lawyer opinion. Sometimes he has asked Todd Hembree for an opinion and he could not give one because

he is involved in the lawsuit. Todd Hembree stated first of all there are going to be times when he is going to be wrong and there are going to be times when Julian Fite will be wrong. The existence of this fund is important. The rules cannot be completely untempered. There needs to be some rules and they should be very limited nor should they be a blank check. He suggested they have that in their deliberations whenever they contact him about setting up some type of rules. Chair Crittenden stated he agrees with several things that have been said and he does not feel that the $5000 is an issue. He feels that it is more of the parameters that are in question and he suggested in the absence of time that each Councilor individually contact Mr. Hembree and give him their thoughts and ideas and keep it limited. Councilman Hoskin stated he was also on the Council when this legislation was previously passed. He stated this is one of those decisions that each Councilor has to make outside of their own personalities. It is a decision that each Councilor has to make that if there was someone else sitting in their seats that was questioning an issue that would affect them as individual Cherokees, would they want that person to have the right to have limited funds to go out and try to seek a legal opinion. It may be an opinion contrary to what Mr. Hembree is saying; he may be the one that he is opposed to. Why would he want Todd to review if that is correct or not. But he agrees there needs to be some restraints and he is not opposed but the Council needs to make real sure that what they do here affects people in the future just as well as it affects them. He would be opposed to having a requirement in having an attorney with the Nation or with the Council's own attorney to review it. Todd Hembree recommended that the issue be limited to Cherokee Nation Tribal Council business and they can work on the definition of what that is to make sure that everyone is satisfied. The work product requirement is not a bad idea. He asked that when the Councilors are contacting him about their ideas they be tempered. Council member Frailey commented that when Mr. Hembree and Mr. Fite were reviewing this they were not looking at it with the intent of eliminating it. Todd Hembree stated there was not intent to eliminate it. Councilman Garvin stated in the absence of time he made a motion that each Councilor give their ideas to Todd Hembree and move to table this item to next months meeting. Councilman Hoskin seconded the motion. Motion carried.

<u>Advisory board Members</u>. Council member Cowan stated it was brought up in the Executive & Finance meeting last month about the advisory chairs and advisory board members from the Council to the Nation's majority owned entities which would be CNE, CNI, and CNB. After researching there is nothing that can be found in the notes where the Council actually appointed and voted on those advisory board members. The Legislation does not state that the Chair and Co-Chair of the Executive & Finance Committee are automatically on any of those advisory boards. Therefore, the way she interprets it, the legislation that was passed states the Council needs to vote on all three members of each of the three entities and they need to nominate from this body the candidates. Councilman Baker stated since this Council has been seated no elections have taken place. Councilman Hoskin stated the discussion was that it would be logical to make sure that the Council had representatives from the Executive & Finance Committee on their primary financial means such as CNE and so it was decided that if the Chair and Co-Chair chose to hold those seats and if there was no opposition to it, they then voted on it. It was also discussed to have someone who had a facility in their district to serve and Councilman Thornton volunteered and Mary Cooksey was voted as an alternate. Council member Cowan stated the Legislation reads that there shall be an advisory board of directors for all corporations in which the Cherokee Nation is a

majority shareholder. This advisory board shall consist of three members of the Cherokee Nation Tribal Council. The Tribal Council shall appoint these members according to their rules and procedures. The advisory board shall have full access to all information and meetings of board of directors and have all privileges of board directors except for voting privileges. New language was also added in another section stating that provided that a director shall not serve more that four consecutive years without confirmation by the Tribal Council to a corporation where the majority shareholder is the Cherokee Nation.

Councilman Anglen stated at this time and according to Act, the law, and the delays with the commissions he would move to nominate Councilman Baker to sit on the CNE advisory board. Councilman Johnson seconded the motion.

Councilman Martin made a motion to nominate Councilman Anglen to sit on the CNE advisory Board. Councilman Garvin seconded the motion.

Todd Hembree stated that Councilors DeMoss and Scott are no longer on the Council, however Councilman Thornton was appointed to serve and unless he chose to resign his term will go through December 2006. Councilman Thornton stated he would like to resign his seat on the CNE advisory board.

Councilman Johnson made a motion to nominate Council member Cowan to sit on the CNE advisory board. Councilman Garvin seconded the motion.

Councilman Hoskin made a motion to nominate Council member O'Leary to sit on the CNE advisory board. Councilman Baker seconded the motion.

Councilman Hoskin stated with four people nominated, what would prevent the Council from expanding this Act and place four members on the board rather than three.

Council member Cowan stated at this time she would highly suggest that until they are able to address issues and concerns with the legislation that only advisory board members that are willing to sign a release for a background check for the racing commission be put on the advisory board. Not that they are wanting to limit but at this time so that next month the Council can address it and add others. The Council is under the obligation if on the advisory board to do the business as required for CNE. The members are under all other obligations as board members.

Todd Hembree stated the board consists of three members and maybe an alternate. Council member Cowan asked if the alternate would be under the same obligations to sign the releases as well. Todd Hembree stated yes.

Councilman Hoskin stated again would the Council entertain appointing four people if it is obvious there are four people who have a desire to serve on the advisory board. Todd Hembree stated the Council would need to amend the agenda to bring up an amendment to Legislative Act #35-02. If it passed the Council would then consider changing section 4A from shall consist of three members of the Cherokee Nation Tribal Council to four members of the Cherokee Nation Tribal Council. This would only be considered with a two-thirds vote to amend the agenda to consider amending LA#35-02. The motion to

amend the agenda is not a priority motion and if the Council wanted to consider amending LA#35-02 the primary motion would have to be rescinded the second would also have to be rescinded. To touch on the other parliamentary procedures that have been discussed, topics must remain germane to the topic at hand unless it is on the point of personal privilege in which you would want to always address the Chair not individual Councilors.

Councilman Hoskin withdrew his motion for the nomination of Council member O'Leary. Councilman Baker withdrew his second.

Councilman Martin withdrew his motion for the nomination of Councilman Anglen. Councilman Garvin declined to withdraw his second.

Todd Hembree stated once the motion has been made and seconded it does require a withdrawal of the motion and the second. If the second does not withdraw the nomination stands.

Councilman Thornton withdraws his resignation and he will serve the remainder of his term on the CNE advisory board through December 2006.

Councilman Hoskin called for the question.

Todd Hembree stated for the record that Councilman Thornton rescinded his resignation and will remain as a member of the CNE advisory board until December 2006.

Councilman Anglen stated he would like to withdraw his name. Councilman Garvin withdrew his second on the nomination of Councilman Anglen.

Councilman Hoskin made a motion for the nominations to cease and the two Councilors nominated be approved by acclamation and forwarded to full council. Council member Shotpouch seconded the motion. Motion carried.

Councilman Martin stated due to time he made a motion to table the CNI and CNB advisory board issues to the next scheduled meeting. Council member Shotpouch seconded the motion. Motion carried.

**ANNOUNCEMENTS:**

The next meeting date is tentatively scheduled for December 16th.

**ADJOURNMENT:**

Councilman Hoskin moved for adjournment. Councilman Thornton seconded the motion. Meeting adjourned at 5:25 p.m.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________

Minutes attested and concurred by: Meredith A. Frailey

Date: ________________

MEMO

TO: CHEROKEE NATION TRIBAL COUNCIL MEMBERS

FROM: TODD HEMBREE

RE: ARKANSAS RIVERBED ATTORNEY FEES

Dear Councilors:

I have spent considerable time reviewing the documents involving the division of Attorney's fees for the award given to the Cherokee Nation over the Arkansas Riverbed. The work reflects a tremendous effort done by a number of highly qualified attorney's that resulted in a favorable result for the Cherokee Nation and it's people. The legislation that settled these claims brought to the Cherokee Nation $20 million dollars. The legislation also called for ten (10%) percent of that figure set aside for attorney's fees. Therefore this body has a two million dollar pool in which to satisfy the various and competing attorney's fees claims.

1. Patton Boggs Claim- The Law Firm of Patton Boggs of Washington D.C. has made a claim for approximately $1.5 million dollars of the two million dollars. Patton Boggs had a contract with the Cherokee Nation signed by Chief Wilma Mankiller and approved by the Cherokee Nation Tribal Council at that time. It stated that Patton Boggs will prosecute the Riverbed claims under the Trust Mismanagement Theory. It is important to note that this was the eventual theory that the Legislation used to justify settlement of the riverbed claim. It is also important to note that the contract Patton Boggs had with the Cherokee Nation has a clause that makes it take precedence over contracts with any other attorneys. Although this contract was reported to be terminated by the Byrd Administration, it was not done with the consent of the Tribal Council. A strong legal argument could be made that it is in force and in effect. Also, it was the Patton Boggs Law Firm that was instrumental in obtaining the Legislative Settlement for the Cherokee Nation and other Indian Tribes. I believe that Patton Boggs has justified their Attorney's fees in this matter, however it is impossible to satisfy all legitimate claims. Therefore, I would recommend an Attorney's fees award to Patton Boggs in the amount of $ 900,000.

2. The Wilcoxen/Niebell Contract- Mr. Wilcoxen and his father's associates have been involved in this matter from its inception. There is little doubt of the quality of Mr. Wilcoxen's representation and the

**Ex. 26**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

tenacity in which he fought for the Cherokee Nation in this matter. Mr. Wilcoxen also has a contract with the Cherokee Nation calling for a contingency fee not too exceed ten (10%) percent of the fees that were recovered. Again since it is impossible for us to satisfy all legitimate claims we must do the best we can with the money we have available. I would recommend that Mr. Wilcoxen be paid $830,524.57. Mr. Wilcoxen would then pay the Hall Estel Firm $280,524.57. I believe this is appropriate that Hall Estel did not have an independent contract with the Cherokee Nation and was involved in the litigation as assisting Mr. Wilcoxen's efforts. I would also recommend a payment to the Estate of Paul Niebell in the amount of $100,000.00. The payment of these claims would leave approximately $170,000.00 in the remaining attorney fees that could revert to the General Fund or to the Justice Department's budget.

This memo could not be complete without stating the enormous benefit the Cherokee Nation Justice Department had in working on this matter with the assistance of outside Attorneys. Their hard work and ingenuity had achieved an $18 million dollar benefit for the Cherokee Nation. Their work is to be commended.

These are my recommendations and suggestions. In coming to these recommendations I have spoken with representatives of all the parties. I have reviewed the massive records involved in this matter and had made these suggestions in an attempt to be as equitable with everyone as possible given the limited amount of funds available. If you have any questions concerning this matter, please do not hesitate to contact me.

Sincerely,

Todd Hembree

**AMENDED**
**See minutes of:**
**March 17, 2005**

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**December 16, 2004**
**3:20 P.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey | Don Garvin | William "Bill" Johnson |
| Audra Smoke-Conner* | Cara Cowan | Jackie Bob Martin |
| Bill John Baker | S. Joe Crittenden | David Thornton, Sr. |
| Chuck Hoskin | Linda O'Leary | Buel Anglen |
| Melvina Shotpouch | John F. Keener | Phyllis Yargee |

* Indicates late arrival.

**COMMITTEE MEMBERS ABSENT:**

None

**STAFF PRESENT:**

| | | |
|---|---|---|
| Melanie Knight | Sharon Wright | Diane Hammons |
| Doug Evans | Ginger Brown | Callie Catcher |
| Mile Miller | Vicki Hanvey | Paula Holder |
| Greg Combs | John Parris | Sharon Swepston |
| Nason Morton | Doug Bane | |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Raymond Vann | Ralph Keen |
| Marilyn Vann | Darrell Dowty | Ed Crittenden |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** Yes

**MINUTES:** See Attached

**Ex. 27**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**December 16, 2004**
**3:20 P.M.**

**CALL TO ORDER / INVOCATION / ROLL CALL:**

Chair Frailey called the meeting to order at 3:20 P.M. Councilman Crittenden gave invocation. Roll was called and a quorum was established.

**APPROVAL OF MINUTES:**

Councilman Baker made a motion to approve the minutes of the November 18th regular session. Councilman Hoskin seconded the motion. Motion carried.

Councilman Garvin made a motion to approve the minutes of the November 16th Rules Sub-Committee session. Council member Cowan seconded the motion. Motion carried.

Councilman Baker stated at the Chairs request he would like to make a motion to amend the agenda to have a brief discussion on several survey questions due to the need for the survey because it needs to go to print today and it will need to be put on next months agenda. Council member O'Leary seconded the motion. Motion carried.

Councilman Baker stated due to lack of time he would move to dispense with reports unless any of the reporting staff has something they would need to bring forth. Councilman Hoskin seconded the motion. Motion carried.

Draft Survey (Proposed Revision). Doug Evans stated at this point they have the vendor under contract, the cover letter, the outgoing custom envelope, and the survey itself. There will be a 11x17 sample survey, two sided, with the 15 questions, and a business reply envelope inserted inside the outgoing envelope. When they were preparing to typeset the survey there was a concern that there was a series of questions that appeared to have somewhat ambiguous answers to them along with duplicity on the survey. Upon examining it he and Melanie Knight met with the Chair of the Rules Committee and the project leader, Councilor Cowan to discuss this concern and they all agreed that those concerns do exist in these questions and they needed to be looked at and revised. The first page is the proposed revision of the questions and how they would like them to be reworded to still accomplish the same objectives that the original questions they determined were being asked. The second page has the original three questions that the committee voted on. Councilman Baker moved to accept the proposed revision of the draft survey. Councilman Crittenden seconded the motion. Councilman Garvin stated he would like to leave question #12 as it was originally stated. Council member Cowan stated after reading the question she believed the intent of the question was to make sure there were no differences in a single seat versus double seat districts in how they were elected. Therefore, she felt like the changes clarified more clearly for the reader that is not familiar with the laws and how things work. Councilman Garvin stated he feels they will get a skewed opinion that will not be reliable. Doug stated question #12 in its original form was directed or the original intent behind the question was for a single seat district. Council member Cowan offered a friendly amendment to leave question #12 as is. Councilman Baker accepted the friendly amendment and Councilman Crittenden seconded the friendly amendment. Motion carried. Council member Cowan stated Doug would need to work with Todd Enlow on the data.

**OLD BUSINESS:**

Election Commission Board Members. Councilman Thornton withdrew Edward Martin and Maxine Harris from the panel. Todd Hembree stated the Council has before them a ballot with their name on it. The way the process will work is that Council members will have the four names of the individuals who were nominated for the election commission. There are three spaces on the ballot and the person they would like most to be on the election commission would be placed in the number one slot and that person would receive three points. Their second choice would be put in the second slot and that person would receive two points. Their third choice would be put in the third slot and that person would receive one point. After debate and consideration the Chair would acknowledge that it is time to fill in your ballots at which time Council members will fill out their ballots. He will then collect the ballots and he and a member of the staff will tabulate the results and return with the announcement. All ballots will be made as part of the record to ensure that this is a public vote and not a secret ballot and if anyone wishes the ballots to be read they may do so. Todd also stated for all Council members to sign their name to the ballots. Todd stated he has discussed this procedure with Chairperson Frailey and Diane Hammons, Director of Justice Department and they feel that this procedure would not infringe on the constitution.

Councilman Baker made the motion to move this item #1, election commission board members as number #5 under new business and revisit it. Council member Cowan seconded the motion. Motion carried.

A Resolution Approving the Recommendation of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund, and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs. Todd Hembree stated these are resolutions approving the recommendations of the Office of General Counsel. He has submitted a memorandum with his suggestions and this is something that was discussed with Chief Smith in his legislative conference. It is a matter in his opinion that there are too many claims and not enough money and his suggestion was too try and satisfy as many players as possible and he can guarantee from talking to all parties that none of the parties are pleased completely. This is a matter of great importance and it is an extreme amount of money. He invited Mr. Wilcoxen and Mr. Ralph Keen to be here today but Mr. Wilcoxen was involved in depositions today. This has been discussed and records have been made available to the Council. Councilman Garvin made a motion to approve the first resolution approving the recommendation of the Office of General Counsel for payment of attorney fees from the Arkansas Riverbed Settlement Fund to Patton-Boggs for $151,000. Council member Cowan seconded with a friendly amendment to accept all four resolutions and vote on them in total. Councilman Garvin accepted the friendly amendment. Todd Hembree stated that he believes there is a real chance of litigation because this is a settlement of federal funds that comes out of legislation and 10% of $20 ml. dollars is for attorney fees. Since it is federal funds not given to the Cherokee Nation the shield of sovereign immunity cannot be raised. The basis for his memorandum was to do what he can to protect his client which is the Council and the Cherokee people and what is here is a pool of money that is set aside by Federal Statutes to address these issues. It would be great to save as much money as possible for dentures, eyeglasses, and other services but this is a pool set aside for attorney fees out of the statutes. His recommendation is to avoid litigation; which he feels is a real possibility. Chair Frailey stated that because there was a conflict of interest, the contract was technically abandoned. Joe Reeder was the lead attorney and was appointed to the position of Secretary of Army during the Clinton Administration. The second attorney also had an appointment through the Clinton administration. It is her understanding that Patton Boggs

attorneys believed the contract was terminated or they would not have asked Chief Smith I 1999 if they could represent the Cherokee Nation again. She also believes it is significant that whoever, whether it was Mr. Wilcoxen or whomever, that they negotiated as part of the Settlement Act, that any land we purchase along the Riverbed automatically goes into trust. This is very significant and she doesn't believe that Patton Boggs had anything to do with the land trust negotiations. They were paid a significant amount during the time they were representing the Cherokee Nation and it is her understanding that Mr. Wilcoxen was paid nothing. The statute of limitations, 5 years under Cherokee Nation law, also is significant because from the time their contract was terminated during the Byrd Administration (1996-1996) they did not contest the termination. The defense of Sovereign Immunity is to be considered also from the standpoint of a potential future lawsuit by Patton Boggs. Sovereign Immunity was not waived in their contract with the Cherokee Nation. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Smoke-Conner | Nay | Cara Cowan | Yea |
| S. Joe Crittenden | Nay | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William G. Bill Johnson | Yea | John F. Keener | Nay |
| Linda O'Leary | Nay | Jackie Bob Martin | Abstain |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

Motion to accept all four resolutions and vote on them in total failed with a vote of seven (7) yeas; seven (7) nays; one (1) abstention.

