IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA, | * | |
| Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | Case No. 218-89 |
| Defendant. | * | |
| * * * * * * | * | |
| PATTON BOGGS LLP | * | Chief Judge Edward J. Damich |
| Intervenor Plaintiff, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |
| * * * * * * | * | * * * * * |

**PATTON BOGGS' RESPONSE TO THE CHEROKEE NATION'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS ON MATTERS RELEVANT TO BUT NOT COVERED BY PATTON BOGGS' PROPOSED FINDINGS AND PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to RCFC 56 and this Court's March 28, 2006 Order, Intervenor Plaintiff Patton Boggs LLP ("Patton Boggs") files this Response to the Cherokee Nation's Proposed Findings of "Relevant" Facts. The Cherokee Nation's *Ninety-Nine* Proposed Facts are not disputed for purposes of resolving Patton Boggs' Cross-Motion for Summary Judgment.

**CN's Proposed Finding Fact 1.**

**I. <u>History of the litigation</u>**

**A. <u>Origin of the claims.</u>**

1. In December 1966, the Cherokee Nation, later joined by the Choctaw and Chickasaw Nations, filed suit against the State of Oklahoma, challenging Oklahoma's title to the Arkansas riverbed. *Choctaw Nation v. Okla.*, 397 U.S. 620, 621 (1970).

---

**PB's Response 1.**
**Not disputed for purposes of this motion.**

---

**CN's Proposed Finding Fact 2.**

2. In 1970, the Supreme Court held that the Cherokee Nation, along with the Choctaw and Chickasaw Nations, retained title to the riverbed. *Choctaw Nation v. Okla.*, 397 U.S. 620 (1970).

---

**PB's Response 2.**
**Not disputed for purposes of this motion.**

---

**CN's Proposed Finding Fact 3.**

3. Following the Supreme Court's 1970 ruling, the Cherokee Nation sought compensation from the United States for the damages that the Nation sustained as a result of the Government's failure to recognize and protect the Nation's title to the land, including the value of land and mineral resources used by the United States in the construction and operation of the McClellan-Kerr Arkansas Riverbed Navigation Project, which was authorized by Congress in 1941 and built between 1957 and 1971. *See Cherokee Nation of Okla. v. United States,* 782 F.2d 871, 873 n. 2 (10th Cir. 1986) (recitation of history), rev'd on other grounds, *United States v. Cherokee Nation of Okla.,* 480 U.S. 700 (1987); *see also* CN Ex. 12[1] (Memorandum dated November 5, 2003 from James Wilcoxen to Julian Fite).

---

**PB's Response 3.**
**Not disputed for purposes of this motion.**

---

[1] "CN Ex._" refers to the exhibits that the Cherokee Nation submits with the Cherokee Nation's Opposition to Patton Boggs' Cross-Motion for Summary Judgment.

**CN's Proposed Finding Fact 4.**

4. Efforts made to obtain legislation to compensate the Nation in the late 1970s and early 1980s were not successful. *See United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 701-02 (1987); *see also Cherokee Nation of Okla. v. United States*, 782 F.2d 871, 873 n.2 (10th Cir. 1986).

**PB's Response 4.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 5.**

5. In 1982, Congress enacted a special jurisdictional statute which waived statutes of limitation and allowed the Nation to file suit against the United States for any claims that the Nation might have "...arising from construction of the Arkansas River Navigation System, including, but not limited to, the value of sand, gravel, coal, and other resources taken..." Act of December 23, 1982, Pub. L 97-385, 96 Stat. 1944.

**PB's Response 5.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 6.**

**B. <u>The Oklahoma litigation.</u>**

6. On May 23, 1983, pursuant to the special jurisdictional act, the Nation, represented by attorneys Paul Niebell and Andrew Wilcoxen, filed a claim in the United States District Court for the Eastern District of Oklahoma seeking compensation from the United States under the Fifth Amendment for the damages caused by its construction and operation of the McClellan-Kerr Arkansas Riverbed Navigational System. CN Ex. 2 Complaint in *Cherokee Nation of Okla. v. United States*, No. 83-306C (E.D. Okla); CN Ex. 1 Docket Entries for No. 83-306C (E.D. Okla).

