IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE CHEROKEE NATION OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

PATTON BOGGS LLP

Intervenor Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 218-89

Chief Judge Edward J. Damich

**JOINT REPLY BRIEF SUPPORTING PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80**

PATTON BOGGS LLP

David P. Callet (DC Bar No. 181990)
David S. Panzer (DC Bar No. 470677)
Greenberg Traurig LLP
800 Connecticut Ave, NW, Suite 500
Washington, DC 20006
202-331-3100
202-331-3101 (fax)
calletd@gtlaw.com
panzerd@gtlaw.com

May 26, 2006

# TABLE OF CONTENTS


**TABLE OF CONTENTS ....... i**

**APPENDIX TO PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80 (DOCKET NO. 144) ....... iii**

**TABLE OF AUTHORITIES ....... iv**

**JOINT REPLY SUPPORTING PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80 ....... 1**

**ARGUMENT ....... 3**

**I. THE SECRETARY'S UNREASONABLE INTERPRETATION OF THE SETTLEMENT ACT CANNOT BE RESUSCITATED BY INAPPLICABLE PRESUMPTIONS. ....... 3**

**A. The Settlement Act Is Unambiguous; Therefore, Judicial Presumptions Are Inapplicable. ....... 4**

**1. The Plain Meaning Of The Payment Provision Requires Payment Of "Those Fees Provided For In The [Approved] Individual Tribal Attorney Fee Contracts." ....... 4**

**2. The Secretary Has Unreasonably Interpreted The Settlement Act. ....... 6**

**3. Judicial Presumptions Do Not Apply To Unambiguous Statutes. ....... 8**

**B. Even If The Settlement Act Were Ambiguous As To What "As Approved" Means, Neither *Chevron* Deference Nor The Indian Canon Of Construction Apply Because The Legislative History Is Dispositive. ....... 8**

**1. The Dispositive Legislative History Unambiguously Supports Patton Boggs. ....... 8**

**2. No Reading Of The Legislative History Supports The Secretary's Interpretation. ....... 9**

**C. Even If Both The Settlement Act And Its Legislative History Were Ambiguous, Neither The Indian Canon Of Construction Nor *Chevron* Deference Would Apply To This Case. ....... 11**

1. Why *Chevron* Deference Does Not Apply. 11

(a) The Secretary Was Never Empowered To "Administer" The Settlement Act's Attorney Fee Provision; She Was Instructed To Pay In Accordance With It. 12

(b) Even If The Secretary Had Been Empowered To "Administer" The Settlement Act's Attorney Fee Provision, Her Interpretation Should Not Be Accorded Deference Because She Never Promulgated Rules Or Regulations. 14

(c) Moreover, The Secretary's Litigation Stance Is Not Due *Chevron* Deference. 14

2. Why The Indian Canon Of Construction Does Not Apply To Disputes Between The Government And Non-Indians. 15

II. "QUANTUM MERUIT" ANALYSIS IS IRRELEVANT TO PATTON BOGGS' MONEY-MANDATING TUCKER ACT CLAIM AGAINST THE GOVERNMENT. 15

III. SUBSEQUENT (2004) LEGISLATION REQUIRING CHEROKEE NATION APPROVAL OF ATTORNEYS FEES UNDERSCORES THAT NO SUCH APPROVALS WERE INCORPORATED INTO THE SETTLEMENT ACT. 17

IV. THE GOVERNMENT, BY IMPROPERLY PAYING OTHERS, CANNOT ESCAPE ITS OBLIGATION TO PAY PATTON BOGGS. 18

CONCLUSION 19

**APPENDIX TO PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80 (DOCKET NO. 144)**


**TABLE OF CONTENTS** ........ i

**EXHIBIT A** — **CHEROKEE, CHOCTAW, AND CHICKASAW NATIONS CLAIMS SETTLEMENT ACT, 25 U.S.C. §§ 1779, *ET SEQ.*** ........ **A-1**

