| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 15:**<br><br>Instead, Hall Estill was "associated" by Mr. Wilcoxen, under the Wilcoxen-Niebell Contract. Id. | **Cherokee Nation Response 15:**<br><br>Disputed only to the extent that the proposed finding, as written, incorrectly suggests some impropriety in Hall Estill serving as associate counsel. The use of associate counsel was proper and was expressly authorized by the Wilcoxen-Niebell Contract. See PB Ex. 1 at 2. | **USA Response 15:**<br><br>Did the law firm of Hall Estill have a contractual relationship with the CNO when it performed the legal services for which it was paid $280, 524.57 out of the attorneys' fees escrow account? **See PB's Proposed Findings of Uncontroverted Fact Nos. 14 through 17** alleging the absence of a tribal attorney fees contract between Hall Estill and the CNO. The 2003 memorandum written by the General Counsel for the CNO, Julian Fite, states that Hall Estill was "operating under Wilcoxen's contract." See Attachment to Defendant's Reply to Patton Boggs' Opposition to Defendant's Motion to Dismiss at 4. |

**PB Reply:**

The Cherokee Nation here is disputing a fact that it proffers itself in response to Patton Boggs' previous Proposed Finding 14, i.e., that Hall Estill was "associate counsel." Now the Cherokee Nation is disputing a fact, not because it is not true, but because the Cherokee Nation fears the obvious legal consequences that flow from this undisputed fact. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 15 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 16:**<br><br>The Wilcoxen-Niebell Contract, required "all expenses [of associated counsel, like Hall Estill] to be paid by [Mr. Wilcoxen and Mr. Niebell], out of any compensation which they may receive for services to be rendered hereunder." Ex. 1 at A-35. | **Cherokee Nation Response 16:**<br><br>Disputed to the extent that the proposed finding when read with Patton Boggs related proposed findings of fact suggests some unpropriety in having the Secretary make payment of $280,524.57 directly to the Hall Estill firm rather than include that amount in a payment made to Mr. Wilcoxen who would then, in turn, remit the funds to Hall Estill. Although the time spent by Hall Estill could have been considered and paid as part of Mr. Wilcoxen's claim for compensation, the Nation decided to review and act on that firm's request for compensation separately, as did the Secretary. Since there is no dispute that Hall Estill was associate counsel under the Wilcoxen-Niebell contract and provided services to the Cherokee Nation under that contract, there was nothing unlawful or improper about the form in which the payment was made. | **USA Response 16:**<br><br>Did the law firm of Hall Estill have a contractual relationship with the CNO when it performed the legal services for which it was paid $280, 524.57 out of the attorneys' fees escrow account? **See PB's Proposed Findings of Uncontroverted Fact Nos. 14 through 17** alleging the absence of a tribal attorney fees contract between Hall Estill and the CNO. The 2003 memorandum written by the General Counsel for the CNO, Julian Fite, states that Hall Estill was "operating under Wilcoxen's contract." See Attachment to Defendant's Reply to Patton Boggs' Opposition to Defendant's Motion to Dismiss at 4. |

**PB Reply:**

Notwithstanding RCFC 56(h)(2), the Cherokee Nation refuses to agree with the undisputed facts simply because, "when read with Patton Boggs['] related proposed findings of fact suggests some impropriety." In other words, the Cherokee Nation disputes Proposed Finding 16 only because, when read in conjunction with other undisputed facts, the undisputed facts support Patton Boggs' legal argument that Hall Estill was improperly paid. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 16 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 17:**<br><br>Despite the lack of any contract with the Cherokee Nation, and despite Mr. Wilcoxen's obligation to pay the expenses of the Hall Estill firm he associated, the Cherokee Nation directed the Secretary to make payment of $280,524.57 to the Hall Estill firm. Ex. 6 at A-54. | **Cherokee Nation Response 17:**<br><br>As with Patton Boggs' Proposed Findings 15 and 16, the Cherokee Nation disputes this proposed finding to the extent that it suggests some impropriety in having the Secretary make payment of $280,524.57 directly to the Hall Estill firm rather than include the same amount in the payment made to Mr. Wilcoxen who would then, in turn, remit the funds to Hall Estill. Although the time spent by Hall Estill could have been considered and paid as part of Mr. Wilcoxen's claim for compensation, the Nation decided to review and act on the Hall Estill request for compensation separately, as did the Secretary. Since there is no dispute that Hall Estill was associate counsel under the Wilcoxen-Niebell contract and provided services to the Cherokee Nation under that contract, there was nothing unlawful or improper about the form in which the payment was made. | **USA Response 17:**<br><br>Did the law firm of Hall Estill have a contractual relationship with the CNO when it performed the legal services for which it was paid $280, 524.57 out of the attorneys' fees escrow account? **See PB's Proposed Findings of Uncontroverted Fact Nos. 14 through 17** alleging the absence of a tribal attorney fees contract between Hall Estill and the CNO. The 2003 memorandum written by the General Counsel for the CNO, Julian Fite, states that Hall Estill was "operating under Wilcoxen's contract." See Attachment to Defendant's Reply to Patton Boggs' Opposition to Defendant's Motion to Dismiss at 4. |

