| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 20:**<br><br>Mr. Niebell died in 1994. Ex. 4 at A-46. | **Cherokee Nation Response 20:**<br><br>Not disputed. | **USA Response 20:**<br><br>Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the 2002 Settlement Act when it directed that the estate of Paul Niebell be paid $100,000? **See PB's Proposed Findings of Uncontroverted Fact Nos. 18 through 21** contending that Paul Niebell's right to fees was `wholly contingent' upon a recovery and that he never worked upon the 1989 lawsuit filed in the U.S. Claims Court. We note that the 2003 Fite Memorandum states, in pertinent part, as follows: Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached. Attachment to Defendant's Reply at 5. |

**PB Reply:**

The Cherokee Nation does not dispute Proposed Finding 20. The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 20 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| **PB Proposed Finding 21:**<br><br>Mr. Niebell never worked on this litigation brought and prosecuted by Patton Boggs. Id. (Cherokee Nation's description of Mr. Niebell's work on this matter); see also Ex. 3 at A-43 (October 30, 1995 termination letter from the Cherokee Nation to Patton Boggs - thus, as of 1994 (when Mr. Niebell died), Patton Boggs was still lead counsel in this case). | **Cherokee Nation Response 21:**<br><br>The proposed finding is disputed to the extent that it omits material facts that are relevant to the disposition of Patton Boggs' Motion for Summary Judgment. The proposed finding fails to state that the 2002 Settlement Act was the culmination of a 30-year effort to secure compensation to the Cherokee Nation, and provided compensation to the Nation for damages sustained by the Cherokee Nation that included damages sought in the litigation on which Mr. Niebell represented the Nation (those arising from the Kerr-McClallen Arkansas Riverbed Navigation Project), 25 U.S.C. § 1779c(a)), and which the Court in this case said were not part of the claims in this case. See Cherokee Nation of Oklahoma v. United States, 21 Cl. Ct. 565, 580-81 & n. 11 (1990). | **USA Response 21:**<br><br>Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the 2002 Settlement Act when it directed that the estate of Paul Niebell be paid $100,000? **See PB's Proposed Findings of Uncontroverted Fact Nos. 18 through 21** contending that Paul Niebell's right to fees was `wholly contingent' upon a recovery and that he never worked upon the 1989 lawsuit filed in the U.S. Claims Court. We note that the 2003 Fite Memorandum states, in pertinent part, as follows: Except for the original litigation confirming the title to this property, none of the several lawsuits and appeals ever resulted in favorable disposition of any issues. However, the long term and continued litigation efforts helped to keep these issues alive so that the eventual legislative solution could be reached. Attachment to Defendant's Reply at 5. |

**PB Reply:**

The Cherokee Nation's contention that Proposed Finding 2 "omits material facts," does not dispute the facts set forth in Finding 21. *See* RCFC 56(h)(2) (distinguishing between disagreement with a finding and proposing additional findings of fact). The Government merely poses a hypothetical question that neither agrees, nor disagrees with the undisputed facts. Proposed Finding 21 should be deemed admitted.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| | | **USA Musing at Paragraph 3:**<br><br>Did the CNO construe the "contingency" clause in the Wilcoxen-Niebell contract to extend to the monies paid to the CNO under the terms of the Settlement Act when it directed that Wilcoxen & Wilcoxen be paid $550,000? Again, the Fite memorandum suggests the answer is "yes." Also, if PB's argument that the $100,000 paid to the Niebell estate out of the attorney fees escrow account was improperly paid out because of the "contingency" clause, then why isn't PB contending the $550,000 paid to Wilcoxen from the attorney fees escrow account was improperly paid out, since the "contingency" clause applies to Wilcoxen &Wilcoxen, as well, instead of "reserving" the argument? This disparate treatment of Wilcoxen & Wilcoxen and the estate of Paul Niebell underscores the existence of genuine issues of material facts in dispute. |