Councilman Baker made a motion to accept the recommendation of Council Attorney Todd Hembree. Council member O'Leary seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Nay | Bill John Baker | Yea |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William G. Bill Johnson | Nay | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Abstain |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Nay |
| Phyllis Yargee | Nay | | |

Motion to accept the recommendation of Council Attorney Todd Hembree failed with a vote of seven (7) yeas; seven (7) nays; one (1) abstention.

Councilman Martin made a motion to table this issue for a special meeting so the Council can have more time to look at the figures and hear other input. Councilman Baker seconded the motion. Motion carried.

Councilman Hoskin asked that the firms be contacted to attend the special meeting.

Todd Hembree commended the Council on the action they just took because it is an extreme amount of money and it is better to be cautious and get all the information and hear all the parties.

Advisory Board Members. Todd Hembree stated he was contacted by Council member Cowan to write a memo on the possibility of liability of advisory members to corporations that are controlled by the Cherokee Nation. The likelihood of liability would be very slight because board of directors get sued due to the actions they take and the way they take action is by voting. The advisory board members are excluded from voting. Mr. Stewart informed Mr. Hembree that the liability coverage of the board of directors would not extend to advisory board members. He stated every Tribal Council member has an errors and omissions policy available to them. He believes this level of insurance is adequate to face any possible liability that one may have as an advisory board member to any Cherokee Nation Corporation. Mr. Hembree stated this memo does not require any action but he would like the Council to read over it carefully and call him if they have any questions. Council member Cowan formerly requested a copy of the errors and omissions policy so that the Council can understand what the policy entails and possibly discuss it on the next meeting agenda. Callie Catcher will get a copy of the policy for the Council.

Legal Services for Tribal Council. Todd Hembree asked if the Council had the two proposed rules changes. Councilman Baker made a motion to table this item so the Council can give this item a little more time too when they are not so pressed. Council member Cowan seconded the motion. Motion carried. Councilman Martin requested a copy of the original legislation.

Councilman Baker made a motion to move item #5 under old business to item #6 under new business. Councilman Crittenden seconded. Motion carried.

**NEW BUSINESS:**

A Resolution Confirming the Nomination of Darrell Dowty as a Justice of the Judicial Appeal Tribunal. Councilman Baker moved to approve the resolution confirming the nomination of Darrell Dowty as a Justice of the Judicial Appeal Tribunal. Councilman Thornton seconded the motion. Motion carried.

100% Disability Tag Requirements. Paula Holder provided the Committee with a Motor Vehicle Physically Disabled Impact Study as of December 16, 2004. Based on the projections the impact to the program would be about $42k. Cherokee Nation issues about 650 registrations a year. Councilman Baker made a motion to approve dropping the modified vehicle requirement and forward to full council. Council member Cowan seconded the motion. Motion carried.

An Act Amending Legislative Act 28-04, the Fiscal Policy and Responsibility Act Amendments of 2004 and Declaring an Emergency. Callie Catcher stated this is a simple amendment to Legislative Act #28-04; which authorized the $5 ml. line of credit. After negotiating and talking with the Bank they have requested a limited waiver of sovereign immunity for the Nation to finalize their line of credit. Page 2, section 4, "F" has been struck; which previously stated "No Waiver of sovereign immunity is granted associated with the authorized line of credit" and it has been changed to read "In connection with the securing of the line of credit it is necessary and the Principal Chief or his/her designee is authorized to negotiate promissory notes with Cherokee Nation and Bank of America". Councilman Baker moved for the approval of this resolution. Council member Shotpouch seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Smoke-Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William G. Bill Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

Motion for the approval of an Act Amending Legislative Act #28-04, The Fiscal Policy and Responsibility Act Amendments of 2004 and Declaring and Emergency passed unanimously with a vote of fifteen (15) yeas; zero (0) nays.

A Resolution Authorizing the Incurring of Indebtedness in the Principal Amount of Not to Exceed $5,000,000.00; Authorizing a Loan Agreement and other Documents as may be Necessary or Required; Authorizing the Limited Waiver of Sovereign Immunity of the Cherokee Nation in Connection with the Loan Agreement; Containing Other Provisions Relating Thereto; and Declaring an Emergency. Callie Catcher stated this is the actual Resolution, which is authorizing the limited waiver related to the $5 ml. line of credit with the Bank of America. This Resolution is very closely patterned after the Resolution Council approved when they did the 2003 bond issue. This is being called the series 2004 notes because the bank goes on a calendar year basis. This is an ongoing line of credit and they have the interest expense related to this in the 2005 budget. Councilman Martin moved for the approval of the resolution and forward to full council. Councilman Garvin seconded the motion. Motion carried.

An Act Amending Legislative Act #19-00, "Establishing a Free and Independent Press for the Cherokee Nation", Deleting Items and Making Technical Corrections. Councilman Baker stated this item is redundant and the Council acted on it last month and he really does not see the need for it. Council member Cowan stated per Roberts Rules of Order the language has been changed so it is not the same. Councilman Baker moved to not approve this Act. Councilman Hoskin seconded the motion. Melanie Knight stated after the discussion at the last Rules meeting the previous proposal went back to the editorial board to come up with compromise language. This is the editorial boards request to move this forward and to try and fashion a proposal that would be similar to what they put into the position description that there is a four year degree or there are a number of years of experience or there is an equivalent combination of the two. This is being brought back for consideration so that the editorial board can make their recommendations. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Nay | Bill John Baker | Yea |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Nay | Chuck Hoskin | Yea |
| William G. Bill Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Nay |
| Melvina Shotpouch | Abstain | David Thornton, Sr. | Nay |
| Phyllis Yargee | Nay | | |

Motion to not approve this Act failed with a vote of six (6) yeas; eight (8) nays; and one (1) abstention.

Council member Cowan made a motion to pass this Act with an amendment to strike on section 8A, the words that had been added by the recommendation "or at least 4 years of quality experience in a management and operations of publications". Councilman Anglen seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Smoke-Conner | Nay | Cara Cowan | Yea |
| S. Joe Crittenden | Nay | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William G. Bill Johnson | Yea | John F. Keener | Nay |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Abstain | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

Motion to approve this Act with amendments passed with a vote of eight (8) yeas; six (6) nays; and one (1) abstention.

Election Commission Board Members: Todd Hembree stated Doug Evans tabulated the ballots and the top point receiver was Rick Doherty with 30, the second was Jim Briggs with 28, the third was Raymond Vann with 15, and the fourth was Lisa Melchoir with 13. He has all fifteen ballots and would make them part of the official record if it is the desire of the Committee he can read them all aloud. Council member Cowan stated the ballots would need to be read into the meeting minutes to make sure it is clear in the public mind. Todd stated the ballots read as follows:

| Council members | 1st choice | 2nd Choice | 3rd Choice |
|---|---|---|---|
| Buel Anglen | Lisa Melchoir | Rick Doherty | Jim Briggs |
| William Bill Johnson | Lisa Melchoir | Rick Doherty | Jim Briggs |
| Cara Cowan | Lisa Melchoir | Rick Doherty | Jim Briggs |
| John Keener | Jim Briggs | Rick Doherty | Raymond Vann |
| David Thornton | Rick Doherty | Raymond Vann | Jim Briggs |
| Chuck Hoskin | Jim Briggs | Rick Doherty | Raymond Vann |
| Bill John Baker | Jim Briggs | Rick Doherty | Raymond Vann |
| Meredith Frailey | Jim Briggs | Lisa Melchoir | Rick Doherty |
| Linda O'Leary | Rick Doherty | Jim Briggs | Raymond Vann |
| Melvina Shotpouch | Jim Briggs | Rick Doherty | Raymond Vann |
| Joe Crittenden | Rick Doherty | Raymond Vann | Jim Briggs |
| Phyllis Yargee | Raymond Vann | Jim Briggs | ---------------- |
| Audra Conner | Raymond Vann | Jim Briggs | ---------------- |
| Jackie Bob Martin | Rick Doherty | Jim Briggs | ---------------- |
| Don Garvin | Rich Doherty | Lisa Melchoir | ---------------- |

Todd Hembree stated those are the ballots and they will be secured in the office. All ballots are signed and copies will be made and be placed in the official record of the minutes. Todd also stated the Legislative Aide will contact the top two choices.

Councilman Garvin made a motion to send the top two vote getters to full council as the election commission officials. Council member Cowan seconded the motion. Motion carried.

Council member Cowan moved to table the Legislation until next month that she brought forward and was left off of the agenda that she had asked for three weeks ago. It states Resolution #01-01 and it is amending the supervision and communication responsibilities for the Tribal Council. Councilman Baker seconded the motion. Motion carried.

**ANNOUNCEMENTS:**

The next meeting date is tentatively scheduled for January 13th at 3:00 p.m.

**ADJOURNMENT:**

Councilman Baker moved for adjournment. Councilman Hoskin seconded the motion. Meeting adjourned.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________________

Minutes attested and concurred by: ______________________________

Date: ______________________

√86

**RULES COMMITTEE - SPECIAL**
**LEGISLATIVE CONFERENCE ROOM**
**January 17, 2005**
**11:10 A.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey | Chuck Hoskin | Cara Cowan |
| ~~Melvina Shotpouch~~ | ~~William Bill Johnson~~ | ~~Phyllis Yargee~~ |
| Bill John Baker | S. Joe Crittenden | Jackie Bob Martin |
| Linda O'Leary* | Buel Anglen* | Don Garvin |

*Entered meeting after roll call.

**COMMITTEE MEMBERS ABSENT:**

| | | |
|---|---|---|
| John F. Keener | Melvina Shotpouch | David Thornton, Sr. |

**STAFF PRESENT:**

| | | |
|---|---|---|
| Vickie Hanvey | Gregg Simmons | Julian Fite |
| Mike Miller | | |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Jim Wilcoxen | Ralph Keen |
| Chief Smith | | |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** Yes

**MINUTES:** See Attached

**Ex. 28**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE - SPECIAL**
**LEGISLATIVE CONFERENCE ROOM**
**January 17, 2005**
**11:10 A.M.**

## CALL TO ORDER / INVOCATION / ROLL CALL:

Chairman Frailey called the meeting to order at 11:10 A.M. Council member Yargee gave invocation. Roll was called and a quorum was established.

A Resolution Approving the Recommendations of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed settlement Fund, and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs. Chair Frailey stated this matter has consumed valuable time on behalf of the Council and others involved. There has been a committee review, third party review, a review by the Council Attorney, and other attorneys have had opportunity to be heard and have submitted written submissions. The attorneys need to be paid and the Cherokee Nation deserves to be paid their share of the Riverbed Settlement so that they can get on with developing a master plan for the Arkansas Riverbed. She attended a Five Tribes Inter-tribal Council meeting last week and there is so much work to be done on the Riverbed. There is property to be purchased so the Nation can finish the master plan and the record is before them and she feels they can proceed with the vote and she would entertain a motion to approve the Resolution.

Councilman Johnson made a motion to approve the Resolution Approving the Recommendations of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed settlement Fund and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Patton & Boggs. Council member Yargee seconded the motion.

Councilman Hoskin stated he appreciated the Chairs comment about time that has been consumed into this issue and he certainly agrees with her. The Council has put a lot of effort and is well the Council should when it involves the amount of money this does that belongs to the Cherokee Nation and the Cherokee people. There are Counsel here that are involved in this and many of them have traveled long distances and he thinks it would only be fair on the part of this committee to allow them to speak one last time prior to final votes being taken. The major reason is there is a big gap in the amount of money that billing has been put forth for compared to what the Council is getting ready to vote on. He feels each attorney or representative of a firm should have an opportunity to give one last thought explaining why they feel that their billing is justified and again as representatives of the Cherokee people he thinks these individuals deserve at least that much consideration today. Councilman Baker stated he agrees with Councilman Hoskin that this is an extremely important issue and they all know there are several truths out there and every single one of the firms has had a hand in bringing this settlement along. He doesn't think anyone denies that the different firms have put many hours in it and have been instrumental in getting this done. The Tribe needs to treat everyone fair and just because the Tribe can stand behind sovereign immunity and pay one person less and one person more doesn't make it right. The Nation needs to be about building friendships and goodwill for the Tribe and the Council as individuals and for the future of this Nation because the need of good representation in Washington, DC does not stop with this today. The Nation is going to need quality counsel in the future whether it be from Patton-Boggs or Hall Estill and they need to have the reputation of treating these Class A law firms fairly as they possibly can. Councilman Johnson stated the proposal put forth by Administration has come out of

a lot of discussion with experts and with the Cherokee people in mind and he feels it is an honest and forthright proposal and called for the question. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Absent | Bill John Baker | Nay |
| Audra Smoke-Conner | Nay | Cara Cowan | Yea |
| S. Joe Crittenden | Nay | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William "Bill" Johnson | Yea | John F. Keener | Absent |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Absent | David Thornton, Sr. | Absent |
| Phyllis Yargee | Nay | | |

The motion to approve the resolution approving the recommendation of $151,000 payment to Patton-Boggs failed with a vote of five (5) yeas; and five (5) nays.

Councilman Martin made a motion to award the Jim Wilcoxen Firm $550,000, the Paul Niebell Firm $100,000, and the Hall Estill Firm $380,524.57 for a total of $1,030,524.57 and for the Patton-Boggs to be a separate issue. Councilman Garvin seconded the motion.

Councilman Hoskin stated the figures that Councilman Martin cited includes a sizable bonus to each one of the law firms and he would like to have the bonuses restated with what amounts are being discussed. Todd Hembree stated the original recommendation for Wilcoxen called for $400,000 and included a performance premium bonus of $150,000. The Paul Niebell recommendation called for $100,000 with no performance premium included. The original recommendation for the Hall Estill Firm called for $280,524.57 and included a performance premium bonus of $100,000.

Councilman Baker stated he is not sure if the Council needs to be giving $150,000 bonuses out of the Cherokee peoples money at the expense of treating someone else fairly and he does not see the fairness in doing this and he does not understand why the Council would want to possibly settle three out of four and maybe later come back and decide they don't have enough money to do what is fair with the fourth one. He requested Todd Hembree to give some technical advice and to explain dollar for dollar as to what would be fair. Todd Hembree stated his idea of a fair settlement was stated in a memo to all Councilors; which called for $550,000 to be awarded to the Jim Wilcoxen Firm, $100,000 to be awarded to Paul Niebell, $280,000 to the Hall Estill Firm without the bonus. This would make them whole without anything extra. He recommended $900,000 for Patton-Boggs which is $600,000 less than what they are requesting but it is also seven times more than what Administration is recommending. Councilman Baker asked Mr. Hembree if he feels that it is fair to give a $150,000 bonus to Jim Wilcoxen. Mr. Hembree stated yes.

Councilman Hoskin offered a friendly amendment to decrease Hall Estill to $280,524.57.

Julian Fite stated the reason for the recommended performance premium to Wilcoxen and Hall Estill was because they labored without any money for ten years. Wilcoxen, Hall Estill, and Niebell all fall under the same contract with Hall Estill as a sub-contractor. Wilcoxen and the Hall Estill Firms were in this from the beginning and carried it through the end and were also intimately involved in negotiations both with the BIA, DOJ, and Congress on a regular ongoing basis. They have never received payment and that is the reason for the recommendation of the performance premium.

Councilman Martin accepted the friendly amendment. Councilman Garvin seconded the friendly amendment. Motion carried with one (1) opposition from Councilman Hoskin.

Councilman Baker made a motion to award Patton-Boggs $900,000. Councilman Crittenden seconded the motion.

Councilman Hoskin stated he would like to allow one of the attorneys representing Patton-Boggs to address this body one last time prior to the vote unless there is opposition.