**PB's Response 6.**
**Not disputed for purposes of this motion.**

| |
|---|
| **CN's Proposed Finding Fact 7.**<br><br>7. Although the Cherokee Nation prevailed in the District Court and the Court of Appeals for the Tenth Circuit, the Supreme Court reversed, holding that the United States' navigational servitude barred the Nation's claims for compensation based on the Fifth Amendment. *United States v. Cherokee Nation of Okla.*, 480 U.S. 700 (1987). |
| **PB's Response 7.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 8.**<br><br>8. On remand, the Cherokee Nation sought compensation based on the "fair and honorable dealings" clause of the Indian Claims Commission Act of 1946, ch. 959, § 2, 60 Stat. 1049, 1050 (formerly codified as amended at 25 U.S.C. § 70a), which had been made applicable to the Nation's claims by the 1982 special jurisdictional act. The District Court rejected those claims, and the Court of Appeals for the Tenth Circuit affirmed. *Cherokee Nation of Okla. v. United States,* 937 F.2d 1539 (10th Cir.), *reh'g denied,* 948 F.2d 635 (10th Cir 1991). |
| **PB's Response 8.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 9.**<br><br>9. The Cherokee Nation petitioned for certiorari, but on May 18, 1992, the Supreme Court issued an order declining to review the Tenth Circuit's decision. *Cherokee Nation of Okla. v. United States,* 504 U.S. 910 (1992). |
| **PB's Response 9.**<br>**Not disputed for purposes of this motion.** |

| |
|---|
| **CN's Proposed Finding Fact 10.**<br><br>10. The litigation efforts in the District Court for the Eastern District of Oklahoma, the Court of Appeals for the Tenth Circuit and the Supreme Court were undertaken by attorneys Paul Niebell, Andrew Wilcoxen, and, beginning in 1985, James Wilcoxen, with the subsequent assistance (beginning in 1989) of associate counsel, Hall Estill. CN Ex. 12 (Wilcoxen Memorandum of November 5, 2003 to Julian Fite); *see also* CN Ex. 1 (Docket Entries for No. 83-306C (E.D. Okla.)); CN Ex. 14; CN Ex. 19. |
| **PB's Response 10.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 11.**<br><br>11. The services provided by these attorneys were performed under a contract dated September 8, 1988 entered into by James Wilcoxen and Paul Niebell with the Cherokee Nation. That contract retained these attorneys on a contingent basis and they received no payment before the payments made under the 2002 Cherokee, Choctaw and Chickasaw Settlement Act. CN Ex. 7; CN Ex. 16. The Wilcoxen/Niebell Contract authorized the association of other counsel, and Hall Estill was so associated. CN Ex. 7. *See also* CN Exs. 12, 14, 19. |
| **PB's Response 11.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 12.**<br><br>12. Beginning in July 1991, the Cherokee Nation, with assistance of its legal counsel, explored possible legislation to resolve its damages claims. CN Exs. 12 at 3, 14, 19. |
| **PB's Response 12.**<br>**Not disputed for purposes of this motion.** |

**CN's Proposed Finding Fact 13.**

13. On February 7, 1992, Congressman Mike Synar introduced H.R. 4209, a bill to amend the 1982 special jurisdictional act to allow compensation to be awarded notwithstanding the Government's rights under its navigational servitude. 138 Cong. Rec. H396-04, 397 (daily ed. Feb. 7, 1992).

**PB's Response 13.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 14.**

14. H.R. 4209 was favorably reported by the House Committee on the Judiciary on August 3, 1992, H. Rept. 102-773, passed the House on August 4, 1992, and was referred to the Senate. 138 Cong. Rec. H7321-01, 7323-7324 (daily ed. Aug. 4, 1992).

**PB's Response 14.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 15.**

15. A parallel bill, S. 2750, had been introduced in the Senate on May 20, 1992, 138 Cong. Rec. 57029-01, 7037-7038 (daily ed. May 20, 1992), but did not pass.