**EXHIBIT B** — **25 U.S.C. § 81** ........ **A-19**

**EXHIBIT C** — **H.R. Rep. No. 107-632** ........ **A-22**

**EXHIBIT D** — **S.J. Res. 177, 74th Cong. (1936)** ........ **A-33**

**EXHIBIT 1** — **SEPTEMBER 8, 1988 WILCOXEN-NIEBELL ATTORNEY'S CONTRACT** ........ **A-34**

**EXHIBIT 2** — **APRIL 17, 1989 PATTON BOGGS ATTORNEYS' CONTRACT** ........ **A-39**

**EXHIBIT 3** — **OCTOBER 30, 1995 LETTER FROM JOE BYRD TO KATE BOYCE** ........ **A-43**

**EXHIBIT 4** — **OCTOBER 6, 2003 MEMORANDUM FROM JULIAN FITE TO CHAD SMITH, JIM WILCOXEN, AND JOE REEDER REGARDING ATTORNEY FEES FOR WORK ON ARKANSAS RIVERBED ISSUES** ........ **A-44**

**EXHIBIT 5** — **MARCH 31, 2005 LETTER FROM JAMES WILCOXEN AND MARGARET SWIMMER TO CHAD SMITH AND COUNCIL OF THE CHEROKEE NATION** ........ **A-50**

**EXHIBIT 6** — **OCTOBER 13, 2005 LETTER FROM JAMES CASON TO CHAD SMITH** ........ **A-53**

**EXHIBIT 7** — **DECLARATION OF DAVID S. PANZER, ESQ.** ........ **A-56**

## TABLE OF AUTHORITIES

**Federal Cases**

*AD Global Fund v. United States*,
67 Fed. Cl. 657 (2005) ..................7, 8, 11

*Adams Fruit Co. v. Barrett*,
494 U.S. 638 (1990) ..................11, 13

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ..................2

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ..................14

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ..................8, 12

*Chickasaw Nation v. U.S.*,
534 U.S. 84 (2001) ..................6

*Dico v. Diamond*,
35 F.3d 348 (8th Cir. 1994) ..................13

*Director, Office of Workers' Compensation Programs, Department of Labor v. General Dynamics Corp.*,
980 F.2d 74 (1st Cir. 1992) ..................14

*Gonzales v. Oregon*,
126 S.Ct. 904 (2006) ..................11, 12, 14

*Guardsman Elevator Co. v. U.S.*,
50 Fed. Cl. 577 (2001) ..................16

*Jama v. Immigration & Customs Enforcement*,
543 U.S. 335 (2005) ..................5

*Lamie v. United States Trustee*,
540 U.S. 526 (2004) ..................6

*Little Six, Inc. v. United States*,
229 F.3d 1383 (Fed. Cir. 2000) ..................8

*Martin v. Occupational Safety and Health Review Comm'n*,
499 U.S. 144 (1991) ..................13

*Oneida County v. Oneida Indian Nation*,
470 U.S. 226 (1985)....................14

*Scates v. Principi*,
282 F.3d 1362 (Fed. Cir. 2002)....................16

*Sioux Nation of Indians v. United States*,
650 F.2d 244 (Ct. Cl. 1981)....................15

*Sisseton & Wahpeton Bands or Tribes v. United States*,
423 F.2d 1386 (Ct. Cl. 1970)....................3, 15

*South Carolina v. Catawba Indian Tribe, Inc.*,
476 U.S. 498 (1986)....................8

*Thompson v. Cherokee Nation*,
334 F.3d 1075 (Fed. Cir. 2003)....................8

*W. Shoshone Identifiable Group v. United States*,
652 F.2d 41 (1981)....................15

*Wagner Seed Co., Inc. v. Bush*,
946 F.2d 918 (D.C. Cir. 1991)....................12, 13

*White Mountain Apache Tribe of Arizona v. United States*,
30 Fed. Cl. 8 (1993), *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994)....................15

**Federal Statutes**

Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, Pub.,
25 U.S.C. §§ 1779, *et seq.*.................... passim

**Federal Rules**

RCFC 56....................3, 17

**Other Authorities**

Peter S. Heinecke, Chevron *and the Canon Favoring Indians*,
60 U. Chi. L. Rev. 1015 (1993)....................15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE CHEROKEE NATION OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | * | Case No. 218-89 |
| * * * * * * | * | |
| PATTON BOGGS LLP<br><br>Intervenor Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | * | Chief Judge Edward J. Damich |

* * * * * * * * * * * *

**JOINT REPLY BRIEF SUPPORTING PATTON BOGGS' CROSS-MOTION FOR SUMMARY JUDGMENT FOR $1,247,501.80**

Pursuant to RCFC 56 and this Court's March 28, 2006 Order, Intervenor Plaintiff Patton Boggs LLP ("Patton Boggs") files this Joint Reply Brief supporting its Cross-Motion for Summary Judgment (the "Motion").