**PB Reply:**

Again, notwithstanding RCFC 56(h)(2), the Cherokee Nation refuses to agree with the undisputed facts simply because, "when read with Patton Boggs['] related proposed findings of fact suggests some impropriety." In other words, the Cherokee Nation disputes Proposed Finding 17 only because, when read in conjunction with other undisputed facts, the undisputed facts support Patton Boggs' legal argument that Hall Estill was improperly paid. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 17 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 18:**<br><br>Under the Wilcoxen-Niebell Contract, Mr. Niebell's fee was "wholly contingent" on a recovery by the Cherokee Nation. Exhibit 1 at A-35. | **Cherokee Nation Response 18:**<br><br>Not disputed. | **USA Response 18:**<br><br>Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the 2002 Settlement Act when it directed that the estate of Paul Niebell be paid $100,000? **See PB's Proposed Findings of Uncontroverted Fact Nos. 18 through 21** contending that Paul Niebell's right to fees was "wholly contingent" upon a recovery and that he never worked upon the 1989 lawsuit filed in the U.S. Claims Court. We note that the 2003 Fite Memorandum states, in pertinent part, as follows: Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached. Attachment to Defendant's Reply at 5. |

**PB Reply:**

The Cherokee Nation does not dispute Proposed Finding 18. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 18 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 19:**<br><br>Mr. Niebell and Mr. Wilcoxen brought only two actions on behalf of the Cherokee Nation under the Wilcoxen-Niebell Contract, both of which were finally dismissed with prejudice many years before the Settlement Act was enacted, resulting in no recovery. See United States v. Cherokee Nation, 480 U.S. 700 (1987) (disposing of "takings" claim); Cherokee Nation v. United States, 937 F.2d 1539 (10th Cir.) (disposing of "fair and honorable dealings" claims), reh'g denied, 948 F.2d 635 (10th Cir. 1991). | **Cherokee Nation Response 19:**<br><br>The proposed finding is disputed to the extent that it concludes that the claims raised in the litigation brought by Mr. Niebell and Mr. Wilcoxen "resulted in no recovery." While it is undisputed that the litigation itself was dismissed, the 2002 Settlement Act includes compensation for the claims raised in that litigation - namely the losses to the Cherokee Nation resulting from the construction and operation of the McClellan-Kerr Arkansas Riverbed Navigation Project, see 25 U.S.C.§ 1778c(a), which claims were found not to be a part of the lawsuit filed by Patton Boggs in this Court. See Cherokee Nation of Okla. v. United States, 21 Cl. Ct. 565, 580-81 & n..11 (1990). The proposed finding is also disputed to the extent it describes Mr. Wilcoxen's work as limited to the claims bought in the U. S. District Court for the Eastern District of Oklahoma (and adjudicated through the Tenth Circuit and Supreme Court). While Mr. Wilcoxen was not attorney of record at the time the instant case was filed, the record before this Court makes clear that he served as counsel of record to the Cherokee Nation in this action after Patton Boggs' contract was terminated and through enactment of the 2002 Settlement Act. | **USA Response 19:**<br><br>Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the 2002 Settlement Act when it directed that the estate of Paul Niebell be paid $100,000? **See PB's Proposed Findings of Uncontroverted Fact Nos. 18 through 21** contending that Paul Niebell's right to fees was `wholly contingent' upon a recovery and that he never worked upon the 1989 lawsuit filed in the U.S. Claims Court. We note that the 2003 Fite Memorandum states, in pertinent part, as follows: Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached. Attachment to Defendant's Reply at 5. |

**PB Reply:**

The Cherokee Nation admits that the only two actions brought by Mr. Niebell and Mr. Wilcoxen were dismissed with prejudice. The Cherokee Nation disputed Proposed Finding 19 only to the extent that it contends that, somehow, issues raised in matters that were dismissed with prejudice resulted in a legislative recovery. However, the Cherokee Nation's Opposition makes clear that it has ***no*** evidence to support this allegation. CN Opp. at 12 n.27. Further, as explained in Patton Boggs' Reply Brief at n. 19, the McClellan-Kerr Project either was excluded from the scope of Patton Boggs' Contract but worth ***zero*** as part of claims dismissed with prejudice, or it was within the scope of Patton Boggs' Contract, which culminated in the one and only legislative Cherokee Nation recovery. In addition, the fact that Mr. Wilcoxen has entered an appearance in this case does not in any way contradict Proposed Finding 19. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 19 should be deemed admitted.