**PB Reply:**

The Government's Response paragraph 3 does not comply with RCFC 56(h)(2). First, it is not directed to any of Patton Boggs' Proposed Findings of Fact. Essentially, this the Government poses a legal argument which should have been included in its brief. But the response is simple, Mr. Wilcoxen and Mr. Niebell are in different positions because, as the Cherokee Nation points out, Mr. Wilcoxen is counsel of record in this case. While Mr. Wilcoxen's contribution as counsel in this case has been of such little import that the Court could not even recall meeting him before Patton Boggs moved to intervene, that marginal amount of work is sufficient to raise a genuine factual dispute as to the extent of his entitlement under the Settlement Act. It is for that reason, and that reason only, that Patton Boggs moved for summary judgment on less than the full amount of its Tucker Act claim.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| | | **USA Musing at Paragraph 4:**<br><br>What were the respective contributions that various counsel for the Cherokee Nation, including PB, made to the settlement embodied in the 2002 Settlement Act? In other words, based on quantum meruit, what amount of fees was each set of attorneys entitled to receive, based upon their respective contributions to settlement. PB is not entitled to recover 10 percent of the total compensation to be paid to the CNO by under its 1989 contract or under Section 1779e(b) of the Settlement Act because PB's 1989 contract was terminated. The general common law principle applied by the Court of Appeals for the Federal Circuit in Scates v. Principi, 282 F. 3d 1362, 1365-66 (Fed. Cir. 2002) is that termination (whether for cause or not) bars recovery of attorneys' fees based upon the contingency fee stated in the attorney fees contract Rather, recovery must be based upon quantum meruit and facts which establish the respective contributions of CNO's various counsel to the eventual settlement. **See PB's Proposed Findings of Fact Nos. 14, 19, 20 and 21** asserting, in effect, that neither Hall Estill nor Paul Niebell made any contribution to the ultimate settlement. But, the Court must keep in mind that in 2005 the CNO weighed PB's respective contribution to settlement and decided PB was entitled to $151,000 out of the attorney fees escrow account established by the Office of Special Trustee pursuant to Section 1779e, in addition to the $403,959 previously paid to PB under its 1989 contract before the contract was terminated. See PB's Proposed Findings of Uncontroverted Fact Nos. 3 and 10. In short, the CNO has already determined that PB has been fully compensated - - that is, PB has received the total amount of fees to which it is entitled, as compared to the respective contributions of the other sets of attorneys. |

**PB Reply:**
Although it makes references to Proposed Findings 14, 19, 20 and 21, the Government's response neither agrees nor disagrees (or even addresses) those proposed facts. The Government's Response paragraph 4 does not comply with RCFC 56(h)(2). The Government's improper legal argument is also incorrect. *See* Patton Boggs' Reply Brief Argument III.

| Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | Cherokee Nation's Response To Patton Boggs' Proposed Findings Of Uncontroverted Fact In Support Of Its Cross-Motion For Summary Judgment For $1,247,501.80 | USA's Statement Of Genuine Issues Of Material Facts In Dispute |
|---|---|---|
| | | **USA Musing at Paragraph 5:**<br><br>Does the 1989 PB contract with the CNO take priority over the 1988 Wilcoxen Niebell contract? The Wilcoxen-Niebell contract took effect before the Patton Boggs contract (indeed, it took retroactive effect as of August, 1988) and there is nothing in the PB contract stating that it has priority over the Wilcoxen-Niebell contract. In addition, it would appear that the termination of the PB contract would necessarily moot any priority argument. |

**PB Reply:**

The Government's Response paragraph 5 is not directed at any Proposed Finding of Fact and does not comply with RCFC 56(h)(2). While the Patton Boggs Contract does have priority over the Wilcoxen-Niebell Contract, that legal issue is not raised in Patton Boggs' Cross-Motion for Summary Judgment because it is not relevant to the relief sought. That argument will be addressed when Patton Boggs seeks the remainder of its Tucker Act claim by disputing the amounts also improperly paid to Mr. Wilcoxen but, as stated above, that issue involves factual disputes, which is why Patton Boggs did not raise it in this Motion.

Respectfully submitted,

David P. Callet (DC Bar No. 181990)
David S. Panzer (DC Bar No. 470677)
GREENBERG TRAURIG LLP
800 Connecticut Ave, NW, Suite 500
Washington, DC 20006
202-331-3100
202-331-3101 (fax)
calletd@gtlaw.com
panzerd@gtlaw.com

May 26, 2006