Council member Cowan stated if there is any type of input from anyone outside of the committee she ask they limit the discussion per speaker to five or ten minutes.

Ralph Keen stated there is a little over $1 million dollars that has not been appropriated thus far. Patton-Boggs attorneys spent six years working on this case and were paid on an hourly basis. They have been paid over $400,000 and that money was contemplated under the contract at a greatly reduced and discounted hourly rate which equated to half of the original hourly rate and it was capped at $5000 per month. This was done to offset and help defray some of their expenses. It was never intended to be full compensation for their labor. They spent over 6500 hours on this case with over 63 professionals working on it. They should still be entitled to well over $1 million dollars even if the10% contingency is ignored because they have earned their money and they deserve to be paid. They were the law firm that conceived the mismanagement theory that brought about the litigation that has been settled and if it wasn't for their efforts, Cherokee Nation would not be receiving $18 million dollars from this claim. Cherokee Nation should feel indebted to Patton-Boggs and they deserve the gratitude of the Nation. Due to their lobbying efforts they have brought millions of dollars to the Cherokee Nation for various projects. Make no mistake that if they are not paid on their claim they will be forced to seek regress in other forms. They cannot afford to walk away from this claim and it is unfair for the Administration or anyone else to ask them to do so. This claim should be paid to uphold the solemn word of the Cherokee Nation. This Tribe entered into a contractual relationship in 1989 and gave their solemn word that this law firm would be paid. Council member Cowan asked Mr. Keen where Patton-Boggs were for seven years and why they were not there to close this settlement out. Why were they not making these claims prior to this body being inaugurated? She does not understand if this was such an important thing to Patton-Boggs why were they not in front of this body prior to this Council. Ralph Keen stated with the change of the Administration in 1995 when Joe Byrd was elected Chief was when the relationship changed and up to that point there was a very harmonious relationship. Mr. Byrd felt that Patton-Boggs was not the law firm that he wanted to complete this litigation. He did not have the authority to terminate the contract because the contract clearly states that they could only be removed for cause and only with the approval of the Tribal Council and neither one of those conditions existed. Council member Cowan stated that Mr. Keen has never addressed how Patton-Boggs own actions did not nullify the contract. Ralph Keen asked if she was suggesting that Patton-Boggs abandoned the case and if so, first of all the contract was signed with the law firm and not with individual attorneys and as with any contract with a law firm there can be attorneys assigned to the case but the law firm is still responsible for carrying out the representation. There was only one attorney that left the law firm that was working on this case. Joe Reeder left Patton-Boggs in 1992; he was the managing attorney on the case and not the head litigator. Alan Foster was the head litigator and it was always contemplated that he would try the case. Joe Reeder turned the case over to Alan Foster who had been assisting and had been involved in the case for three years. There was no walking away. It was simply a transition between two attorneys within the same law firm. There was no gap

and no break in the representation and no break in the continuity. Councilman Martin stated his concern is not necessarily the dollar amount. He stated he likes to keep his word to the best of his ability and if this contract is still appliable and if he does not agree with it then he and everyone else has no right to criticize the Federal Government about treaties they have reneged on these last two hundred years. He would like for someone to explain to him how long the contract was good for and when the two years were up who authorized the work to continue. Ralph Keen stated the original term was for one to two years and it was extended several times by Chief Mankiller and it is still enforceable today. Julian Fite stated the contract called for it to be renewed every two years and at some point it was not renewed. When Chief Byrd terminated the contract Patton-Boggs never made a complaint to this Council but they just kept working on the case. Since they were terminated they have not done anything on this case so the contract lapsed and was terminated without complaint; therefore they stopped working on the case. Councilman Baker asked if Patton-Boggs come back in at the end to help put this settlement to bed. Mr. Fite stated it was his understanding that Wilma Mankiller asked Patton-Boggs to help with Senator Inhofe who was threatening to block the legislation and it his further understanding that she and Chief Smith talked and without any agreement they were given permission to talk to Senator Inhofe, but no contract was made and essentially it was volunteer service. His original recommendation for Patton-Boggs included a $25,000 performance bonus because he thought this was fair for a couple of phone calls. Councilman Garvin stated if Patton-Boggs worked within the six year gap then they deserve to be paid but was there any work done from 1996 to 2002. Ralph Keen stated there was very little activity in the litigation itself during that six year period. It had been stayed by order of the court pending the outcome of the quiet title action and there was not a lot of work to be done but they did continue to work on the case. He also refuted comments made by Mr. Fite stating that there was no objection made by Patton-Boggs. Patton-Boggs did object to the termination by sending letters and to say they stood by and did nothing is not a fair statement. They also worked closely with Senator Inhofe for about two weeks to get this settlement passed. The contract called for 10% of any settlement that may have occurred and that is all they are trying to be paid on today. Councilman Crittenden asked for comments and guidance from Council Attorney Todd Hembree. Todd Hembree stated this is a contingency fee contract and what that means is that you don't get an hourly basis. Whatever amount you get for your client, you will get a certain percentage of that amount. Patton-Boggs was paid on an hourly basis that was deducted from their contingency fee and the Wilcoxen contract was a flat contingency fee contract. Federal litigation can have extremely long periods of inactivity but that doesn't mean the case is dead. The Council can sit here and debate on what is enforceable and what is not but what he tried to do in his memo to the Council was to just be fair because he feels there is enough money to make all parties satisfied. Chief Smith stated there is not a $2 million dollar attorney pool. They settled the case for $20 million dollars and any attorney fees that are paid comes out of Cherokee Nation's pocket. He stated the 10% contingency fee and the third party damages on the contract has lapsed and they did not accomplish their win on the litigation during the six years. Ralph Keen voiced an objection to the Chief being able to take the floor without any time limit because Mr. Fite has already been given the opportunity to speak on behalf of Administration. Council member Cowan stated she felt it was up to the committee to yield the floor and not to anyone else. Chief Smith stated there is a suggestion that Patton-Boggs used 64 lawyers and invested 6500 hours on this case for the six-year period. This should tell the Council something and perhaps there are some credibility questions. Patton-Boggs withdrew from the case and they did not file internally in the case holding their position for future attorney fees. He knows who worked on this case and who did not. This relief was a settlement between Assistant Secretary, the Bureau and other parties. It was the Choctaws attorney and Jim Wilcoxen working with the judge in the case trying to posture all parties to come to a settlement. There was much more

mischief and damage created by Patton-Boggs because of their demand for the $100 million dollars in 1991. To put things in prospective, Ralph Keen has come to the Council with this document and it is certainly not the one to test Cherokee Nation sovereign immunity, in your face, hard ball politics. He also stated if the Council does not make Patton-Boggs happy then Cherokee Nation will not have the political allies they need in Congress. Are we going to use Cherokee money to buy political favors by keeping lawyers happy in Washington, D.C. He is submitting to the Council that Patton-Boggs did not earn the $1.5 or the $900,000 and their contract lapsed and was terminated. He encouraged the Council to take Julian Fite's recommendation which he feels is quite generous. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Nay | Bill John Baker | Yea |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Nay | Chuck Hoskin | Yea |
| William "Bill" Johnson | Nay | John F. Keener | Absent |
| Linda O'Leary | Yea | Jackie Bob Martin | Nay |
| Melvina Shotpouch | Absent | David Thornton, Sr. | Absent |
| Phyllis Yargee | Nay | | |

The motion to award Patton-Boggs $900,000 failed with a vote of four (4) yeas; and eight (8) nays.

Codification: Todd Hembree stated through the codification process the Council has received three bids. One from a gentleman in Albuquerque who did not put a total on his bid, the bid of $27,500 from Ms. Crawford of Afton, Oklahoma, and a third bid from Faye Teague for $20,000. The applications have been reviewed and his recommendation would be to go with Faye Teague who has the low bid and she is local. Councilman Baker moved to approve the recommendation of awarding the codification contract to Faye Teague. Councilman Garvin seconded the motion. Motion carried.

Councilman Hoskin stated the question on the Patton-Boggs law firm is still out there and he doesn't think Cherokee Nation will be able to access their portion of the settlement funds until all attorney fees are settled.

Council member Cowan moved to table the Patton-Boggs Attorney fees question to the next February regular rules meeting. Councilman Anglen seconded the motion. Motion carried.

Council member Cowan stated she would like to understand when the codification is due back and delivered back from Ms. Teague. Todd Hembree stated with the confirmation of Ms. Teague he will contact her today. Council member Cowan requested a formal memo back that states when to expect that at the next Rules meeting for review. Todd Hembree recommended this item be placed on next February agenda for discussion.

Council member Cowan made a motion to add to the February Rules committee meeting discussion on the codification process. Councilman Baker seconded the motion. Motion carried.

**ADJOURNMENT:**

Councilman Garvin moved for adjournment. Councilman Crittenden seconded the motion. Motion carried. Meeting adjourned.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________________

Minutes attested and concurred by: ______________________________

Date: ______________________

# MINUTES OF
# TRIBAL COUNCIL MEETING – REGULAR SESSION
# MONDAY, FEBRUARY 14, 2005

## CALL TO ORDER:

President Grayson called the meeting to order at 6:00 p.m. in the Tribal Council Chambers, W.W. Keeler Complex.

## INVOCATION:

Council member Shotpouch gave the invocation.

## ROLL CALL:

Gina Blackfox, Legislative Aide gave roll call. The following members were present:

| | | |
|---|---|---|
| Buel Anglen | Bill John Baker | Audra Conner |
| Cara Cowan | S. Joe Crittenden | Meredith Frailey |
| Don Garvin | Charles Hoskin | William "Bill" Johnson |
| Johnny Keener | Linda O'Leary | Jackie Bob Martin |
| Melvina Shotpouch | Phyllis Yargee | David Thornton, Sr. |

A quorum was present to conduct business.

## APPROVAL OF MINUTES OF PREVIOUS MEETING:

Councilman Baker moved to approve the minutes of the January 10th, regular session. Council member Conner seconded the motion. Motion carried.

## STATE OF THE NATION ADDRESS:

Chief Smith reported the deaths of Clifford Hendrickson, Kenneth Crawler, Carolyn Stick, Susie Foster and Louella Coon. A moment of silence was held in memory of these Cherokee citizens. Chief Smith and Deputy Chief Grayson recently met with Washington representatives and commented they have expressed a great desire to work with the Cherokee Nation. He recognized Councilors Crittenden and Martin who recently participated in the Rock Fence water line project by their volunteer services for labor. The materials for the project were provided by the Cherokee Nation and the community provided volunteer labor services for the 3.2 mile water line project. The Cherokee Nation Career Services Department is working with CNE and CNI in assisting individuals with resumes and job searches. These entities will provide more than 300 jobs in the local area. The Emergency Medical Service recently underwent an accreditation visit. They should know by April or May if they achieve the accreditation status in becoming the first tribe within the State with recognition in providing ambulance service. Jim Carrington was introduced by Chief Smith as the new Chief Executive Officer of

**Ex. 29**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

Cherokee Nation Business, Inc. Mr. Carrington was formerly employed with Wiltell Communications. He will begin reporting to the Executive and Finance Committee on a monthly basis concerning the progress of Cherokee businesses. Cherokee veterans, Mr. Turnbull and Mr. McConnel, were recognized this month. Linda Lewis accepted on behalf of Mr. Turnbull and Mr. McConnel son accepted on his behalf. Mary Mead also provided information on Daniel and David Mead, identical twins, who are serving in different locations in Iraq. The Cherokee Learning Choir has been established to create an interest and possibly audition for the Cherokee Youth Choir when they reach the 7th grade. Interested citizens may contact Kathy Sierra for more information. Cherokee Nation also received a grant for faith based organizations. Interested citizens/groups may contact Rick Gassaway. The Talking Leaves graduation ceremony will be held on February 18th at 2:00 p.m. Chief Smith introduced the candidates for Tahlequah Chief of Police who were in attendance tonight, three are Cherokee tribal members

**ACTION OF UNFINISHED BUSINESS: (None Pending)**

**MONTHLY REPORTS:**

Council member Shotpouch requested a moment of silence in memory of Maudie Bazille, former Tribal Council Member who recently passed away. Ms Bazille served the Cherokee citizens representing the Tulsa/Washington districts in the term of 1991-1995.

**Housing Authority: David Southerland, Executive Director**

Mr. Southerland reported the Housing Authority Commissioners meeting will be held on Tuesday, this week at 5:30 p.m. The agenda will include discussion of the audit. He reported the President has submitted the 2006 budget which includes a 11.5% HUD budget cut resulting in a reduction in the Indian Housing Plan. Housing Authority offices will close for President's Day.

**Cherokee Nation Enterprises: David Stewart, CEO**

Mr. Stewart reported they continue to see positive financial results. They experienced 15% growth in comparison to the same time last year. Although there are many expenses on the new casino, they continue within budget. CNE recently introduced card games in Catoosa and West Siloam casino's and hope to begin card games in Roland within the next two weeks. He reported CNE has several job fairs still ongoing.

**Cherokee Nation Industries: Dennis McLemore, CFO**

Mr. McLemore reported in the absence of Mr. Majewski. He reported the sales for the month were 20% less in comparison to last year. The month of January was weak and there was a pause in the telecommunication business due to some manufacturing loss. CNI is now in mid-year and are slightly behind budget. The net CNI board meeting is scheduled for Wednesday, February 23 at 9:30 a.m. at the Stilwell administrative office.

**NEW BUSINESS:**

Council member Frailey moved to amend the agenda to include additional business item The 2005 Indian Housing Plan, A Resolution Regarding the Cherokee Orphanage Cemetery. Council member Cowan seconded the motion with the exception of an amendment to include confirmation of the Secretary of the Tribal Council. Council member Cowan stated that on the election of the council secretary the Council should have received a memo per internal rules and procedures where she requested this in a timely manner. This should have gone forward directly to the council meeting. They are past due it should have been in September 2004 when the election should have been held. ~~Roll call was requested to consider each item separately.~~

Consideration of the 2005 Indian Housing Plan:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of thirteen (13) yeas; two (2) opposing

Consideration of the Resolution Regarding the Cherokee Orphanage Cemetery:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a unanimous vote of fifteen (15) yeas; none (0) opposing

Consideration of the Secretary of the Council:

Council member Cowan commented she wanted everyone to know for the Cherokee people she submitted this request in writing in January to Council staff and there was no objections, no questioning at that time and she gave this in a timely manner. According to internal rules and procedures the Council is obligated to elect or re-elect a new Council secretary every year on the anniversary in Sept. She found after researching she discovered this and took immediate action to request this and for some reason she was delayed and is asking for the agenda to be amended appropriately tonight it is not a piece of legislation or resolution that would require a lot of debate or discussion maybe from

our constituents, it is something internal for Council to sign off on papers. It is four or five months late now and she appreciates the support to amend the agenda as requested in writing earlier.

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Pass |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

Councilman Baker later cast an affirmative vote. The motion carried with a unanimous vote of fifteen (15) yeas; none (0) opposing

***1) Confirmation of Cherokee Nation Industry Advisory Board Members – (Council Members Crittenden and O'Leary***

Council member Frailey moved to confirm Councilors Crittenden and O'Leary to serve as advisory members of CNI. Councilman Hoskin seconded the motion. Motion carried unanimously

***2) Confirmation of Cherokee Nation Business, Inc. Advisory Board Members – Council members Anglen, Frailey, and Johnson)***

Council member Frailey moved to confirm Councilors Anglen, Frailey, and Johnson to serve as members of the CNB, Inc. Councilman Baker seconded the motion. Motion carried unanimously

***3) A Legislative Act Amending Legislative Act 37-04 Authorizing the Comprehensive Budget for Fiscal Year 2005 – Mod 5; And Declaring an Emergency/LA#6-05***

Council member O'Leary moved to approve the legislation. The cumulative total of the budget is increased by $903,347 for a total budget authority of $305,759,860. Councilman Baker seconded the motion. Yeas and Nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |

Phyllis Yargee Yea

The motion carried with a unanimous vote of fifteen (15) yeas; none (0) opposing

4) ***A Resolution Confirming the Nomination of Steven Crittenden as a Commissioner of the Housing Authority of the Cherokee Nation Board of Commissioners/R#13-05***

5) ***A Resolution Confirming the Nomination of Kenneth Limore as a Commissioner of the Housing Authority of the Cherokee Nation Board of Commissioners/R# 14-05***

Council member Frailey moved to approve both resolutions confirming Housing Authority Board of Commissioners. Councilman Martin seconded the motion. Motion carried unanimously.

6) ***A Resolution to Dedicate a Building on the Sequoyah High School Grounds as the "Jack Brown House," Describe Its Use and Designate the Building a Historic Property/R#15-05***

Councilman Hoskin moved for approval of the resolution officially naming the two-story home on the Sequoyah High School campus the "Jack Brown House,". This proposal would also set aside use of the property for distinguished guests and dignitaries visiting the Cherokee Nation, and designates the building a historic property to be conserved for the future. Councilman Baker seconded the motion. Motion carried unanimously.