**PB's Response 15.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 16.**

**C. <u>The Claims Court Litigation</u>**

16. On April 17, 1989, the Cherokee Nation retained Patton Boggs to bring claims "for damages or equitable relief arising from the violation of the duties of the United States to protect the tribal lands and to manage the tribal resources of the Cherokee Nation." CN Ex 8 (Patton Boggs Contract at 1). Patton Boggs would "prosecute actions for an injunction and/or damages, which are directly interrelated with pending legislative efforts," but would not represent the Nation in the pending Tenth Circuit litigation. *Id.*

**PB's Response 16.**
**Not disputed for purposes of this motion.**

| |
|---|
| **CN's Proposed Finding Fact 17.**<br><br>17. The Nation's contract with Patton Boggs further stated that in consideration for the services provided, Patton Boggs would be paid "not to exceed $5000 per month for fees ... and for actual out of pocket expenses," and, in the event of an "agreed monetary or other quantifiable recovery for the Cherokee Nation ... additional compensation of ten percent (10%) of the amount recovered less the amounts previously paid by said Cherokee Nation ... provided that approvals required by law, if any, are obtained." CN Ex. 8 at 2, 3. |
| **PB's Response 17.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 18.**<br><br>18. On April 21, 1989, Patton Boggs filed the complaint in this still pending case for damages against the United States. *See* Docket entries for No. 218-89 (Fed.Cl.). |
| **PB's Response 18.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 19.**<br><br>19. By a decision entered on October 5, 1990, the Claims Court dismissed, for failure to state a claim, the Nation's claims for: failure to evict casual (non-mineral) trespassers from the Nation's lands; failure to survey those lands; failure to remove trespassers from the Nation's farm and range lands; failure to issue farming and grazing leases for the Nation's lands; and failure to manage the Nation's timber lands. *Cherokee Nation of Okla. v. United States,* 21 Cl. Ct. 565, 574-76, 577-79 (1990). |
| **PB's Response 19.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 20.**<br><br>20. The Court, in its October 5, 1990 decision, also found that the case did not encompass claims related "to the construction of the [Arkansas River] Navigation System." *Cherokee Nation,* 21 Cl. Ct. at 580-81 & n. 11. |
| **PB's Response 20.**<br>**Not disputed for purposes of this motion.** |

**CN's Proposed Finding Fact 21.**

21. The Court's October 5, 1990 decision held that the Nation's complaint did contain allegations stating claims for losses resulting from trespass on and mismanagement of the Nation's mineral resources in the Arkansas riverbed, but that such claims would be barred by the statute of limitations, except for those accruing within six years of the filing of the suit (April 21, 1983) or which fall within the continuing claim doctrine. *Cherokee Nation,* 21 Cl. Ct. at 570-72.

**PB's Response 21.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 22.**

22. The Claims Court, in its October 5 decision, also deferred consideration of the Nation's claim for an accounting of the income generated by its trust land and resources, stating that the Court's jurisdiction to order an accounting depended on first finding liability in the United States. *Cherokee Nation,* 21 Cl. Ct. at 582.

**PB's Response 22.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 23.**

23. The Claims Court issued additional decisions in 1991 and 1992, after Patton Boggs, on behalf of the Nation, filed amended complaints at the Court's direction, to restate the claims with greater specificity. The United States challenged the adequacy of the amended complaints and the Claims Court issued several decisions, accepting some claims, and striking others. *Cherokee Nation of Okla. v. United States,* 23 Cl. Ct. 117 (1991); 24 Cl. Ct. 695 (1992); 25 Cl. Ct. 361 (1992).

**PB's Response 23.**
**Not disputed for purposes of this motion.**

| |
|---|
| **CN's Proposed Finding Fact 24.**<br><br>24. On August 21, 1991, the Court denied a motion filed by Patton Boggs for entry of a partial final judgment on the dismissed claims for purposes of an immediate appeal. *Cherokee Nation of Okla. v. United States,* 23 Cl. Ct. 735 (1991). |
| **PB's Response 24.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 25.**<br><br>25. On May 19, 1992 and July 20, 1992, the Court rejected motions requesting that the Judge recuse himself from the case. *Cherokee Nation of Okla. v. United States,* 26 Cl. Ct. 215 (1992); 26 Cl. Ct. 794 (1992). |
| **PB's Response 25.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 26.**<br><br>26. On January 28, 1994, the Court issued an unpublished order in which it declined to rule on a motion for summary judgment that had been filed by the United States, and instead indefinitely stayed all proceedings in the case until quiet title actions could be litigated against the third parties who were alleged to be trespassing on the Nation's riverbed lands. Ex. 3. |
| **PB's Response 26.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 27.**<br><br>17. On February 15, 1994, in response to the parties' joint motion, the Claims Court stayed implementation of its January 28 order, for a period of one year, so the parties could pursue a possible legislative settlement of the case. *See* CN Ex. 5, *Cherokee Nation of Okla. v. United States,* No. 95-5056 Slip. Op. at 5 (Fed. Cir. April 12, 1996). |
| **PB's Response 27.**<br>**Not disputed for purposes of this motion.** |