Analysis of the Motion begins and ends with the interpretation of the attorney fee payment provision of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act, Pub. Law 107-331 (the "Settlement Act"),[1] codified as 25 U.S.C. § 1779 – the basis of Patton Boggs' Tucker Act claim against the Government. The Settlement Act's attorney fee payment provision mandates that: "the Secretary shall pay to the Indian

[1] The full text of the Settlement Act is set forth in the Appendix (the "Appendix") to Patton Boggs' Cross-Motion for Summary Judgment at A-1 to A-18. All citations herein to A-__ refer to the Patton Boggs' Appendix.

Nations' attorneys those fees ***provided for in the individual tribal attorney fee contracts*** as approved by the respective Indian Nations." 25 U.S.C. § 1779e(a) (emphasis added) (the "Payment Provision"). Thus, this Reply focuses, in Argument I, on the statutory construction principles that should guide the Court's analysis.

The Cherokee Nation's and the Government's other arguments deserve little attention. There never has been a quantum meruit claim in this case, nor could there be. Quantum meruit principles, therefore, do not bear on Patton Boggs' legal entitlement. *See* Argument II. Further, the Cherokee Nation seriously undermines its interpretation of the Payment Provision by relying on its own after-the-fact legislation that purported to give itself the right to "approve" attorney's fees that Congress had not previously required. *See* Argument III. Finally, the Government misunderstands the statutory cap on attorney's fees mandated under the Payment Provision. The cap limits fees that the Secretary shall pay to comply with the Settlement Act, not her liability for her failure to comply. *See* Argument IV.

As the Court has stated,[2] and as both the Cherokee Nation's and the Government's responses to Patton Boggs' Statement of Undisputed Facts confirm, there are no material facts in dispute.[3] As set forth below, Patton Boggs is entitled to judgment as a matter of law.

---

[2] Docket No. 124, December 13, 2005 Transcript at 80:11-12 (...it doesn't seem to me that there are any facts here in dispute.").

[3] The Cherokee Nation raises a number of immaterial "facts," but does not dispute any of Patton Boggs' Proposed Findings of Uncontroverted Fact. In a failed attempt to obfuscate a simple and straightforward set of "material" facts articulated by Patton Boggs, the Cherokee Nation proffers ninety-nine additional "facts" that they claim are "relevant" to the Court's consideration of Patton Boggs' Motion. *See* Docket No. 154-2, Cherokee Nation's Proposed Findings of Uncontroverted Facts on Matters **Relevant** to but Not Covered by Patton Boggs' Proposed Findings (emphasis added); *see also*

## ARGUMENT

### I. THE SECRETARY'S UNREASONABLE INTERPRETATION OF THE SETTLEMENT ACT CANNOT BE RESUSCITATED BY INAPPLICABLE PRESUMPTIONS.

The Secretary contends that: "the Settlement Act requires the Secretary to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in post settlement resolutions of the Council."[4] The Cherokee Nation and the Government defend this interpretation with two judicial presumptions – *Chevron*

---

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986) (immaterial facts insufficient to oppose summary judgment).

The Government did not attempt to introduce any additional facts at all (whether material or merely claimed to be "relevant") but, rather, argues that there is a genuine dispute that the Hall Estill law firm had no contract because it "operated under" the Wilcoxen-Niebell Contract. Docket No. 151, Defendant's Opposition to Patton Boggs' Cross-Motion for Summary Judgment ("US Opp") at 3. Patton Boggs does not contend that there was anything improper about utilizing associate counsel, only that it was improper for the Secretary to pay anyone who had no approved contract with an Indian Nation. Indeed, the undisputed facts do show that the Hall Estill firm "operated under" the Wilcoxen-Niebell Contract as "associate counsel" but, under the Wilcoxen-Niebell Contract, and under this Court's decisions, Hall Estill had to look to Mr. Wilcoxen or Mr. Niebell for payment, and had no independent right to fees from the Cherokee Nation. Wilcoxen-Niebell Contract at 2 (A-35); *Sisseton & Wahpeton Bands or Tribes v. United States*, 423 F.2d 1386, 1391 (Ct. Cl. 1970) ("[O]nly such attorneys as have actually appeared for claimants can be recognized as entitled to allowance of fees. Associate counsel and assignees, and persons otherwise employed, must look for their pay to those with whom they have contracts.") (citation and internal quotation marks omitted). In addition, the Government poses a series of hypothetical questions which do not conform with RCFC 56(h).