7) ***A Resolution Authorizing A Grant of Easement for Right of Way over Cherokee Tribal Trust Lands in Cherokee County Between Cherokee Nation and Northeast Oklahoma Public Facilities authority (NOPFA) for Installation of a Natural Gas Pipeline/R#16-05***

Councilman Martin moved for approval of the resolution authorizing a grant of easement for right of way across Cherokee Nation Tribal Trust land for authorization of installation of a natural gas pipeline. The natural gas pipeline will provide gas service to tribal members located on tribally owned trust land, Cherokee Nation waives compensation, a the natural gas line will benefit Cherokee Nation tribal members. Councilman Anglen seconded the motion. Motion carried unanimously.

8) ***A Legislative Act Adopting Principles for Acquisition of Real Property/LA#7-05***

Councilman Martin moved for approval of the legislation establishing and approving principles for real property acquisition that will be beneficial to the economy and welfare of the Nation and that will aid in the restoration of the Nation's territorial land base. These proposed principles have been formulated in

accordance with the Land Consolidation Plan and the Strategic Land Plan. Council member Cowan seconded the motion. Yeas and Nays were recorded: *Councilman Hoskin left the meeting prior to consideration of the remainder of the agenda items.

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of fourteen (14) yeas; none (0) opposing.

*9)* ***A Legislative Act Relating to Cherokee Nation Employee Termination Appeals, Providing for Severability and Declaring an Emergency/LA#8-05***

Council member Frailey stated the purpose of this legislation is to provide legislative authority for the award of back pay to employees who are reinstated to their positions after administrative and/or judicial procedures are followed. She moved for approval. Councilman Baker seconded the motion. Yeas and Nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of fourteen (14) yeas; none (0) opposing

*10)* ***A Legislative Act Authorizing the Judicial Appeals Tribunal to Establish Filing Fees and Cost for Courts of the Cherokee Nation Providing for Severability and Declaring an Emergency/LA#9-05***

Council member Frailey stated the purpose of the legislation shall be to authorize the Judicial Appeals Tribunal to establish and set filing fees and court cost for the Judicial Appeals Tribunal and other courts over which they exercise general superintendence. She moved for approval. Council member Cowan seconded the motion. Yeas and Nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of fourteen (14) yeas; none (0) opposing

11) ***A Resolution Authorizing Cherokee Nation Environmental Programs Group to Submit a Grant Proposal to the U.S. Environmental Protection Agency (EPA) for the Cherokee Nation Water Pollution Control Program/R#17-05***

Councilman Martin moved to approve the resolution authorizing the submission of a grant application in the amount of $130,000 from the EPA. The funding will be used to conduct water quality monitoring of surface waters important to Cherokee communities and to continue monitoring streams that were already evaluated in 2002-2004. Councilman Garvin seconded the motion. Motion carried

12) ***A Resolution Approving the Recommendation of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Hall & Estill/R#18-05***

Council member Frailey moved to approve the resolution authorizing a payment in the amount of $280,524.57 to the firm of Hall, Estill associated with the Arkansas Riverbed litigation. Council member Cowan seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Nay |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of eleven (11) yeas; three (3) opposing

13) ***A Resolution Approving the Recommendation of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund and***

***Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Paul Niebell/R#19-05***

Council member Frailey moved to approve the resolution authorizing a payment in the amount of $ 100,000. to the estate of Paul Niebell associated with the Arkansas Riverbed litigation. Councilman Anglen seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Nay |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of eleven (11) yeas; three (3) opposing

14) ***A Resolution Approving the Recommendation of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Jim Wilcoxen/R#20-05***

Council member Frailey moved to approve the resolution authorizing a payment in the amount of $550,000. to the firm of Jim Wilcoxen associated with the Arkansas Riverbed litigation. Councilman Thornton seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of thirteen (13) yeas; one (1) opposing

15) ***A Resolution Authorizing Certain Lending Transactions Involving Cherokee Nation Enterprises, A Cherokee Nation Tribal Corporation; and Authorizing a Limited Waiver of Sovereign Immunity/R#21-05***

Council member O'Leary moved to approve the resolution authorizing CNE an additional six million dollars authority to purchase real properties as provided for

under LA#4-04 for fiscal year 2005; thereby allowing CNE a total purchase authority for real property in the amount of twelve million dollars ($12,000,000) for FY2005. Councilman Martin seconded the motion. Motion carried.

*16) Confirmation of Election Commission Fifth Board Member*

Withdrawn.by request from Election Office.

*17) A Resolution Authorizing the FY2005 Indian Housing Plan/R#22-05*

Council member Shotpouch stated the resolution authorizes the 2005 IHP. Councilman Garvin seconded the motion. Yeas and Nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of twelve (12) yeas; two (2) opposing

*18) A Resolution Authorizing the Principal Chief to Take Necessary Action to Locate, Protect, and Restore the Cherokee Nation Cherokee Orphanage/R#23-05*

Councilman Anglen moved to approve the resolution authorizing the Principal Chief to take necessary action to locate, protect and restore the Cherokee Nation Orphanage. Council member Cowan seconded the motion.

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Absent |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Nay |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of thirteen (13) yeas; one (1) opposing

*20) Nomination of Cherokee Nation Tribal Council Secretary*

Council member Cowan nominated Audra Smoke-Conner to serve as the Secretary of the council. Council member Yargee seconded the motion. Councilman Baker moved that nominations cease. Motion carried.

**ANNOUNCEMENT:**

Council member Conner announced the county basketball tournament champions were Peggs girls and Woodall boys. Council member Yargee announced the Cherokee Challenge Bowl will be held at NSU tomorrow. There are an expected 54 teams participating.

**ADJOURNMENT:**

With no further business presented, Council member Shotpouch moved for adjournment. The next meeting will be held on March 14th, 6:00 p.m. at the W.W. Keeler Complex.

Joe Grayson, Jr., President
Council of the Cherokee Nation

V36

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**February 17, 2005**
**3:15 P.M.**

**STANDING COMMITTEE:** Rules Committee

**COMMITTEE PRESIDED BY:** Meredith Frailey, Chair

**COMMITTEE MEMBERS PRESENT:**

| | | |
|---|---|---|
| Meredith Frailey | Don Garvin | William "Bill" Johnson |
| Audra Smoke-Conner | Cara Cowan | Jackie Bob Martin |
| Bill John Baker | S. Joe Crittenden | David Thornton, Sr. |
| Chuck Hoskin | Linda O'Leary | Buel Anglen |
| John F. Keener | Phyllis Yargee | Melvina Shotpouch |

**COMMITTEE MEMBERS ABSENT:**

None

**STAFF PRESENT:**

| | | |
|---|---|---|
| Diane Hammons | Doug Evans | Mike Miller |
| Vicki Hanvey | Paula Holder | Nason Morton |
| Gregg Simmons | Sarah Hill | Jamie Hummingbird |
| Sharon Wright | Melanie Knight | Travis Snell |
| Lela Ummerteskee | | |

**VISITORS:**

| | | |
|---|---|---|
| Todd Hembree | Raymond Vann | Chief Smith |
| Ed Crittenden | Jack Baker | Ralph Keen |
| Donald Adair | Marilyn Vann | Dwight Epperson |
| Linda Adair | | |

**QUORUM ESTABLISHED:** Yes

**LEGISLATION/RESOLUTION:** Yes

**MINUTES:** See Attached

**Ex. 30**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**RULES COMMITTEE**
**LEGISLATIVE CONFERENCE ROOM**
**February 17, 2005**
**3:15 P.M.**

## CALL TO ORDER / INVOCATION / ROLL CALL:

Chair Frailey called the meeting to order at 3:15 P.M. Councilman Baker gave invocation. Roll was called and a quorum was established.

## APPROVAL OF MINUTES:

Councilman Hoskin made a motion to approve the minutes of the January 17th regular session. Council member Cowan seconded the motion. Motion carried.

Council member O'Leary made a motion to approve the minutes of the January 17th special session. Councilman Garvin seconded the motion. Council member Conner stated the minutes reflect that she was absent and present and she offered an amendment to have the minutes reflect that she was present. Council member O'Leary accepted the amendment and Councilman Garvin seconded the amendment. Motion carried.

Council member Cowan commented that she had requested the December Rules meeting minutes to be addressed on the conversation between the Chair and Council Attorney Todd Hembree had been left off. Chair Frailey stated it has not been addressed but she did get a copy of it and she needs to review it and it would be put on the March Rules agenda.

Councilman Baker moved to amend the agenda to correct a scriveners error in item #2 under new business, Adolph Lechtenberger is being appointed to the CNB board and not to the CNE board, add for discussion only for nominations from Tribal Council advisory board members to the Housing Authority Board, and a Resolution that came from the Education Committee confirming Jeffrey Todd Limore to the Sequoyah High School Advisory Board. Councilman Hoskin seconded the motion. Motion carried.

## REPORTS:

Marshal Service: Sharon Wright reported in the month of January two males in the Eastern District had their sentencing hearing for assault and battery and one received 64 months with nine years probation and the other received 36 months with nine years supervised probation. They have a rape case that occurred in November and just went to grand jury. They had a domestic stabbing at Twin Oaks area and have received a phone call from the FBI asking for dismissal of the tribal charges so the case can go federal. They had two marshal vacancies due to manpower leaving but have currently filled both positions with Brian Ketcher and McCarter.

Justice Department: Diane Hammons reported they recently filed action in Cherokee County to try to gain access to the orphan cemetery across from Sequoyah High School so they may can locate it and separate it off and even Oklahoma State Law should there be a cemetery on the property, it is called ingress and egress, which is access to it and nothing can be done to it. They tried to accomplish this out of litigation but were unable too and she has given Mr. Hembree a copy of the lawsuit. They have hired Sarah Hill as their new staff attorney; she was acting as a paralegal for Julian Fite. She is Cherokee and from Stigler, Oklahoma and the Justice Department is still 100% Cherokee. Chair Frailey asked the status of the Tribal Homeland Security Act. Ms. Hammons stated she does not but she will provide information when she receives it.

Election Commission: A written report was provided. Doug Evans gave a briefing on the survey and reported that 30% of the mailed surveys were returned and a third party intermediary handled them so they were confidential and documented. The report he provided the Council and Melanie Knight included the complete data of the results, results for each individual question with several pages of comments. Apperson informed him there were several surveys that were counted but if the comments had profanity included it was not transcribed. There were over 4100 out of 13,600 surveys returned and the contact person informed him Friday that she had 1200 bad addresses that were undeliverable. He has discussed with the Election Commission on how to use the information to help clean up their address list as well as other options possibly that this Committee could help them with in the future. The notation in the report that state "missing" means the machine could not read the response on the surveys due to different reasons.

Tax Commission: Paula Holder reported the current revenue for the tax commission is at $3 million. The priority and main topic for the commission is the tobacco compact and the General Counsel is still in negotiations with the State of Oklahoma to correct the sales tax elimination due to State Question 713 and the compact states they will not be eliminated. General Counsel should have a conclusion soon and she feels it will be favorable to the Nation. Council member Yargee asked what the amount would be per student from the car tag revenue. Ms. Holder stated she has not had access to those numbers but there is something scheduled for a week from tomorrow in the ballroom. Councilman Baker stated it was around $113.54.

Self-Governance: Melanie Knight reported the Department of Interior negotiations have put a temporary freeze on hiring and traveling and the purpose of that is to be prudent until the negotiations with DOI are conducted by the grievance. The reason being is that it has been a real challenge to get DOI to get the Nations issues involved. The changes they want are primarily around the roads program. They want to hold additional funding to provide federal functions in support of roads program and the Nation is not at agreement on that and so the Nation is proposing to set aside those issues for future negotiations that they are in agreement. The DOI is considering the proposal this week and they are hopeful they will have this resolved by the first of next week so they may get the bulk of the money in. They are waiting for a decision in the Supreme Court case and the next time they hear from the court on their decision will be the first part of next week. Assistant Secretary Anderson stepped down as assistant secretary and Jim Casing will be Acting Assistant Secretary for the Bureau of Indian Affairs and they will be recruiting for Assistant Secretary. The status of the constitution has not moved.

Gaming Commission: Jamie Hummingbird apologized for not being present to report last month but he is currently serving on a committee with the National Indian Gaming Commission to write technical standards for all class three gaming machines that are used throughout the country. Cherokee Nation has had its compact published in the Federal Register and has actively started implementing the provisions of the compact more specifically to the card game division that are allowed for under the non-house bank card game provisions. The initial games began late January in Catoosa and opened up with twelve blackjack tables and sixteen poker tables. West Siloam Springs undertook its card directions last Thursday and they are looking to rolling out card games at Roland by the end of the month. They are anticipating a total of seventy tables at Catoosa and a total of twenty-four tables at West Siloam and Roland. They are also anticipating hiring at least 585 employees to man all card tables and with backup house operations a total of 650 employees across the board. The 2004 external audit for CNE has been delivered to the Commission and they have transmitted it on to the National Indian Gaming Commission, which is required by law. Copies of the audit report will be furnished to the Council in the near future. The National Gaming Commission has issued preliminary rule making on some internal control changes that they will be responding to and the changes deal with the internal workings of the casinos and provides the measure for the gaming commission to go out and determine whether they are going to be in

compliance Federal Gaming Standards and operating as they should be. The Office of State Finance requested a meeting with the Gaming Commission last Tuesday and the purpose of that meeting was for them to do two things, one is to learn how the Gaming Commission for Cherokee Nation operates, what duties they perform and how they do those duties, the second thing was to figure how they are going implement their side of the compact. He is happy to report the Gaming Commission had more answers than they did and the Gaming Commission was able to give them a good idea of what needs to happen in terms of the gaming regulation and how the Nation operates in terms of background on employees, certifying games, doing facility reviews, and a lot of gaming regulations. They expect to receive more requests from the Office of State Finance to help guide them as they develop their program. The Gaming Commission received last Friday their first set of gaming certifications for the electronic games that are available underneath the compact. The Gaming staff has been working very hard to get these games certified under their regulations so that Cherokee Nation can once again be first in the State to offer compact governed games. CNE is primarily focusing on the video poker and have several vendors have instant bingo games coming out and there is always the skill games and they anticipate a fairly active next four or five months to getting new games certified. The Commission has already adopted the necessary standards to get these games tested and everything is in place to get the games through their process. The Gaming Commission has been holding some workshops to figure out how they will be implementing the gaming portions of the compact and more importantly how they are going to be interacting with the State Compliance Agency in providing the necessary reports to them on a regular basis. The next meeting of the Commission is next Friday, February 25, 2004 at Catoosa at 10:00 a.m.

Melanie Knight announced that Pat Ragsdale has been appointed as the new Director of the Bureau of Indian Affairs.

**OLD BUSINESS:**

<u>A Resolution Establishing Procedures for Procurement Attorney Fees</u>: Todd Hembree stated each Councilor should have before them a Resolution that incorporated all of the items that were voted, discussed, and debated on in last months Rules meeting. Council member Cowan stated there is a scriveners error in the fourth paragraph that states "contact' and it should state, "contract". Council member Cowan moved for the approval of the Resolution establishing procedures for procurement of attorney fees. Councilman Anglen seconded the motion. Motion carried.

<u>A Resolution Approving the Recommendations of the Office of General Counsel for Payment of Attorney Fees from the Arkansas Riverbed Settlement Fund and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Patton & Boggs</u>: Councilman Garvin stated the Council would be wise to go with the recommendation of the General Counsel and approve this as written. Councilman Garvin made a motion for the approval of this Resolution as it is written. Council member Cowan seconded the motion. Councilman Hoskin asked Mr. Hembree because of the wide range between this recommendation and what the allegation is that is owed. Is there is any other way to attempt to resolve this besides one or the other? Mr. Hembree stated the way he looks at it is there are at least four different options the Council could do. 1) The Council could approve Mr. Fite's recommendation of $151,000; 2) reconsider his recommendation of $950,000; 3) do nothing and Patton-Boggs could go to the BIA for alternative dispute resolution procedures; 4) or pick another figure between $151,000 and $950,000. There is really nothing more to discuss but the ADR is another avenue to go. This would be a binding type arbitration that the BIA would take a stand and try to work it out. Roll call is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Smoke-Conner | Nay | Cara Cowan | Yea |
| S. Joe Crittenden | Nay | Meredith Frailey | Yea |

| | | | |
|---|---|---|---|
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William Johnson | Yea | John F. Keener | Nay |
| Linda O'Leary | Nay | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion for approval of this Resolution as written passed with a vote of eight (8) yeas; seven (7) nays.