| |
|---|
| **CN's Proposed Finding Fact 28.**<br><br>28. For the next year, the parties pursued legislative settlement of the case. *See* CN Ex. 13 (Patton Boggs Memorandum to Principal Chief Smith and General Counsel Julian Fite dated November 7, 2003 at 6-7). |
| **PB's Response 28.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 29.**<br><br>29. When the legislative efforts failed and the Court's February 1994 stay expired, the Nation, represented by Patton Boggs, filed an appeal on February 17, 1995, seeking review of the adverse decisions of this Court. *See* CN Ex. 4. |
| **PB's Response 29.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 30.**<br><br>30. On March 16, 1995, the Court of Appeals issued an order to show cause why the appeal should not be dismissed as premature, *see* CN Ex. 5, and Patton Boggs responded on behalf of the Nation. *Id.* |
| **PB's Response 30.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 31.**<br><br>31. On October 30, 1995, the Principal Chief of the Cherokee Nation sent a letter to Patton Boggs terminating its contracts. CN Ex. 10; *see also* Patton Boggs Complaint in Intervention at ¶ 15 (stating that Patton Boggs' contract was terminated, although identifying date of termination as "April 30, 1995.") |
| **PB's Response 31.**<br>**Not disputed for purposes of this motion.** |

**CN's Proposed Finding Fact 32.**

32. On April 12, 1996, the Court of Appeals for the Federal Circuit issued an order accepting appellate jurisdiction over the lower court order imposing an indefinite stay, but declining jurisdiction on all other matters, and set a briefing schedule. CN Ex. 5, *Cherokee Nation of Okla. v. United States,* No. 95-5056 Slip. Op. (Fed. Cir. April 12, 1996).

**PB's Response 32.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 33.**

33. By letter dated April 23, 1996, the Nation confirmed that Patton Boggs' services for both legislative and litigation matters had been terminated, and requested that the firm transfer its files to the Nation. CN Ex. 11.

**PB's Response 33.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 34.**

The Cherokee Nation retained other law firms to handle the appeal before the Federal Circuit. *See* Opening and Reply Briefs of the Cherokee Nation in *Cherokee Nation of Okla. v. United States,* No. 95-5055 (Fed. Cir), reprinted at 1995 WL 17043907 (1995) and 1997 WL 33545042 (1997).

**PB's Response 34.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 35.**

35. The appeal was successful, and the Federal Circuit reversed the order imposing an indefinite stay. *Cherokee Nation of Okla. v. United States,* 124 F.3d 1413 (Fed. Cir. 1997).

**PB's Response 35.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 36.**

36. On remand, the Nation was represented in this Court by James Wilcoxen. *See* Docket entries for 89-219; *see also* CN Exs. 12, 14.

**PB's Response 36.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 37.**

37. The litigation before the Court of Federal Claims was stayed while the Cherokee Nation, represented by James Wilcoxen and counsel associated with him, the Hall Estill firm, along with Cherokee Nation officials and staff, focused its efforts on legislation to seek a global resolution of all issues arising from the Arkansas Riverbed. CN Exs. 12, 14, 16.

**PB's Response 37.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 38.**

**D. <u>The 2002 Settlement Act</u>.**

38. On December 19, 2001, a bill to settle the Arkansas Riverbed matters, H.R. 3534, was introduced in the House. 147 Cong. Rec. H10908-03, 10909 (daily ed. Dec. 19, 2001).