As there is no proper opposition to Patton Boggs' proffered material facts, the facts should be deemed admitted. *See* Reply In Support Of Patton Boggs' Statement Of Undisputed Facts (filed concurrently herewith). Moreover, the additional facts proffered by the Cherokee Nation have no bearing on the outcome of this case. *See* Patton Boggs' Response to Cherokee Nation's Proposed Findings of Uncontroverted Facts on Matters Relevant to but Not Covered by Patton Boggs' Proposed Findings (filed concurrently herewith).

[4] A-54, October 13, 2005 letter from Associate Deputy Secretary James E. Cason to Principal Chief Chad Smith at 2.

deference and the Indian canon of construction.[5] The judicial presumptions they invoke are not applicable because (a) the Settlement Act is unambiguous, (b) any judicial presumptions would be considered only after the legislative history – which dispositively resolves the matter in Patton Boggs' favor, and (c) those presumptions are not applicable to Patton Boggs' claim against the Government under a one-time Act of Congress.

**A. The Settlement Act Is Unambiguous; Therefore, Judicial Presumptions Are Inapplicable.**

**1. <u>The Plain Meaning Of The Payment Provision Requires Payment Of "Those Fees Provided For In The [Approved] Individual Tribal Attorney Fee Contracts."</u>**

The Settlement Act, interpreted objectively, explains the who, what, when, where, and why of the Settlement Act's Payment Provision:

***Who:*** **"...the Secretary..."[6]**

***What:*** **"...shall pay to the Indian Nations' attorneys those fees provided for in the individual tribal attorney fee contracts as approved by the respective Indian Nations."[7]**

***When:*** **Before "allocat[ion]" of "the remaining funds" "among the Indian Nations"[8]**

***Where:*** **"...from funds to be appropriated pursuant to Section 1779c(c)**

---

[5] Docket 153, Cherokee Nation's Memorandum In Opposition to Patton Boggs' Cross-Motion for Summary Judgment ("CN Opp") at 38-40; US Opp at 4-5 (collectively, the "Oppositions") The Government adds a nuance that Patton Boggs' interpretation of the Settlement Act ascribes to the Secretary an "adjudicatory role" over "private contractual disputes." US Opp at 5-6. This Court, however, already has rejected the Government's argument that this is a "private contractual dispute." 12/19/05 Opinion at 15 ("The court finds it has jurisdiction over PB's claim ***against the government*** for money damages.") (emphasis added).

[6] 25 U.S.C. § 1779e(a).

[7] *Id.*

[8] *Id.* § 1779c(d) ("*After payment pursuant to section 1779e* of this title, the remaining funds authorized for appropriation ... shall be allocated among the Indian Nations....")(emphasis added).

**of this title…"**[9]

*Why*: **"In 1989, the Indian Nations filed lawsuits against the United States in the United States Court of Federal Claims (Case Nos. 218-89L and 630- 89L), seeking damages for the United States' use and mismanagement of tribal trust resources along the Arkansas River. Those actions are still pending."**[10]

This interpretation of the Payment Provision's plain meaning is supported by grammar, structure, and logic.[11] The Cherokee Nation is wrong in asserting that there is a redundancy in Patton Boggs' interpretation.[12] There is no redundancy. Payment of "those fees provided for in their individual attorney fee contracts as approved by the respective Indian Nations," refers to the attorney fees to be paid ***as they were set forth*** in the fee contracts or, to put it another way, attorneys fees to be paid ***in the manner in which they were approved*** by the respective Indian Nations in their respective fee contracts.

---

[9] *Id.* § 1779e(a).

[10] *Id.* § 1779, Finding 12.

[11] Docket No. 143, Memorandum Supporting Patton Boggs' Cross Motion For Summary Judgment For $1,247,501.80 ("PB Memo") at 10-11. Authority cited by the Cherokee Nation recognizes the doctrine of the last antecedent, supporting Patton Boggs' grammatical interpretation. *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 343 (2005) ("Just last Term, we rejected an argument … noting that it ran contrary to the grammatical rule of the last antecedent, according to which a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.") (quotations and citation omitted). For obvious reasons, the Cherokee Nation totally ignores Patton Boggs' structural and logical arguments. *Compare* PB Memo at 11 *with* CN Opp at 33-35.