An Act to Standardize a Cost of Living Increase for Employees of the Cherokee Nation, Providing for Severability and Declaring an Emergency. Todd Hembree stated he drafted the legislation at the request of Councilman Baker who is the sponsor and it has been in front of the Council for the past thirty days. Councilman Baker stated it has been discussed and looked at and in the last budget cycle the Council budgeted 5% for compensation above and beyond what the actual salaries were. They have not used the entire 5% pool and they have left approximately a third of the employees completely out. This legislation would allow this Council to take every Cherokee employee that got 0% up to 2% and 1% up to 2% and it would only take $171,360 to bring a cost of living of 2% for every employee that was left out and this legislation also sets a cap for next year at 5%. Federal funds are being cut but tribal funds are increasing and he feels that it is wrong to leave these employees behind on cost of living. Councilman Baker moved for the approval of this Act to standardize a cost of living increase for employees of the Cherokee Nation. Council member O'Leary seconded the motion. Diane Hammons stated the Administration's response really is threefold; eight employees of Cherokee Nation received a 10% raise, 123 employees did not receive a raise, and there was a bell curve for the majority of the employees receiving in the 2½ percent to the 4 percent raise range. She feels that it is important to have accurate information and is important for this body to consider what the Chief has been about since he took office and what this body has supported him in and that is to ask to get away from entitlement and the idea that they are entitled to something because they are Cherokee employees. This legislation that is written is an entitlement because it is not based on merit at all. The Court states the Executive Branch could not dictate to the Legislative Branch regarding salaries for their staff therefore the Council cannot dictate to the Executive Branch regarding salaries for their employees. This is a matter of Administration administering the government and she feels the Council does not have the ability to do this. Councilman Baker stated he does not agree and if the Council approved a cost of living that it would hold up in the courts. Ms. Hammons stated the Chief is not against raises for employees but the Chief is for raises based upon merit and for an accurate and neutral evaluation of employees. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Nay | Bill John Baker | Yes |
| Audra Smoke-Conner | Nay | Cara Cowan | Nay |
| S. Joe Crittenden | Yea | Meredith Frailey | Nay |
| Don Garvin | Nay | Chuck Hoskin | Yea |
| William Johnson | Nay | John F. Keener | Yea |
| Linda O'Leary | Yea | Jackie Bob Martin | Nay |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Nay |
| Phyllis Yargee | Nay | | |

The motion for approval of this Act failed with a vote of six (6) yeas; nine (9) nays.

An Act Relating to Cherokee Nation Employee Termination Appeals, Providing for Severability and Declaring an Emergency. Todd Hembree stated the Council has before them an Act that states a corporation owned by the Cherokee Nation has to have a termination procedure that has due process protection for corporate employees and they are required to bring the termination procedure

to the Executive & Finance Committee for approval. The original Act required everyone to go through the EAB and the reason for this was to give Corporations flexibility to develop their own procedures that would be most beneficial to their corporate structure but still requiring the process of coming to the Council for approval. Councilman Baker moved for the approval. Council member Cowan seconded the motion. Roll call is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yes |
| Audra Smoke-Conner | Yes | Cara Cowan | Yes |
| S. Joe Crittenden | Yes | Meredith Frailey | Yes |
| Don Garvin | Yes | Chuck Hoskin | Yes |
| William Johnson | Yes | John F. Keener | Yes |
| Linda O'Leary | Yes | Jackie Bob Martin | Yes |
| Melvina Shotpouch | Yes | David Thornton, Sr. | Yes |
| Phyllis Yargee | Yes | | |

The motion for approval of this Act passed unanimously with a vote of fifteen (15) yeas; zero (0) nays.

An Act Amending LA#16-01, LA#15-04, Relating to Referendum and Initiative Measures; Setting Procedures: Setting Crime and Punishment; and Declaring an Emergency. Todd Hembree stated the main item is changing the requirement on a petition from having a Cherokee registry number to only requiring a date of birth. This will make it easier to gain signatures that can be verified and also it will provide an opportunity for the Judicial Appeals Tribunal to rule on the validity of the petition before it is circulated. Another minor change includes changing the term "register voter" to that of "legal voter" and the verification under this Act would be with the Election Commission. Councilman Baker moved for the approval of this Act. Council member O'Leary seconded the motion. Council member Cowan offered a friendly amendment in deleting the added language and retaining the original language that states "shall be provided to anyone upon request" in section X, Filing and Binding. Councilman Baker accepted the friendly amendment and Council member O'Leary seconded the friendly amendment. Council member Cowan offered a friendly amendment on section XI, Approval and Preservation, to retain the original language of "secretary/treasurer". Councilman Baker accepted the friendly amendment and Council member O'Leary seconded the amendment. Council member Cowan offered a friendly amendment to not remove the requirement for districts as part of their registrations in section XII, Verification of Signatures. Councilman Baker declined to accept the friendly amendment to not remove the requirement for districts as part of their registrations in section XII, Verification of Signatures and Council member O'Leary seconded. Council member Cowan stated in section XVII, the Protest, the fourth paragraph down on filing the protests goes from 10 days to 20 days but there is no consideration of increasing the protest line below it. Council member Cowan offered a friendly amendment to increase the number of days for a protest in section XVII, Protests, paragraph 5 from 5 days to 10 days. Councilman Baker accepted the friendly amendment and Council member O'Leary seconded the amendment. Roll call is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yes |
| Audra Smoke-Conner | Yes | Cara Cowan | Yes |
| S. Joe Crittenden | Yes | Meredith Frailey | Yes |
| Don Garvin | Yes | Chuck Hoskin | Yes |
| William Johnson | Yes | John F. Keener | Yes |
| Linda O'Leary | Yes | Jackie Bob Martin | Yes |
| Melvina Shotpouch | Yes | David Thornton, Sr. | Yes |
| Phyllis Yargee | Yes | | |

The motion for approval of this Act passed unanimously with a vote of fifteen (15) yeas; zero (0) nays.

**NEW BUSINESS:**

A Legislative Act Amending LA#01-01, "The Cherokee Nation Motor Vehicle Licensing and Tax Code. Melanie Knight stated the Administration respectfully withdraws this item. Chair Frailey stated this item has been withdrawn.

A Resolution Confirming the Nomination of Adolph Lechtenberger as a Board Member of the Cherokee Nation Business Board of Directors. Councilman Baker moved for approval of the Resolution confirming the nomination of Adolph Lechtenberger as a member of the Cherokee Nation Business Board of Directors. Councilman Johnson seconded the motion. Motion carried.

An Act Relating to and Amending title 43 of the Cherokee Nation Code Annotated to Add Chapter Enforcement, and Which Adds Chapter 6, Sections 507 through 517 Which Establish the Procedures for Entering, Amending, and Enforcing Child Support Orders, and Which Requires the Cherokee Nation to Cooperate with other Jurisdictions in the Enforcement of Child Support Orders. Diane Hammons stated this legislation is in order to start the process that would enable them to take over the child support enforcement from the Chickasaws. Councilman Garvin moved for the approval of this Act. Councilman Baker seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Absent | Bill John Baker | Yes |
| Audra Smoke-Conner | Yes | Cara Cowan | Absent |
| S. Joe Crittenden | Yes | Meredith Frailey | Yes |
| Don Garvin | Yes | Chuck Hoskin | Yes |
| William Johnson | Yes | John F. Keener | Yes |
| Linda O'Leary | Yes | Jackie Bob Martin | Yes |
| Melvina Shotpouch | Yes | David Thornton, Sr. | Yes |
| Phyllis Yargee | Yes | | |

The motion for approval of this Act passed with a vote of thirteen (13) yeas; zero (0) nays.
* Council members Anglen and Cowan were out of the room during consideration of this item.

An Act Relating to and Amending Title 10 of the Cherokee Nation Code Annotated to Add Chapter 3, Sections 100 through 123, Which Establish Cherokee Nation Procedure for the Determination of Paternity. Diane Hammons stated this goes hand in hand with the child support enforcement and the purpose of this Act is to establish the procedure by which the courts of the Cherokee Nation are to determine paternity. Councilman Baker moved for the approval of this Act. Councilman Crittenden seconded the motion. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yes |
| Audra Smoke-Conner | Yes | Cara Cowan | Absent |
| S. Joe Crittenden | Yes | Meredith Frailey | Yes |
| Don Garvin | Yes | Chuck Hoskin | Yes |
| William Johnson | Absent | John F. Keener | Yes |
| Linda O'Leary | Yes | Jackie Bob Martin | Yes |
| Melvina Shotpouch | Yes | David Thornton, Sr. | Yes |
| Phyllis Yargee | Yes | | |

The motion for approval of this Act passed with a vote of thirteen (13) yeas; zero (0) nays.
*Council members Johnson and Cowan were out of the room during consideration of this item.

An Act Amending Title 20 of the Cherokee Nation Code Annotated. Councilman Baker stated an Act that gives the Tribunal authority to add court cost and filing fees at their discretion was passed in Monday night's Council meeting. Melanie Knight stated the Administration respectfully withdraws this legislation.

A Resolution Ratifying Intervention in Litigation in the United States District Court for the District of Columbia. Melanie Knight stated this was originally filed in August of 2003 and the parties are individual parties that are suing the Federal Government. The Government responded to the suit in March 2004 and in that response the Government made several affirmative defenses. Settlement talks have taken place with the plaintiffs and the Federal side, the Solicitors Office and the Department of Justice. The Nation has not been involved in those settlement discussions. The Solicitors Office and the Department of Justice stated they would notify the Cherokee Nation if the settlement discussions are held and what the content of those discussions were. The Nation has not been notified or included in any settlement discussion and late last fall there was a report made to the court and in that report the Government said the defendant (Government) have held numerous internal discussions that have resulted in advice approach that is now pending before the highest level in the Department of Interior. The issues before the defendant involve sensitive program policy issues and accordingly additional time is needed to formulate a position. Because of this kind of report that these decisions are at the highest level of the Department of Interior that involve program policy issues and they know those program policy issues affect the Cherokee Nation they respectfully put the request before the Council to intervene on a limited basis. Council member Cowan moved for the approval. Councilman Anglen seconded the motion. Councilman Hoskin asked if the Nation has intervened in anyway or responded through our attorneys in Washington to any extent. He asked Todd Hembree if there is action on the part of law firms in Washington, DC right now on Cherokee Nation's behalf prior to the Council approving this, and is that covered in the prior Act. Todd Hembree stated yes it is covered under what is called the "Consent to Litigation Act" that was passed in the last term which states that if the Cherokee Nation were entered into a suit that it was recognized in there would be some kind of indication of emergency that it wouldn't be possible to get Council approval prior to entering into a lawsuit, so therefore under that Act it requires the Administration to get Council approval within sixty days from the date of filing. Councilman Hoskin asked Melanie if it would be possible to get a copy of the number of hours expended to this point and the cost of those hours up to this point. Melanie stated yes, she would get copies for the Council. Melanie stated in essence by intervening Cherokee Nation keeps it in the court system because what is being contemplated now is a settlement out of court and that would just be handled in the Department of Interior and not even be heard by the court. Roll call vote is as follows:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Absent |
| Audra Smoke-Conner | Yea | Cara Cowan | Yea |
| S. Joe Crittenden | Absent | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Nay |
| William Johnson | Yea | John F. Keener | Absent |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Absent | David Thornton, Sr. | Nay |
| Phyllis Yargee | Yea | | |

The motion for approval of this Resolution passed with a vote of eight (8) yeas; two (2) nays.

Blue Card Application for Membership (Discussion only). Jack Baker stated a letter was sent to Council member Cowan from one of her constituents stating that he did not like being called a member of the Cherokee Nation and would like to be called a citizen of Cherokee Nation. The Registration Committee went through the forms and agreed they should be changed. He provided a

copy of the proposed application with the changes highlighted and a copy of the current application. Council member Cowan thanked Jack Baker and the Registration Committee for their response on this. She stated the preface for the change was that we are not members of a club but we are citizens of a Nation and that is part of our self-determination and our exercise of sovereign. It is how we identify ourselves as citizens of a very proud Cherokee Nation and not members of a club. Councilman Thornton requested Todd Hembree to check into to see if holding citizenship in the United States of America plays into this for dual citizenship. Todd Hembree stated he has not checked into it but there are instances that individual can have dual citizenship. A person can be a citizen of an Indian tribe and a citizen of the United States of America. But he will do some research on this. Councilman Hoskin asked if this would be problematic in anyway with the Constitution as it pertains to membership. Todd Hembree he knows that citizen would be in line with the 1999 Constitution and in the 1775 Constitution there are instances where the term membership is used and he does not feel this would be a constitutional question at this point but if and when the 1999 Constitution is signed and brought into affect it states citizen all the way through it. Jack Baker stated the Justice Department has looked the application over and does not see a problem with the change and it is his understanding that the Registration Committee can approve it but they wanted to bring it before the Council to be sure there would be no objections. Councilman Hoskin made a motion to move this item to the next Rules Committee meeting for action. Councilman Thornton seconded the motion. Council member Cowan offered a friendly amendment that all documents of the tribe as changes are made meaning new things created, new copies, or new brochures that they refer to everyone as citizens and not members of the Cherokee Nation Councilman Hoskin did not accept the amendment because that needs to be handled in a different piece of legislation and if Todd Hembree would draft something to that affect because it does need to be addressed and its importance calls for a separate piece of legislation. This deals with our membership and registration committee and he would like to confine it to that. Motion carried.

Codification Report. Faye Teague stated she has nothing to report but she has received copies of legislation on a disk through 2000 and she also has a meeting scheduled with Diane Hammons in the morning to get a computer and hopefully a scanner. She visited with West Publishing and Chief Smith and discussed how many volumes that the Nation might want of the new code and she suggested 300 but the representative from West stated that it would be difficult to disperse 300 copies so Chief Smith suggested 200 copies plus the laws on CD. She is going to visit with West again and ask for a quote for 200 copies, and a CD of something that would be three volumes. She stated it will be a sizable amount and in a month she should be able to tell the Council what the costs might be. Chair Frailey requested Ms. Teague to report to this at next months Rules meeting.

Housing Authority Advisory Board Members. Councilman Hoskin moved to have names brought forward and voted at next months Rules meeting. Councilman Crittenden seconded the motion. Motion carried.

A Resolution Confirming the Nomination of Jeff Limore as a Board of the Cherokee Nation Sequoyah High School Board of Education. Councilman Hoskin moved for the approval of Jeffrey Todd Limore to the Sequoyah High School Board of Education. Councilman Garvin seconded the motion. Motion carried.

Councilman Hoskin asked the Chair to allow Marilyn Vann to speak.

Marilyn Vann gave brief comments and provided documents to the Council to try and acquaint them on the various issues regarding the Cherokee Freedmen.

**ANNOUNCEMENTS:**

The next meeting date is tentatively scheduled for March 17th at 3:00 p.m.

**ADJOURNMENT:**

Councilman Garvin moved for adjournment. Council member Cowan seconded the motion. Meeting adjourned.

**APPROVAL/DISTRIBUTION:**

Minutes submitted by: Gayle Miller, Recording Secretary

Motion to approve minutes made by: ______________________________

Minutes attested and concurred by: ______________________________

Date: ______________________

**MINUTES OF**
**TRIBAL COUNCIL MEETING – REGULAR SESSION**
**MONDAY, MARCH 14, 2005**

**CALL TO ORDER:**

President Grayson called the meeting to order at 6:00 p.m. in the Tribal Council Chambers, W.W. Keeler Complex.

**INVOCATION:**

Council member Shotpouch gave the invocation.

**ROLL CALL:**

Gina Blackfox, Legislative Aide gave roll call. The following members were present:

| | | |
|---|---|---|
| Buel Anglen | Bill John Baker | Cara Cowan |
| S. Joe Crittenden | Meredith Frailey | Don Garvin |
| Charles Hoskin | William "Bill" Johnson | Johnny Keener |
| Jackie Bob Martin | Melvina Shotpouch | Phyllis Yargee |
| David Thornton, Sr. | | |

A quorum was present to conduct business. Council members Conner and O'Leary were unable to attend.

**APPROVAL OF MINUTES OF PREVIOUS MEETING:**

Councilman Baker moved to approve the minutes of the February 14th, regular session. Council member Cowan seconded the motion. Motion carried.