**PB's Response 38.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 39.**

39. On April 17, 2002 a hearing was held on H.R. 3534 before the House Committee on Resources. CN Ex. 6.

**PB's Response 39.**
**Not disputed for purposes of this motion.**

| |
|---|
| **CN's Proposed Finding Fact 40.**<br><br>40. Before the House Committee on Resources, Cherokee Nation Principal Chief Chad Smith described the matters covered by the Settlement Act, stating:<br><br>[T]his legislation is the culmination of many years of work by the succession of tribal administrations to resolve the complex controversies surrounding the Nations' ownership of the bed and banks of the Arkansas River in Oklahoma. Our earliest efforts to reach a settlement for lost riverbed resources began in the late 1970s...<br><br>The current bill, H.R. 3534, would settle the three Nations' damage claims against the United States now pending in the Court of Federal Claims, and it would give them, in a single lump sum, the past and future fair rental value of the lands being used for the two powerheads that were constructed on tribal lands on the bed of the Arkansas. The bill would also compensate the Nations for the lands being occupied by adjacent landowners and other potential claimants in the lower segments of the River. In exchange for the appropriated sums, the three Nations would dismiss their lawsuits against the Government and disclaim any right, title or interest in the 7,750 acres of lands being occupied by non-tribal interests. Those disclaimers will serve to eliminate the cloud of tribal claims in the title to lands being occupied by these people and relieve the Government of the very expensive burden of having to bring ejectment litigation against a very large number of Oklahoma citizens...<br><br>CN Ex. 6, at 90. |
| **PB's Response 40.**<br>**Not disputed for purposes of this motion.** |
| **CN's Proposed Finding Fact 41.**<br><br>41. The United States, represented by Deputy Assistant Secretary for Indian Affairs Wayne Smith, explained at the House hearing that the amount of the settlement was based on reaching agreement on specific categories of losses, set out in a chart which he offered to the Committee. CN Ex. 6 at 32. |
| **PB's Response 41.**<br>**Not disputed for purposes of this motion.** |

**CN's Proposed Finding Fact 42.**

42. Deputy Assistant Secretary Smith further explained at the House hearing that agreement had been reached on all issues but one, and that negotiations to resolve the remaining issue were continuing. CN Ex. 6 at 32.

**PB's Response 42.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 43.**

43. Oklahoma Congressman Brad Carson, the principal House sponsor of the bill, also described the matters for which compensation was being paid:

> Enactment of this legislation, H.R. 3534, will bring about clear, tangible benefits. First it will eliminate the need for the Department of Justice to bring hundreds of defendants into court due to their occupancy of parts of the 7,750 acres of drybed lands. Second, the settlement will pay the three tribes for the actual present value of the loss of past and future assets they would have had if not for the construction of the McClelland-Kerr navigation system. Third, positive movement of the legislation will result in the dismissal of the mismanagement case against the Bureau of Indian Affairs. And, finally, the settlement will provide the tribes with resources that will, in turn, be used to further economic development in the region, benefiting Indian and non-Indian members of these communities alike...

CN Ex. 6, at 92- 93.

**PB's Response 43.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 44.**

44. H.R. 3534 was reported out of the House Committee on September 4, 2002, H. Rept. 107-632, and passed the House on October 1, 2002. 148 Cong. Rec. D1013-01, 1015 (digest, Oct. 1, 2002).

**PB's Response 44.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 45.**

45. On November 14, 2002, the House considered S. 2017, and amended it to include, as Title VI, the text of H.R. 3534, the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act. S. 2017 passed the House as amended. 148 Cong. Rec. H8912-03, 8913-8919, 8923 (daily ed. Nov. 14, 2002).

**PB's Response 45.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 46.**

46. On November 20, 2002 the Senate passed S. 2017 as amended by the House, and including the Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act. 148 Cong. Rec. 511773-01, 11783 (daily ed. Nov. 20, 2002).

**PB's Response 46.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 47.**

47. On December 13, 2002 the President signed S. 2017, and the Cherokee, Choctaw and Chickasaw Nations Claims Settlement Act became law. Pub L. 107-331, Title VI, 116 Stat. 2845, codified at 25 U.S.C. §§ 1779-1779g.

**PB's Response 47.**
**Not disputed for purposes of this motion.**

**CN's Proposed Finding Fact 48.**

**II. <u>Cherokee Nation consideration of the attorney fees claims</u>**

48. In late 2002, the various attorneys who had represented the Nation over the years began to raise questions regarding payment of their fees. *See* CN Exs. 12 and 13.

**PB's Response 48.**
**Not disputed for purposes of this motion.**