[12] The Cherokee Nation argues:

> *Any* tribal attorney fee contract – if it is to be a valid contract in the first place – must *necessarily* already have been "approved by the respective Indian Nation[]" at the time the contract was formed. … Therefore, the "approval" phrase, as construed by Patton Boggs, has no meaning in the statutory provision: it is a pure redundancy.

CN Opp at 34 (footnote omitted, italics in original).

But even assuming that Patton Boggs' interpretation creates a redundancy in "...contracts as approved ...," a mere surplus of a couple of words is far preferable to the Oppositions' reading-out an entire clause of the attorney fee payment provision that obviously has meaning. *See Chickasaw Nation v. U.S.*, 534 U.S. 84, 94 (2001) ("The canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute.'") (emphasis in original, citation omitted). As the Supreme Court recently explained:

> Where there are two ways to read the text-either ["as approved by the respective Indian Nations"] is surplusage, in which case the text is plain; or ["as approved by the respective Indian Nations"] is nonsurplusage..., in which case the text is ambiguous-applying the rule against surplusage is, absent other indications, inappropriate.

*Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004). Under Patton Boggs' interpretation – the only reasonable interpretation proffered – the text is plain, but with an alleged surplusage. The Cherokee Nation and the Government contend that the alleged surplus is impermissible, and then read the text as ambiguous. Given these choices, this Court should accept the interpretation with the surplusage and ***not*** resort to other tools of construction to resolve an ambiguity that need not exist.

### 2. <u>The Secretary Has Unreasonably Interpreted The Settlement Act.</u>

Indeed, the Secretary's interpretation – that Congress gave the Cherokee Nation the power to direct the Secretary in carrying out her mandatory duty – is so unreasonable that the Cherokee Nation and the Government have abandoned any support for the Secretary's interpretation based on the language of the Settlement Act. *See* CN Opp at 33-34; US Opp at 4-6. Instead, as discussed above, the Cherokee Nation points to an

alleged redundancy in Patton Boggs' interpretation and assails Patton Boggs' allegedly "spurious[]" application of the rules of statutory construction, and then the Oppositions both attempt to justify the Secretary's interpretation through judicial presumptions that plainly do not apply. *See* CN Opp at 34-35, 38-40; US Opp at 4-6.

But the Secretary's interpretation of the Payment Provision fails on every conceivable level: plain meaning, grammar, structure, and logic. *See* PB Memo at 10-11. The Settlement Act does not give the Cherokee Nation the unilateral right to instruct a cabinet-level official to carry out a Congressional mandate in any manner that the Cherokee Nation deems fit. If the Secretary's interpretation were correct, Congress would not have:

- instructed ***the Secretary*** to pay;
- instructed that the ***attorneys be paid first***;
- required payment from ***appropriated funds***;
- pointed to the attorney fee ***contracts*** as a reference for the amount the Secretary should pay; and
- ***limited*** the amounts to pay the attorneys.

*See* 25 U.S.C. § 1779e. If Congress intended to give the Indian Nations the right to pay the attorneys in any manner the Indian Nations deemed fit, Congress simply would have paid money directly to the Indian Nations, without including Section 1779e in the Settlement Act.

Without a reasonable alternative reading of the Settlement Act, there can be no ambiguity. *AD Global Fund v. United States*, 67 Fed. Cl. 657, 672 (2005) ("Ambiguity in a statute … normally means two or more alternative readings, all having some claim to respect and none leading to absurd results.") (citation and quotation marks omitted).

3. **Judicial Presumptions Do Not Apply To Unambiguous Statutes.**

It is beyond peradventure that neither *Chevron* deference, nor the Indian canon of construction, apply to an unambiguous statute like the Settlement Act.[13]

**B. Even If The Settlement Act Were Ambiguous As To What "As Approved" Means, Neither *Chevron* Deference Nor The Indian Canon Of Construction Apply Because The Legislative History Is Dispositive.**

1. **The Dispositive Legislative History Unambiguously Supports Patton Boggs.**

The Cherokee Nation concedes that, in interpreting the Settlement Act, its legislative history must be considered before any judicial presumptions. CN Opp at 37 (citing *AD Global Fund*, 67 Fed. Cl. at 672). This concession is the first time in the briefs that the Cherokee Nation acknowledges that there is legislative history directly on point. *Id.* Apparently recognizing that brevity in language is perhaps the most devastatingly powerful ally of clarity, the Oppositions struggle to demean, if not dismiss, brevity's clear and inescapable impact on this case. The Cherokee Nation argues that the "one-line snippet of legislative history" cited by Patton Boggs is a "thin reed" upon