**STATE OF THE NATION ADDRESS:**

Chief Smith took a few moments to recognize the loss of several Cherokee members. Joseph Stanley, son of Rhonda Stanley, who is employed with the Cherokee Nation Health Department. Andy Ketcher, Cherokee community citizen also passed away. Councilman Garvin recently lost a sister. Lucy West, original Cherokee enrollee, recently passed on. He requested a moment of silence in memory of them. He also recognized the accomplishments and enthusiasm of several Cherokee citizens. Cherokee Nation geographic information system department hosted a mapping conference last week and 150 attended. The conference provided tribes with information and trainers came from Alaska and Hawaii. The mapping mechanisms used within tribes include analyzing data to support compact agreements, geographical patterns of disease such as diabetes and cancer. He announced the Law and Justice Department recently won a case in the Supreme Court against the Indian Health Service and Bureau of Indian Affairs for contract support costs in the amount of 8.5ml dollars. Cherokee Nation car tag revenues

**Ex. 31**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

enabled the distribution of 2.5ml dollars to area schools. The tribe distributes 38% of tag revenues to area schools and he expressed his appreciation to Council members who attended this summit to deliver these payments. The Human Services Elder Program is planning an Elder pow-wow on April 30th at the Cherokee Nation cultural grounds. The pow-wow will help raise funds for the elder conference to be held in June. The JOM Program has been very busy hosting the challenge bowl competitions. The finals were televised via Internet. He announced the Cherokee Challenge Bowl teams placing first and third from each division were as follows: Osage (K-2nd), Gore, and Maryetta; Division II, (3rd – 5th) Osage, Gore, and Maryetta; Division III (6th – 8th) Gore, Grove, and Briggs; (9th – 12th) Grove, Sequoyah, and Ft. Gibson. The spring JOM awards luncheon honoring Cherokee Challenge Bowl and JOM Creative Writing Contest winners will be held on April 14th at the Tulsa Marriott in Southern Hills. The Cherokee Nation Vocational Rehabilitation is going to host a disability awareness day on Thursday, March 17th at the main complex. Registration will begin at 8:30 a.m. Cherokee Nation will be celebrating Arbor Day on March 24th. This event celebrates the heritage of hunting and fishing. Cherokee Nation will give away free tree seedlings to the public and employees will join in by planting trees around the complex. He announced Sequoyah High School basketball teams returned from Oklahoma City as winners. The boys team took second place in the state competition and the girls team took first place and are the Oklahoma State champions in their class. He congratulated both teams and presented them with certificates on behalf of the Cherokee Nation.

In a rare opportunity, five brothers, members of the Welch family, who have served in the military, were recognized for serving our country. Key Welch of Hulbert entered the Army Reserves in 1955. Noah Welch of Tenkiller went into the Army in 1966 and served in Vietnam. Charley Welch, of Hulbert, served in U.S. Marines and also went to Vietnam in 1966 and served in the Army National Guards in 1982, served in the 120th engineer battalion and later retired in 1999. Spade Welch, of Hulbert, joined the Army in 1980 and served in the 177th Army Division at Ft. Carson, Co. Spade later served in the U.S. Marine Corps from 1983 – 1986 and served in the Oklahoma National Guards 120th engineer battalion in 1988 – 2004. Spade went on to serve in the 130th engineer battalion during the Operation Iraqi Freedom in 2003-2004. Jimmy Welch, of Hulbert, served with 197th infantry unit in Vietnam from 1969 – 1979. Chief Smith also recognized Anthony Tiger, a Cherokee veteran, for his military service in Iraq. Anthony recently served in the 120th engineering battalion as Specialist 4, heavy equipment operator. He just returned from Iraq. David Stewart presented Anthony with a certificate. Chief Smith also recognized Jon Ketcher, Shawna Eubanks, and Anthony Tiger of the 120th battalion. Jon spoke about the Cherokee flag taken to Iraq and how it still had the Iraqi dirt on it and how the flag was unfurled in different locations. He presented the flag back to the Cherokee Nation. Chief Smith stated Shawna presented remarks during the last Cherokee holiday. Deputy Chief Grayson stated this was the first time a Cherokee Nation flag was flown in a combat zone. The flag will be displayed in the foyer of the tribal headquarters. Chief Smith announced community meetings would be held in Jay, on March 29th at Jay Community Center and Councilman Garvin is hosting a community meeting on March 15th, in Porum.

**ACTION OF UNFINISHED BUSINESS:**

Council member Frailey moved to amend the agenda to include three additional business items:

15) A Resolution Establishing Procedures for Procurement of Attorney Fees
16) A Resolution Authorizing the Submission of a Proposal to the U.S. Department of Health and Human Services Administration for Native Americans
17) A Resolution Authorizing the Bureau of Indian Affairs (BIA) to Revise and Update the Cherokee Nation's Inventory of Indian Reservation Roads

Council member Cowan seconded the motion with a friendly amendment to add as a standing agenda item under reports to include Cherokee Nation Businesses. Motion carried.

Council member Frailey stated last month the Tribal Council passed legislation covering back pay and benefits to grieved employees who were terminated and they appealed and were successful. The legislation was vetoed because of the confidentary nature and it also suggests corporate employees with the same procedures processed as government employees. Since the intent of the Tribal Council was to establish an appeals process for all employees and the nature of the businesses are somewhat different the Council Attorney drafted separate legislation for both types of employees. She hesitated to approve both pieces of legislation as presented for instance there is a definition of "employee" which include "temporary employees" or "employees under contract, etc." Therefore, she moved to remand both pieces back to the Rules Committee for further clarification and in-depth analysis. Council member Cowan seconded the motion. Motion carried.

**MONTHLY REPORTS:**

**Housing Authority: David Southerland, Executive Director**

Mr. Southerland announced the Housing Authority Board of Commissioners would meet on Tuesday, March 15th, 5:30 p.m. The Commissioners will discuss agenda items including the employee merit and COLA. A special board meeting was held last week to initiate training for new board members. The budget process for FY2005 IHP Block Grant Funds will begin this week. The Housing Authority staff will meet with Cherokee Nation staff to discuss the implementation of the new housing philosophy. They will be discussing the use of case management approach to home ownership. The purpose of these meetings will be to develop policy and work out the details on implementation. They will be having additional meetings in the near future to talk about other aspects of the block grant, in particular rehab.

**Cherokee Nation Enterprises: David Stewart, CEO**

Mr. Stewart reported CNE continues to have very positive results with income increasing by 25% across the board from last year. The dividend has increased to approximately

1ml a month and they expect this to increase throughout the year. The employee count is 2300 with a total of Native American employees in Tahlequah being 93% and Cherokee employment is 78%; Roland total Native American is 78% with 77% being Cherokee; West Siloam is 84% total Native American with 72% being Cherokee; Catoosa has 61% total Native American and 45% being Cherokee. They continue to work to improve those employment numbers in hiring Cherokees and the policies are in place to do so. They also continue to look into expansion opportunities at the various casinos. They are in the design phase in West Siloam and Roland as well as the second phase in Catoosa. They have experienced great results with the management team. The construction for the Tahlequah gaming facility is expected to begin soon. They will break ground within the next 30 – 60 days and Sallisaw soon thereafter.

**Cherokee Nation Industries: Jim Majewski, CEO**

Mr. Majewski reported CNI sales are slightly less that 7ml and CNI sales for the first seven months of 2005 are close to 54ml. The profitability for the month was slightly greater than $500,000 dollars with profitability for the year being around 2ml for the first seven months. They are somewhat behind in shipment so they are ahead of profitability. The next board meeting will be held on March 30th, at 9:30 a.m. in Stilwell.

**Cherokee Nation Businesses, Inc: Jim Carrington, CEO**

Mr. Carrington reported CNB was formed in June 2004 with the main mission being to diversify the business interest of the Cherokee Nation. He hopes to have much more to report as the years go by. In that regard, they have one business to report on now which is Cherokee ConneX which Cherokee Nation has 51% ownership. It is a company which provides wireless Internet access. They have several customers already.

Councilman Garvin stated the NCAI mid year convention is scheduled for June 12 – June 16. He made a motion to schedule the council meeting on June 20th, 6:00 p.m. Council member Cowan seconded the motion. Councilman Hoskin inquired about whether the committee meetings would also be rescheduled. It was agreed to discuss this during the next committee meetings. Council member Shotpouch inquired if Cherokee Nation was a member of the National Congress of American Indians. President Grayson was unsure. With no further discussion, the motion carried to schedule June 20th Council meeting.

**NEW BUSINESS:**

*1)* ***Confirmation of Language, History, & Culture Committee Members (Councilmen Anglen and Garvin)***
Councilman Keener moved to approve Councilmen Anglen and Garvin as members of the Language, History & Culture Committee. Councilman Baker seconded the motion. Motion carried.

2) ***Confirmation of Employment Committee Members (Councilmen Martin & Garvin)***

Councilman Anglen moved to approve Councilmen Martin and Garvin as members of the Employment Committee. Councilman Crittenden seconded the motion. Motion carried.

3) ***A Resolution Authorizing the Department of Children, Youth and Family Services to Submit an Application for Transitional Living Services for Youth to the U.S. Family and Youth Services Bureau, Runaway and Homeless Youth Program/R#25-05***

Council member Shotpouch moved to approve a resolution authorizing submission of a grant application seeking funding to assist in delivering services to homeless youth who need additional support in safe housing and economic, educational, and social skills to ensure a successful transition toward independent living. The services will target older adolescents, ages 16-21, including pregnant and parenting youth. Councilman Hoskin seconded the motion. Motion carried.

4) ***A Legislative Act Amending Legislative Act 37-04 Authorizing the Comprehensive Budget for Fiscal Year 2005 – Mod 6; And Declaring an Emergency/LA#10-05***

Councilman Baker moved to approve the legislation authorizing the comprehensive FY2005 Mod 6. The purpose of the amendment is to authorize and approve the use of funds subject to the availability of such funds. The cumulative total of the budget is increased by $1,307,754 for a total budget authority of $307,083,373. Councilman Crittenden seconded the motion. Yeas and Nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Absent | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Chuck Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a unanimous vote of thirteen (13) yeas; none (0) opposing

5) ***A Resolution Authorizing a Grant Application for Funding for the Development of a Childhood Lead Poisoning Prevention Outreach Program in the Office of Environmental Protection/R# 26-05***

Councilman Martin made a motion to approve a resolution authorizing a grant application for funding for the development of a Childhood Lead Poisoning Prevention Outreach Program in the Office of Environmental Protection. The program will concentrate Lead Hazard Outreach activities on families with young children in areas that are determined to be at high risk from previous OEP lead-based paint inspections. This grant application is for $54,790 and there is no match. Councilman Garvin seconded the motion. Motion carried.

6) ***A Resolution Confirming the Nomination of Jeff Limore as a Board Member of the Cherokee Nation Sequoyah High School Board of Education/R#27-05***

Council member Frailey moved to approve the nomination of Jeff Limore as member of the Sequoyah High School Board of Education for a term of five years. Councilman Martin seconded the motion. Motion carried.

7) ***A Resolution Confirming the Nomination of the Fifth Election Commissioner***

Council member Frailey stated there are five members of the Election Commission, two are appointed by the Principal Chief and approved by the Tribal Council, two are approved and confirmed by the Tribal Council and those four elect a fifth member. Each commissioner must take an oath of office, two of the commissioners have not taken their oath of office yet and she moved to table the confirmation of the fifth member at this time until these two officers are confirmed under oath. Councilman Baker seconded the motion. Motion carried.

8) ***A Resolution Confirming the Nomination of Adolph Lechtenberger as a Board Member of Cherokee Nation Businesses, Inc./R#28-05***

Council member Frailey stated Mr. Lechtenberger has been nominated by the Principal Chief to serve as a member of the Cherokee Nation Business Board. She moved to confirm the nomination with a correction to reflect in the last paragraph "Cherokee Nation Businesses, Inc." instead of "Cherokee Nation Enterprises". Councilman Garvin seconded the motion. Motion carried.

9) ***A Legislative Act Relating to Cherokee Nation Employee Termination Appeals, Providing for Severability and Declaring an Emergency/LA#***

This legislation was remanded back to Rules Committee for further analysis.

10) ***An Act Relating to and Amending Title 10 of the Cherokee Nation Code Annotated to Add Chapter 3, Sections 100 through 123, Which Establish Cherokee Nation Procedure for the Determination of Paternity/LA#11-05***

Council member Frailey stated this amendment provides the procedure for the Cherokee Courts to determine the paternity of a child. The District Court has jurisdiction if the father is a citizen of the Cherokee Nation or in case of a non-

member Indian or non-member if that person resides within the territorial boundaries of the Cherokee Nation and the proceedings brought by the child support enforcement division. She moved for approval of the legislation and Council member Cowan seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| Audra Conner | Absent | Cara Cowan | Yea |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Charles Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of thirteen (13) yeas; none (0) opposing.

11) ***A Legislative Act Relating to and Amending Title 43 of the Cherokee Nation Code Annotated to Add Chapter 5, Sections 500 through 506, Which Establish the Cherokee Nation Office of Child Support Enforcement, and Which Adds Chapter 6, Sections 507 through 517, Which Establish the Procedures for Entering, Amending, and Enforcing Child Support Orders, and Which Requires the Cherokee Nation to Cooperate with Other Jurisdictions in the Enforcement of Child Support Orders/LA#12-05***

Council member Frailey moved to approve the legislation to create an Office of Child Support Enforcement within the Cherokee Nation Department of Justice and to establish procedures for the enforcement of child support orders. She moved to approve the legislation and Councilman Crittenden seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Phyllis Yargee | Yea | David Thornton, Sr. | Yea |
| Melvina Shotpouch | Yea | Jackie Bob Martin | Yea |
| Linda O'Leary | Absent | John F. Keener | Yea |
| William Johnson | Yea | Chuck Hoskin | Yea |
| Don Garvin | Yea | Meredith Frailey | Yea |
| Cara Cowan | Yea | S. Joe Crittenden | Yea |
| Audra Smoke-Conner | Absent | Bill John Baker | Yea |
| Buel Anglen | Yea | | |

The motion carried with a unanimous vote of thirteen (13) yeas; none (0) opposing

12) ***A Legislative Act Amending LA#16-01 Relating to Referendum and Initiative Measures; Setting Procedures; Setting Crimes and Punishment; and Declaring an Emergency/LA#13-05***

Council member Frailey stated the legislation sets standards and procedures for the referendum and initiative measures. It changes the requirement on petitions from having the Cherokee registry number to only requiring a date of birth. By this change it will make it easier to verify signatures and determine the validity of the petition before it is circulated. Another minor change includes changing the term of "registered voter" to that of a "legal voter". She moved to approve the legislation. Councilman Hoskin seconded the motion. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Yea |
| ~~Audra Conner~~ | ~~Absent~~ | ~~Cara Cowan~~ | ~~Yea~~ |
| S. Joe Crittenden | Yea | Meredith Frailey | Yea |
| Don Garvin | Yea | Charles Hoskin | Yea |
| William Johnson | Yea | John F. Keener | Yea |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Yea | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of thirteen (13) yeas; none (0) opposing

13) ***A Resolution Approving the Recommendations of the Office of General Counsel for Payment of Attorney Fees From the Arkansas Riverbed Settlement Fund and Authorizing the Principal Chief to Submit the Payment Plan to the Bureau of Indian Affairs – Patton & Boggs/R#29-05***

Council member Frailey stated last month the Tribal Council approved a payment of attorney fees as part of the compensation of the Arkansas Riverbed settlement to three separate law firms. The General Counsel also has recommended the payment for legal fees to the law firm to Patton Boggs in the amount of $151,000. This legislation also authorizes the Principal Chief to submit the payment plan to the Bureau of Indian Affairs for payment from the Cherokee Nation Trust Funds as Congress appropriates the funds. She moved to approve the resolution. Council member Cowan seconded the motion. Councilman Baker commented for the record, he will vote no, not because they don't deserve anything, but he feels under paying them is wrong. Councilman Hoskin questioned the funding for the attorney payments and asked Melanie Knight to explain. He asked about the current status of the almost 10ml dollars which Congress has appropriated for the Cherokee Nation and whether it has been placed in trust funds bearing interest or what the status is. She responded the $2000 is for the Cherokee Nation first installment of 5ml that is in a trust account and recently in January the second installment was received which they appropriated and it also has been deposited into the trust account. All of the resolutions brought before the Council would pay attorney fees, which were approved on a pro rata basis on the amount received according to the resolution. Councilman Hoskin asked as of this date if funds had been taken out and paid to any law firms. The three resolutions approved by the Council earlier have been submitted to the Bureau for review but

they have not approved anything yet. He asked what is the process for the tribe to actually receive funds and in turn start appropriating them. She responded as soon as those hit the trust account the Bureau approves and retains these funds because they are trust funds and it is proper that the Nation approves a budget to expend them and the legislation or budget is then sent to the Bureau along with the draw down request. The Bureau must review and approve and send to Albuquerque for actual disbursement for the Nation. They do not look at legislative act or tribal laws that cover the use of these funds and the Council has passage of such an Act which covers the use of these funds. He then asked about the timeline. She said she does not have a good estimate but she will refer this to Callie Catcher. There are some drawdowns from trust funds each year in support of the general budget but it usually takes some time and often it may be a matter of months. He asked if Cherokee Nation has ever received or asked for a release from any of these firms for payments that have been approved. She does not know of any but that doesn't mean there isn't one. That may be a question for the General Counsel. He agrees with Councilman Baker and although he appreciates the time which Council has taken over this issue because it is Cherokee peoples money and it is extremely important because they are also talking about the reputation of the Cherokee Nation. The original bill for the attorney firm in reference, Patton Boggs, is in excess of 1.4ml dollars. The Council Attorney, Todd Hembree, is recommending in excess of $900,000 and tonight they are addressing a settlement in the amount of $151,000 dollars. In the question of fairness and respect to the Cherokee Nation he cannot support the resolution. Councilman Thornton asked for the total appropriation for settlement funds from Cherokee Nation. She responded the total amount was $40 billion for the entire settlement for all tribes with 50% being Cherokee Nation's. This amount being $20ml will be paid over a four-year period. Council member Cowan stated there has been extensive debate on this in a committee meeting and many were not there. She asked for a moment for the other part of the story to be heard. While she appreciates this is the Cherokee Nation money and Congress set aside this by law said they could only take up to 10% or 2ml of the funds to pay any lawyers in order to protect the tribe and people. In this settlement they have appropriated three other law firms money because they were not paid prior to this, however, in the case of Patton Boggs they did not work on the case for Cherokee people for approximately seven years and prior to that they had been paid under their contract approximately 450,000 dollars already toward that bill. For other reasons, they were not active on the case and in her mind they abandoned the contract and in this $151,000 allocated to them as payment they are paying them for the one phone call they have made in the last seven years in order to be a participant in Arkansas Riverbed's settlement for the Cherokee Nation. Unlike her colleagues, she does see this as a very fair settlement and they are taking the Cherokee people's money and doing the best they can to compensate all the law firms that have been involved in the many years that this case has been going on. There is another side to the story and some of the information is available through the Freedom of Information Act if it is very important to understand how this issue was decided and know that each of them read a lot of documentation in