[13] *See Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (the Court need only defer to the agency's interpretation "if the statute is silent or ambiguous with respect to the specific issue[.] [T]he question for the court is whether the agency's answer is based on a permissible construction of the statute."); (footnote omitted); *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986) ("The canon of construction regarding the resolution of ambiguities in favor of Indians, however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress.") (footnote omitted); *see also Thompson v. Cherokee Nation*, 334 F.3d 1075, 1090 n.15 (Fed. Cir. 2003) ("Because we conclude that the [statutory] language was not ambiguous, we need not address what role, if any, the Indian canon of construction, or the *Chevron* doctrine would have here.") (citations omitted); *Little Six, Inc. v. United States*, 229 F.3d 1383, 1384 (Fed. Cir. 2000) ("[T]he panel should not have invoked the Indian canon of construction so quickly. Instead, it should have utilized all available tools of statutory construction before declaring the statute ambiguous and restoring to a default rule designed *for exceptional cases where, despite the court's best efforts, an ambiguity in the statute remains.*") (emphasis added).

which to base Patton Boggs' interpretation. CN Opp at 37. The Cherokee Nation strains to disparage the importance of the legislative history of the Settlement Act's Payment Provision because it knows that this sentence is 100% of the relevant legislative history, and its clarity sinks the Cherokee Nation's argument:

> This section authorizes the Secretary to pay the Nations' attorneys those sums owed them under their respective contracts, but imposes a cap of ten percent of the Nation's allocation of funds appropriated under [§ 1779c(c)].

A-29, H.R. REP. NO. 107-632 (discussing Section 1779e of the Statute). If the Settlement Act actually meant that, irrespective of any contracts, the Cherokee Nation could dictate to the Secretary whom to pay, and in what amounts, the legislative history of this provision would have been entirely different. The absence of any reference to *post-hoc* Indian Nation approvals in the legislative history, and its simple reference to the Secretary paying "the Nations' attorneys those sums owed under their respective contracts," resolves in Patton Boggs' favor any question about whether the phrase "as approved" modifies the immediately preceding word "contracts" or the word "fees" found earlier in the passage.

**2. <u>No Reading Of The Legislative History Supports The Secretary's Interpretation.</u>**

The Government then argues that this legislative history can be read to support the Secretary's interpretation. US Opp at 5 n.2 (*citing* Docket No. 149, the Government's Reply Brief in Support of its Motion to Dismiss ("US Reply"), at 4-5). The Government is wrong and fails in its attempt to offer any explanation as to how the legislative history supports the Secretary's interpretation.[14]

[14] In addition, the Cherokee Nation asserts, without explaining, that: "[T]his [legislative] history is not inconsistent with the Secretary's and the Nation's

First, the Government states:

> The legislative history is wholly consistent with the Secretary's interpretation, since the Secretary's interpretation implicitly assumes the existence of a tribal attorney fee contract (or contracts) encompassing the legal services performed by those particular law firms which are claiming attorneys' fees under Section 1779e.

US Reply at 5. Patton Boggs agrees that the legislative history "assumes the existence of a tribal attorney fee contract (or contracts)." Only Patton Boggs' interpretation, however, ***not*** the Secretary's, accounts for the Payment Provision's reference to "contracts." The Secretary's conclusion that she is only "to execute a purely ministerial act in carrying out the instructions of the Cherokee Nation as expressed in post settlement resolutions of the Council," (A-54, October 13, 2005), is expressly rebutted by the legislative history's reference to contracts.

Second, the Government states "the legislative history does not suggest anywhere that the Secretary is to pay, irrespective of whether the particular Nation has approved the specific fee amount claimed by a particular law firm." US Reply at 5. As an initial matter, Patton Boggs' "specific fee amount" – a ten-percent contingency – was approved by the Cherokee Nation when it approved the Contract. That is why the Settlement Act requires payment to attorneys with approved contracts. What the legislative history does not support is contrary Secretarial action "carrying out ***the instructions of the Cherokee Nation*** as expressed ***in post settlement resolutions of the Council***,"[15] irrespective of the provisions of the contract!

---

interpretation of the provision, and tribal approval of fees is not foreclosed by this lone sentence." CN Opp at 37.

[15] A-54 (emphasis added).