order to come to the vote today and she feels it is very important they have been compensated and they will finish compensation out and no one needs to act like they haven't been paid. Because these people have been paid out of Cherokee money and appropriately. Councilman Johnson stated when he looked at the legislation and the different amounts being proposed by the administration to cover the cost of this he was reminded that Cherokee people have seven or eight attorney's employed at the Cherokee Nation and he was too concerned about the Cherokees money. He was looking at these attorney's that do the work of the Cherokee people every day and this was their recommendation and for that reason he supports the resolution. Councilman Baker said he will lose the vote so not a lot needs to be said but he does know the General Counsel's recommendation gave a $100,000 bonus to one attorney and they are now going to turn around and stiff a law firm in all actuality had they not made the one phone call would have been blocked in Congress and it was their original lawsuit that won the $20ml and to give them $150,000 and they were paid $400,00 but they also got the Mankiller Clinic, the Redbird Smith Clinic, while they were working for the Cherokee Nation and Wilma Mankiller called them and said they are on high center and asked them to come back and the attorney firm contracted with the Cherokee Nation on a contingency basis. He emphasized, "When you win, when you settle, you pay". Council member Cowan felt the need to answer some of the suggestions because the documentation she read showed that Patton Boggs was compensated under a separate contract for those lobbying efforts for Mankiller Clinic and other things and they need to separate those issues from what they are voting on it does not have anything to do with Arkansas Riverbed settlement and how they should compensate the law firm. She appreciates the work that Patton Boggs did for those things the Cherokee Nation has received however they have been duly compensated under a separate contract and hates the suggestion that they didn't do that. The Cherokee Nation does honor their contracts and there were multiple contracts involved and in fact two contracts were very similar in the 10% contingency fees. One stayed with the Cherokee Nation all the way through to make sure that Cherokee Nation received the proper settlement as a tribe and Patton Boggs did not for various reasons, she hates the idea that Cherokee Nation would be left with the idea that they did not act properly but she strongly believes they have acted in good faith and executed the contracts as a business as they should. Councilman Hoskin requested a roll call vote. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Buel Anglen | Yea | Bill John Baker | Nay |
| Audra Conner | Absent | Cara Cowan | Yea |
| S. Joe Crittenden | Nay | Meredith Frailey | Yea |
| Don Garvin | Yea | Charles Hoskin | Nay |
| William Johnson | Yea | John F. Keener | Nay |
| Linda O'Leary | Absent | Jackie Bob Martin | Yea |
| Melvina Shotpouch | Nay | David Thornton, Sr. | Yea |
| Phyllis Yargee | Yea | | |

The motion carried with a vote of eight (8) yeas; five (5) nays

14) ***A Resolution Ratifying Intervention in Litigation in the United States District Court for the District of Columbia/R#30-05***

Council member Frailey stated in August 2003 a complaint was filed before the Court of the District of Columbia against the Secretary of Interior alleging the Bureau of Indian Affairs wrongfully recognized the Cherokee election of 2003. The Secretary of the Interior has to date recognized the validity of the 2003 election. During the proceeding of the case the Secretary has declined to appraise the District Court of certain jurisdictional issues and has also held secret settlement negotiations over a lengthy period of time without involving the Cherokee Nation. They should defend the vote of the people and the Nation should be at the table when the election laws are being debated or at stake. She does not believe the Secretary is an adequate representative of the Nation's interest, moreover, the courts have previously determined that the federal government cannot adequately represent an absent tribe in this case which Cherokee Nation is because of competing interest between the two parties. Since the complaint does not name the Cherokee Nation as a party to the suit certainly sovereignty should be protected, she believes it is in the best interest to intervene. She moved to ratify intervening in the case and authorize the Principal Chief to take the necessary action to pursue such intervention. Council member Cowan seconded the motion. Councilman Hoskin stated there is currently in the tribal court a request to review the Act, which allows for retroactive payment to law firms. That is an issue that affects the heart of the Constitution and empowers the people and the Council Attorney has recommended this can be addressed in the tribal court to determine if the retroactive payment to law firms. Councilman Crittenden stated he received a letter from Marilyn Vann requesting time to address the Tribal Council on new information concerning this particular resolution. After speaking with the Rules Chairperson, Council Attorney and President Grayson, he was informed she would be allowed to address the Tribal Council. President Grayson stated only in a technical expertise manner. Council member Cowan called for point of order stating she does not agree with that because that during full Council it has become a practice per internal rules and procedures for the Council that they, only as members of the body, are allowed to speak unless it is a staff person or consultant on staff or contract that is allowed to speak and this is not on the agenda and for anyone else a tribal citizen it is required that they be on the agenda and everyone given a ten day notice that this is going to happen. She was given an opportunity in committee meeting to speak which is the appropriate place. Councilman Crittenden asked that she be allowed to speak to the five minutes President Grayson agreed to earlier. President Grayson stated Ms. Cowan was right, citizens come down and talk to them and they can ask for technical assistance. If Marilyn Vann is going to engage in the debate she is not allowed to do that, if she is going to come down and rebuke anything that has gone on she cannot do that, she is not a part of the Council. She cannot engage into a debate with the Council. Councilman Crittenden stated it is

not her intent to debate that is not the purpose. President Grayson asked Ms. Vann what she was to talk about. She replied to give historical information regarding some about the resolution, rights of Cherokee freedmen. He stated the resolution does not affect the freedmen and that Cherokee Nation only wants to get into the litigation. Council member Cowan stated the topics she is discussing about really fall outside of the realm of this particular resolution and the merits of the resolution and it is not pertinent to the debate at this time and that anyone is welcome to submit information in writing which would become a part of public record and people can obtain that and she does not think this is the forum or the place for this person to be speaking. Councilman Anglen called for the question. Yeas and nays were recorded:

| | | | |
|---|---|---|---|
| Phyllis Yargee | Yea | David Thornton, Sr. | Nay |
| Melvina Shotpouch | Nay | Jackie Bob Martin | Yea |
| Linda O'Leary | Absent | John F. Keener | Nay |
| William Johnson | Yea | Chuck Hoskin | Nay |
| Don Garvin | Yea | Meredith Frailey | Yea |
| Cara Cowan | Yea | S. Joe Crittenden | Nay |
| Audra Smoke-Conner | Absent | Bill John Baker | Nay |
| Buel Anglen | Yea | | |

The motion carried with a vote of seven (7) yeas; six (6) nays

15) ***A Resolution Establishing Procedures for Procurement of Attorney Fees/R#31-05***

Council member Frailey stated the resolution establishes procedures for procurement of attorney fees with a limit of $5,000 per fiscal year and additionally if a Tribal Council does not use these attorney fees and under this resolution those funds that are not expended can be used in the Council person's district as community assistance. She moved for the approval of the resolution and Councilman Anglen seconded the motion. Motion carried.

16) ***A Resolution Authorizing the Submission of a Proposal to the U.S. Department of Health and Human Services Administration for Native Americans//R#32-05***

Council member Yargee stated the resolution authorizes the Cultural Resource Center to submit a proposal to the Administration for Native Americans that provide education to teachers in the Cherokee language and develop, print, and disseminate materials towards ensuring the survival of the Cherokee language of future generations. The grant requires $23,750 in-kind match. She moved for the approval and Councilman Baker seconded the motion. Motion carried.

*17) A Resolution Authorizing the Bureau of Indian Affairs (BIA) to Revise and Update the Cherokee Nation's Inventory of Indian Reservation Roads/R#24-05*

Councilman Martin moved to approve the resolution authorizing the BIA to revise and update the Cherokee Nation's inventory of Indian Reservation Roads. Councilman Baker seconded the motion. Motion carried.

**ANNOUNCEMENT:**

Council member Cowan introduced her mother who was in attendance. She is originally from Claremore but currently resides in Texas. She was visiting while on spring break.

**ADJOURNMENT:**

With no further business presented, Councilman Baker moved for adjournment. The next meeting will be held on April 11th, 6:00 p.m. at the W.W. Keeler Complex.

Joe Grayson, Jr., President
Council of the Cherokee Nation

**RESOLUTION NO. 18-05**

## COUNCIL OF THE CHEROKEE NATION

**A RESOLUTION APPROVING THE RECOMMENDATIONS OF THE OFFICE OF GENERAL COUNSEL FOR PAYMENT OF ATTORNEY FEES FROM THE ARKANSAS RIVERBED SETTLEMENT FUND AND AUTHORIZING THE PRINCIPAL CHIEF TO SUBMIT THE PAYMENT PLAN TO THE BUREAU OF INDIAN AFFAIRS – HALL & ESTILL**

**WHEREAS,** the Cherokee Nation since time immemorial has exercised the sovereign rights of self-government in behalf of the Cherokee people;

**WHEREAS,** the Cherokee Nation is a federally recognized Indian Nation with a historic and continual government to government relationship with the United States of America;

**WHEREAS,** the Cherokee Nation owns portions of the Arkansas Riverbed as recognized by the Supreme Court of the United States in *Choctaw v. United States*;

**WHEREAS,** the United States of America and the Cherokee Nation have agreed on a plan for compensation regarding the mismanagement of the Nation's property by the United States, including payment of attorney's fees associated with the Arkansas Riverbed litigation, pursuant to 25 U.S.C.A. § 1779(d) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act;

**WHEREAS,** under this Act the Secretary shall pay to the attorneys those fees provided for in the individual attorney fee contracts as approved by the respective Indian Nations;

**WHEREAS,** the Act also provides that the total fees payable to attorneys under such contracts shall not exceed 10 percent of that Indian Nation's allocation of appropriated funds.

**WHEREAS,** the General Counsel of the Cherokee Nation has reviewed the various attorney contracts, billings and previous payments associated with the Arkansas Riverbed litigation and have made the following specific finding that the firm of Hall, Estill is entitled to $280,524.57;

**WHEREAS,** the General Counsel consulted with an independent law firm, who concurred with these findings;

**WHEREAS,** in fiscal year 2004, a total of $9,935,000 of the $40,000,000 settlement has been appropriated, of which $4,500,000 has been paid to the Cherokee Nation, thus limiting attorney fees from the Cherokee share of the appropriations to $450,000,

**WHEREAS,** Principal Chief Chad Smith has approved these payments, and recommends them for approval by this Council to be paid from the settlement funds proportionately to the attorneys as funds are appropriated in the federal budget, with any unpaid balances proportionately paid from the funds in succeeding years as they are appropriated, not to exceed 10% of the Cherokee allocation of the settlement;

**BE IT RESOLVED BY THE CHEROKEE NATION,** that the Council endorses and approves the above recommendations of the Office of General Counsel for disbursement of attorney's fees to the appropriate firms and individuals who have earned payment by their legal work for the Nation, and that the Principal Chief is hereby authorized to submit this plan to the Bureau of Indian Affairs for approval for payment from Cherokee Nation trust funds as funds are appropriated by the Congress, and in accordance with the aforementioned legislation.

**Ex. 32**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**CERTIFICATION**

The foregoing resolution was adopted by the Council of the Cherokee Nation at a duly called meeting on the 14th day of February, 2005, having 14 members present, constituting a quorum, by the vote of 11 yea(s); 3 nay(s); 0 abstaining.

Joe Grayson, Jr., President
Council of the Cherokee Nation

**ATTEST:**

Audra Smoke-Conner, Secretary
Council of the Cherokee Nation

Approved and signed by the Principal Chief this 17th day of FEBRUARY, 2005

Chadwick Smith, Principal Chief
Cherokee Nation

**ATTEST:**

Callie Catcher, Secretary-Treasurer
Cherokee Nation

**RESOLUTION NO. 19-05**

## COUNCIL OF THE CHEROKEE NATION

### A RESOLUTION APPROVING THE RECOMMENDATIONS OF THE OFFICE OF GENERAL COUNSEL FOR PAYMENT OF ATTORNEY FEES FROM THE ARKANSAS RIVERBED SETTLEMENT FUND AND AUTHORIZING THE PRINCIPAL CHIEF TO SUBMIT THE PAYMENT PLAN TO THE BUREAU OF INDIAN AFFAIRS – PAUL NIBELL

**WHEREAS,** the Cherokee Nation since time immemorial has exercised the sovereign rights of self-government in behalf of the Cherokee people;

**WHEREAS,** the Cherokee Nation is a federally recognized Indian Nation with a historic and continual government to government relationship with the United States of America;

**WHEREAS,** the Cherokee Nation owns portions of the Arkansas Riverbed as recognized by the Supreme Court of the United States in *Choctaw v. United States*;

**WHEREAS,** the United States of America and the Cherokee Nation have agreed on a plan for compensation regarding the mismanagement of the Nation's property by the United States, including payment of attorney's fees associated with the Arkansas Riverbed litigation, pursuant to 25 U.S.C.A. § 1779(d) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act;

**WHEREAS,** under this Act the Secretary shall pay to the attorneys those fees provided for in the individual attorney fee contracts as approved by the respective Indian Nations;

**WHEREAS,** the Act also provides that the total fees payable to attorneys under such contracts shall not exceed 10 percent of that Indian Nation's allocation of appropriated funds.

**WHEREAS,** the General Counsel of the Cherokee Nation has reviewed the various attorney contracts, billings and previous payments associated with the Arkansas Riverbed litigation and has made the following specific finding that the estate of Paul Niebell is entitled to $100,000;

**WHEREAS,** the General Counsel consulted with an independent law firm, who concurred with these findings;

**WHEREAS,** in fiscal year 2004, a total of $9,935,000 of the $40,000,000 settlement has been appropriated, of which $4,500,000 has been paid to the Cherokee Nation, thus limiting attorney fees from the Cherokee share of the appropriations to $450,000,

**WHEREAS,** Principal Chief Chad Smith has approved these payments, and recommends them for approval by this Council to be paid from the settlement funds proportionately to the attorneys as funds are appropriated in the federal budget, with any unpaid balances proportionately paid from the funds in succeeding years as they are appropriated, not to exceed 10% of the Cherokee allocation of the settlement;

**BE IT RESOLVED BY THE CHEROKEE NATION,** that the Council endorses and approves the above recommendations of the Office of General Counsel for disbursement of attorney's fees to the appropriate firms and individuals who have earned payment by their legal work for the Nation, and that the Principal Chief is hereby authorized to submit this plan to the Bureau of Indian Affairs for approval for payment from Cherokee Nation trust funds as funds are appropriated by the Congress, and in accordance with the aforementioned legislation.

**Ex. 33**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**CERTIFICATION**

The foregoing resolution was adopted by the Council of the Cherokee Nation at a duly called meeting on the 14th day of February, 2005, having 14 members present, constituting a quorum, by the vote of 11 yea(s); 3 nay(s); 0 abstaining.

Joe Grayson, Jr., President
Council of the Cherokee Nation

**ATTEST:**

Audra Smoke-Conner, Secretary
Council of the Cherokee Nation

Approved and signed by the Principal Chief this 17th day of FEBRUARY, 2005.

Chadwick Smith, Principal Chief
Cherokee Nation

**ATTEST:**

Callie Catcher, Secretary/Treasurer
Cherokee Nation

**RESOLUTION NO. 20-05**

## COUNCIL OF THE CHEROKEE NATION

### A RESOLUTION APPROVING THE RECOMMENDATIONS OF THE OFFICE OF GENERAL COUNSEL FOR PAYMENT OF ATTORNEY FEES FROM THE ARKANSAS RIVERBED SETTLEMENT FUND AND AUTHORIZING THE PRINCIPAL CHIEF TO SUBMIT THE PAYMENT PLAN TO THE BUREAU OF INDIAN AFFAIRS – JIM WILCOXEN

**WHEREAS,** the Cherokee Nation since time immemorial has exercised the sovereign rights of self-government in behalf of the Cherokee people;

**WHEREAS,** the Cherokee Nation is a federally recognized Indian Nation with a historic and continual government to government relationship with the United States of America;

**WHEREAS,** the Cherokee Nation owns portions of the Arkansas Riverbed as recognized by the Supreme Court of the United States in *Choctaw v. United States*;

**WHEREAS,** the United States of America and the Cherokee Nation have agreed on a plan for compensation regarding the mismanagement of the Nation's property by the United States, including payment of attorney's fees associated with the Arkansas Riverbed litigation, pursuant to 25 U.S.C.A. § 1779(d) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act;

**WHEREAS,** under this Act the Secretary shall pay to the attorneys those fees provided for in the individual attorney fee contracts as approved by the respective Indian Nations;

**WHEREAS,** the Act also provides that the total fees payable to attorneys under such contracts shall not exceed 10 percent of that Indian Nation's allocation of appropriated funds.

**WHEREAS,** the General Counsel of the Cherokee Nation has reviewed the various attorney contracts, billings and previous payments associated with the Arkansas Riverbed litigation and has made the following specific finding that Jim Wilcoxen is entitled to $550,000.00,

**WHEREAS,** the General Counsel consulted with an independent law firm, who concurred with these findings;

**WHEREAS,** in fiscal year 2004, a total of $9,935,000 of the $40,000,000 settlement has been appropriated, of which $4,500,000 has been paid to the Cherokee Nation, thus limiting attorney fees from the Cherokee share of the appropriations to $450,000,

**WHEREAS,** Principal Chief Chad Smith has approved these payments, and recommends them for approval by this Council to be paid from the settlement funds proportionately to the attorneys as funds are appropriated in the federal budget, with any unpaid balances proportionately paid from the funds in succeeding years as they are appropriated, not to exceed 10% of the Cherokee allocation of the settlement;

**BE IT RESOLVED BY THE CHEROKEE NATION,** that the Council endorses and approves the above recommendations of the Office of General Counsel for disbursement of attorney's fees to the appropriate firms and individuals who have earned payment by their legal work for the Nation, and that the Principal Chief is hereby authorized to submit this plan to the Bureau of Indian Affairs for approval for payment from Cherokee Nation trust funds as funds are appropriated by the Congress, and in accordance with the aforementioned legislation.

**Ex. 34**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

**CERTIFICATION**

The foregoing resolution was adopted by the Council of the Cherokee Nation at a duly called meeting on the 14th day of February, 2005, having 14 members present, constituting a quorum, by the vote of 13 yea(s); 1 nay(s); 0 abstaining.

Joe Grayson, Jr., President
Council of the Cherokee Nation

**ATTEST:**

Audra Smoke-Conner, Secretary
Council of the Cherokee Nation

Approved and signed by the Principal Chief this 17th day of FEBRUARY, 2005.

Chadwick Smith, Principal Chief
Cherokee Nation

**ATTEST:**

Callie Catcher, Secretary/Treasurer
Cherokee Nation

**RESOLUTION NO. 29-05**

## COUNCIL OF THE CHEROKEE NATION

### A RESOLUTION APPROVING THE RECOMMENDATIONS OF THE OFFICE OF GENERAL COUNSEL FOR PAYMENT OF ATTORNEY FEES FROM THE ARKANSAS RIVERBED SETTLEMENT FUND AND AUTHORIZING THE PRINCIPAL CHIEF TO SUBMIT THE PAYMENT PLAN TO THE BUREAU OF INDIAN AFFAIRS – PATTON & BOGGS

**WHEREAS,** the Cherokee Nation since time immemorial has exercised the sovereign rights of self-government in behalf of the Cherokee people;

**WHEREAS,** the Cherokee Nation is a federally recognized Indian Nation with a historic and continual government to government relationship with the United States of America;

**WHEREAS,** the Cherokee Nation owns portions of the Arkansas Riverbed as recognized by the Supreme Court of the United States in *Choctaw v. United States*;

**WHEREAS,** the United States of America and the Cherokee Nation have agreed on a plan for compensation regarding the mismanagement of the Nation's property by the United States, including payment of attorney's fees associated with the Arkansas Riverbed litigation, pursuant to 25 U.S.C.A. § 1779(d) of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act;

**WHEREAS,** under this Act the Secretary shall pay to the attorneys those fees provided for in the individual attorney fee contracts as approved by the respective Indian Nations;

**WHEREAS,** the Act also provides that the total fees payable to attorneys under such contracts shall not exceed 10 percent of that Indian Nation's allocation of appropriated funds.

**WHEREAS,** the General Counsel of the Cherokee Nation has reviewed the various attorney contracts, billings and previous payments associated with the Arkansas Riverbed litigation and has made the following specific finding that the Patton, Boggs firm is entitled to $151,000;

**WHEREAS,** the General Counsel consulted with an independent law firm, who concurred with these findings;

**WHEREAS,** in fiscal year 2004, a total of $9,935,000 of the $40,000,000 settlement has been appropriated, of which $4,500,000 has been paid to the Cherokee Nation, thus limiting attorney fees from the Cherokee share of the appropriations to $450,000,

**WHEREAS,** Principal Chief Chad Smith has approved these payments, and recommends them for approval by this Council to be paid from the settlement funds proportionately to the attorneys as funds are appropriated in the federal budget, with any unpaid balances proportionately paid from the funds in succeeding years as they are appropriated, not to exceed 10% of the Cherokee allocation of the settlement;

**BE IT RESOLVED BY THE CHEROKEE NATION,** that the Council endorses and approves the above recommendations of the Office of General Counsel for disbursement of attorney's fees to the appropriate firms and individuals who have earned payment by their legal work for the Nation, and that the Principal Chief is hereby authorized to submit this plan to the Bureau of Indian Affairs for approval for payment from Cherokee Nation trust funds as funds are appropriated by the Congress, and in accordance with the aforementioned legislation.

**Ex. 35**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

## CERTIFICATION

The foregoing resolution was adopted by the Council of the Cherokee Nation at a duly called meeting on the 14th day of March, 2005, having 13 members present, constituting a quorum, by the vote of 8 yea(s); 5 nay(s); 0 abstaining.

Joe Grayson, Jr., President
Council of the Cherokee Nation

**ATTEST:**

Audra Smoke-Conner, Secretary
Council of the Cherokee Nation

Approved and signed by the Principal Chief this 21st day of MARCH 2005.

Chadwick Smith, Principal Chief
Cherokee Nation

**ATTEST:**

Callie Catcher, Secretary/Treasurer
Cherokee Nation

SEAL OF THE CHEROKEE NATION
SEPT. 6, 1839

# CHEROKEE NATION

P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Corntassel" Smith
ᏅᏲᏩᏆ
Principal Chief

Joe Grayson, Jr.
ᏧᏞᏅᏯ ᏧᏬᏂᏯ
Deputy Principal Chief

COPY

Hand-carried & faxed
MAILED
2-22-05

February 18, 2005

Ms. Jeannette Hanna
Regional Director
Eastern Oklahoma Regional Office
Bureau of Indian Affairs
P.O. Box 8002
Muskogee, OK 74002

Re: Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act - Payment of Attorney Fees

Dear Ms. Hanna:

Pursuant to section 1779e of the Cherokee Choctaw, and Chickasaw Nations Claims Settlement Act (25 U.S.C. § 1779, et seq.) please find the enclosed Resolutions Numbered 20-05, 18-05, and 19-05, and dated February 14, 2005, which authorize and approve attorney fee payments for services rendered by Wilcoxen & Wilcoxen; Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C. (Hall Estill); and the estate of Paul M. Niebell, Esq., in relation to settlement of claims arising from the United States' use and occupancy of the Arkansas Riverbed. The enclosed resolutions authorize payment to Wilcoxen & Wilcoxen in the amount of $550,000.00, Hall Estill in the amount of $280,524.57 and the estate of Mr. Niebell, in the amount of $100,000.00.

These attorneys worked under a contract first entered into between the Cherokee Nation and James G. Wilcoxen and Mr. Niebell on the 8th day of September, 1988. Pursuant to the terms of the contract, these attorneys in turn associated with Hall Estill. Both Section 1779e of the Settlement Act and the contract provide for payment of an aggregate fee not to exceed ten percent (10%) of all amounts recovered or procured through the efforts of the attorneys. The amounts requested for payment constitute approximately five percent (5%) of the recovery. The attorney fee payments referred to in the resolutions referred to above have been reviewed and approved by the General Counsel of the Cherokee Nation and the Cherokee Nation Tribal Council.

The resolutions require that these approved fees be paid as funds are federally appropriated in accordance with the Settlement Act.

**Ex. 36**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

The Cherokee Nation, recognizing the long and exemplary service of these attorneys, would appreciate disbursement by the Secretary of the approved fees as set forth above. Thank you for your attention to this matter.

Sincerely,

Chad Smith, Principal Chief
Cherokee Nation

Enclosures:
1) Resolutions 18-05, 19-05, 20-05
2) Arkansas Riverbed Trust Funds Management Act of 2004, LA 5-04

# CHEROKEE NATION

P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Corntassel" Smith
ᏅᏂᏣᏘ
Principal Chief

Joe Grayson, Jr.
ᏧᏞᏅᏍ ᏧᏬᏂᏍ
Deputy Principal Chief


March 30, 2005

Ms. Jeanette Hanna, Regional Director
Eastern Oklahoma Region
Bureau of Indian Affairs
P.O. Box 8002
Muskogee, Oklahoma 74401

RE: Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act – Payment of Attorney Fees (part 2 of 2)

Dear Ms. Hanna:

The enclosed documents contain the final remaining authorization for payment for attorney fees as prescribed under the referenced Act. Under a cover letter dated February 18, 2005, we included Resolutions Numbered 18-05, 19-05 and 20-05, as well as a copy of Legislative Act 5-04 governing management of the "Arkansas Riverbed Trust Funds." I enclose a copy of that package here as well for your convenience.

The other documents included in this package are as follows:

1. Resolution 18-05 – copy of resolution with complete signatures;
2. Resolution 19-05 – copy of resolution with complete signatures;
3. Resolution 20-05 – copy of resolution with complete signatures;
4. Resolution 29-05 – approving payment to the firm Patton & Boggs in the amount of $151,000;
5. Memorandum from General Counsel Julian K. Fite, dated October 6, 2003, describing documentation used and recommendation for payment of attorney fees under the Act;
6. Contract between the Cherokee Nation and Patton, Boggs & Blow, dated April 17, 1989;
7. Contract between the Cherokee Nation and James G. Wilcoxen and Paul M. Niebell, dated September 8, 1988.

To our knowledge, and based upon conversations with the BIA and Office of the Special Trustee, we believe these documents satisfy the requirements of the Act for payment of these fees. Please advise as soon as possible if additional documentation is required.

**Ex. 37**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

There are no other pending actions before the Legislative body at this time that affect these matters, and none proposed to my knowledge. Therefore, we request that these payments be processed as quickly as practicable. Thank you for your assistance in this matter.

Sincerely,

Chad Smith
Principal Chief

cc: James Cason, Acting Assistant Secretary – Indian Affairs
Mike Smith, Deputy Director for Field Operations
Vicki L. Forrest, Regional Fiduciary Trust Administrator, OST

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, Plaintiff, | * | Case No. 89-218(L) |
| and | * | Chief Judge Edward H. Damich |
| PATTON BOGGS LLP, Intervenor-Plaintiff | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, Defendant. | * | |

* * * * * * * * * * * * *

**DECLARATION OF DIANE HAMMONS**

I, Diane Hammons, do hereby declare:

1. I serve as the General Counsel of the Cherokee Nation and was appointed to this position by the Principal Chief of the Cherokee Nation, confirmed by the Council of the Cherokee Nation and sworn in on January 27, 2006. Prior to that appointment, I served as Director of the Justice Department of the Cherokee Nation, and acted as interim General Counsel from June 2005 through January 26, 2006.

2. In my capacity as General Counsel, I am responsible for and have custody of the records that have been maintained by the Office of General Counsel, including the records relating to the evaluation done by my predecessor, Julian Fite, regarding the attorneys fees claims for work relating to the Arkansas Riverbed.

3. At my direction, the documents and records listed below, copies of which have been labeled as Cherokee Nation Exs. 7 through 37, were gathered from the records prepared or



**Ex. 38**
to Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment
*Cherokee Nation v. United States*, No. 89-218 (Fed. Cl.)

received and kept in the course of the Cherokee Nation's regularly conducted business as a regular practice of the Cherokee Nation and were made at the time of the matters described in them by or from, information transmitted by a person having knowledge of the matter described:

| | |
|---|---|
| Ex. 7 | Contract dated September 8, 1988 between the Cherokee Nation and J. Wilcoxen and P. Niebell |
| Ex. 8 | Contract dated November 13, 1989 between the Cherokee Nation and Patton, Boggs & Blow |
| Ex. 9 | Letter agreement dated September 18, 1991 between Patton Boggs & Blow and the Cherokee Nation |
| Ex. 10 | Letter dated October 30, 1995 from Principal Chief Cherokee Nation Joe Byrd, to Kate Boyce, Patton Boggs |
| Ex. 11 | Letter dated April 23, 1996 from L. Susan Work, General Counsel, Cherokee Nation to Allen Foster and Kate Boyce, Patton Boggs |
| Ex. 12 | Memorandum dated November 5, 2002 from James Wilcoxen to Julian Fite, General Counsel for the Cherokee Nation |
| Ex. 13 | Memorandum dated November 7, 2002 from Patton Boggs to Chad Smith, Principal Chief Cherokee Nation, and Julian Fite General Counsel, Cherokee Nation |
| Ex. 14 | Letter dated May 2, 2003 from James Wilcoxen to Julian Fite, General Counsel, Cherokee Nation |
| Ex. 15 | Cherokee Nation Spreadsheet of total sums paid by the Cherokee Nation to Patton Boggs & Blow, 1989 - 1997 |
| Ex. 16 | Memorandum dated October 06, 2003, from Julian Fite, General Counsel, Cherokee Nation to Chad Smith, Principal Chief Cherokee Nation, James Wilcoxen, Wilcoxen & Wilcoxen, and Joe Reeder, Patton Boggs. |
| Ex. 17 | Letter dated November 8, 2003 from Eleanor Niebell to Julian Fite, General Counsel, Cherokee Nation |
| Ex. 18 | Letter dated November 14, 2003 from Joe Reeder to Julian Fite, General Counsel, Cherokee Nation |

| | |
|---|---|
| Ex. 19 | Letter dated December 5, 2003, from Hall Estill to Julian Fite, General Counsel, Cherokee Nation |
| Ex. 20 | Letter dated December 17, 2003, from Joe Reeder to Chad Smith, Principal Chief, Cherokee Nation |
| Ex. 21 | Cherokee Nation Legislative Act 5-04: Act Relating to Establishing Policy and Procedures for the Management and Use of Cherokee Nation Trust Funds and Trust Assets, enacted February 17, 2004 |
| Ex. 22 | Letter dated July 9, 2004, from David Riggs, Esq. Riggs, Abney, et al. to Julian Fite, General Counsel Cherokee Nation |
| Ex. 23 | Cherokee Nation Rules Committee, Meeting Minutes September 16, 2004 |
| Ex. 24 | Cherokee Nation Rules Committee, Meeting Minutes, October 20, 2004 |
| Ex. 25 | Cherokee Nation Rules Committee, Meeting Minutes, November 18, 2004 |
| Ex. 26 | Memorandum dated December 15 2004, from Todd Hembree to Cherokee Nation Tribal Council |
| Ex. 27 | Cherokee Nation Rules Committee, Meeting Minutes December 16, 2004 |
| Ex. 28 | Cherokee Nation Rules Committee, Meeting Minutes, January 17, 2005 |
| Ex. 29 | Minutes of Tribal Council Meeting – Regular Session, February 14, 2005 |
| Ex. 30 | Cherokee Nation Rules Committee, Meeting Minutes, February 17, 2005 |
| Ex. 31 | Minutes of Tribal Council Meeting – Regular Session, March 14, 2005 |
| Ex. 32 | Resolution No. 18-05: Council of the Cherokee Nation – Approving Payment of Attorney Fees for Hall & Estill, adopted February 14, 2005 |
| Ex. 33 | Resolution 19-05: Council of the Cherokee Nation – Approving Payment of Attorney Fees for Paul Nibell, adopted February 14, 2005 |
| Ex. 34 | Resolution 20-05: Council of the Cherokee Nation – Approving the Payment of Attorney Fees for Jim Wilcoxen, adopted February 14, 2005 |
| Ex. 35 | Resolution 29-05: Council of the Cherokee Nation – Approving Payment of Attorney Fees for Patton & Boggs, adopted March 14, 2005 |

Ex. 36 Letter dated February 18, 2005, from Chad Smith, Principal Chief, Cherokee Nation, to Jeannette Hanna, Bureau of Indian Affairs

Ex. 37 Letter dated March 30, 2005, from Chad Smith, Principal Chief, Cherokee Nation, to Jeannette Hanna, Bureau of Indian Affairs

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9 day of May, 2006

Diane Hammons